| | |
|---|---|
| Leonard M. Shulman – Bar No. 126349<br>Ryan D. O'Dea – Bar No. 273478<br>**SHULMAN BASTIAN FRIEDMAN & BUI LLP**<br>100 Spectrum Center Drive, Suite 600<br>Irvine, CA 92618<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: lshulman@shulmanbastian.com;<br>rodea@shulmanbastian.com<br><br>Attorneys for Defendants Aurora Capital Advisors, Richard Babcock, Anthony Nobles and Med-Venture Investments, LLC | |

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>**ROBERT BROWER SR.**,<br><br>Debtor.<br>_____<br><br>**MICHAEL G. KASOLAS,** solely in his capacity as the Liquidating Trustee for the Robert Brower Sr. Liquidating Trust,<br><br>Plaintiff,<br><br>v.<br><br>**PATRICIA BROWER,** solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; **GREAT AMERICAN WINERIES, INC.,** a California corporation; **DEERLEAF HOLDINGS, INC.,** a Delaware corporation; **ROBERT BROWER, JR.,** an individual; **MED-VENTURE INVESTMENTS, LLC,** a California limited liability company; **AURORA CAPITAL ADVISORS,** a California general partnership; **RICHARD BABCOCK,** an individual and general partner of Aurora Capital Advisors; **ANTHONY NOBLES,** an individual and general partner of Aurora Capital Advisors; **COASTAL WINE SERVICES, LLC,** a California limited liability company; **WILFORD BUTCH, LINDLEY,** an individual; **POHANKA OF SALISBURY, INC.**, a Maryland corporation; | Case No.: 15-bk-50801-MEH<br><br>Chapter 11<br><br>Adv. No.: 21-ap-05029-MEH<br><br>**AURORA CAPITAL ADVISORS, RICHARD BABCOCK, ANTHONY NOBLES AND MED-VENTURE INVESTMENTS, LLC's REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>**Hearing Date**:<br>Date: October 12, 2021<br>Time: 11:00 a.m.<br>Place: Held Via Telephonic or Video |

1

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**

SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 1 of 13

**JAURIGUE LAW GROUP,** a California professional corporation *dba* JLG Lawyers; **JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILLES, LLP,** a limited liability partnership; and **OLDFIELD CREELY, LLP,** a limited liability partnership,

Defendants.

**TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY JUDGE, PLAINTIFF, ALL DEFENDANTS AND ALL THEIR ATTORNEYS OF RECORD**:

Defendants Aurora Capital Advisors, Richard Babcock, Anthony Nobles and Med-Venture Investments, LLC (collectively, "Defendants") hereby bring this reply ("Reply") in Support of Defendants' Motion to Dismiss ("Motion")[1] and in response to Plaintiff's opposition (the "Opposition") to the Motion. In support of this Reply and the Motion, Defendants respectfully represent as follows:

## I. SUMMARY OF ARGUMENT

The Opposition is a collection of conclusory statements, unsupported by facts or applicable law. When taken together, the Opposition does not tip the scales in Plaintiff's favor, as the Proceeds are clearly not property of the estate, Plaintiff's claims against Defendants are time-barred and Plaintiff has failed to allege a single plausible claim for relief against Defendants. Therefore, and for the reasons detailed below, the Complaint has no merit or basis in fact and must be dismissed without leave to amend.

## II. ARGUMENT

**A. Plaintiff Cannot Properly Allege the Proceeds Are Property of the Estate**

By and through the Opposition, Plaintiff expressly embraces the dispositive judicial admissions asserted throughout the Complaint establishing that the Proceeds were not property of

---

[1] All capitalized terms not otherwise defined in this Reply shall have the meaning ascribed to same in the Motion.

2

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 2 of 13

the estate at the time of the alleged transfer. See Opposition 8:22-26. In an effort to distance himself from these judicial admissions, Plaintiff merely recites the statutory language of Section 541(a)(6) and (a)(7) and references case citations generally applying same. Opposition 7:21 through 8:21. Curiously absent from the Opposition is a single case standing for the proposition that corporate assets, held by a non-debtor entity, are somehow property of a separate individual debtor's bankruptcy estate. The Opposition's silence regarding authorities in support of its misguided position is easily explained – no such authorities exist.

The Opposition neither disputes Defendants' assertion that California law determines the existence and scope of a debtor's interest in property, nor disputes well-established California law holding that an owner of shares of stock in a corporation is not the owner of the corporation's assets. Rather, the Opposition cites to *Miller v. McColgan*[2] for the proposition that a "shareholder simply has an **expectancy** in [corporate property or corporate earnings], and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend" Opposition 8:28 through 9:13 (emphasis added). From the aforementioned quote, Plaintiff extrapolates (without authority of any kind) that "Debtor held legal and equitable, albeit contingent, claims for dividend payment from Coastal." Opposition 9:14-15. Plaintiff runs with this unsupported false premise for the balance of the Opposition. However, repeating this incorrect and conclusory statement numerous times throughout the Opposition does not miraculously change the state of the law.

Plaintiff continues by asserting that "[t]he allegations, at a minimum, create a question of fact that cannot be decided on the pleadings." In making this representation, Plaintiff overlooks the fact that it is his burden to allege "plausible" claims for relief under applicable federal pleading standards. All the factual allegations in the world will not change the reality that, when taking the Complaint as a whole and viewing well-pled allegations in a light most favorable to Plaintiff, the clear legal impediment permeating all claims for relief remains unaffected. Neither Plaintiff's citation to a bankruptcy court's ability to "look behind to form of transactions and relationships"

---

[2] This case was cited by Defendants in the Motion.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

[Opposition 10:13-26], nor Plaintiff's citation to Delaware authority regarding an "intermediary corporation" change the conclusion that the Proceeds are not property of the estate. Opposition 11:11-12.[3]

As clearly stated in the Complaint, Coastal wholly owned the Wine Estate Property, the Proceeds were the result of the Wine Estate Property's sale, the Proceeds were paid to Coastal, and Coastal made the Med-Venture Transfer and Aurora Transfer to Defendants. See Complaint ¶¶ 2-4, 27, 35, 65 and 116-118. The Proceeds were never distributed to Debtor or the estate, Coastal was not liquidated prior to the subject transfers, and no portion of the Proceeds used to make the subject transfers were segregated and set aside for dividend payment to Debtor or the estate. The Opposition does not contend otherwise. Based thereon, none of the Proceeds allegedly used to make the subject transfers can be classified as property of the estate. Therefore, Plaintiff's first, second, third, fourth, fifth, sixth and tenth claims for relief must be dismissed without leave to amend because the Proceeds allegedly used to make the Med-Venture Transfer and the Aurora Transfer were not property of the estate.

**B.     The First, Second, Third and Tenth Claims for Relief Are Time-Barred**

Despite the absolute confidence espoused by Plaintiff in his statement that "the Complaint sufficiently alleges that the statute of limitations on the First, Second, Third and Tenth Claims were tolled[,]" the Opposition fails to provide a single citation to the Complaint supporting his assertion. Opposition 12:4-5. No citation is provided in the Opposition because the words "toll," "tolled," or "tolling" are not used anywhere in the Complaint.[4] When Plaintiff's pleading infirmities are coupled with the undisputed requirement that a plaintiff specifically allege the grounds for tolling a statute of limitation, it cannot be reasonably disputed that the Complaint is woefully deficient. Putting this issue aside for the sake of argument only, and going directly to the heart of the matter, the Complaint contains no specific allegations for tolling because none

---

[3] These cases cited by Plaintiff do not involve facts similar to those alleged in the Complaint and do not stand for the proposition that non-debtor corporate property is property of an individual shareholder-debtor's bankruptcy estate.

[4] Further, the Opposition's reference to various Bankruptcy Code sections related to the impact of a chapter 11 plan do not provide for tolling of statutes of limitation.

4

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 4 of 13

exist. The Opposition attempts to justify the egregiously untimely claims asserted in the Complaint by arguing: (1) the Plan somehow tolled all applicable statutes of limitation; and/or (2) the doctrines of equitable tolling or adverse domination toll all applicable statutes of limitation. Neither of Plaintiff's arguments have any merit and cannot serve as a basis to deny the Motion.

The Opposition muses that "[r]ecognizing that there would be some time between the confirmation and effective dates of the Plan, the Plan <u>contemplated</u> that these claims would be tolled until the Effective Date." <u>Opposition</u> 14:6-7 (emphasis added). Sticking with Plaintiff's penchant to assert broad conclusions without providing support, the Opposition references the following quote from the Plan: "Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries." <u>Opposition</u> 14:8-10. Nowhere in the aforementioned quote, or anywhere in the Plan for that matter, are the words "toll," "tolled," or "tolling." Importantly, for a tolling agreement to be valid, the agreement to toll a statute of limitation must be expressly stated therein. <u>See</u> *Abramson v. Brownstein*, 897 F.2d 389, 393 (9th Cir. 1990). Referencing vague Plan language and asserting that same evidences a "contempla[tion]" of tolling is far from the requisite express language. If the Plan proponent or any party-in-interest wanted the Plan to toll any applicable statute of limitation, such a party should have expressly requested that the Plan include same. Due to the fact that the Plan and reciprocal confirmation order fail to provide for tolling of any statute of limitation, the Plan itself cannot save Plaintiff's time-barred claims.

In line with Plaintiff's argument that the Plan tolled all applicable statutes of limitation, Plaintiff additionally asserts that he lacked standing to pursue an action against Defendants until the Plan's Effective Date. Plaintiff's argument is similarly without merit and the Opposition fails to cite a single case in support thereof. Importantly, a chapter 11 plan is a "contract" where general rules of contract interpretation apply. <u>See</u> *Dolven v. Bartleson (In re Bartleson)*, 253 B.R. 75, 78-79 (9th Cir. BAP 2000). "Under California law, a contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636. The

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 5 of 13

intention of the parties is to be ascertained from the language of the contract; the language is to govern the contract's interpretation." *Id*.

If the Plan proponent and/or Plaintiff wanted broad authority to pursue claims against Defendants at some point sooner than the Effective Date, either could have requested same in the Plan. Due to the Plan's temporal restrictions on Plaintiff's authority, coupled with the Plan's failure to expressly toll any applicable statute of limitation, the intention of these parties is clearly ascertained from the Plan itself. To the extent Plaintiff asserts the Plan is ambiguous on these points, "[u]nder California law, ambiguities in a contract must be resolved against the drafter. *Aceves v. Autonation, Inc*., 317 Fed. Appx. 665, 667, (9th Cir. 2009)(dissent) <u>referencing</u> Cal. Civ. Code § 1654 (West 1982). Further, and in the face of lapsing statutes of limitation, the Plan proponent and/or Plaintiff could have sought an amendment of the Plan to remedy same – either though the request for tolling or to accelerate Plaintiff's authority to pursue claims. Plaintiff did neither, thus resulting in all claims against Defendants being time-barred. Therefore, Plaintiff's reliance upon a statute of limitation not commencing until a plaintiff has "a complete and present cause of action" is misplaced – as it was Plaintiff's own inaction, in conjunction with the terms of the Plan, that created his artificial and purported "lack of standing."

Plaintiff next argues that the doctrine of equitable tolling and/or the doctrine of adverse domination support that his claims against Defendants are timely. Again, Plaintiff's assertion is without merit. *See* <u>Opposition</u> 15:14 and 16:16. The Complaint fails to allege, and the Opposition fails to argue, the existence of "extraordinary circumstances" supporting the applicability of equitable tolling to the claims asserted against Defendants.[5] The Complaint and Opposition's silence is not surprising, because the facts, procedural history and inordinate time-elapse between

---

[5] <u>See e.g.</u> *Abe v. Mahoney*, 119 Fed. Appx. 47, 48 (9th Cir. 2004)("Abe also contends that he is entitled to equitable tolling, but has not alleged extraordinary circumstances <u>beyond his control that prevented him</u> from filing a timely petition. See *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001).")(emphasis added). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227, 132 S. Ct. 1414, 1419-20, 182 L. Ed. 2d 446 (2012) <u>quoting</u> *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L. Ed. 2d 669 (2005)(emphasis omitted).

6

SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618
**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**
Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 6 of 13

plan confirmation and initiating the instant adversary action do not constitute extraordinary circumstances militating in favor of equitable tolling.

Further, Plaintiff does not dispute that he had knowledge of the alleged transfers and fact supporting the claims against Defendants <u>years</u> before initiating suit. *See* <u>Opposition</u> 17:18-19.[6] "Even if the Court considers whether Plaintiff is entitled to equitable tolling under the most charitable view of the FAC, <u>Plaintiff clearly had knowledge of alleged fraud or nondisclosures. His damages claim is therefore barred.</u>" *Gonzales v. Bayview Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 106325, *9, 2019 WL 2602527 (emphasis added); <u>see also</u> *Northwest Pub. Communs. Council v. Qwest Corp.*, 538 Fed. Appx. 822, 824 (9th Cir. 2013)("NPCC then argues for the application of equitable tolling, an argument the district court properly rejected. NPCC was represented by counsel and, as discussed above, had knowledge of its possible claim. <u>See</u> *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (<u>equitable tolling looks to whether reasonable plaintiff would know of [a] possible claim</u>[.]"(emphasis added). As a result of Plaintiff having knowledge of the purported claims against Defendants years before the instant action was brought, equitable tolling is improper and the Motion must be granted accordingly.

Plaintiff next asserts that his claims against Defendants are timely due to application of the doctrine of adverse domination. However, the issue of Plaintiff's knowledge of the allegations and purported claims against Defendants is also directly relevant to the application of this doctrine. "California cases such as *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 47 Cal. Rptr. 392 (1965), support our conclusion. In that case the court described <u>the adverse domination doctrine…does not apply after discovery of the fraud by a protesting stockholder</u>[.]" *FDIC v. Dawson*, 4 F.3d 1303, 1312 (5th Cir. 1993)(emphasis added). Additionally, Plaintiff also predicates his adverse domination argument upon the notion that Debtor was in "full" control of Coastal – but this point

---

[6] Also, Plaintiff was appointed trustee in November 2017 and submitted a Fee Application to this Court for the period from April 23, 2018 through September 14, 2020. At the time, Plaintiff was represented by Finestone Hayes, L.P. and sought $29,106 in fees for services rendered during the application period. Plaintiff's Fee Application states that that "a significant issue for the Liquidating Trustee is the prosecution of avoidance actions"; and he goes on to advise the court that these claims will be prosecuted on a contingency fee basis and further states that that he is working on such agreements. At no time did Plaintiff mention that prosecution of these claims would wait for another 3 years pending the Effective date and that is because the trustee already was authorized, and compelled by statute to commence the actions on a timely basis.

is of little consequence, as the Complaint clearly alleges that at all times, the estate held stock in Coastal (regardless of the outcome of the Enhancement Action). Therefore, it is unclear how Plaintiff asserts he was somehow precluded from initiating suit due to Debtor's purported "adverse domination."

For the reasons stated above, no grounds exist to toll any of the applicable statutes of limitation and the first, second, third, fourth, fifth, sixth and tenth claims for relief must be dismissed without leave to amend.

## C. The Second and Third Claims for Relief Are Insufficiently Pled

Predicated upon an apparent failure to reread the Complaint, the Opposition asserts that Plaintiff is not seeking to avoid the alleged transfers to Defendants vis-à-vis application of Section 544. Rather, Plaintiff asserts the second and third claims for relief are in furtherance of Debtor's alleged claims against Coastal as a "creditor" and/or "shareholder." Turning first to the pleading deficiencies contained within the Complaint – the second and third claims for relief clearly attempt to allege Section 544 claims to improperly avoid post-petition transfers. For example, the Complaint (emphasis added) states:

> 147. On information and belief, the Debtor made the Chateau Julien Transfers, the Debtor Transfers, the ACP Transfers, Trust Transfers, the GAW Transfers, the R. Brower Transfers, the Deerleaf Transfers, the Med-Venture Transfer, the Aurora Transfer, the Jaurigue Group Transfers, the Johnson Rovella Transfers, the Oldfield Creely Transfers, the Coastal Services Transfers and the Pohanka Transfers identified on Exhibit 7 through 13 and 18 through 22 (collectively, the "Transfers"), and each of them, with the actual intent to hinder, delay, or <u>defraud creditors of the Debtor</u>.
>
> …
>
> 151. On information and belief, <u>Debtor</u> made the Transfers <u>without Debtor</u> having received reasonably equivalent value in exchange for such transfers, and <u>Debtor (a) was insolvent</u> on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (c) intended to incur, or believed that the <u>debtor</u> would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (d) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

8

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 8 of 13

If Plaintiff's second and third claims for relief were truly claims the estate has against Coastal, the necessary allegations would be: (1) Coastal's hypothetical "intent to hinder, delay, or defraud" Coastal's creditors; (2) Coastal's hypothetical insolvency; and/or (3) Coastal's hypothetical failure to receive reasonably equivalent value in exchange. However, the Complaint does not contain such allegations and the Opposition fails to connect the dots regarding the purported sufficiency of Plaintiff's allegations in support of the second and third claims for relief.[7]

Turning next to the substantive and problematic merits of Plaintiff's purported claim to avoid fraudulent transfers outside of Section 544: Plaintiff alleges that the estate has two claims against Coastal, whereby the estate is a creditor of Coastal. Plaintiff's first argument is that Debtor purportedly loaned money to Coastal, and that Exhibit 8 to the Complaint evidences "Debtor had not been fully repaid." Opposition 20:2-3. Plaintiff's assertion is curious for two reasons. First, the Complaint alleges that Debtor's purported loan to Coastal was in the amount of $115,000, but Exhibit 8 to the Complaint itemizes $167,844.83 of purported payments from Coastal to Debtor. Therefore, Exhibit 8 attached to the Complaint directly undermines Plaintiff's argument in the Opposition. Second, the Complaint expressly alleges that "Plaintiff is informed and believes that Debtor fabricated the Debtor Notes <u>to create the illusion of a legitimate transaction</u>. However, Plaintiff is informed and believes that Coastal did not receive any benefit from the Debtor Notes, <u>and that Debtor created the notes to further his scheme to transfer the Proceeds to himself and his related insider entities</u>." Complaint ¶ 82. Plaintiff's judicial admissions directly refute the bona fides of any purported loan between Debtor and Coastal – and as such, Plaintiff has not and cannot allege that the estate is an actual creditor of Coastal by virtue of the purported loan.[8]

---

[7] Tellingly, paragraph 6 of the Complaint states: "The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 542, **544**, 549, 550, and 551. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O)." (emphasis added).

[8] It is worth noting that if the Court believes the loan otherwise disavowed by Plaintiff in the Complaint can be the basis of a debtor-creditor relationship between Debtor and Coastal, the Complaint does not attach a copy of the loan documents and does not provide any allegations in support of the timeliness of a claim arising from a 2011 or 2012 loan. Further, Plaintiff asserts that he believes some amount of the loan was repaid, but the current amount remaining is unknown. This would make the estate's purported claim against Coastal less than $115,000 – meaning Plaintiff's recovery of a fraudulent transfer would be capped at the amount remaining (if any). See Cal. Civ Code § 3439.07(a)(1).

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Plaintiff further asserts that the estate has a claim against Coastal "in its capacity as sole shareholder." Opposition 19:1-2. Plaintiff's assertion is misplaced for a number of reasons. First, the Complaint asserts no claims against Coastal – so query what "claims" Plaintiff is referring to in his Opposition. Second, Plaintiff's purported "claims" against Coastal as shareholder bring back, full-circle, the issue of Debtor's property rights in the Proceeds. California law is clear that Debtor did not have an ownership right or interest in the Proceeds, and Plaintiff's attempt to repackage the second and third claims for relief does not change this fact. See e.g. *Hammett v. Sherman*, 2020 U.S. Dist. LEXIS 49793, *48-49, 2020 WL 1332591 ("Plaintiff contends that her 'claim that she failed to receive the distributions she was entitled to makes her a creditor under Corporations Code 17250'…however, as discussed above…'[Plaintiff] ha[s] no ownership interest in the profits of [Defendant SSP] and cannot have been deprived of them." See *Nelson*, 72 Cal. App. 4th at 126; see also *PacLink*, 90 Cal. App. 4th at 964.").

Third, and perhaps most importantly, Plaintiff's attempt to bring California avoidance claims outside Section 544 necessarily fails. Such an attempt by a plaintiff was presented to the court in *Audette v. Kasemir (In re Concepts Am., Inc.)*, 2018 Bankr. LEXIS 1779, *19-21 (emphasis added), where it was held:

> The Trustee argues that he is not relying, and does not need to rely, on Section 544. Instead, he asserts that because [debtor] Concepts has claims against the HoldCos who made the transfers, Concepts (and therefore the Trustee) is a creditor who has standing to avoid those transfers. "So in other words, the Trustee does not need to rely on section 544's 'hypothetical creditor' standing since the Debtor is itself a creditor of the transferor entities." Consolidated Response at 47.
>
> Lisa and Draft Town describe this argument as "confusing" and point out that Trustee provides no support for it. Again, they are correct; the argument is flawed. The first requirement of 740 ILCS 160/5(a) is that the transfer which the creditor seeks to avoid must be made "by a debtor". If the transfers were made by entities other than Concepts — and the Trustee states in his response that they were — than the transfers were not made "by a debtor".
>
> If the Trustee is asserting that the transfers were essentially made by Concepts because those entities are Concepts' alter ego, then his argument appears to be that Concepts is both the debtor who made the transfer as well as the creditor who has standing to avoid the transfer. The Trustee provides no legal support for this argument, and the court surmises that this is because none exists.
>
> **If the Trustee wishes to avoid a transfer of an interest of Concepts in property that is voidable under Illinois law by an unsecured creditor, he**

10

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Case: 21-05029    Doc# 31    Filed: 10/05/21    Entered: 10/05/21 16:48:55    Page 10 of 13

> **must use § 544(b) as the legal basis for his lawsuit. And § 544(b) limits his avoidance claims to prepetition transfers. Since all of the Post-Insolvency Transfers made to Draft Town and Lisa were made postpetition, the Trustee cannot state a claim against them for avoidance of fraudulent transfers**.
>
> The court finds that the Trustee failed to a state a claim for relief against Draft Town and Lisa in Count VII. The motion to dismiss will be granted as to Count VII.

The import of the Illinois fraudulent transfer statutes cited above appear to be the same as that under Cal. Civ. Code Section 3439.01 *et. seq*. as cited in the Motion. While Defendants understand that any ruling in *In re Concepts Am., Inc*. is merely persuasive authority, it should be noted that the Opposition fails to cite a single case on point supporting Plaintiff's assertion that he need not bring a Section 544 action to avoid the transfers detailed in the second and third claims for relief (presumably because no such authority exists).

Therefore, Plaintiff's second and third claims for relief are fatally flawed and the Motion must be granted without leave to amend.

### D. The Fourth, Fifth, Sixth and Tenth Claims for Relief Fail to State a Plausible Claim For Relief and Must Be Denied Accordingly

The Opposition devotes very little effort to substantiating Plaintiff's fourth, fifth, sixth and tenth claims for relief. Further, the Opposition disregards the true nature of the Complaint and its indiscriminate incorporation of 141 paragraphs by reference, to assert ten (10) claims for relief against fifteen (15) separate defendants. Such a "shotgun pleading" forces all defendants to guess which allegations apply to which claims for relief – which is clearly improper pursuant to Fed. R. Civ. Proc. 8. Therefore, and for the reasons stated in the Motion, the fourth, fifth, sixth and tenth claims for relief must be dismissed without leave to amend.

///
///
///
///

SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## III. CONCLUSION

Based on the aforementioned, and for the reasons state in the Motion, Defendants respectfully request that the Motion be granted in its entirety and Plaintiff's first, second, third, fourth, fifth, sixth and tenth claims for relief against Defendants be dismissed without leave to amend.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

Dated: October 5, 2021    By: /s/ *Ryan D. O'Dea*
   Leonard M. Shulman
   Ryan D. O'Dea
   Attorneys for Defendants Aurora Capital Advisors, Richard Babcock, Anthony Nobles and Med-Venture Investments, LLC

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

In re: **Robert Brower Sr - Debtor**
BK Case No.: **15-bk-50801-MEH**

**Michael G. Kasolas, etc., et al vs. Patricia Brower, etc., et al**
**ADV NO. 21-ap-05029-MEH**

# **CERTIFICATE OF SERVICE**

I, Lori Gauthier, declare that I am a citizen and resident of the United States of America and over 18 years of age and not a party to the within entitled litigation. My business address is Shulman Bastian Friedman & Bui LLP, 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.  On this date I served the following documents on the person named below by placing a true copy thereof in a sealed envelope with first class postage thereon, fully prepaid, in the United States mail at Irvine, California addressed as addressed below or by e-mail or by electronic filing, as set forth below:

**AURORA CAPITAL ADVISORS, RICHARD BABCOCK, ANTHONY NOBLES AND MED-VENTURE INVESTMENTS, LLC's REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on *October 5, 2021* at Irvine, California.

/s/ Lori Gauthier

**ELECTRONIC SERVICE LIST:**

- Jason B. Komorsky    jkomorsky@bg.law, ecf@bg.law
- Ryan O'Dea    rodea@shbllp.com
- Rogelio Serrano-Gutierrez    rserrano@kdvlaw.com
- Wendy W. Smith    Wendy@bindermalter.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.com

**All ECF Participants**