STEVEN T. GUBNER – Bar No. 156593
JASON B. KOMORSKY – Bar No. 155677
JESSICA L. BAGDANOV – Bar No. 281020
JESSICA S. WELLINGTON – Bar No. 324477
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:      sgubner@bg.law
            jkomorsky@bg.law
            jbagdanov@bg.law
            jwellington@bg.law

Attorneys for Michael G. Kasolas, Liquidating Trustee
For the Robert Brower, Sr. Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re | Bk. Case No. 15-50801 MEH |
| ROBERT BROWER, SR., | Chapter 11 |
| Debtor. | Adv. Case No. 21-05029 MEH |
| MICHAEL G. KASOLAS, solely in his capacity as the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust, | **PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS OLDFIELD CREELY, LLP AND JRG ATTORNEYS' MOTIONS TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)** |
| Plaintiff, | |
| v. | Date:  November 15, 2021 |
| | Time:  11:00 a.m. |
| PATRICIA BROWER, solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; et al., | Place:  Courtroom 11 |
| | United States Bankruptcy Court |
| | 280 South First Street |
| Defendants. | San Jose, California 95113 |

2715071

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................... 1

II.   THE CLAIMS FOR RELIEF ................................................. 3

III.  THE COMPLAINT IS SUFFICIENT UNDER RULE 8 ................. 5

      A.   Relevant Legal Standard................................................ 5

      B.   The Proceeds from the Sale Are Property of the Estate As a Matter of Law ......... 6

      C.   The First, Second, Third, Fifth, Sixth and Tenth Claims Are Not Time Barred ...14

           1.   The Statute of Limitations Period Commences when the Liquidating Trustee Had Standing to Bring the Claims ................14

           2.   Alternatively, the Statute of Limitations was Tolled Under the Adverse Domination Doctrine ................18

      D.   The Second and Third Claims (Fraudulent Transfers) Are Sufficiently Pled .......19

      E.   The Fifth Claim (Turnover) is Sufficiently Pled....................21

      F.   The Sixth Claim (Accounting) is Sufficiently Pled ................22

      G.   The Eighth Claim (Aiding and Abetting) is Sufficiently Pled..............23

      H.   The Ninth Claim (Disgorgement) is Sufficiently Pled..............26

      I.   The Motion Should Be Denied as to Plaintiff's Prayer for Relief..............26

      J.   The Complaint is Not a Shotgun Pleading ..........................27

IV.   LEAVE TO AMEND SHOULD BE PERMITTED IF THE COURT GRANTS THE MOTION TO DISMISS ON ANY GROUNDS ..........................28

V.    CONCLUSION ..................................................................29

i

2715071

# TABLE OF AUTHORITIES

Page

Cases

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011), *cert. denied*,
*U.S. Bank Nat. Ass'n v. Aguayo*, 133 S.Ct. 106 (2012)...........................................................5, 28

*Aryana v. Roossien*,
312 Fed. Appx. 853 (9th Cir. Feb. 19, 2009)..................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................5

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*,
522 U.S. 192, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997) ...........................................16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................5, 6

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .........................................................................5

*Citicorp Acceptance Co. v. Robison (In re Sweetwater)*,
884 F.2d 1323 (10th Cir.1989)...................................................................17

*City of Oakland v. Carpentier*,
13 Cal. 540 (1859).........................................................................18

*Clark v. Iowa City*,
87 U.S. 583, 22 L. Ed. 427 (1874) ...............................................................16

*Daly v. Pearl Spirits, Inc.*,0
438 F. App'x 644 (9th Cir. 2011) ...............................................................17

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) .........................................................................28

*Douglas v. Miller*,
864 F.Supp.2d 1205 (W.D. Okla. 2012)............................................................26

*Duvoisin v. East Tenn. Equity Ltd. (In re Southern Indus. Banking Corp.)*,
59 B.R. 638 (Bankr. E.D. Tenn. 1986).............................................................18

*Favila v. Katten Muchin Rosenman LLP*,
188 Cal.App.4th 189 (2010) .........................................................................23

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011).........................................................................5

*Foman v. Davis*,
371 U.S. 178 (1962) .........................................................................28

*Franklin v. Allstate Corp.*.
2007 U.S. Dist. LEXIS 51332 (N.D. Cal. 2007)..................................................24

Case: 21-05029    Doc# 37    Filed: 11/01/21    Entered: 11/01/21 14:52:54    Page 3 of 37

2715071

Cases

*Friends of Frederick Seig Grove # 94 v. Sonoma Cnty. Water Agency*,
    124 F. Supp. 2d 1161 (N.D.Cal.2000) ........................................................... 27

*Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc.*,
    759 F.2d 724 (9th Cir.1985) ......................................................................... 11

*Hanna v. Plumer*,
    380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ............................... 24

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,
    997 F.2d 581 (9th Cir. 1993) ........................................................................ 25

*Huynh v. Northbay Med. Ctr.*, No. 2:17-CV-2039-EFB PS,
    2018 WL 4583393 (E.D. Cal. Sept. 25, 2018) .............................................. 27

*In re Adams*,
    31 F.3d 389 (6th Cir. 1994) ............................................................................. 8

*In re Baker*,
    68 B.R. 360 (D. Or. 1986) ...................................................................... *passim*

*In re Beshears*,
    196 B.R. 464 (Bankr. E.D. Ark. 1996) ............................................................ 8

*In re Consol. Meridian Funds*,
    485 B.R. 604 (Bankr. W.D. Wash. 2013) ...................................................... 25

*In re Consolidated Capital Equities Corp.*,
    143 B.R. 80 (Bankr. N.D. Tex. 1992) ........................................................... 18

*In re Dow Corning Corp.*,
    456 F.3d 668 (6th Cir. 2006) ........................................................................ 25

*In re DSI Renal Holdings, LLC*,
    574 B.R. 446 (Bankr. D. Del. 2017) .............................................................. 12

*In re Enron Corp.*,
    316 B.R. 434 (Bankr. S.D.N.Y. 2004) ............................................................. 5

*In re Fitness Holdings*,
    714 F.3d 1141 (9th Cir. 2013) ......................................................................... 6

*In re Friskney*,
    282 B.R. 250 (Bankr. M.D. Fla. 2002) ............................................................ 8

*In re Giant Gray, Inc.*,
    629 B.R. 814 (Bankr. S.D. Tex. 2020) ............................................................ 7

*In re Hill*,
    265 B.R. 296 (Bankr. M.D. Fla. 2001) ............................................................ 8

iii

2715071

Cases

*In re Hollingsworth,*
  224 B.R. 822 (Bankr. M.D. Fla. 1998) ........................................................................ 8

*In re King's Place, Inc.,*
  6 B.R. 305 (Bankr. E.D. Pa. 1980) ............................................................................ 28

*In re Lau Cap. Funding, Inc.,*
  321 B.R. 287 (Bankr. C.D. Cal. 2005) ...................................................................... 22

*In re Milden,*
  111 F.3d 138 (9th Cir. 1997) ...................................................................................... 7

*In re Mohsen,* No. 05-50662-ASW,
  2014 WL 985442 (Bankr. N.D. Cal. Mar. 12, 2014) ................................................ 22

*In re Mosher,*
  417 B.R. 772 (Bankr. N.D. Ill. 2009) ......................................................................... 9

*In re Olsen,*
  36 F.3d 71 (9th Cir. 1994) ........................................................................................ 17

*In re Pisculli,*
  408 F. App'x. 477 (2d Cir. 2011) ....................................................................... 2, 7, 10

*In re Pisculli,*
  426 B.R. 52 (E.D.N.Y. 2010) ............................................................................... 2, 7, 9

*In re Pisculli,* No. 805-89678-REG,
  2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009),
  *aff'd,* 426 B.R. 52 (E.D.N.Y. 2010), *aff'd,* 408 F. App'x 477 (2d Cir. 2011) ..................2, 7, 8, 10

*In re Reed,*
  532 B.R. 82 (Bankr. C.D. Ill. 2015) ............................................................................ 5

*In re Reuter,*
  499 B.R. 655 (Bankr. W.D. Mo. 2013) ..................................................................... 22

*In re Richardson,*
  497 B.R. 546 (Bankr. S.D. Ind. 2013) ...................................................................... 13

*In re Ryerson,*
  739 F.2d 1423 (9th Cir.1984) ..................................................................................... 7

*In re Swift,*
  496 B.R. 89 (Bankr. E.D.N.Y. 2013) ........................................................................ 22

*In re United Energy Corp.,*
  944 F.2d 589 (9th Cir. 1991) .................................................................................... 11

*In re Walhof Properties, LLC,*
  613 B.R. 479 (Bankr. M.D. Fla. 2020) ....................................................................... 8

iv

2715071

Cases

*In re Whittick*,
  547 B.R. 628 (Bankr. D.N.J. 2016) ............................................................ 7, 23

*ITT–Industrial Credit Co. v. Hughes*,
  594 F.2d 384 (4th Cir.1979) ......................................................................... 11

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ................................................................... 14, 19

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ...................................................................... 28

*Jordan v. United States*,
  2015 WL 5919945 (S.D. Cal. Oct. 8, 2015) ................................................. 26

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*,
  716 F.3d 736 (3d Cir.2013) ............................................................................ 6

*Maricopa–Stanfield Irrigation and Drainage District v. United States*,
  158 F.3d 428 (9th Cir.1998) ......................................................................... 17

*Ohio v. Collins (In re Madeline Marie Nursing Homes)*,
  694 F.2d 433 (6th Cir.1982) ......................................................................... 11

*Ostrofsky v. Sauer*,
  2010 WL 891263 (E.D. Cal. Mar. 8, 2010) .................................................. 27

*PacLink Communications Internat., Inc. v. Superior Court*,
  90 Cal.App.4th 958 (2001) ........................................................................... 20

*Pavicich v. Santucci*,
  85 Cal.App.4th 382 (2000) ........................................................................... 24

*Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp.
  Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*,
  444 F.3d 203 (3d Cir.2006) ............................................................................ 7

*PGA W. Residential Assn., Inc. v. Hulven Internat., Inc.*,
  14 Cal. App. 5th 156 (2017),
  *as modified* (Aug. 23, 2017) ....................................................................... 17

*Rawlings v. Ray*,
  312 U.S. 96, 61 S. Ct. 473, 474, 85 L. Ed. 605 (1941) ............................... 16

*San Leandro Canning Co. v. Perillo*,
  211 Cal. 482 (1931) ...................................................................................... 18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) ......................................................... 13

v

2715071

Cases

*Segal v. Rochelle*,
382 U.S. 375, 86 S.Ct. 511, 15 L.Ed. 2d 428 (1996) ................................................. 6

*Shafer v. Berger. Kahn. Shafton, Moss, Figler, Simon & Gladstone*,
107 Cal.App.4th 54 (2003) ....................................................................................... 24

*Shapiro v. Henson*,
739 F.3d 1198 (9th Cir. 2014) ................................................................................. 22

*St. James Church of Christ Holiness v. Superior Ct. In & For Los Angeles Cty.*,
135 Cal.App.2d 352 (1995) ...................................................................................... 22

*Steel v. City of San Diego*,
726 F. Supp. 2d 1172 (S.D. Cal. 2010) .................................................................... 24

*Sutter v. Gen. Petroleum Corp.*,
28 Cal. 2d 525 (1946) ............................................................................................. 20

*Tatung Co., Ltd. v. Hsu*,
No. SACV131743DOCANX, 2015 WL 11072178 (C.D. Cal. Apr. 23, 2015) ............. 27

*Wagner v. First Horizon Pharmaceutical, Corp.*,
464 F.3d 1273 (11th Cir. 2006) ............................................................................... 27

Statutes

11 U.S.C.,
Section 541(a)(1) ................................................................................................. 6, 7, 22
Section 541(a)(6) .................................................................................................... 6, 7
Section 541(a)(7) ....................................................................................................... 6
Section 544 ....................................................................................................... 19, 20
Section 546 ............................................................................................................. 17
Section 548 ............................................................................................................. 20
Section 549 ..................................................................................................... 8, 17, 20
Section 1123(b)(3)(B) ............................................................................................. 17
Section 1141(a) ...................................................................................................... 25
Section 1141(b) ...................................................................................................... 15

California Civil Code,
Section 47(b) .......................................................................................................... 24
Section 1714.10 ...................................................................................................... 23
Section 3439.04 ...................................................................................................... 20
Section 3439.07 ...................................................................................................... 20
Section 3439.08 ...................................................................................................... 20
Section 3439.09(a) .................................................................................................. 17

California Civil Procedure Code,
Section 338(c) ........................................................................................................ 17

Case: 21-05029    Doc# 37    Filed: 11/01/21    Entered: 11/01/21 14:52:54    Page 7 of 37

2715071

Rules

Fed. R. Bankr. P.,
   Rule 2016(a)............................................................................................................... 26

Federal Rules Civil Procedure,
   Rule 8........................................................................................................................ 27
   Rule 8(d)(3)........................................................................................................ 20, 21
   Rule 12(b)(6)........................................................................................................ 5, 26

Treatises

9 Witkin, Summary of Cal. Law (11th ed. 2021 supplement)
   Corporations, § 19 ..................................................................................................... 10

Case: 21-05029    Doc# 37    Filed: 11/01/21    Entered: 11/01/21 14:52:54    Page 8 of 37

2715071

1  Michael G. Kasolas, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust, and

2  Plaintiff herein ("Liquidating Trustee" or "Plaintiff"), hereby opposes (the "Opposition") the

3  *Defendant Oldfield Creely, LLP's Motion to Dismiss Complaint Pursuant to Rule 12(b)(6)* [Doc. 13]

4  filed on behalf of defendant Oldfield Creely, LLP ("Oldfield Creely"), and the *Corrected Motion to*

5  *Dismiss the Complaint Pursuant to Rule 12(b)* [Doc. 25] filed on behalf of defendant JRG Attorneys

6  at Law, LLP ("JRG," and together with Oldfield Creely, "Defendants"). In support of the

7  Opposition, the Liquidating Trustee respectfully represents as follows:

8  **I.    INTRODUCTION**

9       In vetting and approving the Debtor's two-stage bankruptcy plan (the "Plan"), the Court

10  made certain findings germane to the instant adversary.  See Adv. Dkt. No. 27, Corrected Request

11  for Judicial Notice in Support of Motion to Dismiss Complaint Pursuant to Rule 12(b), Exhibit A

12  (11/2/2017, Transcript of Proceedings).  The Court recognized that Coastal Cypress Corporation

13  ("Coastal"), found (after a two-year adversary proceeding) to have been wholly-owned by the

14  Debtor at all times, was "not an operating entity" but was just a "company that's holding funds." *Id*,

15  at p. 33.

16       The other finding pertinent to the instant adversary was the Court's recognition of the

17  distinction between the confirmation and effective date of the Plan, and a finding that the effective

18  date was not illusory.  *Id.*, at pp. 34-35.  The Court determined the Plan to be feasible, and allowed

19  for the litigation as to the ownership of Coastal to proceed first—while approving the Plan that

20  stayed all other litigation and expressly made clear that the Liquidating Trustee had no standing to

21  pursue litigation until the Plan became effective.

22       After the Debtor filed for bankruptcy protection he caused Coastal to liquidate its only

23  remaining asset (the "Property") for $12,035,707.24.  Complaint, at ¶¶ 2, 3.  From the sale of the

24  Property, all of Coastal's creditors were paid and Coastal ceased all business operations.  Complaint,

25  ¶ 4.  The Debtor (who was the president of Coastal) thereafter employed a scheme "to transfer the

26  net proceeds from Coastal away from the bankruptcy estate outside the purview of the bankruptcy

27  court to the Defendants, several of whom are insiders of the Debtor.  *Id*.  The Debtor's post-petition

28  efforts left Coastal as an empty shell.  *Id.*

1

2715071

1   Defendants have raised almost identical arguments as those raised in the prior motion to
2   dismiss, which focus on whether Coastal was an asset of the estate and whether the statute of
3   limitations had run.  Defendants' argument that the Transfers (defined below) were not made with
4   property of the Estate, is not supported by the law or the Complaint allegations.  The case law, cited
5   in depth below, holds that a closely held corporation owned 100% by the Debtor (and controlled by
6   him) is an asset of the estate—especially once it has liquidated its operations.  *See In re Pisculli*, No.
7   805-89678-REG, 2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009), *aff'd*, 426 B.R. 52 (E.D.N.Y.
8   2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011); *In re Baker*, 68 B.R. 360, 363 (D. Or. 1986).  Here,
9   Coastal was "not an operating entity" and was merely "holding funds," which net proceeds belonged
10  100% to the Debtor.  Dkt. No. 27, Exhibit A, at p. 33.

11      Likewise, the statute of limitations challenge is antithetical to the express terms of the court-
12  confirmed Plan.  As set forth in the Plan, the Liquidating Trustee's standing and right to prosecute
13  actions did not arise until the "Effective Date" of the Plan, as follows:

14          Notwithstanding any other term or provision of the Plan, the
            Liquidating Trustee shall have, ***on and after the Effective Date***, sole
15          authority and responsibility for investigating, analyzing, commencing,
            prosecuting, litigating, compromising, settling, collecting or otherwise
16          administering the Causes of Action. Any claims arising out of the
            recovery of an avoidable transfer under chapter 5 of the Bankruptcy
17          Code after the claims bar date in the Bankruptcy Case must be filed on
            or before thirty (30) calendar days after entry of an order of judgment
18          avoiding the transfer. ***For the avoidance of doubt, the Liquidating***
            ***Trustee will not have authority over such Causes of Action***
19          ***(including the Estate Enhancement Action) on the Confirmation***
            ***Date, but will only have such authority if and when the Effective***
20          ***Date occurs.***
            . . .
21          Any and all Causes of Action shall survive entry of the Confirmation
22          Order for the benefit of the Debtor's estate and, on and after the
            Effective Date, for the benefit of the Liquidating Trust and its
23          beneficiaries.

24  Plan, at 18:6-14, 19:6-8 (emphasis added).  Thus, after confirmation but before the Plan was
25  effective, no one was vested with standing to bring post-petition fraudulent transfer claims, thus
26  effectively staying the statute of limitations.

27      The Effective Date of the Plan, as ordered by the Court, was September 15, 2020.  See Bk.
28  Docs. 266, 270, 271.  Here, the Liquidating Trustee filed his complaint against Defendant on July

2

2715071

23, 2021, within one year of being vested with standing to prosecute these claims. The Effective Date coupled with the Plan language above effectively undermines Defendant's argument; rather than being too late in filing such claims, the Liquidating Trustee would have been too early (and without Article III standing) if he had attempted to file the claims prior to September 15, 2020. It is equally clear from the confirmed Plan that the claims were tolled until such time as the Effective Date, at which time the Liquidating Trustee would be vested with the right to assert such claims. Even absent express tolling in the Plan and obvious equitable tolling given the Liquidating Trustee's lack of Article III standing, to the extent the Debtor had any right to bring such claims the adverse domination doctrine would apply to the extent the Debtor had standing to pursue the claims until the Effective Date, as he was the alleged mastermind of the post-petition fraudulent transfer scheme.

As discussed more fully below, each and every claim for relief is well pled and Defendants' motions to dismiss should be denied in their entirety.

## II.     THE CLAIMS FOR RELIEF

Coastal was formed by Debtor in the early 1980's, and at all times relevant to the Complaint, Debtor controlled all of Coastal's operations and disposition of its assets. Complaint, ¶¶ 2, 27. Debtor commenced the above-captioned bankruptcy case by filing a petition under chapter 11 of Title 11 of the United Stated Code ("Bankruptcy Code") on March 11, 2015 (the "Petition Date"). Complaint, ¶ 1. On the Petition Date, Coastal owned real property located at 8890 and 8940 Carmel Valley Road in Carmel, California (the "Property"). Complaint, ¶ 27. Shortly after the Petition Date, Debtor consummated the sale of the Property for $12,035,707.24. Complaint, ¶ 35. Debtor filed his chapter 11 petition knowing that the sale of the Property was about to close, as Debtor had been negotiating with the buyer for almost a year before filing his petition, and he received several early release of funds from escrow. Complaint, ¶¶ 65, 109-110. Net proceeds from the sale were over $7,000,000 (the "Proceeds"). Complaint, ¶ 65.

After the sale of the Property, Coastal ceased all business operations. Complaint, ¶ 67. At that time, ownership of Coastal was disputed, and this dispute formed the foundation for the two-stage plan. As held by this Court in the matter styled *MUFG Union Bank, N.A. v. Robert S. Brower, Sr., et al.*, Adv. Case No. 17-5044 (the "Enhancement Action"), at all times relevant to the

2715071

1   Complaint, Debtor's bankruptcy estate owned 100% of Coastal. Complaint, ¶¶ 42-52; Enhancement
2   Action, Docs. 123, 158, 159. In the Enhancement Action, the Court found that the purported shares
3   in Coastal that were held by Patty Brower, Wilford Butch Lindley, Anthony Nobles and Richard
4   Babcock were void, meaning that the shares in Coastal never had legal force or effect.
5       While the Enhancement Action was ongoing, Debtor schemed to transfer the Proceeds from
6   Coastal away from the bankruptcy estate outside the purview of this Court to Defendants, among
7   others. Complaint, ¶¶ 64–141. As set forth in the Plan, on the Effective Date (September 15, 2020),
8   the Liquidating Trustee was first vested with standing and authority to bring claims on behalf of the
9   estate, including the claims presented in this adversary proceeding. Plan, at 18:6-14. The
10  Liquidating Trustee initiated this adversary proceeding shortly thereafter in July 2021.
11      As relevant to the Liquidating Trustee's claims against defendant Oldfield Creely, Debtor
12  caused Coastal to directly transfer $187,737.64 of the Proceeds to Oldfield Creely, and Debtor
13  caused the Trust to subsequently transfer at least $15,338.80 to Oldfield Creely (together, the
14  "Oldfield Creely Transfers"). Complaint, ¶¶ 134-137. As relevant to defendant JRG, Debtor caused
15  Coastal to transfer at least $280,288.48 of the Proceeds to JRG (the "JRG Transfers," and together
16  with the Oldfield Creely Transfers, the "Transfers"). Complaint, ¶¶ 127-133, Exhibit 19. The
17  Liquidating Trustee seeks to avoid and recover the Transfers for the benefit of the bankruptcy estate.
18      As alleged in the Complaint, the Transfers were made as purported compensation for legal
19  services Defendants provided to the Debtor and other third parties. Complaint, ¶¶ 128, 129, 130,
20  131, 135. The Transfers were made from property of the bankruptcy estate, postpetition. *See e.g.*,
21  Complaint, ¶ 3. Yet, Defendants never filed applications to be employed by the bankruptcy estate as
22  special litigation counsel and Defendants did not receive Court approval for payment of their fees.
23  Complaint, ¶¶ 132, 136. Accordingly, the Liquidating Trustee also seeks disgorgement of the fees
24  Defendants received under section 330 of the Bankruptcy Code. Additionally, the Liquidating
25  Trustee has brought a claim against defendant JRG for aiding and abetting the Debtor's breach of his
26  fiduciary duties.
27
28

4

2715071

## III. THE COMPLAINT IS SUFFICIENT UNDER RULE 8

### A. Relevant Legal Standard

"A motion to dismiss [pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)] will only be granted if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted) (citing, *inter alia*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations omitted). In addition, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

In *Ashcroft*, the Supreme Court elaborated on the *Twombly* standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citations.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Ashcroft*, 556 U.S. at 678.

The party seeking dismissal under Rule 12(b)(6) has the burden of proof. *In re Reed*, 532 B.R. 82, 88 (Bankr. C.D. Ill. 2015) ("A party seeking dismissal under Rule 12(b)(6) 'bears a weighty burden' [which] requires that the movant establish 'the legal insufficiency of the complaint.'"); *In re Enron Corp.*, 316 B.R. 434, 449 (Bankr. S.D.N.Y. 2004) (stating that an "unsupported assertion is insufficient to meet [the] burden under a [Rule] 12(b)(6) motion.").

"A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011), *cert. denied*, *U.S. Bank Nat. Ass'n v. Aguayo*, 133 S.Ct. 106 (2012) (emphasis added). Moreover, for purposes of evaluating a motion to dismiss, the Court must

Case: 21-05029   Doc# 37   Filed: 11/01/21   Entered: 11/01/21 14:52:54   Page 13 of 37

2715071

accept as true all well pleaded factual allegations made in the operative pleading and construe them in the light most favorable to the non-movant. *In re Fitness Holdings*, 714 F.3d 1141, 1144-1145 (9th Cir. 2013).

As set forth herein, the Complaint includes numerous, specific and detailed factual allegations which unquestionably "raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555. The Complaint sufficiently pleads all elements of each claim for relief along with sufficient facts to notify the Defendants of their alleged wrongdoing.

**B.    The Proceeds from the Sale Are Property of the Estate As a Matter of Law**

Defendants argue that the First Claim (avoidance of post-petition transfers), Fourth Claim (recovery of avoided transfers), Fifth Claim (turnover), Sixth Claim (accounting), Ninth Claim (disgorgement) and Tenth Claim (conversion) should be dismissed because the Complaint fails to allege that the Proceeds used to make the Transfers were property of the bankruptcy estate. Section 541(a) provides that "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case" are included in property of the estate. 11 U.S.C. § 541(a)(1). Property becomes property of the estate regardless of location or by whom held. 11 U.S.C. § 541(a). Section 541(a)(6) provides that property of the estate also includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Section 541(a)(7) provides that property of the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

As the Supreme Court of the United States stated in *Segal v. Rochelle*, "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." 382 U.S. 375, 379, 86 S. Ct. 511, 515, 15 L. Ed. 2d 428 (1966); *see also Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC),* 716 F.3d 736, 750–51 (3d Cir.2013) (property interest is not outside of bankruptcy's reach only because it is contingent); *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.),* 444

2715071

F.3d 203, 211 (3d Cir.2006) (property of the estate includes contingent and future interests, even if not transferable).  Indeed, it is well-settled that section 541(a)(1) encompasses "all legally recognizable interests," even those that are "contingent and not subject to possession until some future time." *In re Ryerson,* 739 F.2d 1423, 1425 (9th Cir.1984).

Moreover, Section 541(a)(6) is a "generous provision that sweeps into the bankruptcy estate all interests held by the debtor -- even future, non-possessory, contingent, speculative, and derivative interests." *In re Giant Gray, Inc.*, 629 B.R. 814, 843 (Bankr. S.D. Tex. 2020).  "Congress intended for the definition of proceeds to be more expansive than that found in the Uniform Commercial Code and 'encompass[ ] any conversion in the form of property of the estate, and anything of value generated by property of the estate.'" *Id.*  Thus, the statute makes clear that if a debtor has a contingent right to receive funds in the future on the petition date, that contingent right belongs to the bankruptcy estate.  *In re Whittick*, 547 B.R. 628, 635 (Bankr. D.N.J. 2016).

Defendants argue that the estate's interest in Coastal is of the stock, and not of Coastal's assets themselves.  The Defendants' arguments seek to split hairs insofar as the Debtor had sole control and ownership of Coastal, a non-operating entity, which consisted merely of a bank account with net proceeds from the sale of its only asset.  As a result of its stock ownership, the Debtor owned Coastal's sole asset—*i.e.*, the net proceeds from the sale.  *See In re Milden*, 111 F.3d 138 (9th Cir. 1997) ("Once appointed, the Trustee acted as representative of the estate pursuant to 11 U.S.C. § 323(a), with the power and duty to manage all of the assets of the estate, including the stock, books and records in a wholly-owned corporation.") citing *In re Baker*, 68 B.R. 360, 363 (D. Or. 1986) ("since the corporation was wholly owned by the debtors, it became an asset of this estate, upon the filing of the Chapter 11 petition" citing 11 U.S.C. § 323(a)); *In re Pisculli*, No. 805-89678-REG, 2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009), *aff'd*, 426 B.R. 52 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011) (proceeds of sale of wholly-owned corporation's assets belonged to debtor).  This authority makes clear that Coastal, 100% owned by the Debtor, was an asset of the estate and the Debtor was no longer vested with control to manage this asset—let alone dissipate the proceeds from the sale of Coastal's only asset.

2715071

Defendants argue that the Proceeds cannot be property of the estate because the Proceeds were never distributed to the shareholders, Coastal was not liquidated, and no portion of the Proceeds were segregated and set aside for dividend payment. However, bankruptcy courts have routinely held that the primary asset of a closely held corporation owned by the debtor is property of the bankruptcy estate. *See e.g.*, *In re Walhof Properties, LLC*, 613 B.R. 479 (Bankr. M.D. Fla. 2020) (holding that surplus proceeds resulting from sale of property owned by corporate chapter 11 debtor were not excluded from property of its direct and indirect equity holders' individual chapter 7 estates); *In re Friskney*, 282 B.R. 250, 253 (Bankr. M.D. Fla. 2002) ("The Court agrees that ordinarily the stock of a debtor's closely owned corporation (and consequently the value of its assets), after payment of the corporation's debts, is property of a debtor's bankruptcy estate."); *In re Hill,* 265 B.R. 296, 300 (Bankr. M.D. Fla. 2001) (the sole asset of a closely held corporation owned by the debtor was property of the estate such that the post-petition transfer of the asset was avoidable pursuant to 11 U.S.C. § 549); *In re Hollingsworth,* 224 B.R. 822, 829 (Bankr. M.D. Fla. 1998) (airplane which was owned by debtor's corporation and not by debtor himself was considered to be property of the debtor for purposes of denying debtor's discharge under 11 U.S.C. § 727(a)(2)); *In re Beshears,* 196 B.R. 464, 467 (Bankr. E.D. Ark. 1996) (real property owned by a closely held corporation in which debtor owned 50% of the stock was property of the estate, such that the post-petition transfer of the property was avoidable pursuant to 11 U.S.C. § 549); *In re Adams*, 31 F.3d 389, 394 (6th Cir. 1994) (transfer of property of a corporation wholly owned by the debtor was a transfer of property of the debtor). Moreover, in *In re Baker* the bankruptcy court held the debtor's wholly owned corporation became an asset of the bankruptcy estate upon filing of the debtor's chapter 11 petition such that the chapter 11 trustee could not make payments from the corporation to himself and others without the court's approval. *Id.* at 363-65.

Indeed, this case is on all fours with *In re Pisculli*, No. 805-89678-REG, 2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009), *aff'd*, 426 B.R. 52 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011). In *Pisculli*, prior to the petition date, the debtor was the owner and sole shareholder of three corporations, LJC Truck Service Inc., J.R. Materials Corp. and A.N. Leasing Corp. *Id.* at *1. Approximately five months after the petition date, and while the debtor's chapter 13 case was

2715071

pending, the debtor sold assets owned by A.N. Leasing Corp. and used the sale proceeds to pay

creditors of the debtor's other businesses and transferred $80,000 to the debtor's wife. *Id.* A month

later, the debtor's chapter 13 case was converted to one under chapter 7. *Id.* Thereafter, two of the

debtor's creditors filed a complaint objecting to the debtor's discharge under section 727(a)(2)(B)

based on the transfers. *Id.* The bankruptcy court found that the sale proceeds constituted a post-

petition transfer of property of the estate and denied the debtor's discharge. *Id.* at *2. In coming to

this decision, the court found

> . . . that the Debtor had more than a mere derivative interest in the
> transferred property. Once the Debtor liquidated the assets of A.N.,
> the Debtor had a ***direct interest*** in the proceeds.

*Id.* at *3 (emphasis added). In relevant part, the court reasoned that:

> The Debtor was the sole shareholder and owner of A.N. The Debtor
> directed the Sale of the Assets of A.N. and paid off the remaining
> obligations of A.N. Debtor and his wife testified that once the notes on
> A.N.'s trucks were paid, A.N. had no other debts and was no longer
> conducting any business. ***Having liquidated the Assets, equity for the***
> ***shareholders was created and the Debtor as the corporation's owner***
> ***and direct beneficiary had full control over the Proceeds***.

*Id.* (emphasis added).

The bankruptcy court's ruling was affirmed by the district court in *In re Pisculli*, 426 B.R. 52

(E.D.N.Y. 2010), wherein in the court found that:

> It was not clear error for the bankruptcy court to find that since
> appellant was the only person with any interest in A.N. Leasing after it
> liquidated all of its assets and effectively ceased to exist, he had a
> direct interest in the proceeds from the sale of those corporate assets.

*Id.* at 60; *see also In re Mosher*, 417 B.R. 772 (Bankr. N.D. Ill. 2009) (cited affirmatively in

*Pisculli*). As the *Mosher* court held:

> … since the Debtor was the only person with any interest remaining in
> the defaulting corporation after this purchase, the assets of the
> corporation were effectively liquidated to him (since he would
> otherwise only be holding the assets in trust for himself) and the
> corporation completely ceased to exist. Thereafter, all assets of the
> corporation were the assets of the Debtor and all purported actions of
> the Debtor on behalf of the defunct corporation were actually the
> actions of the Debtor.

*Id.*, at 780.

9

2715071

The *Pisculli* district court decision was upheld by the Second Circuit, which held that "the bankruptcy court did not err in holding that the truck sale proceeds were property of the bankruptcy estate because [the debtor], as sole owner and shareholder of A.N. Leasing Corp., had full control of those proceeds." *In re Pisculli*, 408 F. App'x. 477, 479 (2d Cir. 2011).

Here, on the Petition Date, Debtor held legal and equitable claims for dividend payments from Coastal and for claims to Coastal's assets upon dissolution of the corporation, which claims transferred to the bankruptcy estate on the Petition Date. The only remaining issue was to determine Coastal's ownership, which was subject to ongoing litigation before this Court, the resolution thereof being a condition precedent to the Plan being effective.

As alleged, the only business purpose for Coastal's existence was to hold title in the Property. Complaint, ¶ 27. As further alleged, Debtor's bankruptcy estate at all relevant times was the sole shareholder of Coastal. *See e.g.*, Complaint, ¶¶ 2, 52. Once Coastal sold the Property, Coastal ceased all business operations and was merely holding the Proceeds from the sale of the Property. Complaint, ¶¶ 4, 34, 67; see also Dkt. No. 27, at p. 33 (Court found Coastal to be a non-operating entity that is simply "holding funds"). As the President and sole shareholder of Coastal, the Debtor exercised full control over Coastal's proceeds from the real estate sale. This is not a situation where the wholly owned corporate entity was separately managed and controlled. *See* 9 Witkin, Summary of Cal. Law (11th ed. 2021 supplement) Corporations, § 19, p. 1 ("if in addition to ownership there is relatively complete management and control by the parent, equity may in the interests of justice disregard the entity and treat the corporations as one"). Coastal was not an operating entity.

Other than Debtor (¶¶81-82), Coastal's only other creditor—the secured lender on the Property—was paid through escrow. Complaint, ¶ 65; Exhibit 6. At that point, as in *Pisculli*, Debtor's contingent interest in the Proceeds became a direct interest. Debtor, by liquidating the only asset of Coastal and Coastal effectively ceasing to exist, was simply holding assets in trust for himself and over which assets he exercised full control. There was no other party that could have claimed an interest in the Proceeds or directed its distribution. Debtor's control over the Proceeds is further confirmed by Debtor's use of the Proceeds for his personal living expenses to fund his

2715071

extravagant lifestyle (¶ 90), and by his use of the Proceeds to transfer them to himself, his related entities, his family and his friends (¶¶ 64–141). As alleged, Debtor's transfers of the Proceeds were not made for legitimate business purposes as Coastal had no business operations. Under bankruptcy law, the Debtor was divested of control when he filed for bankruptcy and Coastal became an asset of the estate—and any transfer of Coastal's assets required Court approval. *See In re Baker*, 68 B.R. at 364-65.

The allegations in the Complaint, at a minimum, create a question of fact that cannot be decided on a motion to dismiss. Indeed, the crux of the allegations are that the payments to the Defendants were not legitimate in the first instance such that the monies should never have been transferred from Coastal and, thus, would in fact be assets of the estate. Complaint, ¶¶ 67, 98, 101, 102, 107, 110, 111, 112, 120, 121. Had the monies remained with Coastal (rather than being transferred for no consideration, as alleged in the Complaint), there is no doubt that Debtor's estate would be entitled to those funds as proceeds of Debtor's 100% interest in Coastal's stock. The bankruptcy estate's right to a dividend payment from Coastal is property of the estate under Section 541(a)(6), and it is an interest in property that was acquired after commencement of the case pursuant to Section 541(a)(7).

Defendants argue that the Coastal directors, Debtor and his wife, did not segregate and set aside the Proceeds for a dividend payment. Defendants' argument improperly elevates form over substance. Indeed, "[b]ankruptcy courts are courts of equity. As such, they possess the power to delve behind the form of transactions and relationships to determine the substance." *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991) (citing *Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc. (In re Global W. Dev. Corp.),* 759 F.2d 724, 727 (9th Cir. 1985)); *Ohio v. Collins (In re Madeline Marie Nursing Homes),* 694 F.2d 433, 436 (6th Cir. 1982); *ITT–Industrial Credit Co. v. Hughes,* 594 F.2d 384, 386 (4th Cir. 1979). Defendants simply ignore the fact that there were no independent directors of Coastal and Coastal was a non-operating entity, controlled by the Debtor. Debtor could have chosen to take the dividend payment he was entitled to thereby making the Proceeds available to Debtor's creditors, or he could have left the Proceeds, although he was entitled to them, in Coastal. Alternatively, Debtor could have chosen to dissolve Coastal after

2715071

the sale of the Property, as Coastal ceased all business operations, and he would have been entitled to the Proceeds as sole shareholder. He did not do so. However, that does not mean Debtor did not have the right to do so, and that right was an asset of the bankruptcy estate.

As alleged in the Complaint, Debtor intentionally kept the Proceeds in Coastal so as to avoid the Proceeds being made available to creditors of Debtor's estate. *See e.g.*, Complaint, ¶ 4, 67. Indeed, Debtor's entire scheme was to keep the Proceeds from the bankruptcy estate outside the purview of this Court. *Id.* Debtor was only able to implement his scheme by intentionally not labeling the Proceeds as "dividend payments," by not dissolving Coastal (even though it had no ongoing business operations), and by clouding ownership of Coastal (which ownership claims by certain defendants were subsequently rejected in the Enhancement Action). Merely because Debtor made the Transfers from Coastal's bank account, rather than transferring the Proceeds to himself first, makes no difference in terms of whether the money transferred constituted estate property. *See In re DSI Renal Holdings, LLC*, 574 B.R. 446, 466–68 (Bankr. D. Del. 2017) ("The creation of an intermediary corporation does not insulate the defendants from liability for fraudulent transfers.").

Defendants' argument suggests that if the Transfers had not been made and those funds remained with Coastal until the Effective Date of the Plan, Debtor's estate would not be entitled to those funds. However, if the Debtor had not transferred the Proceeds out of the estate prior to the Effective Date, there is no doubt that the Liquidating Trustee would have had the authority to immediately take possession of the Proceeds, as sole shareholder and director of Coastal, and distribute them to creditors of Debtor's estate in accordance with the Plan. Indeed, the Liquidating Trustee has taken control of the real properties held by Coastal and ACP, and has sold those properties for the benefit of Debtor's creditors. The result should be no different when Debtor without Court authorization sold the Property and rather than taking the net proceeds from the sale that the Debtor alone was entitled to as the sole shareholder, he used the funds as his personal piggy bank.

Oldfield Creely further argues that the Transfers were made before the Court ruled that the estate owned 100% interest in Coastal, and therefore, at the time of the Transfers, the Proceeds were not property of the estate. However, the Court ruled in the Enhancement Action that the purported

2715071

shares in Coastal that were held by Patty Brower, Wilford Butch Lindley, Anthony Nobles and Richard Babcock were void, meaning that the shares in Coastal never had legal force or effect. *In re Richardson*, 497 B.R. 546, 555 (Bankr. S.D. Ind. 2013) ("'Void' is defined as 'an instrument or transaction [that] is nugatory and ineffectual so that nothing can cure it,' Black's Law Dictionary 1573 (6th ed. 1990); and as that 'of no legal force or effect and so incapable of confirmation or ratification.' Webster's Third New International Dictionary 2562 (1971)."). The effect of ruling that the shares were void, rather than voidable, means that no party other than Debtor ever had an interest in Coastal. Accordingly, at the time of the Transfers, the estate owned 100% interest in Coastal (even though the Court made that determination at a later date).

Oldfield Creely additionally argues that the Trust is not part of the estate and it is not Debtor's property. But the Liquidating Trustee alleges that Oldfield Creely is a subsequent transferee of at least $15,338.80 in Proceeds transferred from Coastal to the Trust. Complaint, ¶ 134. "To plead the subsequent transfer prong, the complaint must allege facts that support the *inference* that the funds at issue originated with the debtor, and contain the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 473 (Bankr. S.D.N.Y. 2015) (internal quotations and citations omitted). "The plaintiff's burden at the pleading stage is not so onerous as to require dollar-for-dollar accounting of the exact funds at issue." *Id*. (internal quotations and citations omitted).

The Complaint meets these standards. As discussed above, the Complaint alleges facts to support the inference that the funds at issue were property of the estate. Further, the Complaint contains the necessary vital statistics. The Complaint alleges that the Debtor transferred the funds from Coastal to the Trust, which in turn transferred the funds to Oldfield Creely. The exact amount of each of the Transfers, the date of each of the Transfers, and the originating bank account are listed on Exhibit 20, which is incorporated by reference into the Complaint. The Liquidating Trustee does not need to allege dollar-for-dollar accounting of the exact funds at issue at this stage. The Complaint sufficiently alleges that the Transfers were made from property of the estate.

### C. The First, Second, Third, Fifth, Sixth and Tenth Claims Are Not Time Barred

Defendants argue that the First Claim (avoidance of post-petition transfers), Second Claim (avoidance of actual fraudulent transfers), Third Claim (avoidance of constructive fraudulent transfers), Fifth Claim (turnover), Sixth Claim (accounting) and Tenth Claim (conversion) should be dismissed because the claims are time barred. When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. *See id.*

Here, the Complaint sufficiently alleges that the statute of limitations on the First, Second, Third, Fifth, Sixth and Tenth Claims were tolled. First, the Complaint alleges that the Liquidating Trustee's standing to bring the claims in this adversary proceeding arises from the authority vested in him under the Plan [Bk. Doc. 233]. Complaint, ¶ 11. Pursuant to the Plan, Plaintiff did not have standing to prosecute any causes of action until the Effective Date of the Plan, which was not until September 15, 2020. *Id.*, at 18:15-26. Indeed, the Plan expressly provided that the Liquidating Trustee would <u>not</u> have standing to bring these claims until September 15, 2020 at the earliest (the Effective Date), and the "Causes of Action," as defined in the Plan, would survive through the Effective Date "for the benefit of the Liquidating Trust and its beneficiaries." Plan, at 19:6-8. Second, the Complaint sufficiently alleges equitable tolling under the adverse domination doctrine to the extent that the statute of limitations could be deemed to have begun running prior to September 15, 2020 while the Debtor, alone, was in control of Coastal.

#### 1. The Statute of Limitations Period Commences when the Liquidating Trustee Had Standing to Bring the Claims

Defendants argue that the Liquidating Trustee was appointed on November 2, 2017, and he immediately had access to information and documents that gave notice of the alleged post-petition transfer. Defendants additionally contend that the Liquidating Trustee cannot provide any extraordinary circumstance that justifies a delay of over four years in filing the Complaint. Contrary

2715071

to Defendants' assertion that the Liquidating Trustee was not diligent in his investigation and prosecution of the claims against Defendants, the Liquidating Trustee did not have Article III standing or authority to pursue the claims until September 2020:

> Pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidating Trustee may maintain and enforce any claims or rights held by the Debtor, the estate or the Liquidating Trust, and may continue to pursue any pending Causes of Action brought by the Debtor. In accordance with Bankruptcy Code section 1123(b)(3) or any corresponding provision of similar non-bankruptcy law, on and after the Effective Date, (a) the Liquidating Trustee shall have standing and be deemed to be the representative of the Debtor and the estate in the Bankruptcy Case and any adversary proceeding in the Bankruptcy Case, under the Plan, and in any judicial proceeding or appeal as to which the Debtor is a party, and (b) the Liquidating Trustee shall retain all Causes of Action of the Debtor and the estate, including, without limitation, avoidance actions, objections to claim, and prosecution of the Causes of Action. The Liquidating Trustee may sue on, settle, or compromise (or decline to do any of the foregoing) any and all Causes of Action.

Plan, at 18:15-26; *see also id*, at 18:6-9 ("the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, settling, collecting or otherwise administering the Causes of Action"); *see also id.*, at 18:12-14 ("the Liquidating Trustee will not have authority over such Causes of Action (including the Estate Enhancement Action) on the Confirmation Date, but will only have such authority if and when the Effective Date occurs").

"Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. 1141(b). Here, the Plan "otherwise provided" for a gap period between the confirmation and the Effective Date during which period the Liquidating Trustee was not vested with and had no standing with respect to any of the estate's causes of action. The Plan, likewise, did not vest any of these rights in the Debtor during the gap period. In other words, between the Plan Confirmation Date and the Effective Date, no plaintiff existed with standing to bring these claims.

As repeatedly reinforced in the Plan, the Liquidating Trustee was not conferred standing to pursue any causes of action at the time the Plan was confirmed:

> Stage two will occur on the Effective Date, at which time all assets of the Debtor's estate shall be transferred to the Liquidating Trust, including without limitation the following: (a) all tangible and

15

2715071

> intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date and thereafter. . . .

Plan, at 17:12-16.

The entirety of Defendants' argument focuses on stage one (the Confirmation Date), and fails even to pay lip service to stage two (the Effective Date), which latter date is critical here. The date of the Plan's confirmation is largely irrelevant to determining the statute of limitations applicable to the Liquidating Trustee's assertion of the fraudulent transfer and related claims given that the Effective Date of the Plan was not until September 15, 2020 [Bk. Doc. 271], and the Liquidating Trustee did not gain standing to bring such claims until that date. Up until that point, the Liquidating Trustee had no authority or standing to pursue any causes of action against Defendants.

Recognizing that there would be some time between the confirmation and effective dates of the Plan, the Plan contemplated that these claims would be tolled until the Effective Date, as follows:

> Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries

*Id.*, at 19:6-8.

This language makes clear that the Causes of Action, defined in the Plan to include "avoidance causes of action under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law" [*id.*, at 4:8-10], were stayed and tolled ("shall survive entry. . . on and after the Effective Date, for the benefit of the Liquidating Trustee and its beneficiaries") until such time as the Liquidating Trustee was vested with standing. *Id.*, at 19:6-8.

Furthermore, the standard rule is that the "limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201, 118 S. Ct. 542, 549, 139 L. Ed. 2d 553 (1997); *see also Rawlings v. Ray*, 312 U.S. 96, 98, 61 S. Ct. 473, 474, 85 L. Ed. 605 (1941) (discussing when there was a complete and present cause of action such that the plaintiff could enforce by suit); *Clark v. Iowa City*, 87 U.S. 583, 589, 22 L. Ed. 427 (1874) ("All statutes of

16

2715071

limitation begin to run when the right of action is complete...."). "Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until *the plaintiff can file suit and obtain relief*." *Ferbar Corp. of California*, 522 U.S. at 201, 118 S. Ct. at 549.

Indeed, the Liquidating Trustee did not have Article III standing to initiate any of the fraudulent transfer claims until September 2020. "Article III standing is a jurisdictional prerequisite." *Maricopa–Stanfield Irrigation and Drainage District v. United States*, 158 F.3d 428, 433 (9th Cir.1998). Although a Liquidating Trustee would normally have such standing, the Plan provided a unique mechanism that only vested such standing in the Liquidating Trustee as of the Effective Date. Prior to that time, standing, if any party had standing, rested with the Debtor who, it is alleged, was secreting the Proceeds away from the bankruptcy estate by design.

Additionally, there is no indication in the statutes that would alter the standard rule. Indeed, Sections 549 and 546 of the Bankruptcy Code may be equitably tolled in proper circumstances. *See In re Olsen*, 36 F.3d 71, 73 (9th Cir. 1994). The same is true for Cal. Civ. Code § 3439.09(a) and Cal. Civ. Proc. Code § 338(c). *See PGA W. Residential Assn., Inc. v. Hulven Internat., Inc.*, 14 Cal. App. 5th 156 (2017), *as modified* (Aug. 23, 2017) (discussing that Cal. Civ. Code § 3439.09(a) is a statute of limitations that may be tolled whereas § 3439.09(c) is a statute of repose that may not be tolled); *Daly v. Pearl Spirits, Inc.*, 438 F. App'x 644, 645 (9th Cir. 2011) (discussing equitable tolling with regard to a conversion claim). The allegations in the Complaint detail that the Trustee's standing to bring the claims in this adversary proceeding arise from the authority confirmed on him in the Plan. Complaint, ¶ 11. Under the Plan, the Trustee did not have a complete and present cause of action until September 15, 2020. The Court need not even analyze the application of equitable tolling to determine whether the Liquidating Trustee's claims are timely.

Moreover, Section 1123(b) of the Bankruptcy Code authorizes postconfirmation pursuit of a debtor's bankruptcy causes of action. *See* 11 U.S.C. § 1123(b)(3)(B) ("a plan may ... provide for ... the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claim or interest"); *Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir.1989) (representative designated in a confirmed plan of

Case: 21-05029    Doc# 37    Filed: 11/01/21    Entered: 11/01/21 14:52:54    Page 25 of 37
2715071

reorganization may assert section 544(b) "as a claim of the estate for purposes of § 1123(b)(3)(B)");

*In re Consolidated Capital Equities Corp.,* 143 B.R. 80, 85 (Bankr. N.D. Tex. 1992) (same). In this

case, the Plan specifically contemplated that, notwithstanding the confirmation date, only after the

Effective Date would the Liquidating Trustee have the authority to prosecute the Causes of Action,

which is allowed under Section 1123(b)(3)(B). *See Duvoisin v. East Tenn. Equity Ltd. (In re*

*Southern Indus. Banking Corp.),* 59 B.R. 638, 642 (Bankr. E.D. Tenn. 1986) ("[The] aim [of section

1123(b)(3)(B)] was to *make possible the formulation and consummation of a plan before completion*

*of the investigation and prosecution of causes of action such as those for previous insider*

*misconduct and mismanagement of the debtor.* Thus, the statute was in furtherance of the purpose of

preserving all assets of the estate while facilitating confirmation of a plan.") (emphasis added). The

Complaint sufficiently alleges that the statute of limitations had not begun to run or was otherwise

tolled, such that the statute of limitations did not commence until the Effective Date of the Plan.

### 2. Alternatively, the Statute of Limitations was Tolled Under the Adverse Domination Doctrine

The Liquidating Trustee's absence of standing during the period between the confirmation of

the Plan and its Effective Date begs the question of who, if anyone, had standing to bring such

claims from the date of the alleged post-petition transfers to the date in which the Liquidating

Trustee was vested with standing. The Plan does not vest the Debtor with the right to bring these

claims between the Confirmation Date and the Effective Date. But, even assuming the Debtor was

vested with such rights, he was the very individual accused of the scheme to fraudulently transfer

assets of the estate, and the doctrine of adverse domination would apply.

In this regard, the Complaint sufficiently alleges that the statute of limitations may be

equitably tolled under the adverse domination doctrine. It is a "well-settled principle of [California]

law[] that the statute of limitations does not commence to run against unlawful acts and expenditures

made by or under the direction of the directors of the corporation while they were in full control of

its affairs and of the expenditure of its funds." *San Leandro Canning Co. v. Perillo*, 211 Cal. 482,

487 (1931). As first stated by the California Supreme Court in :

2715071

> the statute of limitations would not begin to run until after the
> corporation thus defrauded got out of the hands of the confederates,
> and an opportunity were afforded innocent agents, coming to the
> management of the affairs of the town, to look into and ascertain the
> true state of things.

13 Cal. 540, 552 (1859). The adverse domination tolling ends once the wrongdoers are no longer in control of a corporation and its use of funds. *San Leandro Canning*, 211 Cal. at 487. As alleged in the Complaint, Debtor and his wife, Patty Brower, were the only directors of Coastal. Complaint, ¶ 27. As further alleged, without court approval, Debtor purported to control Coastal's operations and use of its funds until the Liquidating Trustee was elected as sole director in September 2020. Complaint, ¶¶ 2, 4, 27, 47, 53, 55, 67–74, 77, 79, 80, 82, 83, 84, 89, 90, 92, 93, 99, 103, 104, 112, 115, 118, 165–175. These allegations are sufficient to show that the statute of limitations was tolled by the adverse domination doctrine until September 15, 2020—assuming that the statute of limitations could be deemed to have started to run before the Effective Date.

Additionally, under the Plan, assets of Debtor's estate, including the Debtor's 100% interest in Coastal's stock and the Causes of Action, were not transferred to the Liquidating Trust until the Effective Date. Accordingly, the Liquidating Trustee had no authority prior to September 15, 2020, to oust Debtor and Patty Brower as directors of Coastal or to take control over Coastal regardless of his knowledge of their wrongdoing. The Liquidating Trustee respectfully submits that the allegations in the Complaint coupled with the plain language of the Plan (not to mention the indisputable fact that the alleged wrongdoer was in control of the Debtor's claims until September 15, 2020), make it clear that the statute of limitations had not run at the time the Liquidating Trustee filed this Complaint. At a minimum, there are factual questions, which questions are appropriately addressed at a later stage in the proceeding. *See Jablon.*, 614 F.2d at 682.

## D. The Second and Third Claims (Fraudulent Transfers) Are Sufficiently Pled

Defendants argue that the Liquidating Trustee has failed to state a claim for fraudulent transfers because the Complaint improperly seeks avoidance of post-petition transfers under Section 544 of the Bankruptcy Code, arguing that section 544 only pertains to pre-petition transfers and thus cannot form the basis of a claim that concerns post-petition activities. Defendants thus contend that

19

2715071

1  Section 549 is the Liquidating Trustee's exclusive remedy. Additionally, Defendants argue that the

2  Complaint does not sufficiently allege that the Transfers were transfers of Debtor's property.

3       However, the Liquidating Trustee has not brought a claim to avoid the fraudulent transfers

4  under Section 544; the Liquidating Trustee has brought state law claims under Cal. Civ. Code

5  §§ 3439.04, 3439.07 and 3439.08 as stated in the Complaint without regard to Section 544.

6  Defendants' reliance and insistence that the fraudulent transfers claims must be brought under

7  Section 544 is misplaced. Under the Plan, the Liquidating Trustee has the power to bring claims on

8  behalf of creditors of Debtor's bankruptcy estate _and_ to bring direct claims held by the bankruptcy

9  estate. The post-petition transfer claims are brought on behalf of creditors of Debtor's bankruptcy

10  estate under section 549. However, the Liquidating Trustee's alternative fraudulent transfer claims

11  are direct claims held by Debtor's bankruptcy estate that arise from the California Civil Code and do

12  not rely on the Transfers being made from Debtor's property. Importantly, pursuant to Rule 8(d)(3),

13  "[a] party may state as many separate claims or defenses as it has, regardless of consistency."

14  Fed.R.Civ.P. 8(d)(3).

15       Pursuant to the Plan, the Liquidating Trustee has the power to prosecute all claims held by

16  Debtor's bankruptcy estate, including causes of action under 544 and 548 of the Bankruptcy Code or

17  under related state statutes and common law. Plan, p. 7. At the time of the Transfers, Debtor's estate

18  was the sole shareholder of Coastal and Debtor was a creditor of Coastal. *See e.g.*, Complaint ¶¶ 2,

19  82. As such, at the time of the Transfers, Debtor's bankruptcy estate held two potential claims for

20  avoidance of the fraudulent Transfers under state law. First, the estate held a claim in its capacity as

21  sole shareholder of Coastal, and second, in Debtor's capacity as creditor of Coastal.

22       Under California law, shareholders of a corporation may bring claims in their individual

23  capacity, "'[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to

24  the corporation, as where the action is based on a contract to which he is a party, or on a right

25  belonging severally to him, or on a fraud affecting him directly, it is an individual action." *Sutter v.*

26  *Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946); *compare PacLink Communications Internat.,*

27  *Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964 (2001) (minority members' fraudulent transfer

28

2715071

claim was derivative where the "injury was essentially a diminution in the value of their membership interest in the [limited liability company] occasioned by the loss of the company's assets").

Here, the bankruptcy estate as sole shareholder of Coastal can allege a personal injury from the fraudulent Transfers to Defendants. At the time of the Transfers, as detailed above, Debtor's bankruptcy estate held a claim for distribution of the Proceeds. Rather than Coastal distributing the Proceeds to Debtor's estate, Coastal transferred approximately over $400,000 of the Proceeds to Defendants. The estate's claim is not based on alleged harm to Coastal as a whole (i.e., section 544), but rather on the particular harm that the estate as shareholder suffered as a result of the Transfers to Defendants, i.e., the loss of over $400,000 combined. Additionally, as alleged in the Complaint at paragraphs 81 and 82, at the time of the Transfers, Debtor was an alleged creditor of Coastal. In connection with the Enhancement Action, Debtor testified at a deposition that he made loans to Coastal in 2011 and 2012 totaling approximately $115,000. Complaint, ¶ 81–82. Thus, the Liquidating Trustee can stand in Debtor's shoes, as creditor of Coastal, and bring a claim to recover the fraudulent transfers that Coastal, the debtor in this instance, made to Defendants.

Contrary to Defendants' assertions, as to the estate's direct claims under California law, the Transfers do not need to have been made from Debtor's property or estate property. As to the direct claims for fraudulent transfers, the Liquidating Trustee is not relying on Section 544 of the Bankruptcy Code to avoid and recover those transfers. Plaintiff is prosecuting direct claims held by the Trustee as representative of Debtor' estate and sole shareholder of Coastal under California law. Further, Defendants have not argued that the Complaint fails to allege the elements of a fraudulent transfer claim. Apparently, they have conceded that the Complaint obviously does.

**E.      The Fifth Claim (Turnover) is Sufficiently Pled**

Defendants argue that property recoverable through use of avoidance powers is not property of the estate until recovered. However, as discussed above, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3). Simply because the Liquidating Trustee has included claims for avoidance of post-petition and fraudulent transfers does not mean that the Liquidating Trustee cannot plead alternatively for turnover of property of the

21

2715071

bankruptcy estate. "Bankruptcy Code § 542(a) grants a bankruptcy trustee the power to recover property of the debtor's estate or such property's value." *Shapiro v. Henson*, 739 F.3d 1198, 1199 (9th Cir. 2014). "With this power, the trustee may seek recovery from entities having 'possession, custody, or control' of the property sought, whether the property was in the entity's possession, custody, or control at the time the motion was filed or at any other point during the pendency of the bankruptcy case." *Id.* Property of the estate is, in turn, defined by Section 541 of the Bankruptcy Code and includes "all legal or equitable interests of the debtor in property as of the commencement of the case"—"wherever located and by whomever held." 11 U.S.C. § 541(a)(1).

As discussed above, the Complaint sufficiently alleges that the Proceeds used to make the Transfers were property of the bankruptcy estate at the time the funds were transferred to Defendants. Defendants are in possession or have been in possession of the Transfers during the course of the bankruptcy case. Moreover, to the extent that section 542 contains a statute of limitations, the statute of limitations was tolled until the Effective Date of the Plan as the Liquidating Trustee did not have authority or standing to bring the claim prior to that date. *Compare In re Lau Cap. Funding, Inc.*, 321 B.R. 287, 302 (Bankr. C.D. Cal. 2005) ("Section 542 has the same two-year statute of limitations as the § 549 avoidance claim.") *with In re Mohsen*, No. 05-50662-ASW, 2014 WL 985442, at *2 (Bankr. N.D. Cal. Mar. 12, 2014) (stating that "there is no statute of limitations for a turnover claim."); *In re Swift*, 496 B.R. 89, 99 (Bankr. E.D.N.Y. 2013) (stating that a turnover action is not subject to a statute of limitations); *In re Reuter*, 499 B.R. 655, 681–82 (Bankr. W.D. Mo. 2013) ("No statute of limitations applies to a declaratory judgment or turnover proceeding."). The Complaint sufficiently alleges a claim for turnover.

### F. The Sixth Claim (Accounting) is Sufficiently Pled

Defendants argue that Plaintiff's claim for accounting should be dismissed because the Plaintiff has no viable or actionable avoidance claims pertaining to the Transfers. Defendants argue that because the Complaint alleged an amount certain, the accounting claim must be dismissed. Defendants cite to *St. James Church of Christ Holiness v. Superior Ct. In & For Los Angeles Cty.*, 135 Cal.App.2d 352, 359 (1995) for this proposition. However, *St. James Church* is a case dealing

2715071

with California law, which is inapposite to the Complaint as the Complaint alleges an accounting under federal law. The Complaint seeks an accounting under section 542 of the Bankruptcy Code, "which specifically authorizes accounting as relief ancillary to a turnover proceeding." *Reuter*, 499 B.R. at 682; *see also In re Whittick*, 547 B.R. 628, 642 (Bankr. D.N.J. 2016) ("When a claim for turnover is adequately pled, an accounting may also be merited."). The Liquidating Trustee respectfully submits that the claim for accounting is sufficiently pled.

### G. The Eighth Claim (Aiding and Abetting) is Sufficiently Pled

Defendant JRG argues that the Eight Claim should be dismissed because: (i) it is barred by Cal. Civ. Code § 1714.10; (ii) it is barred by the California litigation privilege; (iii) the Liquidating Trustee does not have standing to bring the claim; and (iv) it fails to state a cause of action. Each of these arguments is meritless.

Cal. Civ. Code § 1714.10, is a California provision that requires a plaintiff to obtain an order from a court before asserting that an attorney engaged in a conspiracy with his or her client. Specifically, the provision provides:

> (a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.

Cal. Civ. Code § 1714.10.

The phrase "arising from any attempt to contest or compromise a claim" suggests the statute's prefiling requirements apply "to situations in which the alleged conspiracy arose from the attorney's representation of his or her client in a previous or current legal dispute or litigation with the plaintiff." *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 209, fn. 16 (2010). Here, the alleged wrongdoing by JRG was not committed during a previous or current legal dispute or litigation with the Liquidating Trustee, who is the Plaintiff in this action. Thus, Cal. Civ. Code § 1714.10 does not apply to this action.

23

2715071

1    Moreover, "federal courts are to apply state substantive law and federal procedural

2    law." *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Courts have found

3    that Cal. Civ. Code § 1714.10 is procedural in nature. For example, the California Court of Appeals

4    has construed the provision to be a "prefiling procedure to determine whether the proposed

5    conspiracy pleading is legally sufficient." *See Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon

6    & Gladstone,* 107 Cal.App.4th 54, 83 (2003); *see also Pavicich v. Santucci,* 85 Cal.App.4th 382, 394

7    (2000) (describing Section 1714.10 as a "procedural hurdle"). Additionally, several federal courts

8    declined to strike a plaintiff's claims for failing to comply with the statute after finding the provision

9    to be procedural in nature. *See e.g.*, *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1182 (S.D. Cal.

10   2010); *Franklin v. Allstate Corp.,* 2007 U.S. Dist. LEXIS 51332, at *10–*11 (N.D. Cal. 2007).

11   With regard to California's litigation privilege [embodied in Cal. Civ. Code ¶ 47(b)], the

12   litigation bars the use of any *communications* made during or in connection with a judicial

13   proceeding. The California Supreme Court has outlined the parameters of the privilege:

14          The privilege applies to any communication (1) made in judicial or
            quasijudicial proceedings; (2) by litigants or other participants
15          authorized by law; (3) to achieve the objects of the litigation; and (4)
            that have some connection or logical relation to the action.
16
17   *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990); *see also Aryana v. Roossien*, 312 Fed. Appx. 853,

18   854 (9th Cir. Feb. 19, 2009) (unpublished) (applying *Silberg* four-part test to letter that "was a

19   communication made in judicial or quasi-judicial proceedings"). Here, the aiding and abetting claim

20   against JRG (Complaint, ¶¶ 176-179) is not based on communications JRG made during or in

21   connection with Debtor's bankruptcy case. It is based on JRG's failure to take certain actions, such

22   as filing an application to be employed by the estate and disclosing to the Court the terms of its

23   representation of Debtor and other third parties, as well as JRG receiving payment of its fees without

24   Court approval and when those services did not benefit the estate, and representing the Debtor and

25   third parties even though the representation created a conflict of interest. None of these claims are

26   based on JRG communications in the bankruptcy case or Enhancement Action. Thus, the litigation

27   privilege does not bar Plaintiff's claims against JRG.

28

24

2715071

With regard to JRG's argument that the Liquidating Trustee does not have standing to bring a claim for breach of fiduciary duty against the Debtor, the Plan vests the Liquidating Trustee with the power to liquidate all of the estate's assets for the benefit of creditors, which also includes the power to prosecute the claims held by the estate. Contract principles apply to a plan because it is effectively a new contract between the bankrupt entity and the creditors bound by the plan. *See* 11 U.S.C. § 1141(a); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir. 1993); *In re Dow Corning Corp.,* 456 F.3d 668, 676 (6th Cir. 2006). Indeed,

> Under a confirmed plan, the liquidating trustee is bound by the terms of the new contract—the plan—and has the duties thereunder. He is not a trustee in the same sense as a trustee operating in the absence of a plan but solely with reference to the rights and duties of a trustee under the Bankruptcy Code. In many cases a post-confirmation plan trustee is vested with broad powers to operate a business and has much more power than a trustee operating a business in Chapter 11.

*In re Consol. Meridian Funds*, 485 B.R. 604, 611 (Bankr. W.D. Wash. 2013).

Here, the Plan vests the Liquidating Trustee with the power to prosecute claims held by the estate. One of the claims held by the estate is the estate's claim for breach of fiduciary duty against the Debtor. The Plan clearly provides the Liquidating Trustee with standing to prosecute this claim.

With regard to JRG's final argument, that the Eighth Claim fails to state a cause of action, JRG argues the Complaint does not allege that JRG knew that Debtor was breaching his fiduciary duty to the estate. However, this is simply false. The Complaint alleges that JRG "knowingly and intentionally helped, participated in, and provided substantial assistance to Debtor in breaching his fiduciary duties to the Estate by receiving payments for legal services provided on behalf of Debtor, Lindley, P. Brower and the Trust notwithstanding that the services provided to those defendants did not benefit the Estate or Coastal." Complaint, ¶ 178. As alleged in the Complaint, JRG provided legal services to Debtor, Coastal, Lindley, P. Brower and the Trust in connection with the Enhancement Action, even though the representation was an actual, unwaivable conflict of interest. *Id.* at ¶ 128. As bankruptcy attorneys, JRG is well aware of the rules involving representation when there is a conflict of interest. Additionally, as alleged in the Complaint, JRG knew that Coastal was paying the legal fees for the defendants in the Enhancement Action when ownership of Coastal was

25

2715071

in dispute. Complaint, ¶¶ 128-129. The Liquidating Trustee submits that the Complaint alleges the elements of an aiding and abetting cause of action against JRG, and the motion should be denied as to this claim.

### H.     The Ninth Claim (Disgorgement) is Sufficiently Pled

Defendant Oldfield Creely argues that it did not represent Debtor in connection with the bankruptcy case and that it was paid the majority of its fees prior to the Court determining that the estate owned a 100% interest in Coastal. Defendant JRG argues that although the Complaint acknowledges that Debtor was only one of the several parties that it represented, the Complaint seeks to recover all funds Coastal paid to it, whether for services to Coastal, Debtor, or a third party. However, it makes no difference whether Defendants represented Debtor or one of Debtor's corporations or a third party because Defendants were compensated for their services through estate funds. Pursuant to Fed. R. Bankr. P. 2016(a), a person seeking *compensation for service from the estate* must file an application with the Court. *See In re Baker*, 68 B.R. at 365. At all relevant times, the Proceeds were property of the estate. Complaint, ¶ 3. Defendants never filed an application to be employed by the estate and Defendants did not receive Court approval for payment of any of their fees, yet were paid over $400,000 in estate property for their services. Complaint, ¶¶ 132, 136. Thus. the claim for disgorgement is sufficiently pled.

### I.     The Motion Should Be Denied as to Plaintiff's Prayer for Relief

Defendant Oldfield Creely argues that Plaintiff's prayer for relief for punitive and exemplary damages and attorneys' fees and costs must be dismissed because Plaintiff fails to state a short and plain statement of the claim showing that he is entitled to the relief. However, a prayer for relief is a remedy and not a claim. A Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge the Complaint's prayer for punitive damages and attorneys' fees because Rule 12(b)(6) only countenances dismissal for failure to state a *claim. See, e.g., Jordan v. United States*, 2015 WL 5919945, at *2-3 (S.D. Cal. Oct. 8, 2015) ("A prayer for damages constitutes a remedy, not a claim" within the meaning of Rules 8(a)(2) or 12(b)(6). "Thus, [a] prayer for relief does not provide any basis for dismissal under Rule 12."); *Douglas v. Miller*, 864 F.Supp.2d 1205, 1220 (W.D. Okla. 2012) ("With respect to the issue of punitive damages, whether

26

2715071

1  such damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion, as

2  the prayer for relief is not a part of the cause of action."); *Ostrofsky v. Sauer*, 2010 WL 891263, at *2

3  (E.D. Cal. Mar. 8, 2010) ("A complaint is not subject to a motion to dismiss because

4  the prayer seeks relief that is not recoverable as a matter of law.").

5      Additionally, at the motion to dismiss stage, it is premature for the Court to make a

6  determination on what remedies are available to Plaintiff should he succeed on this claims against

7  Oldfield Creely.  *See Huynh v. Northbay Med. Ctr.*, No. 2:17-CV-2039-EFB PS, 2018 WL 4583393,

8  at *4 (E.D. Cal. Sept. 25, 2018) (denying a motion to dismiss two prayers for relief as premature);

9  *see also Friends of Frederick Seig Grove # 94 v. Sonoma Cnty. Water Agency*, 124 F. Supp. 2d

10  1161, 1172 (N.D.Cal.2000) ("While the Court may ultimately agree with the defendants that

11  injunctive relief is inappropriate, it is by no means evident that the Court can reach such a

12  determination on a motion to dismiss.").  Accordingly, the Court should deny the Oldfield Creely's

13  motion as to Plaintiff's prayer for relief.

14      **J.      The Complaint is Not a Shotgun Pleading**

15      JRG argues that the Complaint is a shotgun pleading and that it fails to comport with Rule

16  8's unambiguous requirement that Plaintiff provide "a short and plain statement of the claim

17  showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8.  However, the Complaint is by

18  no measure a shotgun pleading.  "Shotgun pleadings are those that incorporate every antecedent

19  allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First*

20  *Horizon Pharmaceutical, Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).  In the Complaint, each

21  claim makes specific allegations against separate defendants.

22      Although the Complaint incorporates the background by reference (which background

23  provides substantial detail regarding the Debtor's scheme and intent in making the Transfers), for

24  each claim the Liquidating Trustee lays out the underlying factual allegations on which separate

25  claims are based.  *See Tatung Co., Ltd. v. Hsu*, No. SACV131743DOCANX, 2015 WL 11072178, at

26  *16 (C.D. Cal. Apr. 23, 2015) (finding that the complaint was not a shotgun pleading merely

27  because the background was incorporated by reference into each claim when the plaintiff laid out the

28  underlying factual allegations on which the claims were based).

2715071

After a holistic review of the Complaint (as opposed to looking at separate allegations in a vacuum), the Liquidating Trustee submits that he has met the relevant standard of pleading. Simply put, the allegations in the Complaint are stated with sufficient particularity so that Defendants may reasonably be expected to prepare an answer. *See In re King's Place, Inc.*, 6 B.R. 305, 308 (Bankr. E.D. Pa. 1980) (finding that a complaint is adequate when alleged with "sufficient particularity that defendant may reasonably be expected to be able to prepare an answer on the basis of what has been alleged . . . . Specific details are left to discovery under the rules."). The Liquidating Trustee respectfully submits that JRG request that the Complaint be dismissed on this ground should be denied.

## IV. LEAVE TO AMEND SHOULD BE PERMITTED IF THE COURT GRANTS THE MOTION TO DISMISS ON ANY GROUNDS

In considering dismissal for failure to state a claim, a "court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (the five *Foman* factors are: "[1] bad faith, [2] undue delay, [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the plaintiff has previously amended the complaint.").

As discussed above, the Motions should be denied because Defendants have failed to establish that dismissal for failure to state a claim is warranted, let alone without leave to amend. To the extent that the Court finds any merit in the motions to dismiss, the Liquidating Trustee requests leave to amend to address any deficiencies or infirmities that the Court may identify. *E.g.*, *Aguayo*, 653 F.3d at 917 ("A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.").

/ / /

/ / /

/ / /

28

2715071

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the motions to dismiss in their entirety, or alternatively, that he be granted leave to amend the Complaint to remedy any defect therein which the Court may identify.

DATED:  November 1, 2021                    BRUTZKUS GUBNER

                                            By:_____
                                               Jason B. Komorsky
                                               Jessica L. Bagdanov
                                               Jessica S. Wellington
                                            Attorneys for Michael G. Kasolas, Liquidating Trustee
                                            For the Robert Brower, Sr. Liquidating Trust

2715071