| | |
|---|---|
| 1 | **KAUFMAN DOLOWICH & VOLUCK LLP**<br>LOUIS H. CASTORIA (SBN 95768) |
| 2 | ROGELIO SERRANO (SBN 312004)<br>425 California Street, Suite 2100 |
| 3 | San Francisco, CA 94104<br>Telephone:     (415) 926-7600 |
| 4 | Facsimile:      (415) 926-7601<br>E-Mails: lcastoria@kdvlaw.com; rserrano@kdvlaw.com |
| 5 | Attorneys for Defendant<br>OLDFIELD CREELY, LLP |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>**ROBERT BROWER, SR.,**<br><br>Debtor.<br>——————————————————<br>**MICHAEL G. KASOLAS**, solely in his capacity as the Liquidating Trustee for the Robert Brower Sr. Liquidating Trust,<br><br>Plaintiff,<br><br>v.<br><br>**PATRICIA BROWER,** solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; **GREAT AMERICAN WINERIES, INC.,** a California corporation; **DEERLEAF HOLDINGS, INC.,** a Delaware corporation; **ROBERT BROWER, JR.,** an individual; **MED-VENTURE INVESTMENTS, LLC,** a California limited liability company; **AURORA CAPITAL ADVISORS,** a California general partnership; **RICHARD BABCOCK,** an individual and general partner of Aurora Capital Advisors; **ANTHONY NOBLES,** an individual and general partner of Aurora Capital Advisors; **COASTAL WINE SERVICES, LLC,** a California limited liability company; **WILFORD BUTCH, LINDLEY,** an individual; **POHANKA OF | Case No.: 15-bk-50801-MEH<br><br>Chapter 11<br><br>Adv. No.: 21-ap-05029-MEH<br><br>**DEFENDANT OLDFIELD CREELY, LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>**Hearing Date**:<br>Date: November 15, 2021<br>Time: 11:00 a.m.<br>Place: Courtroom 11<br>United States Courthouse<br>280 South First Street<br>San Jose, California 95113<br><br>[To be Held Telephonically or By Video] |

-1-
REPLY BRIEF I.S.O. OLDFIELD CREELY, LLP'S 12(b)(6)

Case: 21-05029    Doc# 39    Filed: 11/08/21    Entered: 11/08/21 11:58:20    Page 1 of 8

**SALISBURY, INC.**, a Maryland corporation;
**JAURIGUE LAW GROUP,** a California professional corporation *dba* JLG Lawyers;
**JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILLES, LLP,** a limited liability partnership; and **OLDFIELD CREELY, LLP,** a limited liability partnership,

Defendants.

**TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY JUDGE, PLAINTIFF, ALL DEFENDANTS AND ALL THEIR ATTORNEYS OF RECORD:**

Defendant Oldfield Creely, LLP ("Oldfield Creely") hereby brings this reply ("Reply") in Support of Defendants' Motion to Dismiss ("Oldfield Motion") and in response to Plaintiff's opposition (the "Opposition") to the Oldfield Motion.

I. **CALIFORNIA STATE LAW DEFINES THE NATURE OF PROPERTY RIGHTS**

It is "an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and define the rights that are acquired by purchasing their shares." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 9l; *See also*, *Butner v. U.S.*, 440 U.S. 48, 55 ("Property interest are created and defined by state law.")

Plaintiff has not disputed that under California law, "**[s]hareholders own neither the property nor the earnings of the corporation.** Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors. [Shareholder] had no ownership interest in the profits of [the corporation] and cannot have been deprived of them." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (Cal. Ct. App. 2d Dist. 1999) (citing *Miller v. McColgan*, 17 Cal.2d 432, 436 (1941).

Instead, Plaintiff contends Coastal Cypress Corporation's ("Coastal") proceeds from the sale of its real property were the property of Robert Brower, Sr. (the "Debtor") as the sole shareholder as determined in September 2020 and therefore property of the Bankruptcy Estate (the "Estate"). In support of this this contention, Plaintiff cites cases from other jurisdictions and an unpublished

-2-
REPLY BRIEF I.S.O. OLDFIELD CREELY, LLP'S 12(b)(6)
Case: 21-05029    Doc# 39    Filed: 11/08/21    Entered: 11/08/21 11:58:20    Page 2 of 8

opinion from the 9th Circuit. There is no need to resort to other jurisdictions' decisions. California law is clear and controlling.

If the unpublished opinion, *In re Milden*, 111 F.3d 138 (9th Cir. 1997), were applicable, it would support the pending motion. There, the court held that at the commencement of the case "**[t]he stock ownership interest** in a corporation wholly owned by the debtor becomes property of the estate…." (emphasis added). Under California law, stock ownership interest does <u>not</u> extend to the property or earnings of a corporation. Another unpublished 9th Circuit opinion, *Atkin, In re*, 979 F.2d 854 (9th Cir. 1992), the court held that "…the corporate checking account is not an asset of Debtors' bankruptcy estate, and Debtors have no interest in those funds…[t]he transfer of corporate funds was not a transfer of estate assets."

In *Atkin*, *In re*, the two debtors were the sole shareholders, officers and directors of the corporation and the trustee sought recovery of payments made by the corporation. *Id.* The trustee argued that the debtors as owners and officers had absolute control over payments by the corporation and therefore it was property of the debtors. *Id.* The court correctly acknowledged that "[t]his reasoning ignores the separate legal existence of corporations." *Id.*

Plaintiff also relies on cases from other jurisdictions to support its conclusory assertion that Coastal's corporate assets were property of the Debtor. Those cases relied on other states' property law for their findings and the Opposition does not provide a single case determined by California state law. As noted in *Atkin, In re*, corporate property does not by default become property of the estate merely because that debtor is the sole shareholder and has control of the corporation. Accordingly, Plaintiff's interest is limited to the stock the Debtor owned in Coastal.

## II. THE CLAIMS AGAINST OLDFIELD CREELY ARE TIME-BARRED

Plaintiff contends he lacked standing to sue due to the Plan's artificial restriction on his powers as a trustee and also contends that the Plan tolled the statute of limitation until the Effective Date of the Plan in September 2020. *See* Opposition 16:4-22. Neither the Complaint nor the Plan states that any statute of limitations was tolled. A Chapter 11 plan is a "contract" wherein general rules of contract interpretation apply, and "[t]he law of the state in which the plan was confirmed

governs its interpretation." *See Dolven v. Bartleson (In re Bartleson)*, 253 B.R. 75, 84 (9th Cir. BAP 2000). "Under California law, a contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636. The intention of the parties is to be ascertained from the language of the contract; the language is to govern the contract's interpretation." *Id.* An agreement that seeks to toll a statute of limitation must be unambiguous and expressly stated therein. *See Abramson v. Brownstein,* 897 F.2d 389, 393 (9th Cir. 1990). "Any uncertainty is construed against the drafter." *In re Ankeny*, 184 B.R. 64, 70 (B.A.P. 9th Cir. 1995); *See also*, Cal. Civ. Code § 1654. There was no express tolling agreement, and the law will not imply one.

Plaintiff misplaces reliance on the following phrase from the Plan: "Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries." The phrase simply states the Liquidating Trustee's artificial lack of authority to pursue all causes of actions will be lifted on or after the Effective Date. The Plan did not state that the statute of limitations would be tolled during that interim period. The Plan did not contemplate that the Effective Date would occur after the Statute of Limitations had run.

Moreover, Plaintiff fails to mention any diligent effort to seek amendment of the Plan, to either expressly toll the statute of limitations, or to accelerate the trustee's authority to pursue claims. In other words, Plaintiff has had since the Confirmation Date a "complete and present cause of action" but, chose not to exercise it or ask permission to do so. *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 195 (1997) ("*Bay Area Laundry"*).

In *Bay Area Laundry*, the Court held that the statute of limitations ran when an employer missed a scheduled payment. *Id.* In our case, the statute of limitation started when the payments were made to Oldfield Creely. The Plan merely postponed Plaintiff's ability to pursue the causes of action until the Effective Date, without tolling the statute of limitations. Plaintiff also had Article III standing on the Confirmation Date, November 6, 2017. The Plan artificially restricted his ability to pursue the causes of actions that existed. The Plan cannot create a cause of action that did not exist

nor grant standing where it does not exist already. In the interim period between the Confirmation Date and Effective Date, Plaintiff reminded idle allowing the statute of limitation to run instead of seeking an amendment to the Plan. Therefore, Plaintiff's claims are time-barred.

### a. **No Equitable Tolling under the Adverse Domination Doctrine**

"Equitable tolling is 'applied in situations where, despite all due diligence, the party requesting equitable tolling is unable to obtain vital information bearing on the existence of the claim.'" *Mejia-Hernandez v. Holder*, 633 F.3d 818, 824 (9th Cir. 2011) (internal citation omitted); *See also, Credit Suisse Sec. (USA) LLC v. Simmonds,* 566 U.S. 221, 227, (2012) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.") (internal quotation omitted). Moreover, tolling pursuant to adverse domination is unavailable where discovery of the alleged bad acts is possible, notwithstanding complete control by wrongdoers. *See Cal. Union Ins. Co. v. Am. Diversified Sav. Bank,* 948 F.2d 556, 565-66 (9th Cir. 1991).

Plaintiff's judicial admission that the Debtor never disputed that he had at least a 24% interest in Coastal is telling. *See* Comp. ¶ 44. A trustee "[o]nce appointed act[s] as representative of the estate pursuant to 11 U.S.C. 323(a), with the power and duty to manage all of the assets of the estate, including stock, books and records …." *In re Milden*, 111 F.3d 138.

Once Plaintiff stepped into the shoes of the Debtor could have filed a derivative action on behalf of Coastal or his own action as a shareholder. *E.g., Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946) ("a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for same wrong."); *compare*, *PacLink Commc'ns Int'l, Inc. v. Superior Ct.*, 90 Cal.App. 4th 958, 964 (2001) (minority members' fraudulent transfer claim was derivative where the "injury was essentially a diminution in the value of their membership interest in the [Limited Liability Company] occasioned by the loss of the company's assets.").

At the November 2, 2017 hearing in the underlying bankruptcy action (Case No. 15-50801-MEH), the Court stated the following:

> "[Coastal Cypress] owned real property in the Carmel/Monterey area. The funds obtained from the sale of that property pre-bankruptcy were approximately seven and a half million. **There is some indication that there is a declining value of the money that is being held by Coastal Cypress…But there's no explanation that's been provided in any of these proceedings as to why or how such funds are being depleted.**"
> (emphasis added)

*See*, Adv. Dkt. No. 27, Corrected Req. for Judicial Notice in Support of Motion to Dismiss Complaint Pursuant to Rule 12(b), Ex. A, 33:5-14.

Despite this information, Plaintiff took no steps to promptly investigate the reason for the declining value of the money held by Coastal. Plaintiff cannot justify why he never attempted to modify the Plan to preserve the estate and promptly pursue causes of action.

### b. **11 USC § 542 Does Have a Statute of Limitation that Bars Recovery**

Plaintiff contends that section 542 has no applicable statute of limitations, but "[s]everal policy reasons support the confinement based on post-petition transfers to section 549, rather than section 542…if both 542 and 549 were available to avoid post-petition transfers, the statute of limitations contained within § 549(d) would be rendered meaningless, since a trustee who is time-barred by § 549(d) could merely invoke § 542." *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 275 B.R. 737, 741 (D. Md. 2001).

If the Court finds that section 542 does not have a statute of limitation, the Court should not reward Plaintiff's lack diligence by allowing him to pursue a claim that would have been otherwise time-barred. Consequently, Plaintiff's causes of action for turnover of property and accounting pursuant to Section 542 must be dismissed against Oldfield Creely.

### III. **PLAINTIFF FAILS TO ALLEGE FACTS THAT PERMIT A POST-PETITON AVOIDANCE CAUSE OF ACTION UNDER STATE LAW**

Plaintiff contends that he has brought state law claims under California Civil Code §§ 34393.04, 3439.07, and 3439.08, independently of Section 544.

The Opposition outlines the alleged grounds permitting Plaintiff to bring the state law claims, but, notably, there are no citations to the Complaint. Plaintiff's Complaint does not allege the

underlying basis that provide him authority to pursue the state law claims independently against Oldfield Creely.

The Oldfield Motion notes that Plaintiff "…does not make any specific allegations to support a finding that the legal fee payments to Oldfield Creely were made with the intent to hinder, delay, or defraud any creditor." *See* Motion 12:17-18. The Opposition fails to cite the allegations in the Complaint that support those payments to Oldfield Creely were constructively or actually fraudulent.

Thus, the Complaint's supposed state law avoidance causes of action against Oldfield Creely must be dismissed.

## IV. OLDFIELD CREELY WAS NOT REQUIRED TO FILE AN APPLICATION FOR COMPENSENTATION

The Opposition cites no case law or authority that requires attorneys who do not represent a debtor to file applications for approval of their fees with the bankruptcy court. Oldfield Creely has only represented Chateau Julien in the State Action, and Coastal has never been a party in a bankruptcy proceeding. Oldfield Creely also contends that the Proceeds were not part of the Estate.

Even if the Proceeds were part of the Estate, Plaintiff seeks to apply a double standard: seeking relief from the Court for his alleged lack of knowledge until September 2020 but holding Oldfield Creely accountable. For these reasons, the disgorgement cause of action must be dismissed.

## V. A MOTION TO DISMISS IS THE PROPER PROCEDURAL MECHANISM TO CHALLENGE A PRAYER FOR DAMAGES

### a. Dismissal of Prayer for Punitive Damages

In *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 974–75 (9th Cir. 2010), the Ninth Circuit held that "the proper procedural mechanism to challenge a prayer for damages that are unavailable as a matter of law is a Rule 12(b)(6) motion to dismiss, not a Rule 12(f) motion to strike." *Reinhardt v. Gemini Motor Transp.,* 879 F. Supp. 2d 1138, 1147 (E.D. Cal. 2012) (citing *Whittlestone*, 618 F.3d at 974-75). The *Whittlestone* court reasoned that the "12(f) motion was really an attempt to have certain portions of Whittlestone's complaint dismissed or to obtain

1  summary judgment against Whittlestone as to those portions of the suit-actions better suited for a
2  Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Whittlestone,* F.3d at 974.

3  As matter of law Plaintiff is not entitled to punitive damages. Oldfield Creely seeks dismissal of the punitive damages because the Complaint fails to specify the grounds that allow the claim or prayer for punitive damages. Notably, the Opposition does not cite any allegations in the Complaint that support the prayer for punitive damages against Oldfield Creely. Without any factual allegations to support the prayer for punitive damages against Oldfield Creely, the Court must dismiss the prayer as a matter of law.

### b. Dismissal of Attorney Fees & Costs

Plaintiff does not provide any authority that allows him to circumvent the American Rule, that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). As such, the prayer for attorney fees and costs must be dismissed from the Complaint as a matter of law.

### VI. CONCLUSION

It is undisputed that Oldfield Creely represented a party other than the Debtor, and properly accepted payment for its legal fees and costs incurred.

For the reasons stated here and in the Oldfield Motion, Oldfield Creely respectfully requests that its Motion be granted in its entirety, and that Plaintiff's claims be dismissed without leave to amend.

Date: November 8, 2021                                    Respectfully Submitted,

By _____
Louis H. Castoria
Rogelio Serrano
Attorney for Defendant,
Oldfield Creely, LLP