1   **KAUFMAN DOLOWICH & VOLUCK , LLP**
    LOUIS H. CASTORIA (SBN 95768)
2   ROGELIO SERRANO (SBN 312004)
    425 California Street, Suite 2100
3   San Francisco, CA 94104
    Telephone:    (415) 926-7600
4   Facsimile:    (415) 926-7601
    E-Mails: lcastoria@kdvlaw.com; rserrano@kdvlaw.com
5   Attorneys for Defendant
    OLDFIELD CREELY, LLP
6

7                      UNITED STATES BANKRUPTCY COURT

8          NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

9

10  | In re | Case No.: 15-bk-50801-MEH |

11  **ROBERT BROWER, SR.,**                     Chapter 11

12              Debtor.                          Adv. No.: 21-ap-05029-MEH

13                                               **DEFENDANT OLDFIELD CREELY,
                                                 LLP'S CORRECTED MEMORANDUM OF
14  MICHAEL G. KASOLAS**, solely in his          **POINTS IN SUPPORT OF MOTION TO
    capacity as the Liquidating Trustee for the  DISMISS PLAINTIFF'S FIRST AMENDED
15  Robert Brower Sr. Liquidating Trust,         COMPLAINT**

16              Plaintiff,                        [Motion and Notice of Motion Concurrently
                                                 Filed]
17  v.
                                                 **Hearing Date**:
18  **PATRICIA BROWER,** solely as trustee of    Date: February 7, 2022
    the BROWER TRUST (2015), dated June 30,      Time: 11:00 a.m.
19  2015,et al.                                  Place: Courtroom 11
                                                 United States Courthouse
20              Defendants.                       280 South First Street
                                                 San Jose, California 95113
21
                                                 [May attend the hearing in person or by
22                                               Zoom]

23

24

25

26

27

28

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED……………………………..……………………….1

MEMORANDUM OF POINTS AND AUTHORITIES……………….…………………….1

I. INTRODUCTION………………………………………………………..………..1

II. BACKGROUND: THE UNDERLYING STATE ACTION……………………..……2

III. LEGAL STANDARD FOR MOTION TO DISMISS…...…………………….……………...3

IV. ARGUMENT……………………………………………………………..……...4

    A. The Funds Are Not Property of the Estate……………………………….4
        i. Lack of Reasonable Notice…………………………………………5

    B. The First Claim for Relief Fails to State a Claim for Avoidance of Post-Petition Transfers Pursuant to 11 U.S.C. § 549…………………………………...6
        i. Alter Ego Theory Does Not Transform Coastal's Property into Estate Property…………………………………………………………....6

    C. The Second and Third Claims for Relief Fail to State a Claim for Avoidance of a Fraudulent Transfer Pursuant to California Code of Civil Code Section 3439.01 *et seq.* …………………………………………………………………… 12
        i. Plaintiff Lacks Standing to Pursue the State Law Claims……..…….……... 13
        ii. Plaintiff Fails to State Factual Allegations Permitting A Post-Petition Avoidance Under State Law……………………………………14
        iii. Plaintiff's State Law Claims Are Barred by the Doctrine of Unclean Hands.15

    D. The Fourth Claim for Relief Fails to State a Claim for Recovery and Preservation of Transfers for the Benefit of the Estate Pursuant to Bankruptcy Code Sections 550 and 551……………………………………………………………………….……… 15

    E. The Fifth Claim for Relief Fails to State a Claim for Turnover of Estate Property Pursuant to Bankruptcy Code Section 542 and is Time Barred …………………..16

    F. The Sixth Claim for Relief Fails to State a Claim for Accounting of Property of the Estate Pursuant to Bankruptcy Code Section 542……………………………16

    G. The Ninth Claim for Relief Fails to State a Claim for Disgorgement ………………16
        i. Oldfield Creely Did Not Represent Debtor……………………………16
        ii. The Payments Were Not Property of the Estate……………………......18
        iii. Lack of Reasonable Notice……………………………………..18

    H. The Tenth Claim for Relief Fails to State a Claim for Conversion …………….....18

Case: 21-05029   Doc# 74   Filed: 01/06/22   Entered: 01/06/22 17:07:09   Page 2 of 27

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

I.   Plaintiff's Prayer for Relief for Attorneys' Fees and Costs Must be Dismissed for
     Failure to State Claim Permitting Such Relief ……………………………………19

V.  CONCLUSION…………………………………………………………………………19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES** **Page**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*
 421 U.S. 240 (2009)……………………………………………………………………19

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009)……………………………………………………..……....4

*Ashe v. Swenson*
 397 U.S. 436 (1970)……...…………………………………….……......4

*Balistreri v. Pacifica Police Dep't*
 901 F.2d 696 (9th Cir. 1988)…………………………………….……...3

*Bank of Marin v. England*
 385 U.S. 99 (1966)……………………………………………………..5,12

*Bell Atl. Corp. v. Twombly*
 550 U.S. 544 (2007)…………………………………………………3,4

*Butner v. United States*
 440 U.S. 48 (1979)…………………………………………………....9

*Communist Party v. 522 Valencia, Inc.*
 35 Cal.App. 4th 980 (1995)………………………………………...10, 11

*Fleischmann Distilling Corp. v. Maier Brewing Co.*
 386 U.S. 714 (1967)……………………………………………………19

*Galdjie v. Darwish*
 113 Cal.App.4th 1331 (2003)…………………………………………...11

*In re Brown*
 371 B.R. 486 (Bankr. N.D. Okla. 2007)……………………………………16

*In re Carey*
 446 B.R. 384 (B.A.P. 9th Cir. 2011)…………………………………...19

*In re Farmers Markets, Inc*
 792 F.2d 1400 (9th Cir. 1986)……...………………………………..................9

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*In re Federal Roofing Co., Inc.*
  205 B.R. 638 (Bankr. N.D. Ala. 1996)………………………………………………17

*In re Reed*
  940 F.2d 1317 (9th Cir. 1991)…………………………………………………………9

*In re United Energy Corp.*
  944 F.2d 589 (9th Cir. 1991) …..………………………………………………………15

*In re Walters*
  163 B.R. 575 (Bankr. C.D. Cal. 1994)………………………………………………15

*Jones v. H.F. Ahmanson & Co.*
  1 Cal.3d 93 (1969) …..……………………………………………………………..13

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001)…………………………………………………………4

*Lee v. Hanley*
  61 Cal.4th 1225 (2015)………………………………………………………………18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008)………………………………………………………..4

*Matter of Forester*
  529 F.2d 310 (9th Cir. 1976) ………………………………………………………10

*Miller v. McColgan*
  17 Cal.2d 432 (1941)………………………………………………………………...10

*Montana v. United States*
  440 U.S. 147 (1979)...………………………………………………………………....4

*Nelson v. Anderson*
  72 Cal. App. 4th 111 (1999) …………………………...……………..……………10, 11

*Northbay Wellness Grp., Inc. v. Beyries*
  789 F.3d 956 (9th Cir. 2015)………………………………...…………………..………15

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*
  133 Cal.App.4th 658 (2005) ……………………….……………...............................12, 15

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT

*Porter v. Jones*
    319 F.3d 483 (9th Cir. 2003)……………………….........................3

*Portico Management Group, LLC v. Harrison*
    202 Cal. App.4th 464 (2011) ……………………….....................11

*Rajala v. Gardner*
    709 F.3d 1031 (10th Cir. 2013)………………………………………...16

*Schuster v. Garder*
    127 Cal.App.4th 305 (2005)……………………………………13, 14

*Shaoxing Cty. Huayue Imp. & Exp. v. Bhaumik*
    191 Cal.App.4th 1189 (2011)………………………………………...5

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001)…………………………………....4

*Stodd v. Goldberger*
    73 Cal. App.3d 827 (Ct. App. 1977) ……...........................10

*Suhl v. Bumb*
    348 F.2d 869 (9th Cir. 1965) ……...........................10

*Sutter v. Gen. Petroleum Corp.*
    28 Cal. 2d 525 (1946) ……...........................13

*Roman Catholic Archbishop of S.F. v. Superior Court*
    15 Cal.App.3d 405 (1971) ……...........................10

*United States v. Cejas*
    817 F.2d 595 (9th Cir. 1987)……….....................4

*United States v. Schimmels* (*In re Schimmels*)
    127 F.3d 875 (9th Cir.1997)……….......................4

*United States v. Stonehill*
    83F.3d 1156 (9th Cir. 1996) …………….....................14

*United States v. ITT Rayonier, Inc.*
    627 F.2d 996 (9th Cir.1980)……….....................5

Case: 21-05029   Doc# 74   Filed: 01/06/22   Entered: 01/06/22 17:07:09   Page 6 of 27

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT

*Vega v. Jones, Day, Reavis & Pogue*

    121 Cal.App.4th 282 (2004) ……………….…..............……………………………13

*Wady v. Provident Life & Accident Ins. Co. of Am.*

    216 F. Supp. 2d 1060 (C.D. Cal. 2002)…….........……………………………………10

*Wyle v. R.J. Reynolds Indus., Inc.*

    709 F.2d 585 (9th Cir. 1983)..…...............……………………………………………12

**STATUTES/RULES**

United States Code, Title 11

    §541(a)(6) ……………………………………………………………….........6, 12

    §541(a)(7) …………………………………………………………………………6

    § 542……………………………………………………………...……………2, 16

    § 549……………………………………………………………………….2,6, 16

    § 549(a)……………………………………….....……………………………6

    § 550 …………………………………………………………………...…2, 15

    §551………………………………………………………………….............2, 16

Federal Rules of Civil Procedure

    Rule 8(a)…………………………………………………………….........19

    Rule 8(a)(2) ……………………………………………………………...........3

    Rule 12(b)(6) ………………………………………………………………3

    Rule 15(a) ………………………………………………………………4

Federal Rule of Bankruptcy Procedure

    Rule 2016 ………………………………………………………...…17, 18

    Rule 2016(a) …………………………………………………………18

California's Civil Code Sections

    § 3439.01, *et seq.*…………………………………………………...12

    § 3439.04………………………………………………………………12

    § 3439.04(a)(1) ………………………………….……………………2, 12

    § 3439.04(a)(2) …………………………….……………………………2

Case: 21-05029   Doc# 74   Filed: 01/06/22   Entered: 01/06/22 17:07:09   Page 7 of 27

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

§3439.07……………………………………………………………….......2

§3439.08……………………………..………………………………..2

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**STATEMENT OF ISSUES TO BE DECIDED**

1. Has Plaintiff failed to state any claim against Oldfield Creely, LLP upon which relief can be granted, given that the law firm did not represent any party in the underlying case that filed for bankruptcy, and did not receive any payment for its fees and costs from property of the Bankruptcy Estate?

2. Is Plaintiff entitled to an award of attorneys' fees and costs as against Oldfield Creely, LLP?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Michael G. Kasolas as the Liquidating Trustee (the "Liquidating Trustee" or "Plaintiff") for the Robert Brower, Sr. Liquidating Trust seeks to unwind transfers made to pay legal fees to the law firm of Oldfield Creely, LLP ("Oldfield Creely") incorrectly claiming that the payments were unauthorized post-petition transfers.

On July 22, 2021, Plaintiff filed the original complaint. [Doc. 1][1]. Thereafter, three motions to dismiss were filed including Oldfield Creely's motion. [Doc. 13]. On November 22, 2021, the Court entered an order dismissing the claims against Oldfield Creely finding that Plaintiff failed to establish that funds used to pay Oldfield Creely were assets of Debtor Robert Brower, Sr.'s estate. *See*, Order Granting Motion to Dismiss [Doc. 42]. The Court also found that Plaintiff failed to allege the grounds that authorizes him to pursue avoidance causes of action under California's state law. (*Id.*) The Court granted Plaintiff leave to file an amended complaint no later than December 23, 2021. (*Id.*)

On December 23, 2021, Plaintiff filed the First Amended Complaint ("FAC"). [Doc. 58]. Plaintiff re-alleges the same ten (10) claims for relief against the fourteen (14) defendants in the FAC. Plaintiff alleges only the following claims for relief against Oldfield Creely: 1) Avoidance of

---

[1] Numbered Documents refer to the Court's Docket.

Post-Petition Transfers pursuant to 11 U.S.C. § 549; 2) Avoidance of Actual Fraudulent Transfers pursuant to Cal. Civil Code §§ 3439.04(a)(1), 3439.07, 3439.08; 3) Avoidance of Constructive Fraudulent Transfers pursuant to Cal. Civil Code §§ 3439.04(a)(2), 3439.07, 3439.08; 4) Recovery of Avoided Transfers for the Benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551; 5); Turnover of Estate Property pursuant to 11 U.S.C. § 542; 6); Accounting of Property of the Estate pursuant to 11 U.S.C. § 542; 7); Disgorgement pursuant to11 U.S.C. § 330; and 8) Conversion. The FAC also seeks attorneys' fees and costs.

Oldfield Creely having been dismissed with leave to amend, now seeks to be dismissed from Plaintiff's FAC, with prejudice, for the following reasons: 1) the legal fees were received by it were not property of Robert Brower, Sr. ("Debtor") nor property of the bankruptcy estate (the "Estate"); and 2) Oldfield Creely has not represented Debtor or the Estate in any bankruptcy proceeding.

Oldfield Creely further contests Plaintiff's prayer for attorneys' fees and costs as there is no basis in law or fact from these claims against Oldfield Creely.

For these reasons, Plaintiff's claims against Oldfield Creely must be dismissed with prejudice without leave to amend.

## II.     BACKGROUND: THE UNDERLYING STATE ACTION

This adversary proceeding arises out of a case entitled, *In re Robert Brower, Sr.*, Case No. 15-50801 MEH, currently pending in the United States Bankruptcy Court, Northern District of California, San Jose Division. *See* Plaintiff's First Amended Complaint herein ("FAC") ¶ 10. On November 6, 2017, this Court provided the Liquidating Trustee the power to prosecute claims held by the Debtor's bankruptcy estate. *Id.* ¶ 12.

Plaintiff seeks to avoid post-petitions transfers related to sale proceeds (the "Proceeds") from Coastal Cypress Corporation's ("Coastal") 2015 sale of real property located at 8890 and 8940 Carmel Valley Road, Carmel, California (the "Wine Estate property"). *Id.* ¶¶2-3, 71. The FAC does not allege that Coastal has ever been a debtor in any bankruptcy proceeding.

On September 26, 2014, MUFG Union Bank, N.A. (the "Bank") filed a complaint against Chateau Julien, Inc. and Robert Brower, Sr. ("Debtor") in the Superior Court of the State of

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

California, County of Monterey, Case No. M129403 (the "State Court Action"). *Id.* ¶ 45. The Bank sought recovery under a loan that was made to Chateau Julien as the borrower and guaranteed by Debtor. *Id.* ¶¶42-44. Oldfield Creely only represented Chateau Julien in the State Court Action. *Id.* ¶ 27. The FAC does not allege that Chateau Julien has ever been a debtor in any bankruptcy proceeding.

In January 2015, the state court entered a Temporary Protective Order and Right to Attach Order against Debtor. *Id.* ¶ 46. The Bank obtained a Writ of Attachment against Debtor, who filed a voluntary Chapter 11 petition commencing the Bankruptcy case. *Id.* ¶ 47. Debtor filing his Chapter 11 petition stayed litigation in the State Court Action against him based on the guaranty but, it did not stay the litigation against Chateau Julien. *Id.* ¶ 65. On November 17, 2016, the State Court entered a judgment after trial in favor of the Bank and against Chateau Julien. *Id.*

In this adversary action, Plaintiff seeks to avoid payments for attorneys' fees and costs made to Oldfield Creely for its representation of Chateau Julien that occurred on or before January 4, 2017 in the amount of $200,357.59, and a fee payment of $2,718.85 that occurred on or about July 1, 2020. *Id.*, Ex. 20. Plaintiff alleges that $187,737.64 in payments were made and transferred directly from Coastal and $15,338.80 from Coastal through the Patricia Brower's Separate Property Trust (the "Trust") to Oldfield Creely. *Id.* ¶ 146. Defendant Patricia Brower ("P.Brower") is the trustee of the Trust. *Id.* ¶ 14. The Complaint does not allege that the Trust has ever been a debtor in any bankruptcy proceeding.

### III.  LEGAL STANDARD FOR MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts plead to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,699 (9th Cir. 1988). "To survive a motion to dismiss … under Rule 12(b)(6), a complaint must satisfy only the minimal notice pleading requirement of Rule 8(a)(2)" -- a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also*, Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint … as true and … in the light most favorable" to plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, with leave to amend , and  it is clear, as it is here, that no further amendment to the FAC could save it, dismissal with prejudice is warranted.. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.  ARGUMENT

### A.  The Funds Are Not Property of the Estate

Res judicata, or claim preclusion, "provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *United States v. Schimmels* (*In re Schimmels*), 127 F.3d 875, 881(9th Cir.1997) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The related doctrine of collateral estoppel, or issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Both doctrines apply to criminal and civil proceedings, *United States v. Cejas*, 817 F.2d 595, 596 (9th Cir. 1987), and both require privity between the parties. *See In re Schimmels*, 127 F.3d at 881(noting that, under res judicata, "parties or their privies" may be bound by a prior judgment);

*United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1000 (9th Cir.1980) (requiring identity or privity between parties for collateral estoppel to apply).

Here, the Court has ruled that the Proceeds were the property of Coastal and not the Estate. *See*, Order Granting Motion to Dismiss [Doc. 42]. Consequently, the FAC must allege a basis that permits Plaintiff to treat Coastal's property as the Debtor's property. But Plaintiff makes only a conclusory statement that "the Proceeds are property of Debtor's bankruptcy estate because Debtor treated Coastal as his alter ego." FAC ¶ 159. However, as discussed in detail below, alter ego does not affect the property interest between a corporation and principal but, it is a theory that allows a plaintiff to hold a defendant liable for the actions of a corporation. *See Shaoxing Cty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal.App.4th 1189, 1198 (2011) ("A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation…."). In other words, alter ego would permit Plaintiff to pursue Debtor if he was a defendant in this action, but it does **not** create a new property interest.

The FAC amended complaint must be dismissed with prejudice because the Proceeds are not property of the Estate.

### i. Lack of Reasonable Notice

Assuming arguendo that the legal fees paid to Oldfield Creely were property of the Estate, it cannot be deprived of its payments without reasonable notice. In *Bank of Marin v. England*, 385 U.S. 99 (1966), a bank honored checks from a debtor's account after the debtor filed a bankruptcy petition and the trustee sought turnover of the property. The Court held that the bank was not liable to the trustee where it has no knowledge or notice of the bankruptcy proceeding. *Id.* at 101-02. The Court reasoned that "[t]he kind of notice required is one reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action…[it] could not say that the act of filing a voluntary petition in bankruptcy per se is reasonably calculated to put the bank on notice" *Id.* at 102 [citations omitted].

In this case, Oldfield Creely could not have notice that any of its fee payments may be avoided by a bankruptcy trustee, as Coastal never filed a bankruptcy petition and Oldfield Creely has never represented Debtor. Without notice, Plaintiff cannot hold Oldfield Creely liable for the fee payments it received for the legal services it provided to Chateau Julien. Therefore, the FAC must be dismissed with prejudice.

**B.** **The First Claim for Relief Fails to State a Claim for Avoidance of Post-Petition Transfers Pursuant to 11 U.S.C. § 549**

  **i.** **Alter Ego Theory Does Not Transform Coastal's Property into Estate Property**

Plaintiff has not plead facts that establish that the payments to Oldfield Creely were property of the Estate. Thus, Plaintiff's first claim for relief must be dismissed with prejudice.

Section 549(a) provides (emphasis added): "Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of **property of the estate** – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." Section 541(a)(6) provides, in relevant part, that property of the estate includes "[p]roceeds, product, offspring, rents or profits **of or from property of the estate**[.]" (emphasis added). Further, Section 541(a)(7) provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case."

Below are excerpts of dispositive sections of the FAC (emphases added):

2. At all relevant times, **Debtor's bankruptcy estate owned 100% of Coastal Cypress Corporation ("Coastal")**, and Debtor controlled all of Coastal's operations. **Coastal was formed by Debtor in the early 1980's** solely for the purpose of **holding title to real property located at 8890 and 8940 Carmel Valley Road in Carmel, California (the "Wine Estate Property")**.

3. In Spring of 2015 and after the Petition Date, Debtor caused Coastal to sell the Wine Estate Property for $12,035,707.24. **Net proceeds from the sale** were over $7,000,000. At all relevant times, these net proceeds were assets of Debtor's bankruptcy estate pursuant to 541(a)(6) and (a)(7) of the Bankruptcy Code. Specifically, these proceeds represent proceeds from the **Debtor's 100% ownership interest in the stock of Coastal** and Debtor operated Coastal as his alter ego described more fully below.

6

4. After the sale of the Wine Estate Property, **Coastal paid all of its creditors except for the Debtor**. As Coastal was formed solely to hold title to the Wine Estate Property, after the sale, Coastal was not an operating entity and was merely a shell to hold the proceeds. Indeed, Coastal had no assets other than the proceeds. Fn. 4 As discussed below, in 2016, **Debtor used the proceeds to purchase real property in Delaware, which was a fraudulent transfer. The Liquidating Trustee has already recovered that fraudulent transfer.**

5. Having liquidated the sole asset of Coastal and all creditors other than the Debtor being paid in full, **the Debtor as Coastal's sole shareholder and owner** and direct beneficiary had a direct interest in the proceeds via **his 100% interest in the stock of Coastal** and he had full control over their disposition. At that time, Debtor was entitled to distribution from Coastal in the amount of the proceeds, which right transferred the Debtor's estate on the Petition Date. However, **Debtor intentionally chose not to take a distribution from Coastal or to dissolve Coastal** in order to avoid the proceeds being made available to creditors of Debtor's estate.

6. Instead, **Debtor used Coastal as his personal piggybank, doling out monies to himself for his lavish lifestyle and giving monies to his friends and family**—including monies to individuals doing work for the Debtor. The Debtor effectively schemed to transfer the net proceeds of the sale, which rightfully belonged to him, away from the bankruptcy estate outside the purview of the bankruptcy court to the Defendants, several of whom are insiders of the Debtor, in an effort to hinder, delay, and defraud creditors of Debtor's bankruptcy estate. Moreover, most of the transfers were made postpetition without approval by the Court or the Liquidating Trustee.

…

14. **Defendant Patricia Brower ("P. Brower") is sued solely in her capacity as Trustee of the Brower Trust (2015) dated June 30, 2015, which is a California trust (the "Trust").** P. Brower is the Debtor's widow. The Debtor died postpetition and on or about September 30, 2020. Debtor and P. Brower married in 1980, and remained married at all relevant times stated herein. From the early 1990's Debtor and P. Brower resided in a residence located in Carmel, California. In approximately November 2016, Debtor and P. Brower relocated to Delaware, and on information and belief, P. Brower resides in Delaware as of the filing of this complaint.

…

27. Defendant Oldfield Creely, LLP is a limited liability partnership ("Oldfield Creely") located in Carmel, California. Plaintiff is informed and believes that **Oldfield Creely represented Chateau Julien, Inc. in connection with a state court action filed by MUFG Union Bank, N.A.** against Chateau Julien, Inc. and Debtor.

…

29. Also in 1982, Debtor formed Coastal as the sole shareholder. **As of the Petition Date and until April 2015, Coastal owned real property** located at 8890 and 8940 Carmel Valley Road in Carmel, California (defined above as

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

the "Wine Estate Property"), a roughly 16-acre estate that included a wine tasting room, wine production facility, barrel aging room, offices, outdoor event venues, and vineyards. **According to Coastal's books and records, Debtor was the President and a director of Coastal, and P. Brower was the Secretary and a director.**

…

37. Specifically, and in April 2015, the Debtor sold the Wine Estate Property **owned by Coastal**, along with certain equipment and other assets related to the ongoing wine estate business operations, for total consideration of $12,035,707.24. Subsequently, in or around November 2016, Coastal acquired real property in Delaware, in which Debtor and P. Brower resided thereafter.

**The Businesses Were Alter Egos of Debtor and of Each Other**

38. As described above, **Debtor was the president and director** and controlled all aspects of Chateau Julien, Coastal, GAW, and ACP's operations.

…

40. Specifically with respect to Coastal, **Debtor consistently disregarded Coastal's separateness and freely used Coastal's assets for his own personal use**, as described more fully below.

…

48. After the sale of the Wine Estate Property**, Coastal and ACP held** valuable assets including nearly $7,000,000 in net proceeds from the sale of the Wine Estate Property, and Debtor and P. Brower's real properties located in Carmel, California and Delaware.

…

65. After paying secured loan balances (but not the Bank Loan to Chateau Julien which was secured by the Guaranty), taxes, and various other items from escrow, **Coastal received net proceeds** from escrow of at least $5,811,761.46 (the "Proceeds"). The Proceeds consisted of $350,000 in early release of funds, a lump sum at the close of escrow in the amount of $5,477,761.46, and a $50,000 hold-back for a septic tank upgrade, which was received by Coastal in October 2016.

…

73. Plaintiff is informed and believes that following the sale of the Wine Estate Property, which was **Coastal's only asset at the time**, all of Coastal's creditors except for Debtor were paid in full from the Proceeds. Thereafter, Coastal ceased all business operations and was merely a shell holding the Proceeds. At that point, Coastal effectively ceased to exist and Debtor held the Proceeds in trust for himself as sole shareholder of Coastal's stock.

…

75. Indeed, throughout the pendency of Debtor's bankruptcy case, Debtor consistently represented to the Court that the Proceeds "were always to come into the Debtor, either through a **distribution from the corporation or sale of shares**." [Doc. 27, Exh. B, 12:14–18].

…

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

77. The Debtor was the 100% owner of Coastal, Coastal had no management, directors, officers, or employees, Coastal had no ongoing business, and the Debtor was solely in control of Coastal's assets and the disposition thereof. **The Debtor completely dominated Coastal for his own benefit** and, as discussed below, for the benefit of his friends and family. The transfers by the Debtor from the Proceeds held in the name of Coastal was done solely to defraud the Debtor's creditors and served no legitimate business purpose.

78. Although the Proceeds were held in in a **bank account titled in Coastal's name**, **Debtor freely used the Proceeds for his own personal use**, as described below, and disregarded corporate formalities, such that the adherence to the fiction of the separate existence of Coastal as distinct from Debtor will permit an abuse of the corporate privilege and will sanction fraud and promote injustice.

….

102. Based on a review of Coastal's credit card statements and bank statements in Plaintiff's possession, **Debtor used a significant amount of the Proceeds to fund his extravagant lifestyle traveling around the world and eating at expensive restaurants, among other things.** As Coastal was not an operating company, there was no legitimate business purpose for these expenses and Debtor's use of the Proceeds for his personal use is further evidence that Debtor ignored Coastal's corporate form. **By and through this Complaint, Plaintiff seeks to hold Debtor (via the Trust) liable for the Proceeds used to pay his personal living expenses, the exact amounts of which according to proof at trial**.

…

128. As noted above, the sale of the wine business assets to Buyer ultimately closed in April 2015, and **Coastal received gross sale proceeds** of approximately $12,035,707.24

…

134. Postpetition, Oldfield Creely received at least $200,357.59 **from Coastal** and the Trust (the "Oldfield Creely Transfers"). *See* Exhibit 20 attached hereto. Oldfield Creely is an initial transferee of $187,737.64 of the Proceeds from Coastal, and subsequent transferee of at least $15,338.80 in additional Proceeds from Coastal through the Trust.

…

As noted above, the Court found that the Proceeds were Coastal's property because they were earnings from the sale of its real property. *See* Order Granting Motion to Dismiss [Doc. 42]. However, Plaintiff erroneously alleges that the theory of alter ego transforms the ownership of the Proceeds.

It is general rule, that "[s]tate law determines the existence and scope of a debtor's interest in property." *In re Reed*, 940 F.2d 1317, 1332 (9th Cir. 1991) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979); *See also*, *In re Farmers Markets, Inc*,792 F.2d 1400, 1402 (9th Cir. 1986) (Section

9

541 "merely defines what interest of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset…we resolve these questions by reference to nonbankruptcy law.") (citation omitted).   Under California law, the theory of alter ego refers to situations where the "**owner of a corporation** will be held liable for the actions of the corporation." *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (emphasis added)(quoting *Roman Catholic Archbishop of S.F. v. Superior Court*, 15 Cal.App.3d 405, 411 (1971). "The fact that the relationship between an individual and the corporation is such that he may be liable for the obligations of the corporation **does not mean that the individual's assets are those of the corporation, or that he 'is' the Corporation and is bankrupt along with the corporation"** or vice-versa. *Stodd v. Goldberger*, 73CalApp.3d 827, 836 (Ct. App. 1977) (emphasis added)(quoting *Suhl v. Bumb*, 348 F.2d 869, 874 (9th Cir. 1965); *See also*, *Matter of Forester*, 529 F.2d 310, 316 (9th Cir. 1976) (The Court found that a trustee can gain no better interest in property than was held by the debtor); *See also, Communist Party v. 522 Valencia, Inc.*, 35Cal.App. 4th 980,991 (1995) (the court held that it was an error when the trial court used the alter ego doctrine to disregard the separate corporate existence of two corporations to strip them of all of their property, assets and corporate identities).   In California, **"[s]hareholders own neither the property nor the earnings of the corporation**. Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors. [Shareholder] had no ownership interest in the profits of [the corporation] and cannot have been deprived of them." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (Cal. Ct. App. 2d Dist. 1999) (emphasis added) (citing *Miller v. McColgan*, 17 Cal.2d 432, 436 (1941).

Under California state law, if Debtor is liable for Coastal's actions under the alter ego theory this does not transform Coastal's property into Estate property.  For example in *Communist Party*, the entity Communist Party sought a declaration that it was the beneficial owner of all property and assets held in the names of two other corporations on the basis that the other corporations were alter egos of itself. *Communist Party*, 35 Cal. App 4th at 988. The trial court found on the basis of the

alter ego theory that the other corporations had no separate identity or existence apart from Communist Party, Communist Party had used the corporations for its own purposes since their inception, and that it was the beneficial owner of both corporations – "[t]he trial court stated its intent to order a constructive trust for the benefit of the [Community Party] in all the property and assets of both corporations." *Id.* at 989. However, the appellate court correctly noted that the "alter ego doctrine cannot be used to impute to [Communist Party] an ownership interest in the other corporations or their property." *Id.* at 990. "Alter ego is utilized to prevent two parties with the *same* interest from inequitably using the corporate form to thwart party's rights; it is not designed to unite two separate entities with *opposing* interest for the benefit of the one claiming to control the other." *Id.* at 995.

Here, Plaintiff standing in the shoes of Debtor also erroneously attempts to use the alter ego theory to treat Coastal's property as his own. As a shareholder, Debtor only had an interest in the Coastal stock he owned. *See Nelson*, 72 Cal.App. 4th at 126-127. Moreover, alter ego does not allow Plaintiff to pursue third parties for the actions of Coastal or Debtor. *See Communist Party*, 35 Cal. App 4th at 994 ("[A]lter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liable only where to recognize its corporate status would defeat the right and equities of third parties; it is not a doctrine that allow the persons who actually control the corporation to disregard the corporate form.")

Plaintiff also alleges that a portion of the fee payments to Oldfield Creely were from the Trust. The Trust is not part of the bankruptcy estate nor is it Debtor's property. *See e.g.*, *Portico Management Group, LLC v. Harrison*, 202 Cal. App.4th 464, 473 (2011) ("'Legal title to property owned by a trust is held by the trustee.'" (quoting *Galdjie v. Darwish*, 113 Cal.App.4th 1331, 1343-1344 (2003)). Per Plaintiff's judicial admission, the trustee is P. Brower and not Debtor. FAC ¶ 14. Plaintiff merely alleges that the payments from the Trust come from the Proceeds. *Id.* ¶ 146. Nonetheless, it evident that the Proceeds were not property of the Estate.

Consequently, regardless of whether funds were directly or indirectly paid by Coastal to Oldfield Creely, those funds were not property of the estate because:

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1. they were not under Section 541(a)(6) "…proceeds, product, offspring, rents or profits" due to Debtor,

2. neither Debtor nor the bankruptcy estate "acquired" the Proceeds pursuant to applicable state law,

3. the Trust was not the property of Debtor or the bankruptcy estate, and

4. alter ego does not affect the ownership of Coastal's property.

For these reasons, Plaintiff has failed to state a claim upon which relief can be granted for the first claim for Avoidance of Post-Petition Transfer and must be dismissed without leave to amend.

### C. The Second and Third Claims for Relief Fail to State a Claim for Avoidance of a Fraudulent Transfer Pursuant to California Civil Code Section 3439.01 *et seq*.

The second and third claims for relief fail to state a claim for avoidance of an alleged fraudulent transfer because Plaintiff stands in the shoes of Debtor who did not suffer any injury at all, Debtor has unclean hands, and Coastal was not a debtor.

"The trustee succeeds **only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition.**" *Bank of Marin v. England*, 385 U.S. at 101 (emphasis added); *See also Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal.App.4th 658, 680 (2005) ("Section 541 of the Bankruptcy Code thus requires that courts analyze defenses to claims asserted by a trustee as they existed at the commencement of bankruptcy…."). "The trustee in bankruptcy takes derivative rights that are not superior to those of the bankrupt." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983).

Moreover, California Civil Code section 3439.04 states in pertinent part the following.

(a) A transfer made or obligation incurred by a **debtor** is voidable as to a creditor, whether creditor's claim arose before or after the transfer was made or the obligation was made or the obligation was incurred, if the **debtor** made the transfer or incurred the obligation as follows:
(1) With actual intent to hinder, delay, or defraud any creditor of the **debtor.**
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the **debtor** either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. (emphasis added).

As discussed above, Plaintiff only has an interest in the stock owned by Debtor. Neither the Estate nor Debtor had an interest in the Proceeds until Coastal was liquidated or the Proceeds were set aside as shareholder distribution to be made to Debtor. Nonetheless, **Coastal is not a debtor** to the Debtor and therefore Debtor cannot be a creditor. Plaintiff has not alleged any facts where Coastal failed to pay a debt owed to Debtor. For example, Coastal failing to pay a loan from the Debtor. Since Coastal is not a debtor, Plaintiff cannot pursue avoidance causes of action under California state law.

Moreover, Plaintiff standing in the shoes of the Debtor means it has a claim against the management of Coastal or Coastal itself. Based on Plaintiff's allegations, Debtor was the sole shareholder at the time of the transfers. Plaintiff cannot bring a claim against himself as it is standing in the shoes of the Debtor and Coastal is not a defendant in this action.

i. **Plaintiff Lacks Standing to Pursue the State Law Claims**

Under California law, shareholders may bring two mutually exclusive actions: 1) a *direct action* filed by a shareholder individually ("direct action") for injury to their interest as a shareholder; or 2) a *derivative* action filed on behalf of the corporation (derivative action) for which it has failed or refused to sue. *Schuster v. Garder*, 127 Cal.App.4th 305, 311-12 (2005). "If the injury is one to the plaintiff as a shareholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." *Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946). A direct action need not be unique to a shareholder, as long as "…the injury is *not incidental* to an injury to the corporation…." *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 107 (1969); *See also Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4th 282, 297 (2004). "[A] shareholder **cannot** bring a direct action for damages against management on the theory their

13

alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth) …[t]he corporation itself must bring such an action….” *Schuster*, 127 Cal.App.4th at 312; *See also United States v. Stonehill*, 83F.3d 1156, 1160 (9th Cir. 1996) (“Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party.”).

Plaintiff states that he brings these state claims in the individual capacity of Debtor or a *direct action*. While the Debtor controlled Coastal, Plaintiff states that Debtor used Coastal “…as his personal piggy bank, doling out monies to himself for his lavish lifestyle and giving monies …**effectively schemed to transfer the net proceeds of the sale**….” FAC ¶ 6. Accordingly, Coastal itself was damaged by Debtor’s actions and Debtor’s harm is an incidental injury due to his management of Coastal’s assets. Thus, Plaintiff cannot bring the state law claims because they belong to Coastal as matter of law. Additionally, Plaintiff as shareholder cannot use diminution in share or corporate value as justification to bringing a direct action.

Therefore, Plaintiff lacks standing to pursuit the state law claims and they must be dismissed with prejudice.

### ii. Plaintiff Fails to State Factual Allegations Permitting Post-Petition Avoidance Claims Under State Law Against Oldfield Creely

Even if Plaintiff could allege that Coastal was a debtor and he has standing to pursue the state law claims, the FAC alleges no facts that show that the fee payments to Oldfield Creely were done with the actual intent to hinder, delay, or defraud. Plaintiff alleges Coastal paid Oldfield Creely for costs and fees when it represented Chateau Julien in connection with the State Court action. FAC ¶¶ 146-147. In other words, Coastal paid Oldfield Creely for legal services pursuant to their agreement – there is no fraud.

Plaintiff further alleges Coastal made the payments to Oldfield Creely without having received reasonably equivalent value in exchange. *Id.* ¶ 174. Again, Coastal was satisfying an obligation to pay for the legal services provided by Oldfield Creely. “A proportionate reduction in rights or liability constitutes an exchange of reasonably equivalent value for fraudulent transfer

purposes under the Bankruptcy Code or California State law." *In re Walters,* 163 B.R. 575, 581 (Bankr. C.D. Cal. 1994) (emphasis added) (citing *In re United Energy Corp.*, 944 F.2d 589, 595 (9th Cir. 1991)). Hence, Coastal was reducing its liability by paying the reasonable equivalent in value for the legal services rendered by Oldfield Creely.

### iii. Plaintiff's State Law Claims Are Barred by the Doctrine of Unclean Hands

Finally, Plaintiff is barred from pursuing the state law claims pursuant to the Doctrine of Unclean Hand. As Plaintiff stands in the shoes of Debtor, "[i]n the context of an unclean hands defense this means a bankruptcy trustee …may not use his status as an innocent successor to insulate the debtor from the consequences of its wrongdoing." *Peregrine Funding, Inc.*, 133 Cal. App. 4th at 680. "A plaintiff asking a court for equitable relief must come with clean hands [and] a plaintiff shall have acted fairly and without fraud or deceit as to the controversy in issue [b]ecause bankruptcy courts are courts of equity." *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956,959 (9th Cir. 2015) (citations omitted).

As alleged throughout the FAC, Debtor was an active participate in the alleged transfers that Plaintiff seeks to avoid and therefore Plaintiff is subject to the unclean hands defense. Oldfield Creely has not participated in any of the alleged transfers and only collected payment on debt owed by Coastal.

### D. The Fourth Claim for Relief Fails to State a Claim for Recovery and Preservation of Transfers for the Benefit of the Estate Pursuant to Bankruptcy Code Sections 550 and 551

Bankruptcy Code Section 550 provides in relevant part (emphasis added):

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property[.]"
…
(f) An action or proceeding under this section may not be commenced after the earlier of – (1) year after the **avoidance of the transfer** on account of which recovery under this section is sought; or (2) the time the case is closed or dismissed.

Bankruptcy Code Section 551 provides (emphasis added): "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but **only with respect to property of the estate**."

As discussed above, Plaintiff has failed to state claim for relief pursuant to Section 549 (first claim for relief) required to invoke Sections 550 and 551. Plaintiff cannot recover property that does <u>**not**</u> belong to the Estate.

Accordingly, Plaintiff's fourth claim for relief must be dismissed without leave to amend.

**E.** <u>**The Fifth Claim Fails to State a Claim for Turnover of Estate Property Pursuant to Bankruptcy Code Section 542**</u>

A plaintiff's ability to demand turnover of property pursuant to Section 542 means that the property belongs to the bankruptcy estate. For the same reasons discussed so far, the payments to Oldfield Creely were not property of the estate. Thus, Plaintiff's fifth claim for relief also fails. Moreover, it is not reasonable to argue that property that is recoverable using the **avoidance powers is property of the bankruptcy estate before it is recovered.** *Rajala v. Gardner*, 709 F.3d 1031, 1037-1038 (10th Cir. 2013).

**F.** <u>**The Sixth Claim for Relief Fails to State a Claim for Accounting of Property of the Estate Pursuant to Bankruptcy Code Section 542**</u>

Similar to Plaintiff's fifth claim for relief, the sixth claim for relief fails because 1) the payments to Oldfield Creely were not property of the estate, and 2) Plaintiff has no actionable avoidance claim that pertains to the Oldfield Creely payments.

As the payments to Oldfield Creely were not property of the Estate, the sixth claim for relief must be dismissed without leave to amend.

**G.** <u>**The Ninth Claim for Relief Fails to State a Claim for Disgorgement**</u>
      **i.** <u>**Oldfield Creely Did Not Represent Debtor**</u>

"Under the Bankruptcy Code, **attorneys representing debtors** in bankruptcy cases are required to disclose 'all fee payments and agreement made …for services in contemplation of, or in connection with, the bankruptcy filing.'" *In re Brown*, 371 B.R. 486, 495 (Bankr. N.D. Okla. 2007)

16

(internal citation omitted) (emphasis added). "Section 330 establishes the exclusive means of allowing a claim for professional fees in a bankruptcy proceeding." *Id.* at 495; *See also*, *In re Federal Roofing Co., Inc.*, 205 B.R. 638, 644 ("Section 330(a) provides the substantive basis for the attorney of the debtor-in-possession to receive compensation. The section sets out the factors of the court to consider in awarding fees while Rule 2016 sets out the procedural mechanism which the attorney must follow to receive compensation.").

Federal Rules of Bankruptcy Procedure, Rule 2016 ("Rule 2016") provides in pertinent part the following (emphasis added):

(a)     Application for compensation or reimbursement
**An entity seeking interim or final compensation for services**, or reimbursement of necessary expenses, **from the estate** shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested….The requirement of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant….

(b)     Disclosure of compensation paid or promised **to attorney for debtor**
…

(c)     Disclosure of compensation paid or promised to **bankruptcy petition preparer**
….

In 1985, Debtor formed Chateau Julien. FAC ¶30. Plaintiff's judicial admission acknowledges that Oldfield Creely represented Chateau Julien in the State Court Action and received compensation for its services. *Id.* ¶¶27, 146-147. Furthermore, Plaintiff concedes that the Debtor filed a voluntary 11 petition, not Chateau Julien. *Id.* ¶ 65. Notably, the Complaint states that "…Debtor transferred **the assets of Chateau Julien** to himself…." *Id.* ¶ 68.

Yet, Plaintiff makes the unsupported conclusory allegation the "Oldfield Creely never filed an application to be employed as Debtor's special litigation counsel in his bankruptcy case…." *Id.* ¶¶ 148, 207. As noted above, Plaintiff acknowledges Oldfield Creely represented Chauteau Julien – not Debtor – in the state action and there are no alleged facts showing that Oldfield Creely represented Debtor in any bankruptcy proceeding. Plaintiff cannot allege any facts to support his allegation because Oldfield Creely has never represented Debtor in a bankruptcy proceeding. Thus, the disgorgement claim must be dismissed with prejudice.

DEFENDANT OLDFIELD CREELY, LLP'S MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

ii. **The Payments Were Not Property of the Estate**

Rule 2016(a) only requires "[a]n entity seeking interim or final compensation for services…**from the estate** [to] file an application …." (emphasis added). As discussed in detail above, Oldfield Creely's payments did not belong to Debtor nor the bankruptcy estate. Since the fund were not part of the bankruptcy estate, Oldfield Creely was not required to file an application for compensation or reimbursement under Rule 2016.

iii. **Lack of Reasonable Notice**

If the Court find that Oldfield Creely was required to file an application to receive payments from a party not in bankruptcy, the Court must dismiss this action based on equity as discussed above in Section A(i).

Thus, the Ninth claim for disgorgement must be dismissed with prejudice because Plaintiff cannot allege Oldfield Creely represented Debtor, its payments were property of the Estate, and there was no reasonable notice that it was required to file an application to receive payments from a party not in bankruptcy.

**H. The Tenth Claim for Relief Fails to State a Claim for Conversion**

In California, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) **the plaintiff's ownership or right to possession of the property**; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015) (emphasis added).

As with Plaintiff's other claims for relief, the claim for conversion fails because the funds that were used for the payments to Oldfield Creely were not property of Debtor or the Estate. Therefore, Plaintiff cannot plead facts to support the first element of a conversion cause of action. Hence, Plaintiff's tenth claim must be dismissed without leave to amend because Plaintiff cannot establish Debtor, or the Estate, was the owner or had a right to possess the funds that were transferred to Oldfield Creely.

### I. **Plaintiff's Prayer for Relief for Attorneys' Fees and Costs Must be Dismissed for Failure to State Claim Permitting Such Relief**

Plaintiff fails to state "…a short and plain statement of **the claim** showing that the pleader is entitled to relief [for attorneys' fees and costs]." Fed. R. Civ. P. 8(a) (emphasis added.) Instead, the complaint states as to all claims, " …ii. Reasonable attorneys' fees and costs permitted under applicable law." FAC 45:1.

Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). "However, this general rule can be overcome by statute or by an 'enforceable contract' allocating attorney's fees." *In re Carey*, 446 B.R. 384, 390–91 (B.A.P. 9th Cir. 2011) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)).

In this case, Plaintiff fails to specify any statute or contract that allows him to circumvent the American Rule. Accordingly, Plaintiff's prayer for relief for attorneys' fees and costs for all claims against Oldfield Creely must be dismissed without leave to amend.

### V. **CONCLUSION**

Defendant Oldfield Creely respectfully urges that Plaintiff's claims against it be dismissed without leave to amend. It was paid for its legal fees and costs incurred in representing a party other than Debtor, from a source that was not property of the bankruptcy estate.

Whatever rights to recovery Plaintiff may have in this case, he clearly has none against the law firm of Oldfield & Creely, LLP.

Date:                                          Respectfully Submitted,


By   */s/ Louis H. Castoria*
              Louis H. Castoria
              Rogelio Serrano
              Attorney for Defendant,
              OLDFIELD CREELY, LLP

19