STEVEN T. GUBNER – Bar No. 156593
JASON B. KOMORSKY – Bar No. 155677
JESSICA L. BAGDANOV – Bar No. 281020
JESSICA S. WELLINGTON – Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:     sgubner@bg.law
           jkomorsky@bg.law
           jbagdanov@bg.law
           jwellington@bg.law

Attorneys for Michael G. Kasolas, Liquidating Trustee
For the Robert Brower, Sr. Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>                    Debtor. | Bk. Case No. 15-50801 MEH<br><br>Chapter 11<br><br>Adv. Case No. 21-05029 MEH |
| MICHAEL G. KASOLAS, solely in his capacity as the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust,<br><br>                    Plaintiff,<br><br>v.<br><br>PATRICIA BROWER, solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; et al.,<br>                    Defendants. | **PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [DOCS. 65 AND 73]**<br><br>Date:   February 7, 2022<br>Time:  11:00 a.m.<br>Place:  Courtroom 11<br>        United States Bankruptcy Court<br>        280 South First Street<br>        San Jose, California 95113 |

2754547_2 (002)

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...............................................................................................1

II.   THE FIRST AMENDED COMPLAINT IS SUFFICIENT UNDER RULE 8 ..................3

      A.    Relevant Legal Standard .........................................................................3

      B.    The FAC Sufficiently Pleads Facts that the Proceeds are Property of the Estate....4

            1.    The FAC Pleads Sufficient Facts that the Proceeds are Property
                  of the Estate Pursuant to an Alter Ego Remedy.............................5

            2.    The FAC Also Pleads Sufficient Facts that the Proceeds are
                  Property of the Estate Under 11 U.S.C. §§ 541(a)(6) and (a)(7).....7

      C.    The Second and Third Claims (Fraudulent Transfers) are Sufficiently Pled........15

            1.    Plaintiff Has Standing to Pursue the Fraudulent Transfer
                  Claims ............................................................................................16

            2.    The Fraudulent Transfer Claims are Not Barred by the
                  Doctrine of Unclean Hands Because Debtor's Wrongful
                  Conduct Occurred Postpetition and Avoidance Claims Are Not
                  Subject to this Defense..................................................................18

      D.    The Ninth Claim (Disgorgement) is Sufficiently Pled ..........................21

      E.    The Claim for Attorneys' Fees Against Oldfield Creely ......................23

III.  LEAVE TO AMEND SHOULD BE PERMITTED IF THE COURT GRANTS THE
      MOTION TO DISMISS ON ANY GROUNDS................................................24

IV.   THE COURT SHOULD NOT STRIKE ANY PORTION OF THE FIRST
      AMENDED COMPLAINT ........................................................................24

V.    CONCLUSION..........................................................................................26

**Cases**

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011), *cert. denied*,
*U.S. Bank Nat. Ass'n v. Aguayo*, 133 S.Ct. 106 (2012) ............................................................. 4, 24

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975) ................................................................ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................................... 3

*Associated Vendors. Inc. v. Oakland Meat Co., Inc.*,
210 Cal. App. 2d 825 (1962) .......................................................................................................... 6

*Bank of Marin v. England*,
385 U.S. 99, 87 S. Ct. 274 (1966) ................................................................................................ 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................... 3, 4

*Blomberg v. Riley*,
351 B.R. 662 (Bankr. E.D. Wis. 2006) ........................................................................................... 5

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ............................................................................................................ 3

*Consove v. Cohen (In re Roco Corp.)*,
701 F.2d 978 (1st Cir. 1983) ........................................................................................................ 16

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) .......................................................................................................... 24

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993),
*rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) ......................... 25

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ........................................................................................................ 3

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
386 U.S. 714 (1967) ..................................................................................................................... 23

*Foman v. Davis*,
371 U.S. 178 (1962) ..................................................................................................................... 24

*Giacometti v. Arton Berm, Ltd.* (*In re Sukamto Sia*),
349 B.R. 640 (Bankr. D. Hawaii 2006) ........................................................................................ 20

*Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc.*,
759 F.2d 724 (9th Cir.1985) ........................................................................................................... 9

ii

2754547_2 (002)

**Cases**

*In re Adams*,
31 F.3d 389 (6th Cir. 1994) ................................................................. 9

*In re Am. Int'l Refinery*,
402 B.R. 728 (Bankr. W.D. La. 2008) .................................................. 5

*In re Art & Architecture Books of 21st Century*,
2019 WL 9243053 (C.D. Cal. Dec. 6, 2019) ................................. 3, 19, 20

*In re Bellardita*,
2008 WL 4296554 (Bankr. E.D. Cal. Sept. 19, 2008) ........................ 2, 5, 7

*In re Beshears*,
196 B.R. 464 (Bankr. E.D. Ark. 1996) ................................................... 9

*In re Carey*,
446 B.R. 384 (B.A.P. 9th Cir. 2011) .................................................... 23

*In re Coastal Alaska Lines, Inc.*,
920 F.2d 1428 (9th Cir. 1990) ............................................................ 23

*In re Delano Partners, LLC*,
2014 WL 4966476 (E.D. Cal. Sept. 29, 2014) ................................... 3, 19

*In re DSI Renal Holdings, LLC*,
574 B.R. 446 (Bankr. D. Del. 2017) .................................................... 14

*In re Enron Corp.*,
316 B.R. 434 (Bankr. S.D.N.Y. 2004) ................................................... 4

*In re F & C Services, Inc.*,
44 B.R. 863 (Bankr. S.D. Fla. 1984) ..................................................... 5

*In re Fitness Holdings*,
714 F.3d 1141 (9th Cir. 2013) .............................................................. 4

*In re Food Mgmt. Grp., LLC*,
380 B.R. 677 (Bankr. S.D.N.Y. 2008) ....................................... 19, 20, 21

*In re Friskney*,
282 B.R. 250 (Bankr. M.D. Fla. 2002) ................................................... 9

*In re Giant Gray, Inc.*,
629 B.R. 814 (Bankr. S.D. Tex. 2020) ................................................... 7

*In re Hill*,
265 B.R. 296 (Bankr. M.D. Fla. 2001) ................................................... 9

Case: 21-05029   Doc# 85   Filed: 01/24/22   Entered: 01/24/22 15:52:50   Page 4 of 34

2754547_2 (002)

**Cases**

*In re Hollingsworth,*
224 B.R. 822 (Bankr. M.D. Fla. 1998) ............................................................ 9

*In re Icenhower,*
757 F.3d 1044 (9th Cir. 2014) ...................................................................... 5

*In re McKenzie Energy Corp.,*
228 B.R. 854 (Bankr. S.D. Tex. 1998) ............................................................ 5

*In re Milden,*
111 F.3d 138 (9th Cir. 1997) ........................................................................ 8

*In re Mosher,*
417 B.R. 772 (Bankr. N.D. Ill. 2009) ............................................................ 11

*In re National Audit Def. Network,*
367 B.R. 207 (D. Nev. 2007) ...................................................................... 16

*In re Pisculli,*
2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009),
*aff'd,* 426 B.R. 52 (E.D.N.Y. 2010),
*aff'd,* 408 F. App'x 477 (2d Cir. 2011) ............................................... *passim*

*In re Pisculli,*
408 F. App'x. 477 (2d Cir. 2011) .................................................................. 11

*In re Pisculli,*
426 B.R. 52 (E.D.N.Y. 2010) ...................................................................... 11

*In re Redf Mktg., LLC,*
536 B.R. 646 (Bankr. W.D.N.C. 2015) .......................................................... 22

*In re Reed,*
532 B.R. 82 (Bankr. C.D. Ill. 2015) ................................................................ 4

*In re Roussos,*
2016 WL 5349717 (Bankr. C.D. Cal. Sept. 22, 2016) .......................... 3, 19, 20, 21

*In re Ryerson,*
739 F.2d 1423 (9th Cir.1984) ........................................................................ 4

*In re S. Indus. Banking Corp.,*
66 B.R. 349 (Bankr. E.D. Tenn. 1986) .......................................................... 22

*In re Schwarzkopf,*
626 F.3d 1032 (9th Cir. 2010) ...................................................................... 6

*In re Singh,*
2019 WL 12311446 (9th Cir. BAP Mar. 14, 2019) ........................................ 2, 6

Case: 21-05029   Doc# 85   Filed: 01/24/22   Entered: 01/24/22 15:52:50   Page 5 of 34

**Cases**

*In re Sklarin*,
 69 B.R. 949 (Bankr. S.D. Fla. 1987) ............................................................... 5

*In re United Energy Corp.*,
 944 F.2d 589 (9th Cir. 1991) ........................................................................... 9

*In re Walhof Properties, LLC*,
 613 B.R. 479 (Bankr. M.D. Fla. 2020) ............................................................ 9

*In re Whittick*,
 547 B.R. 628 (Bankr. D.N.J. 2016) .................................................................. 8

*In re Yona*,
 2017 WL 2491493 (C.D. Cal. June 8, 2017) .................................... 8, 9, 10, 15

*ITT–Industrial Credit Co. v. Hughes*,
 594 F.2d 384 (4th Cir.1979) ............................................................................ 9

*Jara v. Suprema Meats, Inc.*,
 21 Cal. App. 4th 1238 (2004) ......................................................................... 17

*Johnson v. Buckley*,
 356 F.3d 1067 (9th Cir. 2004) ....................................................................... 24

*Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.)*,
 958 F.2d 602 (4th Cir. 1992) ......................................................................... 20

*Lambrecht v. O'Neal*,
 3 A.3d 277 (Del. 2010) ................................................................................... 17

*Ohio v. Collins (In re Madeline Marie Nursing Homes)*,
 694 F.2d 433 (6th Cir.1982) ............................................................................ 9

*Rosen v. Gemini Title & Escrow, LLC (In re Hoang)*,
 449 B.R. 850 (Bankr. D. Md. 2011) .......................................................... 20, 21

*Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas*,
 34 A.3d 1074 (Del. 2011) ............................................................................... 17

*Sanders v. Langmuir-Logan*,
 2014 WL 1917679 (Cal. Ct. App. May 14, 2014) ......................................... 17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 531 B.R. 439 (Bankr. S.D.N.Y. 2015) ........................................................... 15

*Segal v. Rochelle*,
 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed. 2d 428 (1996) ...................................... 4

Case: 21-05029    Doc# 85    Filed: 01/24/22    Entered: 01/24/22 15:52:50    Page 6 of 34

**Cases**

*Shults & Tamm v. Tobey (In re Hawaiian Telcom Communications, Inc.*),
   483 B.R. 217 (Bankr. D. Haw. 2012) .......................................................... 20

*Sliger v. Prospect Mortg., LLC*,
   789 F.Supp.2d 1212 (E.D. Cal. 2011) ........................................................ 24

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal. App. 4th 523 (2000) ....................................................................... 6

*Suhl v. Bumb*,
   348 F.2d 869 (9th Cir.1965), *cert. denied*,
   382 U.S. 938 (U.S. Dec. 6, 1965) ............................................................... 5

*Sutter v. Gen. Petroleum Corp.*,
   28 Cal. 2d 525 (1946) ............................................................................... 17

*Towe v. Martinson*,
   195 B.R. 137 (D. Mont. 1996) ..................................................................... 6

*Unite Here Health v. Gilbert*,
   2014 WL 2527121 (D. Nev. June 4, 2014) .................................................. 7

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ..................................................................... 24

*Wood v. Elling Corp.*,
   572 P.2d 755 (1977) .................................................................................... 6

**Statutes**

11 U.S.C.,
   Section 363(b)(1) ...................................................................................... 13

11 U.S.C.,
   Section 541(a)(1) ..................................................................................... 2, 4

11 U.S.C.,
   Section 541(a)(6) .............................................................................. 2, 5, 7, 25

11 U.S.C.,
   Section 541(a)(7) ........................................................................... 2, 5, 7, 21, 25

11 U.S.C.,
   Section 548 ............................................................................................... 16

11 U.S.C.,
   Sections 549 ........................................................................................... 9, 15

Case: 21-05029    Doc# 85    Filed: 01/24/22    Entered: 01/24/22 15:52:50    Page 7 of 34

2754547_2 (002)

**Statutes**

Cal. Civ. Code,
 Section 3439.04 ................................................................................................................ 18

Cal. Civ. Code,
 Section 3439.05 ................................................................................................................ 18

Cal. Civ. Code,
 Section 3439.07 ................................................................................................................ 18

Cal. Corp. Code,
 Section 1001 ..................................................................................................................... 13

**Rules**

Fed. R. Bankr. P.,
 Rule 2016(a) ..................................................................................................................... 22

Fed.R.Civ.P.,
 Rule 8(d)(3)....................................................................................................................... 15

Federal Rules of Civil Procedure
 Rule 12(b)(6)................................................................................................................... 3, 4

**Treatises**

9 Witkin, Summary of Cal. Law (11th ed. 2021 supplement)
 Corporations, § 19............................................................................................................ 12

Charles A. Wright & Arthur R. Miller,
 *Federal Practice and Procedure* § 1382  (1990)............................................................ 25

Case: 21-05029   Doc# 85   Filed: 01/24/22   Entered: 01/24/22 15:52:50   Page 8 of 34

2754547_2 (002)

Michael G. Kasolas, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust, and Plaintiff herein ("Liquidating Trustee" or "Plaintiff"), hereby opposes (the "Opposition") the *Defendant Oldfield Creely, LLP's Corrected Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6)* (the "Oldfield Creely MTD") [Doc. 73] filed on behalf of defendant Oldfield Creely, LLP ("Oldfield Creely" or "Defendant"), and the *Aurora Capital Advisors, Richard Babcock, Anthony Nobles and Med-Venture Investments, LLC's Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) and to Strike Pursuant to Rule 12(f)* (the "Babcock/Nobles MTD," and together with the Oldfield Creely MTD, the "Motions") [Doc. 65] filed on behalf of defendants Aurora Capital Advisors, Richard Babcock, Anthony Nobles, and Med-Venture Investments, LLC (the "Babcock/Nobles Defendants," together with Oldfield Creely, "Defendants"). In support of the Opposition, the Liquidating Trustee respectfully represents as follows:

## I. INTRODUCTION

Defendants' Motions give the impression that, notwithstanding the Court's comments on the record and the fact that leave to amend was granted, the Court believed any amendments to be futile and that the Liquidating Trustee's claims could not be salvaged. This could not be further from the truth. In the Court's oral ruling on the prior motions to dismiss, the Court did not reject the Liquidating Trustee's legal theory of why the net proceeds (the "Proceeds") from the sale of real property located at 8890 and 8940 Carmel Valley Road in Carmel, California (the "Property") are property of the estate. Rather, the Court stated that the facts, as then alleged, did not support the Liquidating Trustee's legal argument in the *Plaintiff's Omnibus Opposition to Defendants Oldfield Creely, LLP and JRG Attorneys' Motion to Dismiss Complaint Pursuant to Rule 12(b)(6)* (the "Omnibus Opposition") [Doc. 37]. Indeed, the Court rejected Defendants' primary statute of limitations argument. Recognizing that the pleading deficiencies in the initial complaint were fixable, the Court allowed to the Liquidating Trustee to amend the complaint to add additional facts as why the Proceeds are property of the estate. The Court further stated that the fraudulent transfer claims as stated in the Omnibus Opposition appear to have merit to survive a motion to dismiss, and allowed the Liquidating Trustee to amend the initial complaint to add the additional allegations regarding the fraudulent transfer claims.

1

Case: 21-05029    Doc# 85    Filed: 01/24/22    Entered: 01/24/22 15:52:50    Page 9 of 34

2754547_2 (002)

1   Accordingly, on December 23, 2021, the Liquidating Trustee filed his first amended

2   complaint (the "FAC") [Doc. 58], which addressed the Court's concerns.  Specifically, the FAC

3   sufficiently pleads two additional bases for why the Proceeds are property of Debtor's estate and

4   sufficiently pleads the Liquidating Trustee's standing to bring the fraudulent transfer claims.

5       Defendants raise almost identical arguments as those raised in the prior motions to dismiss,

6   which focus on whether the Proceeds are property of Debtor's bankruptcy estate, as if no substantive

7   amendments were made in the FAC.  Defendants' argument that the transfers were not made with

8   property of the estate, is not supported by the law or the allegations in the FAC.  The case law, cited

9   in depth below, holds that "[i]n the context of a bankruptcy case, the application of the alter ego

10  doctrine brings the assets of a debtor's alter ego into the bankruptcy estate." *In re Bellardita*, 2008

11  WL 4296554, at *11 (Bankr. E.D. Cal. Sept. 19, 2008); *see also In re Singh*, 2019 WL 12311446, at

12  *6-*7 (9th Cir. BAP Mar. 14, 2019).  The FAC sufficiently pleads facts to establish an alter ego

13  relationship between Debtor and Coastal, such that the Proceeds are property of the estate under

14  Section 541(a)(1) of the Bankruptcy Code, and Defendants present no cogent argument as to how

15  this Court could find no alter ego as a matter of law at the pleading stage.

16      Additionally, the FAC pleads sufficient facts to state a plausible claim that the Proceeds are

17  property of the estate under Sections 541(a)(6) and (a)(7).  In the Court's oral ruling on the first

18  motions to dismiss, the Court found that because the Liquidating Trustee sold real property in

19  Delaware titled in the name of Coastal, Coastal could not have liquidated all of Coastal's assets

20  before the sale of that property.  What was not made clear to the Court in the Omnibus Opposition,

21  oral argument, or the Liquidating Trustee's original complaint was that Coastal did not own the

22  Delaware residence at the time of the sale of the Property.  After the sale, Coastal did not have any

23  assets other than the Proceeds.  Almost two years after the sale of the Property, Debtor used the

24  Proceeds to purchase a personal residence for himself and his wife in Delaware.  FAC, ¶ 82; n.4.

25  Debtor's use of the Proceeds to purchase the Delaware residence was a postpetition, fraudulent

26  transfer, which supports an alter ego finding.  FAC, ¶ 82.  As clarified in the FAC, the Liquidating

27  Trustee was able to recover that fraudulent transfer separately from this adversary proceeding, and

28  liquidated the Delaware residence for the benefit of Debtor's creditors. *Id.*

2

Even if Coastal were not found to be property of the estate (including by means of the application of the alter ego doctrine), the Liquidating Trustee would still have standing to seek recovery of all Proceeds dissipated by Coastal after it ceased operations as fraudulent transfers.

Defendants additionally argue that the Liquidating Trustee does not have standing to assert the fraudulent transfer claims and that he is barred from asserting such claims based on the doctrine of unclean hands as Debtor made the transfers to Defendants. These arguments fail. The Liquidating Trustee is the <u>only</u> party with standing to bring the fraudulent transfer claims as the sole shareholder and director of Coastal, and has such standing as a creditor in the alternative. Further, *in pari delicto* does not apply to avoidance power claims nor to claims arising from postpetition conduct. *In re Roussos*, 2016 WL 5349717, at *11–12 (Bankr. C.D. Cal. Sept. 22, 2016); *see also In re Delano Partners, LLC*, 2014 WL 4966476, at *4-*5 (E.D. Cal. Sept. 29, 2014); *In re Art & Architecture Books of 21st Century*, 2019 WL 9243053, at *16 (C.D. Cal. Dec. 6, 2019).

As discussed more fully below, each and every claim for relief is well pled and Defendants' motions to dismiss should be denied in their entirety.

## II. THE FIRST AMENDED COMPLAINT IS SUFFICIENT UNDER RULE 8

### A. <u>Relevant Legal Standard</u>

"A motion to dismiss [pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)] will only be granted if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted) (citing, *inter alia*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations omitted). In addition, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *see also Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

3

The party seeking dismissal under Rule 12(b)(6) has the burden of proof. *In re Reed*, 532 B.R. 82, 88 (Bankr. C.D. Ill. 2015) ("A party seeking dismissal under Rule 12(b)(6) 'bears a weighty burden' [which] requires that the movant establish 'the legal insufficiency of the complaint.'"); *In re Enron Corp.*, 316 B.R. 434, 449 (Bankr. S.D.N.Y. 2004) (stating that an "unsupported assertion is insufficient to meet [the] burden under a [Rule] 12(b)(6) motion.").

"A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011), *cert. denied*, *U.S. Bank Nat. Ass'n v. Aguayo*, 133 S.Ct. 106 (2012). Moreover, for purposes of evaluating a motion to dismiss, the Court must accept as true all well pleaded factual allegations made in the operative pleading and construe them in the light most favorable to the non-movant. *In re Fitness Holdings*, 714 F.3d 1141, 1144-1145 (9th Cir. 2013). As set forth herein, the FAC includes numerous, specific and detailed factual allegations, which unquestionably "raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555.

**B.      The FAC Sufficiently Pleads Facts that the Proceeds are Property of the Estate**

Defendants argue that the First (postpetition transfers), Fourth (recovery of avoided transfers), Fifth (turnover), Sixth (accounting), and Tenth (conversion) Claims should be dismissed because the FAC fails to allege facts to establish that the Proceeds are property of the estate. To the contrary, the FAC contains sufficient facts to support these claims.

Section 541(a) provides that "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case" are included in property of the estate. 11 U.S.C. § 541(a)(1). Property becomes property of the estate regardless of location or by whom held. *Id.* As the Supreme Court of the United States stated in *Segal v. Rochelle*, "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." 382 U.S. 375, 379 (1966). Indeed, it is well-settled that section 541(a)(1) encompasses "all legally recognizable interests," even those that are "contingent and not subject to possession until some future time." *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir.1984).

As discussed below, the FAC pleads two bases for the Court to find that the Proceeds are property of the estate. First, the FAC alleges that the Proceeds are property of the estate because

4

Coastal is Debtor's alter ego, and as such, Debtor had an equitable interest in the assets of his alter ego on the petition date under Section 541(a)(1) of the Bankruptcy Code. Second, the FAC alleges that the Proceeds are property of the estate under Sections 541(a)(6) and (a)(7).

### 1. The FAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Pursuant to an Alter Ego Remedy

Neither Oldfield Creely nor the Babcock/Nobles Defendants argue that the FAC fails to allege sufficient facts that Coastal is the Debtor's alter ego. Clearly, the FAC sufficiently pleads such facts. Instead, Oldfield Creely argues the legal significance of an alter ego finding. Oldfield Creely contends that the alter ego theory does not transform Coastal's property into estate property.

However, "[i]t is well established that property of the debtor in the possession, custody and control of its alter ego comprises property of the estate at the commencement of the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy debts of the debtor." *Blomberg v. Riley*, 351 B.R. 662, 671 (Bankr. E.D. Wis. 2006) (citing *In re Sklarin,* 69 B.R. 949 (Bankr. S.D. Fla. 1987)). When one legal entity is but an instrumentality or alter ego of another, by which it is dominated, a court may look beyond form to substance and may disregard the theory of distinct legal entities in determining ownership of assets in a bankruptcy proceeding. *Sklarin,* 69 B.R. at 954 (citing *In re F & C Services, Inc.,* 44 B.R. 863, 868 (Bankr. S.D. Fla. 1984)).

Indeed, "[i]n the context of a bankruptcy case, the application of the alter ego doctrine brings the assets of a debtor's alter ego into the bankruptcy estate." *In re Bellardita*, 2008 WL 4296554, at *11 (citing *Suhl v. Bumb,* 348 F.2d 869, 873 (9th Cir.1965), *cert. denied,* 382 U.S. 938 (U.S. Dec. 6, 1965)). *See also In re Icenhower*, 757 F.3d 1044, 1050 (9th Cir. 2014) (finding that a postpetition transfer of real property owned by Debtors' alter ego was an unauthorized postpetition transfer avoidable under § 549(a)); *In re McKenzie Energy Corp.,* 228 B.R. 854, 869–70 (Bankr. S.D. Tex. 1998) (recognizing that an alter ego finding expands the debtor's estate to include the assets of the debtor's alter ego); *In re Am. Int'l Refinery*, 402 B.R. 728, 748 (Bankr. W.D. La. 2008) ("Taking this analysis to the next step, if the estate includes the assets of an alter ego, a pre-petition transfer of the assets of an alter ego would be subject to an avoidance action by the debtor (or a trustee) because the

5

transfer deprives the estate of assets that, but for the transfer, would have been available to the debtor's creditors.").  Moreover, Plaintiff, as the liquidating trustee, has standing to assert an alter ego claim.  *See Towe v. Martinson,* 195 B.R. 137, 140 (D. Mont. 1996).

"California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice.'"  *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.,* 572 P.2d 755, 761 n.9 (1977)). Factors suggesting an alter ego relationship include, among other things,

> "the unauthorized diversion of corporate funds or assets to other than corporate uses [citation]; the treatment by an individual of the assets of the corporation as his own [citation]; . . . the identical equitable ownership in the two entities; . . . identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family [citation]; . . . the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation [citation]; . . . the disregard of legal formalities and the failure to maintain arm's length relationships among related entities [citation]; the use of the corporate entity to procure labor, services or merchandise for another person or entity [citation]; [and] the diversion [of assets from a corporation by or to a] stockholder or other person or entity, to the detriment of creditors."

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.,* 210 Cal. App. 2d 825, 838-839 (1962) (citations omitted).  "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000); *see also In re Singh*, 2019 WL 12311446, at *6-*7 (setting forth broad inquiry in applying alter ego doctrine to non-debtor corporation of individual debtor).

The FAC sufficiently pleads facts as to each of the factors above.  Specifically, the FAC alleges: (i) Debtor was the president and director and controlled all aspects of Chateau Julien, Coastal, GAW and ACP's operations, including disposition of their assets (¶¶ 38, 61); (ii) although Chateau Julien, Coastal, GAW, and ACP were technically separate entities, Debtor disregarded corporate formalities and freely transferred assets between the companies (¶¶ 39, 67, 68, 70, 88, 89, 90, 95, 103, 105); (iii) the state court added GAW to the Bank's judgment as an alter ego of Chateau Julien (¶¶ 39, 69); (iv) Debtor consistently disregarded Coastal's separateness and freely used

6

Coastal's assets for his own personal use (¶¶ 40, 82, 92, 98, 101, 102, 135, 153); (v) as of the petition date, Debtor was 100% shareholder of Coastal and ACP (¶¶ 58, 77); (vi) Debtor diverted assets of Chateau Julien and Coastal to himself, family members, and friends to the detriment of creditors (¶¶ 68, 85, 86, 88–108, 129, 130, 150); (vii) Debtor diverted assets of Chateau Julien to GAW, ACP and Coastal (¶ 68); (viii) Debtor diverted assets of Coastal to Chateau Julien, GAW, ACP and the Trust (¶¶ 88, 89, 90, 95, 101, 103); (ix) Debtor used Coastal assets to pay for legal services on behalf of Chateau Julien, Debtor, P. Brower, the Trust, Lindley and ACP (¶¶ 98, 99, 135, 139, 140, 146); and (x) Debtor used the Proceeds to purchase a residence for himself (¶ 82).

When taking these allegations as true, as the Court must when ruling on a motion to dismiss, the FAC sufficiently alleges facts to support an alter ego relationship between Debtor, Coastal and Debtor's related entities. Contrary to Oldfield Creely's assertion, a finding that Coastal is Debtor's alter ego would bring Coastal's assets, including the Proceeds, into the Debtor's bankruptcy estate. *Bellardita*, 2008 WL 4296554, at *11. Accordingly, the FAC adequately pleads that the Proceeds are property of the estate under Section 541(a)(1) as Debtor had an equitable interest in the assets of his alter ego. *See Unite Here Health v. Gilbert*, 2014 WL 2527121, at *5 (D. Nev. June 4, 2014) (stating that a debtor has an equitable interest in its alter ego's assets).

### 2. The FAC Also Pleads Sufficient Facts that the Proceeds are Property of the Estate Under 11 U.S.C. §§ 541(a)(6) and (a)(7)

The FAC also pleads sufficient facts that the Proceeds are property of the estate under Sections 541(a)(6) and (a)(7) of the Bankruptcy Code. Section 541(a)(6) provides that property of the estate also includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Section 541(a)(7) provides that property of the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

Section 541(a)(6) is a "generous provision that sweeps into the bankruptcy estate all interests held by the debtor -- even future, non-possessory, contingent, speculative, and derivative interests." *In re Giant Gray, Inc.*, 629 B.R. 814, 843 (Bankr. S.D. Tex. 2020). "Congress intended

1  for the definition of proceeds to be more expansive than that found in the Uniform Commercial Code

2  and 'encompass[ ] any conversion in the form of property of the estate, and anything of value

3  generated by property of the estate.'" *Id.* Thus, the statute makes clear that if a debtor has a

4  contingent right to receive funds in the future on the petition date, that contingent right belongs to

5  the bankruptcy estate. *In re Whittick*, 547 B.R. 628, 635 (Bankr. D.N.J. 2016).

6        Defendants argue that the estate's interest in Coastal is of the stock, and not of Coastal's

7  assets themselves. The Defendants' arguments seek to split hairs insofar as the Debtor had sole

8  control and ownership of Coastal, a non-operating entity, which consisted merely of a bank account

9  with net proceeds from the sale of its only asset. FAC, ¶ 73. Indeed, as the 100% owner of Coastal,

10  "control" of Coastal, as that term is defined in Section 160 of California's Corporation Code, was

11  vested in the estate. As a result of his stock ownership, the Debtor owned Coastal's sole asset—*i.e.*,

12  the net proceeds from the sale. *See In re Milden*, 111 F.3d 138 (9th Cir. 1997) ("Once appointed, the

13  Trustee acted as representative of the estate pursuant to 11 U.S.C. § 323(a), with the power and duty

14  to manage all of the assets of the estate, including the stock, books and records in a wholly-owned

15  corporation.") citing *In re Baker*, 68 B.R. 360, 363 (D. Or. 1986) ("since the corporation was wholly

16  owned by the debtors, it became an asset of this estate, upon the filing of the Chapter 11 petition"

17  citing 11 U.S.C. § 323(a)); *In re Yona*, 2017 WL 2491493, at *7 (C.D. Cal. June 8, 2017) (court

18  found that corporation owned 100% by individual debtor "was itself an asset of the estate"); *In re*

19  *Pisculli*, 2009 WL 700059, at *3 (Bankr. E.D.N.Y. Mar. 4, 2009) ("Ordinarily, the stock of a debtor's

20  closely owned corporation, and consequently that value of its assets, after payment of the

21  corporation's debts, is property of a debtor's bankruptcy estate."), *aff'd*, 426 B.R. 52 (E.D.N.Y.

22  2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011). This authority makes clear that Coastal, 100% owned

23  by the Debtor, was an asset of the estate and the Debtor was no longer vested with control to manage

24  this asset, let alone transfer the proceeds from the sale of Coastal's only asset without Court approval.

25        Defendants argue that the Proceeds cannot be property of the estate because the Proceeds

26  were never distributed to the shareholders, Coastal was not liquidated, and no portion of the

27  Proceeds were segregated and set aside for dividend payment. Defendants' argument improperly

28  elevates form over substance and, in fact, is contrary to the alter ego allegations, which evidence that

8

the Debtor did distribute the Coastal proceeds to himself and others. Coastal was not conducting business; rather, the Debtor was simply siphoning off the Proceeds for his personal use.

Indeed, "[b]ankruptcy courts are courts of equity. As such, they possess the power to delve behind the form of transactions and relationships to determine the substance." *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991) (citing *Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc. (In re Global W. Dev. Corp.),* 759 F.2d 724, 727 (9th Cir. 1985)); *Ohio v. Collins (In re Madeline Marie Nursing Homes),* 694 F.2d 433, 436 (6th Cir. 1982); *ITT–Industrial Credit Co. v. Hughes,* 594 F.2d 384, 386 (4th Cir. 1979). Defendants simply ignore the fact that there were no independent directors of Coastal and Coastal was a non-operating entity, completely controlled by the Debtor. Debtor and Debtor alone was the <u>only</u> party with control over the Proceeds.

Moreover, bankruptcy courts have routinely held that the primary asset of a closely held corporation owned by the debtor is property of the bankruptcy estate. *See*, *e.g.*, *In re Yona*, 2017 WL 2491493, at *7; *In re Baker*, 68 B.R. at 363; *In re Pisculli*, 2009 WL 700059, at *3 (Bankr. E.D.N.Y. Mar. 4, 2009); *In re Walhof Properties, LLC*, 613 B.R. 479 (Bankr. M.D. Fla. 2020) (holding that surplus proceeds resulting from sale of property owned by corporate chapter 11 debtor were not excluded from property of its direct and indirect equity holders' individual chapter 7 estates); *In re Friskney*, 282 B.R. 250, 253 (Bankr. M.D. Fla. 2002) ("The Court agrees that ordinarily the stock of a debtor's closely owned corporation (and consequently the value of its assets), after payment of the corporation's debts, is property of a debtor's bankruptcy estate."); *In re Hill,* 265 B.R. 296, 300 (Bankr. M.D. Fla. 2001) (the sole asset of a closely held corporation owned by the debtor was property of the estate such that the post-petition transfer of the asset was avoidable pursuant to 11 U.S.C. § 549); *In re Hollingsworth,* 224 B.R. 822, 829 (Bankr. M.D. Fla. 1998) (airplane which was owned by debtor's corporation and not by debtor himself was considered to be property of the debtor for purposes of denying debtor's discharge under 11 U.S.C. § 727(a)(2)); *In re Beshears,* 196 B.R. 464, 467 (Bankr. E.D. Ark. 1996) (real property owned by a closely held corporation in which debtor owned 50% of the stock was property of the estate, such that the post-petition transfer of the property was avoidable pursuant to 11 U.S.C. § 549); *In re Adams*, 31 F.3d 389, 394 (6th Cir. 1994) (transfer of property of a corporation wholly owned by the debtor was a transfer of property of the

9

debtor).  Moreover, in *In re Baker* the bankruptcy court held the debtor's wholly owned corporation

became an asset of the bankruptcy estate upon filing of the debtor's chapter 11 petition such that the

chapter 11 trustee could not make payments from the corporation to himself and others without the

court's approval.  68 B.R. at 363-65.

In *In re Yona*, a Central District of California found that an individual's wholly owned

corporation was an asset of the estate and that the trustee had standing to challenge liens placed on

that corporate entity:

> Debtor Caroline Yona owned 100% of the shares of Yona Inc. Because
> "property of the estate" includes "all legal or equitable interests of the debtor
> in property as of the commencement of the case," § 541(a)(1), the estate
> owned 100% of Yona Inc.
>
> ***The Dayco Liens encumbered the assets of Yona Inc., and Yona Inc. was
> itself an asset of the estate***. Any claims attacking the validity or
> enforceability of the Dayco Liens belonged to the Trustee, who had standing
> to pursue such claims as a representative of the estate charged with
> liquidating assets for the benefit of creditors. The reason is that the Dayco
> Liens encumbered estate assets, meaning that any action to invalidate those
> liens would free up additional assets to be administered for the benefit of
> creditors. By bringing in additional assets to the estate, an action attacking
> the Dayco Liens would redress injury to the Debtors (the injury being the
> deprivation of the assets encumbered by the Dayco Liens) Such an action
> qualifies as a claim of the debtor which the Trustee has statutory authority to
> assert. In sum, any and all claims attacking the validity and/or enforceability
> of the Dayco Liens—whether brought under the theory that the Dayco Liens
> were voidable as a fraudulent transfer, were voidable based on lack of
> consideration, or were voidable for any other reason—belonged to the
> Trustee.

*In re Yona*, 2017 WL 2491493, at *7 (emphasis added).

Indeed, this case is on all fours with *In re Pisculli*.  In *Pisculli*, prior to the petition date, the

debtor was the owner and sole shareholder of three corporations, LJC Truck Service Inc., J.R.

Materials Corp. and A.N. Leasing Corp. *Id.* at *1.  Approximately five months after the petition date,

and while the debtor's chapter 13 case was pending, the debtor sold assets owned by A.N. Leasing

Corp. and used the sale proceeds to pay creditors of the debtor's other businesses and transferred

$80,000 to the debtor's wife. *Id.*  A month later, the debtor's chapter 13 case was converted to one

under chapter 7. *Id.*  Thereafter, two of the debtor's creditors filed a complaint objecting to the

debtor's discharge under section 727(a)(2)(B) based on the transfers.  *Id.*  The bankruptcy court

10

found that the sale proceeds constituted a post-petition transfer of property of the estate and denied

the debtor's discharge. *Id.* at *2. In coming to this decision, the court found

> . . . that the Debtor had more than a mere derivative interest in the transferred property. Once the Debtor liquidated the assets of A.N., the Debtor had a ***direct interest*** in the proceeds.

*Id.* at *3 (emphasis added). In relevant part, the court reasoned that:

> The Debtor was the sole shareholder and owner of A.N. The Debtor directed the Sale of the Assets of A.N. and paid off the remaining obligations of A.N. Debtor and his wife testified that once the notes on A.N.'s trucks were paid, A.N. had no other debts and was no longer conducting any business. ***Having liquidated the Assets, equity for the shareholders was created and the Debtor as the corporation's owner and direct beneficiary had full control over the Proceeds***.

*Id.* (emphasis added). The bankruptcy court's ruling was affirmed by the district court in *In re Pisculli*, 426 B.R. 52 (E.D.N.Y. 2010), wherein in the court found that:

> It was not clear error for the bankruptcy court to find that since appellant was the only person with any interest in A.N. Leasing after it liquidated all of its assets and effectively ceased to exist, he had a direct interest in the proceeds from the sale of those corporate assets.

*Id.* at 60; *see also In re Mosher*, 417 B.R. 772 (Bankr. N.D. Ill. 2009). As the *Mosher* court held:

> … since the Debtor was the only person with any interest remaining in the defaulting corporation after this purchase, the assets of the corporation were effectively liquidated to him (since he would otherwise only be holding the assets in trust for himself) and the corporation completely ceased to exist. ***Thereafter, all assets of the corporation were the assets of the Debtor and all purported actions of the Debtor on behalf of the defunct corporation were actually the actions of the Debtor.***

417 B.R. at 780 (emphasis added).

The *Pisculli* district court decision was upheld by the Second Circuit, which held that "the bankruptcy court did not err in holding that the truck sale proceeds were property of the bankruptcy estate because [the debtor], as sole owner and shareholder of A.N. Leasing Corp., had full control of those proceeds." *In re Pisculli*, 408 F. App'x. 477, 479 (2d Cir. 2011).

Here, on the petition date, Debtor held legal and equitable claims for dividend payments from Coastal and for claims to Coastal's assets upon dissolution of the corporation, which claims transferred to the bankruptcy estate on the petition date. As alleged, the only business purpose for Coastal's existence was to hold title in the Property. FAC, ¶ 4. As further alleged, Debtor's

11

bankruptcy estate at all relevant times was the sole shareholder of Coastal.  *See*, *e.g.*, FAC, ¶¶ 2. Once Coastal sold the Property, Coastal ceased all business operations and was merely a shell to hold the Proceeds.  *See*, *e.g.*, FAC, ¶¶ 4, 34, 67; see also Dkt. No. 27, at p. 33 (Court found Coastal to be a non-operating entity that is simply "holding funds").  Indeed, Coastal had no other assets. FAC, ¶¶ 4, 70, 73.  Having liquidated the sole asset of Coastal and all creditors other than the Debtor being paid in full, the Debtor as Coastal's sole shareholder and owner and direct beneficiary had a direct interest in the proceeds via his 100% interest in the stock of Coastal and full control over their disposition and management of Coastal.  FAC, ¶¶ 5, 70, 73, 74, 93–94.  At that point, Coastal effectively ceased to exist and Debtor held the Proceeds in trust for himself as sole shareholder of Coastal's stock.  FAC, ¶ 73.  As all of Coastal's creditors were repaid (other than the Debtor) and the sale of the Property generated excess profits, as Coastal's sole shareholder, Debtor was entitled to take a distribution of the entire amount of the Proceeds.  FAC, ¶¶ 5, 74, 93–94.  However, Debtor intentionally chose not to take a distribution from Coastal or to dissolve Coastal in order to avoid the proceeds being made available to creditors of Debtor's estate.  FAC, ¶¶ 5, 74, 76.  Indeed, throughout the pendency of Debtor's bankruptcy case, Debtor consistently represented to the Court that the Proceeds "were always to come in to the Debtor, either through a distribution from the corporation or sale of shares."  FAC, ¶ 75; Doc. 27, Exh. B, 12:14–18.

As the President and sole shareholder of Coastal, the Debtor exercised full control over the Proceeds.  This is not a situation where the wholly owned corporate entity was separately managed and controlled.  *See* 9 Witkin, Summary of Cal. Law (11th ed. 2021 supplement) Corporations, § 19, p. 1 ("if in addition to ownership there is relatively complete management and control by the parent, equity may in the interests of justice disregard the entity and treat the corporations as one").  Coastal was not an operating entity, it had no management, directors, officers, or employees, no ongoing business, and the Debtor was solely in control of the Proceeds.  FAC, ¶ 77.

Other than Debtor (FAC, ¶¶93–94), Coastal's only other creditor—the secured lender on the Property—was paid through escrow.  FAC, ¶¶ 65, 73, 74; Exhibit 6.  At that point, as in *In re Pisculli*, Debtor's contingent interest in the Proceeds became a direct interest.  Debtor, by liquidating the only asset of Coastal and Coastal effectively ceasing to exist, was simply holding assets in trust

12

2754547_2 (002)

for himself and over which assets he exercised full control.  There was no other party that could have claimed an interest in the Proceeds or directed its distribution.  Debtor's control over the Proceeds is further confirmed by Debtor's use of the Proceeds to purchase a residence for himself (¶ 82) and for his personal living expenses to fund his extravagant lifestyle (¶ 102), and by his use of the Proceeds to transfer them to himself, his related entities, his family and his friends (¶¶ 70–153).  As alleged, Debtor's transfers of the Proceeds were not made for legitimate business purposes as Coastal had no business operations.  FAC, ¶¶ 77, 90, 97, 100, 102, 151, 153.  Under bankruptcy law, the Debtor was divested of control when he filed for bankruptcy and Coastal became an asset of the estate—and any transfer of Coastal's assets required Court approval.  *See In re Baker*, 68 B.R. at 364–65.[1]

Defendants argue that the Court has already rejected Plaintiff's theory that the Proceeds are property of the estate under Sections 541(a)(6) and (a)(7).  However, in the Court's oral ruling on the prior motions to dismiss, the Court did not reject the Liquidating Trustee's legal theory discussed above (and, in fact, it accepted MUFG's argument in a related adversary proceeding).  Rather, the Court stated that the facts alleged in the Omnibus Opposition did not support the Liquidating Trustee's legal argument.  Specifically, the Court found that because the Liquidating Trustee sold real property in Delaware titled in the name of Coastal, Coastal could not have liquidated all of Coastal's assets before the sale of that property.

What was not made clear to the Court in the Omnibus Opposition, at oral argument, or the original complaint was that Coastal did not own the Delaware residence at the time of the sale of the Property.  Indeed, after the sale, Coastal did not have any assets other than the Proceeds.  Almost two years after the sale of the Property, Debtor used the Proceeds to purchase a personal residence for himself and his wife in Delaware.  FAC, ¶ 82; n.4.  Debtor's use of the Proceeds to purchase the Delaware residence was itself a postpetition, fraudulent transfer.  FAC, ¶ 82.  The Liquidating

---

[1]  Even were the Court to find that Coastal was not an asset of the estate, there is no question that 100% of Coastal's stock was an asset of the Brower estate. The Brower estate, as the sole shareholder of Coastal, was solely entitled to the Proceeds (which were net of all creditor claims other than the Brower debt).  As debtor in possession, the Debtor did not have unilateral authority to make such a substantial decision (i.e., decide to dissipate all remaining corporate assets of Coastal, thus making the asset of the estate, the stock, worthless) without this Court's approval, given that such transaction was most certainly outside the ordinary course of the Debtor's business dealings as a fiduciary to this estate, as well as outside Coastal's ordinary course (as a defunct company). *See* 11 U.S.C. § 363(b)(1); Cal. Corp. Code § 1001.

13

2754547_2 (002)

1    Trustee was able to recover that postpetition, fraudulent transfer separately from this adversary

2    proceeding, and liquidated the Delaware residence for the benefit of Debtor's creditors. *Id.* This is

3    clarified in the FAC. Had the Liquidating Trustee not been successful in recovering the Delaware

4    residence, a claim for turnover would have been included in the FAC. If anything, Debtor's

5    subsequent use of the Proceeds to purchase a home for himself does not defeat the Liquidating

6    Trustee's legal argument, but rather bolsters it as it demonstrates Debtor's complete control over the

7    Proceeds and lack of use of the Proceeds for legitimate business purposes.

8        The allegations in the FAC, at a minimum, create a question of fact that cannot be decided on

9    a motion to dismiss. Indeed, the crux of the allegations are that the payments to the Defendants were

10   not legitimate in the first instance such that the monies should never have been transferred from

11   Coastal. Had the monies remained with Coastal (rather than being transferred for no consideration,

12   as alleged in the FAC), there is no doubt that Debtor's estate would be entitled to those funds as

13   proceeds of Debtor's 100% interest in Coastal's stock. The bankruptcy estate's right to a dividend

14   payment from Coastal is property of the estate under Section 541(a)(6), and it is an interest in

15   property that was acquired after commencement of the case pursuant to Section 541(a)(7).

16       As alleged, Debtor intentionally kept the Proceeds in a bank account titled in Coastal's name

17   so as to avoid the Proceeds being made available to creditors of Debtor's estate. *See, e.g.*, FAC, ¶¶

18   5, 74, 76, 77, 78. Debtor's scheme was to keep the Proceeds from the bankruptcy estate outside the

19   purview of this Court. *Id.* Debtor was only able to implement his scheme by intentionally not

20   labeling the Proceeds as "dividend payments," by not dissolving Coastal (even though it had no

21   ongoing business operations), and by clouding ownership of Coastal (which ownership claims by

22   certain defendants were subsequently rejected in the Enhancement Action). Merely because Debtor

23   made the Transfers from Coastal's bank account, rather than transferring the Proceeds to himself

24   first, makes no difference in terms of whether the money transferred constituted estate property. *See*

25   *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 466–68 (Bankr. D. Del. 2017) ("The creation of an

26   intermediary corporation does not insulate the defendants from liability for fraudulent transfers.").

27       Oldfield Creely additionally argues that the Trust is not part of the estate and it is not

28   Debtor's property. But the Liquidating Trustee alleges that Oldfield Creely is a <u>subsequent</u>

14

transferee of at least $15,338.80 in Proceeds transferred by Debtor from Coastal's account to the Trust. FAC, ¶ 146. "To plead the subsequent transfer prong, the complaint must allege facts that support the *inference* that the funds at issue originated with the debtor, and contain the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 473 (Bankr. S.D.N.Y. 2015) (internal quotations and citations omitted). "The plaintiff's burden at the pleading stage is not so onerous as to require dollar-for-dollar accounting of the exact funds at issue." *Id*. (internal quotations and citations omitted).

The FAC meets these standards. As discussed above, the FAC alleges facts to support the inference that the funds at issue were property of the estate. Further, the FAC contains the necessary vital statistics. The FAC alleges that the Debtor transferred the funds from Coastal's account to the Trust, which in turn transferred the funds to Oldfield Creely. The exact amount of each of the Transfers, the date of each of the Transfers, and the originating bank account are listed on Exhibit 20, which is incorporated by reference into the FAC. The Liquidating Trustee does not need to allege dollar-for-dollar accounting of the exact funds at issue at this stage. The Complaint sufficiently alleges that the Transfers were made from property of the estate.

**C.      The Second and Third Claims (Fraudulent Transfers) are Sufficiently Pled**

In the Motions, Defendants argue that the Second and Third Claims should be dismissed because the Liquidating Trustee lacks standing to pursue the fraudulent transfer claims and the claims are barred by the doctrine of unclean hands. However, as discussed more fully below, under the Plan, the Liquidating Trustee has the power to bring claims on behalf of creditors and to bring direct claims held by the bankruptcy estate. *See, e.g., In re Yona*, 2017 WL 2491493, at *7. The postpetition transfer claims are brought on behalf of creditors of Debtor's bankruptcy estate under section 549. However, the Liquidating Trustee's alternative fraudulent transfer claims as against Defendants are direct claims held by Debtor's bankruptcy estate that arise from the California Civil Code and do not rely on the Transfers being made from Debtor's property. Moreover, the claims are not barred by the doctrine of unclean hands because Debtor's wrongful conduct occurred postpetition and are avoidance claims.

15

Oldfield Creely additionally argues that the FAC fails to allege the elements of the fraudulent transfer claims. A cursory review of the FAC reveals that this argument is meritless. Debtor's actual intent to hinder, delay or defraud creditors is sufficiently alleged in the FAC. *See*, *e.g.*, FAC, ¶¶ 6, 36, 42, 76, 77, 82, 84. As Debtor was the director and sole shareholder of Coastal, Debtor's fraudulent intent is imputed to Coastal. *Consove v. Cohen (In re Roco Corp.),* 701 F.2d 978, 984 (1st Cir. 1983) (fraudulent intent of president and sole shareholder imputed to corporation because of his position of control); *In re National Audit Def. Network,* 367 B.R. 207, 221 (D. Nev. 2007) (fraudulent intent of corporate officers who signed checks, made wire transfers imputed to corporation in scheme to benefit insiders). The FAC alleges that Coastal did not receive reasonably equivalent value because it paid for legal services that were provided to another entity, Chateau Julien. FAC, ¶ 147. Coastal was not a party in the state court action, there was no business purpose for Coastal to pay for Chateau Julien's legal fees, and Coastal received no benefit from its payment of legal fees on Chateau Julien's behalf. FAC, ¶ 147. The FAC sufficiently alleges the elements of the fraudulent transfer claims.

## 1. Plaintiff Has Standing to Pursue the Fraudulent Transfer Claims

Pursuant to the Plan, the Liquidating Trustee has the power to prosecute all claims held by Debtor's bankruptcy estate, including causes of action under 544 and 548 of the Bankruptcy Code or under related state statutes and common law. Plan, p. 7. At the time of the subject transfers, Debtor's estate was the sole shareholder of Coastal and Debtor was a creditor of Coastal by virtue of three promissory notes to Debtor based on loans he made to Coastal. *See e.g.*, FAC, ¶¶ 3, 5, 93. As such, at the time of the subject transfers, Debtor's bankruptcy estate held two potential claims for avoidance of the fraudulent Transfers under state law. First, the estate held a claim in its capacity as sole shareholder of Coastal, and second, in Debtor's capacity as creditor of Coastal.

Here, the Liquidating Trustee, as the 100% owner of Coastal is not required to proceed derivatively, for the simple fact that with a one-shareholder corporation there is no distinction to be drawn between the shareholder and the corporation. Under California law, shareholders of a corporation may bring claims in their individual capacity, "'[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a

16

Case: 21-05029   Doc# 85   Filed: 01/24/22   Entered: 01/24/22 15:52:50   Page 24 of 34

contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." *Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946). Indeed, California recognizes an exception to the distinction between derivative and direct actions in the context of closely held corporations—*i.e.*, where there are but a few shareholders. *See Jara v. Suprema Meats, Inc.*, 21 Cal. App. 4th 1238, 1259 (2004) ("[t]he objective of preventing a multiplicity of lawsuits and assuring equal treatment for all aggrieved shareholders does not arise at all when there is only one minority shareholder. The objective of encouraging intracorporate resolution of disputes and protecting managerial freedom is entirely meaningless where the defendants constitute the entire complement of the board of directors and all the corporate officers."); *see also Sanders v. Langmuir-Logan*, 2014 WL 1917679, at *8–9 (Cal. Ct. App. May 14, 2014) "[C]ourts may apply equitable principles when the case deals with a closely held corporation. "[H]armful acts by one officer/shareholder may directly impact the other shareholders, and hence courts are more willing to allow direct actions."). Here, there is a single shareholder; thus, there is no possibility of a multiplicity of suits and the injury to the corporation is necessarily a direct injury to the 100% shareholder individually.[2]

At the time of the transfers, as detailed above, Debtor's bankruptcy estate held a claim for distribution of the Proceeds. Rather than Coastal distributing the Proceeds to Debtor's estate, Coastal transferred approximately $2 million of the Proceeds to Defendants. The estate's claim is not based on alleged harm to Coastal as a whole (i.e., section 544), but rather on the particular harm that the estate as 100% shareholder suffered as a result of the transfers to Defendants, i.e., the loss of approximately $2 million combined. Additionally, as alleged in the FAC at paragraphs 93 and 94, at the time of the transfers, Debtor was an alleged creditor of Coastal. In connection with the Enhancement Action, Debtor testified at a deposition that he made loans to Coastal in 2011 and 2012 totaling approximately $115,000. FAC, ¶ 93–94. Debtor was not fully re-paid until late 2019.

---

[2] Delaware law is instructive in the context of a single shareholder corporation. *See Lambrecht v. O'Neal*, 3 A.3d 277, 288 (Del. 2010) ("As the sole owner of Merrill Lynch, BofA is not required to proceed derivatively; it may enforce that claim by the direct exercise of its 100 percent control"); *see also Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas*, 34 A.3d 1074, 1080, fn. 13 (Del. 2011) (100% owner can "use its 100% controlling position to cause subsidiary to enforce its claim directly").

FAC, Exhibit 8. Thus, the Liquidating Trustee can stand in Debtor's shoes, as creditor of Coastal, and bring a claim to recover the fraudulent transfers that Coastal, the debtor in this instance, made to Defendants. Plaintiff is prosecuting direct claims held by the Liquidating Trustee as representative of Debtor' estate and as sole shareholder of Coastal under California law.

Defendants argue that the Liquidating Trustee's claim is a derivative claim and not a direct claim. The Liquidating Trustee disputes this characterization of the fraudulent transfer claims. The Liquidating Trustee does not allege that he was harmed because of a general diminution in value of Coastal's stock or Debtor's mismanagement of Coastal assets. Rather, the fraudulent transfer claims are based on fraud affecting the Liquidating Trustee directly as sole shareholder of Coastal's stock, and the damages he seeks from Defendants are to compensate the estate for the loss of the Proceeds that should have been transferred to the bankruptcy estate, but instead were wrongfully and fraudulently transferred to Defendants.

Indeed, it would still be the Liquidating Trustee bringing a derivative action. The Liquidating Trustee constitutes the entire complement of the board of directors, corporate officer, and shareholder of Coastal. There are no other parties that have standing to bring a claim on behalf of Coastal. Accordingly, there is not a possibility of multiple lawsuits or the need to ensure equal treatment of more than one shareholder. This case simply does not implicate the policies underlying the direct action vs. derivative action rules.

Finally, the Liquidating Trustee can also assert this claim as a creditor of Coastal assuming, inter alia, that Coastal is not found to be the alter ego of or otherwise an asset of the Debtor. California law provides creditors the right to avoid fraudulent transfers made by a company after the creditor's claim arose. *See* Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07.

### 2. The Fraudulent Transfer Claims are Not Barred by the Doctrine of Unclean Hands Because Debtor's Wrongful Conduct Occurred Postpetition and Avoidance Claims Are Not Subject to this Defense

Defendants argue that the fraudulent transfer claims are barred by the doctrine of unclean hands (*i.e.*, *in pari delicto*),[3] and Plaintiff is estopped from asserting the claims because Debtor made

---

[3] "*In pari delicto* is a state law equitable defense analogous to unclean hands 'rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct.' It is based on the

18

2754547_2 (002)

the transfers. For obvious reasons, the *in pari delicto* defense is not available for claims based on post-petition conduct and, for that matter, do not apply to avoidance power claims (as opposed to trustee claims based upon the debtor's pre-petition right) even if they arise pre-petition.[4] *See In re Roussos*, 2016 WL 5349717, at *11–12; *In re Delano*, 2014 WL 4966476, at *4-*5 (holding that *in pari delicto* did not apply to avoiding power claims, including claim brought pursuant to Cal. Civ. Code § 3439.04); *In re Art & Architecture Books of 21st Century*, 2019 WL 9243053, at *16.

As an initial matter, *in pari delicto* is not applicable to avoidance power claims. In *Art & Architecture*, the Court rejected the argument that *in pari delicto* applied to avoidance power claims, explaining its rationale as follows:

> The court rejects the second defense raised by Chrismas that any alleged misconduct by him as the sole person in control of debtor is imputed to the postconfirmation Reorganized Debtor. Although there is apparently no definitive case law in the Ninth Circuit regarding whether the so-called *in pari delicto* defense may be asserted against a bankruptcy trustee, or here, the plan agent, as to the bad acts of prior management post-petition, as recognized by the court in *C&S Wholesale Grocers, Inc. v. Delano Retail Partners, LLC (In re Delano Retail Partners, LLC)*, 2014 WL 4966476, slip op. at *3-6 (Bankr. E.D. Cal. 2014), this court finds persuasive the Third Circuit's decision and opinion in *In re Personal and Business Insurance Agency*, 334 F.3d 239 (3d Cir. 2003), which held that under the doctrine of imputation, or *in pari delicto*, the bad acts of a debtor's principal could only be imputed to a bankruptcy trustee in the case of prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, **but rights arising under the Bankruptcy Code, such as avoidance claims for fraudulent transfer under 11 U.S.C. § 548, which are not brought into the bankruptcy estate by virtue of 11 U.S.C. § 541, may not be affected by imputation**. . . .

2019 WL 9243053, at *16 (emphasis added). This is a distinction with a difference:

> While the *in pari delicto* defense can be raised against a trustee bringing a debtor's pre-bankruptcy claims under 11 U.S.C. § 541, it cannot be raised against avoidance claims. . . .
>
> **The reasoning is that these avoidance claims are brought under a trustee's avoiding powers and not under his status as a successor in interest to the debtor**. *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir.1996); *In re Dow*, 132 B.R. 853, 861 (Bankr.S.D.Ohio 1991).

idea that 'where parties are equally at fault, the defending party is in the stronger position.' 'It is not enough that both parties are at fault, or in delicto—they must be equally at fault, or in pari delicto.' In other words, *in pari delicto* "refers to the plaintiff's participation in the same wrongdoing as the defendant.'" *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008).

[4] There are generally two types of actions a trustee can pursue. "Such actions…fall into two categories: (1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541, and (2) those brought under one or more of the trustee's avoiding powers." *Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 355-56 (3d Cir. 2001).

19

2754547_2 (002)

*Shults & Tamm v. Tobey (In re Hawaiian Telcom Communications, Inc.*), 483 B.R. 217, 221 (Bankr. D. Haw. 2012) (emphasis added); *see also Art & Architecture*, 2019 WL 9243053, at *16 (acts of "the Debtor-in-Possession during the post-petition administration of the Chapter 11 bankruptcy case are not prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, and therefore, do not implicate the doctrine of imputation. . .".)

Turning specifically to post-petition claims, the case law is uniform that *in pari delicto* does not apply to any claims arising from the Debtor's post-petition conduct, as that conduct (including fraud) is not imputed to the Liquidating Trustee. *In re Roussos*, 2016 WL 5349717, at *11–12; *see also Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.)*, 958 F.2d 602, 604 (4th Cir. 1992); *Rosen v. Gemini Title & Escrow, LLC (In re Hoang)*, 449 B.R. 850, 856–57 (Bankr. D. Md. 2011); *In re Food Mgmt. Grp., LLC*, 380 B.R. 677; *Giacometti v. Arton Berm, Ltd.* (*In re Sukamto Sia*), 349 B.R. 640 (Bankr. D. Hawaii 2006).

In *Roussos*, the court explained why *in pari delicto* did not apply to claims that arise from post-petition conduct. In doing so, the *Roussos* court examined the *Sukamto Sia* case. In *Sia*, Sukamto Sia filed a chapter 11 petition and acted as debtor-in-possession for approximately two months until a chapter 11 trustee was appointed. *Id.* at 645. Several months after the chapter 11 trustee was appointed, the case was converted to Chapter 7. *Id.* The *Sukamto Sia* court held that the chapter 7 trustee was not precluded from pursuing an action against Sia and other conspirators for misappropriating property from creditors and from the bankruptcy estate, stating in relevant part:

> As to postpetition activities of the debtor and co-conspirators, the result is different. The trustee has standing to sue, because the injury is to the bankruptcy estate. The property of a chapter 7 bankruptcy estate belongs to the trustee, not to the debtor. If the trustee's conspiracy claims are based upon postpetition activities of the conspirators, it does not matter whether or not the debtor is one of the conspirators. The debtor's postpetition unclean hands do not impair the ability of the trustee in bankruptcy to pursue the debtor and debtor's co-conspirators.

349 B.R. at 655.

As in *Sukamto Sia* and *Roussos*, the fraud alleged here occurred while Debtor was acting as debtor-in-possession. The Liquidating Trustee is not suing Defendants based on a cause of action that belonged to the Debtor at the time the estate was created when the chapter 11 petition was filed,

which the Liquidating Trustee would acquire under Section 541(a)(1) subject to whatever infirmities (such as an *in pari* delicto defense) that may have existed. *Food Mgmt. Grp., LLC*, 380 B.R. at 693. Rather, the claims asserted here are property of the estate under Section 541(a)(7)—an "interest in property that the estate acquires after the commencement of the case"—and it is Debtor's postpetition conduct that gave rise to the claims. The Liquidating Trustee is in no sense a wrongdoer nor does he come to the Court with unclean hands. *See id.*, 380 B.R. at 694 ("A chapter 11 trustee as the representative of the estate is in no sense a wrongdoer (imputed or otherwise) when fraud is committed by the debtor's principals in connection with a Bankruptcy Code § 363 sale of estate assets that requires court approval."). Even as to prepetition claim, if the trustee is standing in the shoes of creditors, those avoidance power claims are, likewise, not subject to this defense.

As explained by the court in *Rosen v. Gemini Title & Escrow, LLC (In re Hoang),* 449 B.R. 850, 856–57 (Bankr. D. Md. 2011), upon the commencement of a chapter 11 petition, debtors become fiduciaries to the estate and are obligated to act in the interests of creditors. If debtors take actions that are harmful to the estate, they are not acting as fiduciaries. *Id.* at 858. Such actions should be construed as having been taken in the debtor's personal capacity, rather than in their capacity as an estate fiduciary. *Id.* Therefore, the harmful actions cannot be imputed to any subsequently appointed trustee. *Id.* As further explained by the *Roussos* court:

> It is common for Chapter 11 debtors-in-possession to be divested of their fiduciary responsibilities, either through appointment of a Chapter 11 Trustee or conversion of the case to Chapter 7. That appointment or conversion often occurs as a result of the debtor's misappropriation of estate assets. Adopting Defendants' theory would prevent trustees from commencing actions to recover the misappropriated assets. Such an outcome would hamper trustees' ability to liquidate assets for the benefit of creditors.

2016 WL 5349717, at *12.

As the fraud alleged in the FAC occurred postpetition (and, in any event these are avoidance power claims regardless of when the conduct occurred), the Liquidating Trustee is not barred from asserting fraudulent transfer claims against Defendants, and the Motions should be denied.

### D. The Ninth Claim (Disgorgement) is Sufficiently Pled

Oldfield Creely argues that the Ninth Claim must be dismissed because: (i) the Proceeds are not property of the estate; (ii) it did not represent Debtor in connection with the bankruptcy case; and

21

1  (iii) it did not receive notice that it was required to file an application to receive compensation.

2  These arguments fail.  As discussed above, the FAC sufficiently pleads facts to establish that the

3  Proceeds are property of the estate.  Additionally, it makes no difference whether Oldfield Creely

4  represented Debtor or one of Debtor's corporations or a third party in the state court action because

5  it was compensated for its services through estate funds.  Pursuant to Fed. R. Bankr. P. 2016(a), a

6  person seeking compensation from the estate must file an application with the Court.  *See In re*

7  *Baker*, 68 B.R. 360, 365 (D. Or. 1986).  At all relevant times, the Proceeds were property of the

8  estate.  *See* FAC, ¶ 3.  Oldfield Creely never filed an application to be employed by the estate and it

9  did not receive Court approval for payment of any of its fees, yet was paid over $200,000 in estate

10  property for its services.  FAC, ¶¶ 146, 148.

11         Moreover, Oldfield Creely has not provided any relevant authority regarding its notice

12  argument.  The case cited by Oldfield Creely, *Bank of Marin v. England*, 385 U.S. 99, 87 S. Ct. 274

13  (1966), is inapposite to the facts here.  *Bank of Marin* is not case dealing with disgorgement of fees

14  paid to an attorney with estate funds without court approval.  Rather, *Bank of Marin* involved a bank

15  honoring a check that was written by the debtor prepetition, but cashed postpetition.  In *Bank of*

16  *Marin*, the Supreme Court of the United States held that "[a]bsent revocation by the drawer or his

17  trustee or absent knowledge or notice of the bankruptcy by the bank, the contract between the bank

18  and the drawer remains unaffected by the bankruptcy and the right and duty of the bank to pay duly

19  presented checks remain as before." 385 U.S. at 102, 87 S. Ct. at 277.  *Bank of Marin* is simply not

20  relevant to this case in any way.

21         The relevant case law is directly contrary to Oldfield Creely's argument that they were

22  entitled to notice that a bankruptcy trustee could avoid the transfers to it.  *See*, *e.g.*, *In re Redf Mktg.*,

23  *LLC*, 536 B.R. 646, 655 (Bankr. W.D.N.C. 2015) (finding that transfer avoidance defendants were

24  not entitled to notice of the bankruptcy proceedings); *In re S. Indus. Banking Corp.*, 66 B.R. 349,

25  361 (Bankr. E.D. Tenn. 1986) ("Formal notice of bankruptcy proceedings to potential preference

26  defendants has never been customary and perhaps never considered previous to this case. This court

27  is confident that neither Congress nor the Bankruptcy Rules Committee envisioned formal notice of

28

2754547_2 (002)

1  bankruptcy proceedings to transferees of avoidable transfers or their participation in reorganization

2  proceedings until disgorgement of the avoidable transfer.").

3  Even assuming the Court accepts Oldfield Creely's notice argument, whether Oldfield Creely

4  had notice of Debtor's bankruptcy case is an issue of fact subject to discovery that cannot be decided

5  on a motion to dismiss. Presumably, Oldfield Creely had actual knowledge of the Debtor's

6  bankruptcy case because it was retained by the Debtor and Chateau Julien in the state court action.

7  Indeed, the state court litigation against Debtor was stayed because of his bankruptcy filing. FAC, ¶

8  65. To the extent that Oldfield Creely had actual knowledge of Debtor's bankruptcy case, that is

9  sufficient to put Oldfield Creely on inquiry notice that it was required to file an application to be

10  employed by the estate prior to receiving payment of its fees from estate property. *See*, *e.g.*, *In re*

11  *Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1430–31 (9th Cir. 1990).

12  Whether Oldfield Creely had notice of Debtor's bankruptcy case may go to a good faith

13  defense, however, it does not defeat Plaintiff's claims on a motion to dismiss. Accordingly, the

14  Oldfield Creely MTD should be denied as to the Ninth Claim.

15  **E.    The Claim for Attorneys' Fees Against Oldfield Creely**

16  Oldfield Creely argues that the Liquidating Trustee's prayer for relief for attorneys' fees and

17  costs should be dismissed. Under the American Rule, "the prevailing litigant is ordinarily not

18  entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v.*

19  *Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L. Ed. 2d 141 (1975). "However, this

20  general rule can be overcome by statute or by an 'enforceable contract' allocating attorney's fees."

21  *In re Carey*, 446 B.R. 384, 390–91 (B.A.P. 9th Cir. 2011) (citing *Fleischmann Distilling Corp. v.*

22  *Maier Brewing Co.*, 386 U.S. 714, 717 (1967)).

23  It is premature for the Court to dismiss the prayer for relief for attorneys' fees and costs

24  permitted under applicable law. To the extent that discovery discloses a retainer or other contract

25  between Debtor and Oldfield Creely that provides for attorneys' fees and costs to the prevailing

26  party, the claim for attorneys' fees and costs should not be dismissed as to Oldfield Creely.

27  Accordingly, the Court should deny the Oldfield Creely MTD as to the Plaintiff's prayer for

28  attorneys' fees and costs.

23

### III. LEAVE TO AMEND SHOULD BE PERMITTED IF THE COURT GRANTS THE MOTION TO DISMISS ON ANY GROUNDS

In considering dismissal for failure to state a claim, a "court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (the five *Foman* factors are:  "[1] bad faith, [2] undue delay, [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the plaintiff has previously amended the complaint.").

As discussed above, the Motions should be denied because Defendants have failed to establish that dismissal for failure to state a claim is warranted, let alone without leave to amend.  To the extent that the Court finds any merit in the motions to dismiss, the Liquidating Trustee requests leave to amend to address any deficiencies or infirmities that the Court may identify.  *E.g.*, *Aguayo*, 653 F.3d at 917 ("A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.").

### IV. THE COURT SHOULD NOT STRIKE ANY PORTION OF THE FIRST AMENDED COMPLAINT

The Babcock/Nobles Defendants argue that in the event the Court does not dismiss the First Claim for relief, the Court should strike paragraphs 157 and 158 of the FAC under Rule 12(f).  The Babcock/Nobles Defendants argue that the Court has already ruled that the Proceeds are not property of the estate pursuant to Sections 541(a)(6) and (a)(7), and thus, the paragraphs referenced are insufficient, immaterial or impertinent allegations.  The Babcock/Nobles Defendants also request that the Court strike the reference to Section 544 of the Bankruptcy Code in paragraph 8 of the FAC.

The function of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by disposing of those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010).  A motion to strike is appropriate where it will "eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger v. Prospect Mortg., LLC,* 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011).  The Ninth Circuit has defined

24

"immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citation omitted), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990)). "Impertinent" has been defined to include allegations that are not responsive or relevant to issues involved in the action, and "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711.

Here, the Babcock/Nobles Defendants have not shown that striking paragraphs 8, 157, and 158 will eliminate serious risk of prejudice to them, delay or confusion of the issues. In fact, the Babcock/Nobles Defendants did not allege any prejudice to them from keeping the allegations in the FAC. They argue that the allegations are insufficient, immaterial, or impertinent. This is false.

As discussed above, in the Court's oral ruling the Court found that the facts in the Omnibus Opposition did not support the Liquidating Trustee's legal theory. The Court did not rule on a final basis that the Proceeds are not property of the estate. In fact, the Court noted that the initial complaint asserted colorable legal theories and allowed the Liquidating Trustee to amend the complaint to include additional facts as to why the Proceeds are property of the estate. The allegation that the Proceeds are property of the estate under Sections 541(a)(6) and (a)(7) is essential to the claims for relief in the FAC, and it pertains to the issues in question. Accordingly, the allegations in paragraphs 157 and 158 are not impertinent, immaterial or insufficient.

Likewise, the reference to Section 544 is essential to the Liquidating Trustee's claim for recovery of fraudulent transfers that Debtor made of the Proceeds to Chateau Julien prepetition (¶¶ 88–91) as the FAC seeks to hold Debtor (via the Trust) liable for these transfers. The Liquidating Trustee can use his strong arm powers under Section 544 to recover these transfers from the Trust. Additionally, the reference to Section 544 is responsive and relevant to the issues involved in this case. Accordingly, the Court should not strike the reference to Section 544 in paragraph 8 because it is not insufficient, immaterial, or impertinent.

The Court should deny the Babcock/Nobles MTD with respect to its alternative request that the Court strike portions of the FAC.

25

1    **V.    CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motions in

3    their entirety, or alternatively, that he be granted leave to amend the FAC to remedy any defect

4    therein which the Court may identify.

5    DATED:  January 24, 2022                          BG LAW LLP

6
                                                       By:_____
7                                                         Jason B. Komorsky
                                                          Jessica L. Bagdanov
8                                                         Jessica S. Wellington
                                                       Attorneys for Michael G. Kasolas, Liquidating Trustee
9                                                      For the Robert Brower, Sr. Liquidating Trust

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2754547_2 (002)