

The following constitutes the order of the Court.
Signed: March 23, 2022

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In<br>ROBERT S. BROWER, SR.,<br><br>Debtor. | Case No. 15-50801 MEH<br>Chapter 11 |
| MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT BROWER, SR. LIQUIDATING TRUST,<br>Plaintiff.<br>v.<br>PATRICIA BROWER, SOLELY AS TRUSTEE OF THE BROWER TRUST (2015), DATED JUNE 30, 2015, et. al.,<br>Defendants. | Adv. No. 21-05029<br><br><u>Video Hearing</u><br>Date:   February 7, 2022<br>Time:   11:00 a.m. |

## MEMORANDUM DECISION

Before the Court are two motions seeking dismissal of Trustee's,[1] First Amended Complaint (Dkt. #58)[2] (hereinafter "FAC"). Trustee seeks to recover funds transferred from Coastal Cypress Corporation ("Coastal"), a company owned by Debtor, to the defendants.

---

[1] Plaintiff Michael Kasolas, solely in his capacity as the Liquidating Trustee for the Robert Brower Sr. Liquidating Trust ("Trustee").
[2] All "Dkt." references are to entries on this adversary proceeding's docket unless otherwise specified.

Two parties filed motions to dismiss in response: (1) Defendants Aurora Capital Advisors, Richard Babcock, Anthony Nobles, and Med-Venture Investment LLC (collectively, "Aurora") (Dkt. #65), and (2) Defendant Oldfield Creely, LLP ("Oldfield") (Dkt. #73) (Aurora and Oldfield are referred to collectively as "Defendants"). Defendant Johnson, Rovella, Retterer, Rosenthal, and Gilles, LLP ("JRG") filed joinders to both (Dkt. #81, #82). Trustee subsequently filed an Omnibus Opposition (Dkt. #85). Oldfield and Aurora filed replies (Dkt. #88, #89 respectively), and JRG filed a joinder to Oldfield's reply (Dkt. #90). A hearing was held on February 7, 2022. Appearances were as stated on the record. At the conclusion of the hearing, the court took the motions under submission.

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(E) and (H). The following constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

BACKGROUND

Debtor Robert Brower, Sr. filed a chapter 11 bankruptcy case on March 11, 2015. In his schedules, Debtor identified "Shares in Coastal Cypress Corporation" as his personal property and did not seek to exempt them from assets of his estate (B/K No. 15-50801, Dkt. # 1, Sch. B). Coastal owned real property used as a wine estate by Chateau Julian, another corporation of which Brower was the principal.

Coastal sold the real property in the Spring of 2015, and net proceeds totaled over $7,000,000. In July 2015, Brower reported to the court Coastal had "closed" a sale of the property, but the closing was not final, and Coastal had not made a distribution to shareholders, including Debtor (B/K No. 15-50801, Dkt. #50).

MUFG Union Bank, N.A. ("MUFG"), the largest creditor of Debtor's estate, confirmed a plan of reorganization ("Plan") on November 6, 2017 (B/K No. 15-50801, Dkt. #233, #236). The Plan provides for the appointment of a Liquidating Trustee with the power to prosecute claims on behalf of Debtor's bankruptcy estate ("Estate"). At confirmation, the Plan contemplated the Trustee would not have authority over certain causes

of action on the confirmation date, instead, the Trustee would have authority to pursue claims if and when the Effective Date occurred (B/K No. 15-50801, Dkt. #233, p. 19-22).[3] The Effective Date was September 15, 2020 (B/K No. 15-50801, Dkt. #271).

In May 2017, MUFG filed an adversary proceeding (the "Estate Enhancement Action") against Debtor and various third parties seeking a determination that Debtor's interests in Coastal and American Commercial Properties ("ACP") were greater than he asserted them to be (A/P No. 17-05044). Through the Estate Enhancement Action, Brower was found to be the sole shareholder of Coastal and other corporate entities, notwithstanding his assertions other parties held shares in the related entities (A/P No. 17-05044, Dkt #123, #124, #125, #158, #159). The District Court affirmed this court's Order Granting in Part and Denying in Part MUFG's Motion for Summary Judgment (A/P No. 17-05044, Dkt. # 180).

In the current adversary proceeding, Trustee's first complaint sought to recover funds transferred by Debtor to Defendants and JRG from the funds Coastal received following the sale of real property. Trustee contended that following the sale, Debtor transferred the sale proceeds for his own benefit in a manner that allowed him to avoid providing recovery to creditors of his bankruptcy estate. Three motions to dismiss were filed in response. On November 18, 2021, I issued an oral ruling granting in part and denying in part the motions with leave to amend and subsequently issued an order (Dkt. #42). Trustee then filed the FAC, and the Aurora and Oldfield motions to dismiss followed.

STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) (applicable in bankruptcy by FRBP 7012), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

---

[3] "The 'Effective Date' of the Plan will be the fifteenth (15th) business day after the Confirmation Date, provided the condition to effectiveness of the Plan set forth in paragraph 3 of Article X of this Plan has been satisfied. To the extent such condition is not then satisfied, the Effective Date shall occur on the day such condition becomes satisfied."

3

Case: 21-05029    Doc# 97    Filed: 03/23/22    Entered: 03/24/22 16:21:22    Page 3 of 17

*Twombly*, 550 U.S. 544 (2007). This standard requires the plaintiff allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). This standard further requires allegations of fraud to be pleaded with particularity. FRCP 9, FRBP 7009; *Vess v. Ciba – Geigy Corp.*, 317 F. 3d 1097, 1103-05 (9th Cir. 2003). In other words, a complaint must plead the "who, what, when, where, and how" of the alleged fraud. *Id.* at 1106. Moreover, to survive, a complaint must allege sufficient facts "to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F. 3d 1035, 1041 (9th Cir. 2010).

ANALYSIS

I.      First Claim for Relief – Avoidance of Post-Petition Transfers

Trustee's first claim seeks to avoid postpetition transfers of property of the estate pursuant to Bankruptcy Code § 549[4]. "Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. In most circumstances, section 549 applies to transfers in which the debtor is a willing participant." *In re Schwartz*, 954 F. 2d 569, 573-74 (9th Cir. 1992). A postpetition payment may be recovered as an unauthorized transfer of estate property if three requirements are satisfied:

(1) The transfer involved property of the estate;

(2) The transfer occurred after commencement of the case; and

(3) The transfer was not authorized by any provision of the Code or by the Court.

§ 549(a)(1), (a)(2)(B).

---

[4] 11 U.S.C. § 101 *et seq.*, referred to herein by section.

4

Case: 21-05029    Doc# 97    Filed: 03/23/22    Entered: 03/24/22 16:21:22    Page 4 of 17

The FAC contains extensive factual allegations regarding transfers made by Debtor to himself and the Defendants (FAC ¶¶ 88-153). It further alleges the transfers Trustee seeks to avoid were made after commencement of the bankruptcy case and such transfers were not authorized by any provision of the Bankruptcy Code or by the court (FAC ¶ 155). Trustee then alleges that having liquidated Coastal's sole asset, the sale proceeds are assets of the Debtor's estate pursuant to §§ 541(a)(6) and (a)(7) (FAC ¶¶ 156-158).

The only factor in dispute is whether the funds received by Coastal following the sale are assets of Debtor's estate. Trustee argues that after Coastal's real property was liquidated, Debtor as sole shareholder and direct beneficiary had a direct interest in the proceeds through his 100% interest in the Coastal stock. For the following reasons, Trustee is incorrect.

A.  Application of § 541(a)(6) and (7)

Section 541(a)(1) provides that all legal or equitable interests of the debtor as of commencement of the case are estate property. If not otherwise defined in § 541, the nature of property is determined by state law. *In re Raintree Healthcare Corp.*, 431 F.3d 685, 688 (9th Cir. 2005) ("[Section 541] does not address the threshold questions of the existence and scope of the debtor's interest in a given asset.... [W]e resolve these questions by reference to nonbankruptcy law.") As Debtor is a resident of California, we look to California state law.

As recognized by the California Supreme Court:

> [a] corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each, and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend.

*Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941). In other words, the shareholder "does not own the corporate property." *Id.* (internal citation omitted).

Case: 21-05029    Doc# 97    Filed: 03/23/22    Entered: 03/24/22 16:21:22    Page 5 of 17

In the initial complaint, and to a lesser extent here, Trustee asserts that the funds received by Coastal from the sale of its real property were proceeds of estate property pursuant to § 541(a)(6), or that Debtor's shareholder interest in Coastal was estate property pursuant to § 541(a)(7). Section 541(a)(6) provides that "proceeds, product, offspring, rents, or profits of or from property of the estate" are also property of the estate; Section 541(a)(7) provides that "any interest in property that the estate acquires after the commencement of the case" is property of the estate. Thus, it is clear that had Debtor owned the real property instead of Coastal, then upon sale of the property, the funds received would be property of the estate. But the proceeds received from the sale of corporate assets—i.e. Coastal's real property—are not proceeds of Debtor's shares, and Trustee cites no authority supporting its proposed application of § 541(a)(6) and (a)(7).

Accordingly, I find Coastal's sale proceeds are not an asset of Debtor's estate pursuant to § 541(a)(1), (6) or (7).

B. <u>Alter Ego Liability</u>

Trustee next argues Coastal and Debtor are alter egos under California law, and as such, the assets of Coastal are assets of the estate. Defendants assert this legal theory fails under California law because alter ego is used to establish liability, not combine the assets of two distinct entities into one. I agree. *See Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) ("The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests."); *see also* (a) [§ 11] Nature of Doctrine., 9 Witkin, Summary 11th Corp § 11 (2021) ("Where a corporation is used by an individual or individuals, or by another corporation, to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the acts as if they were done by the individuals or by the controlling corporation.").

Even if two entities are established to be alter egos, they are not merged into one entity. As the California Supreme Court recognized in *Mesler*:

6

> It is not that a corporation will be held liable for the acts of another
> corporation because there is really only one corporation. Rather, it is that
> under certain circumstances a hole will be drilled in the wall of limited
> liability erected by the corporate form; for all purposes other than that for
> which the hole was drilled, the wall still stands. When it is claimed that a
> parent corporation should be liable because it is the alter ego of its subsidiary,
> equity commands that the corporate wall be breached. Yet the wall remains:
> the parent is liable through the acts of the subsidiary, but as a separate entity.

*Mesler*, 39 Cal. 3d at 301.

Thus, the theory of alter ego liability breaks down though the corporate wall in order to create some liability on another party to prevent injustice. It does not allow a parent to take assets out of a subsidiary. *See Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 995 (1995) (finding no authority to apply alter ego in order to establish a relationship of identity between a defendant corporation and a plaintiff to allow the plaintiff to obtain assets of the corporation rather than apply alter ego to impose liability to another individual or entity).

While Trustee provides no California state law authority for its theory, it cites to a few cases from the Ninth Circuit to support its argument. First, Trustee cites *In re Bellardita*, 2008 WL 4296554 (Bankr. E.D. Cal. Sept. 19, 2008), which relies on the Ninth Circuit case *Suhl v. Bumb*, 348 F.2d 869 (9th Cir. 1965), for the proposition that: "In the context of a bankruptcy case, the application of the alter ego doctrine brings the assets of a debtor's alter ego into the bankruptcy estate." *Bellardita*, at *11. However, in *Suhl*, the court was not discussing alter ego liability under California law, rather the court's decision relied on *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 (1941). There, the Supreme Court affirmed an order substantively consolidating a debtor and a non-debtor without mentioning alter ego liability. This case has been cited by many courts as support for substantive consolidation—a legal procedure based in federal bankruptcy common law. *See In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000) (holding bankruptcy courts have the power to

Case: 21-05029    Doc# 97    Filed: 03/23/22    Entered: 03/24/22 16:21:22    Page 7 of 17

substantively consolidate the bankruptcy estate with a nondebtor *nunc pro tunc*). Trustee also cites *In re Icenhower* where the Ninth Circuit addressed the bankruptcy court's jurisdiction over a post-petition transfer action and held the bankruptcy court had jurisdiction because the entities were found to be alter egos and substantively consolidated *nunc pro tunc* to the petition date. 757 F.3d 1044, 1050 (9th Cir. 2014).

Under California law, the alter ego theory alone does not bring Coastal's assets into the bankruptcy estate, and unlike the cases relied on by Trustee, there has been no substantive consolidation of Debtor's estate with Coastal. As such, alter ego does not provide a cognizable theory for Coastal's assets to become assets of Debtor's estate.

### C. Direct interest by Debtor as sole shareholder of Coastal

Trustee's third argument is that once Coastal's sole asset was liquidated and all creditors other than Debtor were paid, Debtor had full control through his shares over the disposition of Coastal's assets and was entitled to distribution from Coastal in the amount of the proceeds (FAC ¶¶ 157-158). Had these proceeds been distributed to the sole shareholder of Coastal, a non-operating corporation, they would have been transferred to Debtor and recognized as an asset of Debtor's estate. But that is not what happened.

Trustee relies on *In re Pisculli* for this legal argument. *Pisculli* is a bankruptcy court decision from the Eastern District of New York, that was affirmed by the District Court and the Second Circuit.[5] Trustee contends it is "on all fours" with this case. Following review of *Pisculli* and the cases it relies upon, I disagree. While the facts are similar, the legal issues are not.

In *Pisculli*, creditors contended the debtor should be denied a discharge pursuant to § 727(a)(2)(B). While in chapter 13, the debtor sold trailers and trucks owned by businesses in which debtor was the sole shareholder and officer. Instead of turning over the postpetition

---

[5] *In re Pisculli*, 2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009), *aff'd* 426 B.R. 52 (E.D.N.Y. 2010), *aff'd* 408 F. App'x 477 (2d Cir. 2011).

8

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

proceeds to the chapter 13 trustee, the debtor disbursed funds to his wife and creditors of his other businesses. *Id*. at *2. The factual similarities between *Pisculli* and this case are that:

- Both debtors were sole shareholders of corporations with the sole purpose of holding property;
- Postpetition, and without notice to the bankruptcy court, the debtor liquidated assets in wholly owned corporations; and
- Rather than transferring the sale proceeds to the debtor or debtor's creditors, the debtor transferred funds to creditors of other corporations owned by the debtor and family members.

In *Pisculli*, the bankruptcy court found that because the debtor was the sole shareholder of a non-operational company that had liquidated all its assets, the debtor had more than a derivative interest in the transferred property. *Id.* at *3. In its analysis, the bankruptcy court cited *In re Friskney*, 282 B.R. 250, 253 (Bankr. M.D. Fla. 2002), for the proposition that "the stock of a debtor's closely owned corporation, and consequently the value of its assets, after payment of the corporation's debts, is property of a debtor's bankruptcy estate." *Id*. Yet, *Friskney* enunciated this general statement without support in a case where the assets in dispute were found not to be an asset of the debtor's estate. 282 B.R. at 254.

The *Pisculli* bankruptcy court next relied on *In re Adams*, 31 F. 3d 389 (6th Cir. 1994) for the principle that a "transfer of property of a corporation wholly owned and controlled by the debtor was transfer of property of the debtor." *Id*. at *3. But the *Adams* court found that the preceding bankruptcy and district court decisions "correctly characterized the [non-debtor corporation] accounts receivables as 'property of the debtor' under § 727(a), because [debtor] controlled [non-debtor corporation]." The reference to § 727(a) is important. In *Adams*, the Sixth Circuit noted that § 727(a)(7) references specified acts within one year prior to the case, during the case, or in connection with another case . . . *concerning an insider*. In finding that the requirements of § 727(a)(7) were met, the Sixth Circuit determined that the debtor wholly owned and controlled the non-debtor corporation, thus qualifying as an insider as defined in

9

§ 101(3)(A)(iv). In its analysis, the Sixth Circuit relied on insider status to incorporate the non-debtor's corporate assets into property of the estate because insider status is included in the analysis for denial of debtor's discharge. *Pisculli* is similarly a denial of discharge case, thus its reliance on *Adams* is reasonable, but here, § 727(a)(7) does not apply.

The only case cited by *Pisculli* addressing § 549 is *In re Hill,* 265 B.R. 296 (M.D. Fla. 2001). In *Hill*, the question of whether a postpetition transfer occurred relied on the terms of a notice of substitution and application of Florida's limited partnership statutes. This is not relevant to the factual and legal arguments alleged in the FAC.

Finally, Trustee props up its reliance on *Pisculli* with affirmances from the District Court and Court of Appeals. Yet neither court discusses the bankruptcy court's analysis in depth.

The District Court found the bankruptcy court had not clearly erred in its finding. In so doing, the court cited *In re Mosher*, 417 B.R. 772, 780 (Bankr. N.D. Ill. 2009), involving a Nevada corporation whose charter was revoked, causing all assets to be held in trust by the directors as a matter of Nevada law. Again, the facts are distinct from the issue before this court, and the Trustee has not identified applicable California law that would result in assets to be held in trust by Debtor. After this summary statement, the District Court conducted an extensive analysis finding that alter ego applied. *See In re Pisculli*, 426 B.R. 52, 60-63 (E.D.N.Y. 2010).

The Second Circuit's unpublished decision finds that the bankruptcy did not err in holding that the proceeds were property of the bankruptcy estate because the debtor, as sole owner and shareholder had full control of the proceeds. *See In re Pisculli*, 408 Fed. Appx. 477, 479 (2d Cir. 2011). This stands in contrast with the Tenth Circuit's finding in a published decision that "The words: 'Property of the debtor,' are not the same as 'property in which the debtor has a derivative interest.' To the contrary, the language of the statute is sufficiently circumscriptive to eliminate such an interpretation." *In re Thurman*, 901 F. 2d 839, 841 (10th Cir. 1990).

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

Case: 21-05029    Doc# 97    Filed: 03/23/22    Entered: 03/24/22 16:21:22    Page 10 of 17

In sum, I find neither the *Pisculli* decisions nor the cases they rely upon, establish a cognizable legal theory for Trustee's assertion that the assets of Coastal became assets of Debtor's chapter 11 estate following the sale of the real property owned by Coastal and payment of its obligations.

D. Debtor exceeded shareholder authority

At the hearing on the motions to dismiss, Trustee advanced a new argument not asserted in the FAC but based on a footnote citation to a statute in its Omnibus Opposition (Dkt. #85, fn. 1).

The new argument is that Debtor exceeded his authority in transferring Coastal's assets without shareholder approval. California Corporations Code § 1001(a) provides that a corporation may transfer or dispose of all or substantially all of its assets when the following conditions are met: first, the principal terms are approved by the board, and, second, unless the transaction is in the regular course of business, approved by the outstanding shares. Therefore, Trustee argues as Debtor's estate was the sole shareholder of Coastal, Debtor did not have unilateral authority to make the decision to transfer substantially all of Coastal's assets without first getting shareholder approval, which in this case required the court's approval as Debtor's shares were property of the estate.[6] Normally, if a Debtor seeks to use property of the estate outside the ordinary course of business, it must first obtain court approval.[7] It is undisputed that Debtor never sought court approval before directing funds from Coastal to the Defendants.

As this argument was advanced in the Omnibus Opposition and orally at the hearing, the FAC does not contain factual allegations supporting this theory or address how it applies with a sole shareholder.

---

[6] A trustee has "the power and duty to manage all of the assets of the estate, including the stock, books and records in a wholly-owned corporation." *In re Milden*, 1997 WL 189302, *3 (9th Cir. 1997) (unpublished) (quoting *In re Baker*, 68 B.R. 360, 363-64).

[7] *See* 11 U.S.C. 363(b).

11

In the end, Trustee's arguments based on § 541(a)(6) and (7), alter ego, and direct benefit to shareholder fail to allege a cognizable legal theory upon which the funds received from the sale of Coastal's property may be deemed assets of Debtor's estate.

E. Leave to amend

"When considering whether to grant leave to amend, a [trial court] should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.* 953 F. 3d 567, 574 (9th Cir.2020) "Of these factors, prejudice to the opposing party carries the most weight." *Id.*

While Trustee has been provided a prior opportunity to amend the complaint, I do not find he has acted in bad faith or has a dilatory motive. Rather, the FAC presents unusual factual allegations that are not easily wrangled into a standard property of the estate analysis. It is not clear that Trustee's attempts to do so are futile. As such, I find granting Trustee further leave to amend the first claim will not cause undue prejudice to Defendants.

As such, the first claim for relief is dismissed with leave to amend for Trustee to address the argument that Debtor exceeded his shareholder authority.

II. Second and Third Claims for Relief – Avoidance of Fraudulent Transfers

In the alternative, Trustee alleges it stands in the shoes of Debtor either as a creditor or as the sole shareholder to bring claims against Defendants through California's Uniform Voidable Transactions Act. Trustee asserts the ability to avoid a transfer on two grounds:

- The Second Claim seeks to avoid and recover transfers made or obligations incurred by Debtor "with actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1).[8] This is referred to as "actual fraud."

---

[8] Unless otherwise stated, all code sections referenced within this portion of the decision are to the California Civil Code.

12

- The Third Claim seeks to avoid and recover transfers made or obligations incurred by Debtor "Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor unreasonably small in relation to the business or transaction [or] (B) Intended to incur, or believe or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2). This is referred to as "constructive fraud."

A. <u>Debtor as creditor</u>

The FAC alleges Debtor was a creditor of Coastal based on three promissory notes Coastal issued to Debtor totaling $115,000 in 2011 and 2012 (FAC ¶ 93). Then, in its Omnibus Opposition (Dkt. #85, p. 17), Trustee states, "Debtor was not fully repaid until late 2019" and cites to Exhibit 8 of the FAC. Exhibit 8 lists transfers from Coastal to Debtor made between 2015 and 2020 totaling $167,844.83, the last transfer occurring on August 13, 2020. As such, Debtor's claim was satisfied by the Effective Date when Trustee had authority under the Plan to pursue any existing claims.

The language of Cal. Civ. Code § 3439.04 is clear that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor." Section 3439.07(a)(1) provides that in pursuing a fraudulent transfer, a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Furthermore, § 3439.08(b)(1) mandates that to the extent a transfer is avoidable by a creditor under Section 3439.07(a)(1), "the creditor may recover judgment for the value of the asset transferred…or the amount necessary to satisfy the creditor's claim, whichever is less."

Examining California state law, the Ninth Circuit BAP held that when pleading a fraudulent transfer claim, a party must "plead and prove its damages." *In re Medina*, 619 B.R. 236, 247 (B.A.P. 9th Cir. 2020), *aff'd,* 2021 WL 3214757 (9th Cir. July 29, 2021). Thus, in determining a creditor's standing to bring a fraudulent transfer claim, the important

13

question is "whether the creditor could have made any recovery from the asset that was transferred; in other words, whether the transferred asset had any net value to the creditor." *Id*. at 246.

As Trustee admits, Debtor's claim was fully repaid in 2019. Therefore, Debtor could not have made any recovery from the alleged fraudulent transfers.

B. <u>Debtor as shareholder</u>

Fraudulent transfer claims belong only to creditors. *See In re Lucas Dallas, Inc.,* 185 B.R. 801, 805 (B.A.P. 9th Cir. 1995) ("On its face, the California Uniform Fraudulent Transfer Act only confers standing upon a 'creditor' of the debtor.")[9] In *Lucas Dallas*, a trustee's pursuit of fraudulent transfer actions was affirmed where the trustee used the strong arm power of Bankruptcy Code § 544(b). *Id.* But Trustee did not plead § 544(b) here.[10]

Trustee cites *Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525 (1946), for the general proposition that shareholders of a corporation may bring a direct action "'[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." Presumably this case is

---

[9] The California Uniform Transfer Act ("CUTA") referenced by the BAP in *Lucas Dallas* was amended by the California Uniform Voidable Transactions Act ("CUVTA") in 2016. The CUVTA amends § 3934.04 to change "fraudulent" to "voidable" throughout the statute and change the reference to "he or she" to "the debtor." Both the CUTA and CUVTA address transfers made as to present and future creditors.

[10] "The estate's claim is not based on alleged harm to Coastal as a whole (i.e., section 544), but rather on the particular harm that the estate as 100% shareholder suffered as a result of the transfers to Defendants, i.e., the loss of approximately $2 million combined." (Dkt. #85, p. 34) And also, " the Liquidating Trustee's alternative fraudulent transfer claims as against Defendants are direct claims held by Debtor's bankruptcy estate that arise from the California Civil Code and do not rely on the Transfers being made from Debtor's property." (Dkt. #85, p. 34)

14

cited because it references fraud.  But *Sutter* addresses fraudulent misrepresentations brought under Cal. Civil Code § 3343,[11] not fraudulent transfers.

Trustee asserts:

> At the time of the transfers, . . . Debtor's bankruptcy estate held a claim for distribution of the Proceeds.  Rather than Coastal distributing the Proceeds to Debtor's estate, Coastal transferred approximately $2 million of the Proceeds to Defendants.  The estate's claim is not based on alleged harm to Coastal as a whole . . ., but rather on the particular harm that the estate as *100% shareholder* suffered as a result of the transfer to Defendants, i.e., the loss of approximately $2 million combined.

Omnibus Objection (Dkt. # 85, p. 17, lines 18-21) (emphasis added).

Trustee's claim is based on the loss of value in Debtor's equity interest, not a right to payment. Cal. Civ. Code § 3439.01(b).  As such, Trustee fails to allege how Trustee standing in the shoes of Debtor, as shareholder, may allege a claim to avoid a fraudulent transfer against Coastal.

Accordingly, the Second and Third Claims are dismissed without leave to amend.[12]

III.    Remainder of Claims: Fourth, Fifth, Sixth, Ninth, and Tenth Claims for relief

These claims are dependent on Trustee establishing the funds received by Coastal following the sale of real property are property of the estate.  As such, these claims survive if Trustee can amend its complaint to sufficiently allege grounds for Coastal's assets to be an asset of Debtor's estate.

---

[11] California Civil Code § 3343(a) provides a claim for a party defrauded in the purchase, sale or exchange of property.  A "defrauded party" referenced in this statute is distinct from a "creditor" referenced in Cal. Civ. Code § 3349.04.

[12] Oldfield also asserts Trustee failed to allege factual allegations to support a claim for actual or constructive fraudulent transfers against Oldfield.  This argument is without merit.

15

CONCLUSION

For the foregoing reasons, the court is concurrently issuing orders on each motion consistent with this memorandum decision.

**END OF MEMORANDUM DECISION**

**COURT SERVICE LIST**

**Via ECF:**

All ECF Recipients