Leonard M. Shulman – Bar No. 126349
Ryan D. O'Dea – Bar No. 273478
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
Telephone:      (949) 340-3400
Facsimile:      (949) 340-3000
Email:      lshulman@shulmanbastian.com;
      rodea@shulmanbastian.com

Attorneys for Defendants Aurora Capital Advisors,
Richard Babcock and Anthony Nobles

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No.: 15-bk-50801-MEH |
| **ROBERT BROWER SR.,** | Chapter 11 |
| Debtor. | Adv. No.: 21-ap-05029-MEH |
| **MICHAEL G. KASOLAS,** solely in his capacity as the Liquidating Trustee for the Robert Brower Sr. Liquidating Trust, | **AURORA CAPITAL ADVISORS, RICHARD BABCOCK AND ANTHONY NOBLES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** |
| Plaintiff, | |
| v. | |
| **PATRICIA BROWER,** solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; **GREAT AMERICAN WINERIES, INC.,** a California corporation; **DEERLEAF HOLDINGS, INC.,** a Delaware corporation; **ROBERT BROWER, JR.,** an individual; **MED-VENTURE INVESTMENTS, LLC,** a California limited liability company; **AURORA CAPITAL ADVISORS,** a California general partnership; **RICHARD BABCOCK,** an individual and general partner of Aurora Capital Advisors; **ANTHONY NOBLES,** an individual and general partner of Aurora Capital Advisors; **COASTAL WINE SERVICES, LLC,** a California limited liability company; **WILFORD BUTCH, LINDLEY,** an individual; **POHANKA OF SALISBURY, INC.,** a Maryland corporation; **JAURIGUE LAW GROUP,** a California professional corporation *dba* JLG Lawyers; **JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILLES, LLP,** a limited liability partnership; and **OLDFIELD CREELY, LLP,** a limited liability partnership, | [Motion and Notice of Motion Concurrently Filed]<br><br>**Hearing Date:**<br>Date: June 6, 2022<br>Time: 11:00 a.m.<br>Place: Courtroom 11<br>      United States Courthouse<br>      280 South First Street<br>      San Jose, California 95113<br><br>[Appearance also available via Zoom] |
| Defendants. | |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT .................................................................................5

II.   APPLICABLE STANDARD FOR A MOTION TO DISMISS ...........................6

III.  ARGUMENT ........................................................................................................7

    A.   The First Claim for Relief Fails to State a Claim for Avoidance of a Post-Petition Transfer Pursuant to § 549 of the Bankruptcy Code.................................7

    B.   The First and Second Claims for Relief Fail to State a Claim Predicated Upon California Corporations Code § 1001 ............................................................15

    C.   The Second Claim for Relief Fails to State a Claim for Rescission under Section 1001 ...........................................................................................................17

    D.   The Third Claim for Relief Fails to State a Claim for Recovery and Preservation of Transfers for the Benefit of the Estate Pursuant to Bankruptcy Code §§ 550 and 551 ............................................................................................19

    E.   The Fourth and Fifth Claims for Relief Fail to State a Claim ...............................20

    F.   The Ninth Claim for Relief Fails to State a Claim for Conversion..........................20

IV.  CONCLUSION ...................................................................................................21

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002) ....... 10

*AMCAL Multi-Hous., Inc. v. Pac. Clay Prod.*, 457 F. Supp. 2d 1016, 1021 (C.D. Cal.
    2006) ................................................................................................................................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................................ 7

*Beliveau v. Caras*, 873 F. Supp. 1393, 1395 (C.D. Cal. 1995) ...................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955 (2007) ................................. 7

*Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) ........................ 10

*Casey v. Rotenberg (In re Kenny G. Enters., LLC)*,
    512 B.R. 628, 636-637 (C.D. Cal. 2014) ...................................................................... 19

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982) .......................................... 7

*Gallego v. Wilson*, 882 F. Supp. 1169, 1171 (D. Mass. 1995) ...................................................... 7

*Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir. 1979) ................................................................ 7

*In re Hunt*, 540 B.R. 438, 441 (Bankr. D. Idaho 2015) ................................................................ 10

*In re Reed*, 940 F.2d 1317, 1322 (9th Cir. 1991) .......................................................................... 10

*Jones v. Re-Mine Oil Co.*,
    47 Cal.App.2d 832, 842, 119 P.2d 219 (1941) ............................................................. 19

*King v. Los Angeles County Fair Assn.*,
    70 Cal. App. 2d 592, 161 P.2d 468, 1945 ...................................................................... 18

*Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015) ............................................................................... 20

*Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941) .......................................................................... 10

*Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (Cal. Ct. App. 2d Dist. 1999) ............................ 10

*Official Committee of Unsecured Creditors v. Western United Life Assur. Co. (In re Tri-
    Valley Distrib., Inc.)*,
    452 B.R. 837, 851 (Bankr. D. Utah 2011) ................................................................... 14

*Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ............................... 6

*Phillips v. Whitaker (In re Phinney)*,
    405 B.R. 170, 178 (E.D. Vir. 2009) ............................................................................. 15

*SEC v. Cross Fin. Servs.*, 908 F. Supp. 718 (C.D. Cal. 1995) ....................................................... 6

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ............... 6

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

1  *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011) ................................................ 6

2  *Tognazzi v. Wilhelm*,
        6 Cal.2d 123, 125, 56 P.2d 1227, 1228 (1936) ................................................. 19

3

*Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, (9th Cir. 1997) ......................................... 6

4

*Xydias v. Adamson (In re Xydias' Estate)*,
        92 Cal.App.2d 857, 860-61, 208 P.2d 378, 379 (1949) ................................... 19

**STATUTES**

Bankruptcy Code § 541 ................................................................................................................ 8

Bankruptcy Code § 541(a)(6) ................................................................................................. passim

Bankruptcy Code § 541(a)(7) ............................................................................................ 5, 8, 10, 20

Bankruptcy Code § 549 ................................................................................................................ 11

Bankruptcy Code § 550 ........................................................................................................... 19, 20

Bankruptcy Code § 550(a) ......................................................................................................... 19

Bankruptcy Code § 551 ........................................................................................................... 19, 20

**RULES**

Federal Rule of Civil Procedure Rule 12(b)(6) .......................................................................... 6

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY JUDGE, PLAINTIFF, ALL DEFENDANTS AND ALL THEIR ATTORNEYS OF RECORD:

Defendants Aurora Capital Advisors ("Aurora"), Richard Babcock ("Babcock") and Anthony Nobles ("Nobles") (collectively, "Defendants")[1] hereby bring this Memorandum of Points and Authorities in Support of Defendants' motion to dismiss ("Motion") the second amended complaint for: (1) avoidance of post-petition transfers; (2) recission pursuant to Cal. Corp. Code § 1001; (3) recovery of avoided transfers for benefit of the estate; (4) turnover; (5) accounting; (6) breach of fiduciary duty; (7) breach of fiduciary duty; (8) disgorgement; and (9) conversion (the "SAC") filed by Michael G. Kasolas ("Plaintiff") liquidating trustee for the bankruptcy estate of Robert Brower, Sr. ("Debtor"). In support of the Motion, Defendants respectfully represent as follows:

## I. SUMMARY OF ARGUMENT

Plaintiff's SAC both fails to cure certain defects of the First Amended Complaint[2] and introduces new ones. The first claim for relief asserted in the First Amended Complaint was dismissed for failure to present plausible allegations that the Proceeds constitute property of the estate. Notwithstanding dismissal, this Court provided Plaintiff with an opportunity to amend this claim for relief "solely on the issue of whether the Debtor exceeded his shareholder authority." While it is true the SAC contains a new allegations regarding this alternative theory, it still contains allegations that the Proceeds are property of the estate vis-à-vis Bankruptcy Code §§ 541(a)(6) and (a)(7) because Debtor was "entitled" to same. As this theory of recovery was specifically rejected (twice) by the Court, all claims for relief relying upon such are not plausible and fail to state a claim. Furthermore, the SAC buttresses Plaintiff's first and second claims for relief with allegations that

---

[1] Defendant Med-Venture ("Med-Venture") is currently being reinstated in the State of California. This Motion is not being filed on behalf of Med-Venture. By and through the SAC, Plaintiff "seeks to hold Nobles and Babcock, the general partners of Aurora, and owners of Aurora LLC, jointly and severally liable for the Aurora Transfer. Plaintiff also seeks to hold Nobles and Babcock liable for the Med-Venture Transfer as the transfer was made for their benefit." SAC ¶ 157.

[2] All capitalized terms not defined in this Summary of Argument shall have the meaning ascribed to same below.

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

undefined "transfers" violated Cal. Corp. Code § 1001. However, the SAC does not contain sufficient allegations that: (1) the Med-Venture Transfer or the Aurora Transfer constitute "all or substantially all" of Coastal's assets; or (2) the Med-Venture Transfer or the Aurora Transfer were specifically not approved by Coastal and its shareholder(s).

Plaintiff has been provided three chances to allege plausible claims for relief against Defendants, but has yet again failed to do so. As has been the case since the Original Complaint was filed, amendment is futile and Defendants should not be forced to further incur legal expenses defending against meritless claims. Therefore, and for the reasons detailed below, the Motion should be granted because the SAC has no basis in fact or law and must be dismissed without leave to amend.

## II.     APPLICABLE STANDARD FOR A MOTION TO DISMISS

A Rule 12(b)(6) motion is similar to the common law general demurrer, *i.e.*, it tests the legal sufficiency of the claim or claims stated in the complaint. See *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011); *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718 (C.D. Cal. 1995); *Beliveau v. Caras*, 873 F. Supp. 1393, 1395 (C.D. Cal. 1995). In order to survive Rule 12(b)(6), a complaint must allege sufficient facts "to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In addition, to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must state a "facially plausible" claim for relief. *Id.*

By contrast, a Rule 12(b)(6) motion to dismiss for failure to state a claim can be used when plaintiff has included allegations in the complaint that, on their face, disclose some absolute defense or bar to recovery. See e.g. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, (9th Cir. 1997) (fn. 1: "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts.").

A defendant is entitled to dismissal under Rule 12(b)(6) if, accepting the well-pleaded allegations of the complaint as true, the complaint fails to state facts that would support relief. *Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Further, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)(emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955 (2007).

For the purposes of a motion to dismiss, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Id*. at 555. The obligation to provide the "grounds" for the claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (*id*.) and the allegations must "raise a right to relief above the speculative level." *Id*.; See also *Gallego v. Wilson*, 882 F. Supp. 1169, 1171 (D. Mass. 1995)("a complaint will be deemed insufficient if the plaintiff relies upon bald assertions, unsupportable conclusions, and opprobrious epithets.") (internal citations and quotation marks omitted).

While a motion to dismiss typically tests the sufficiency of the plaintiff's allegations, "[i]f a legal impediment such as an affirmative defense or some other bar to recovery is apparent from the face of the complaint, then a motion to dismiss for failure to state a claim is mandated." *AMCAL Multi-Hous., Inc. v. Pac. Clay Prod*., 457 F. Supp. 2d 1016, 1021 (C.D. Cal. 2006).

Finally, dismissal should be granted without leave to amend where it is clear that the acts complained of cannot constitute a claim for relief and further amendments would serve no purpose. See e.g. *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir. 1979). Dismissal may be granted as to portions of a complaint. *Decker v. Massey-Ferguson, Ltd*., 681 F.2d 111, 115 (2d Cir. 1982).

## III. ARGUMENT

**A.** **The First Claim for Relief Fails to State a Claim for Avoidance of a Post-Petition Transfer Pursuant to § 549 of the Bankruptcy Code**

1. <u>Being "Entitled" to a Distribution Does not Make the Proceeds Property of the Estate</u>

Plaintiff's first claim for relief seeks avoidance of post-petition transfers related to sale proceeds (the "<u>Proceeds</u>") from Coastal Cypress Corporation's ("<u>Coastal</u>") 2015 sale of real property located at 8890 and 8940 Carmel Valley Road, Carmel, California (the "<u>Wine Estate</u>

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Property"). The Complaint further alleges that a portion of the Proceeds was transferred to defendant Aurora Capital Advisors (the "Aurora Transfer") and Med-Venture Investments, LLC (the "Med-Venture Transfer").

In Plaintiff's original complaint filed on July 22, 2021 [dkt. no. 1] (the "Original Complaint"), it was asserted that "[p]ursuant to 11 U.S.C. § 541(a)(6), the proceeds, product, offspring, rents, or profits of or from the estate's interest in Coastal and ACP are, and have been at all relevant times, assets of Debtor's bankruptcy estate. Further, and pursuant to 11 U.S.C. § 541(a)(7), the 100% interest in Coastal and ACP constituted an 'interest in property that the estate acquires after the commencement of the case.'" Original Complaint ¶¶ 52 & 144. Defendants filed a motion to dismiss the Original Complaint ("First Motion"), asserting in relevant part, that the Proceeds could not be property of the estate under § 541 pursuant to applicable California law, as the Proceeds constituted property of a non-debtor corporation. In opposition to the First Motion, Plaintiff stated:

> …the sole shareholder of Coastal, the bankruptcy estate, **had a right to a dividend payment of the profits of the corporation, i.e. the Proceeds…once the Wine Estate Property was sold and its creditors paid**, the bankruptcy estate no longer held a contingent claim to a dividend payment of the Proceeds. That claim was a present right that was held by the estate at the time of the Transfers. As alleged in the Complaint, the bankruptcy estate's right to a dividend payment from Coastal is property of the estate under Section 541(a)(6), and is an interest in property that was acquired after commencement of the case pursuant to Section 541(a)(7)

Dkt. No. 18, 9:3-5 (emphasis added). In ruling on the First Motion, the Court's order (the "Order") dismissed the first claim for relief "with leave to amend as to the First Claim, and to the extent required as to any related claims asserting alternate bases for recovery of the Coastal proceeds." Order 3:18-20 (emphasis added).

Notwithstanding the clear and unambiguous Order, Plaintiff filed a first amended complaint (the "First Amended Complaint") rehashing the assertion that the Proceeds are property of the estate pursuant to Bankruptcy Code § 541(a)(6) and (a)(7), stating:

> 157. Having liquidated the sole asset of Coastal and all creditors other than the Debtor being paid in full, the Debtor as Coastal's sole shareholder and owner

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

and direct beneficiary had a direct interest in the proceeds via his 100% interest in the stock of Coastal and he had full control over their disposition. At that time, Debtor was **entitled to distribution** from Coastal in the amount of the proceeds, which right transferred the Debtor's estate on the Petition Date. (emphasis added)

158.    Accordingly, pursuant to Pursuant to 11 U.S.C. § 541(a)(6), the proceeds, product, offspring, rents, or profits of or from the estate's interest in Coastal, i.e., the Proceeds, have been at all relevant times assets of Debtor's bankruptcy estate. Further, and pursuant to 11 U.S.C. § 541(a)(7), the 100% interest in Coastal and ACP constituted an "interest in property that the estate acquires after the commencement of the case."

Defendants filed a motion to dismiss the First Amended Complaint (the "Second Motion") asserting that the First Amended Complaint failed to state a claim under Section 549 for the same reasons detailed in the First Motion.  On March 24, 2022, the Court entered an order (the "Second Order") granting the Second Motion and dismissing the First Amended Complaint with leave to amend the first claim for relief.  In relevant part, the Second Order states: "The first claim for relief pursuant to 11 U.S.C. § 549 is dismissed with leave to amend solely on the issue of whether the Debtor exceeded his shareholder authority." (emphasis added).

In response to the Second Order, and notwithstanding this Court's unambiguous admonition, Plaintiff filed the SAC containing the following two "new" theories as to how the Proceeds are allegedly property of the estate: (1) Debtor was entitled to a distribution after payment of "all [of Coastal's] creditors" pursuant to Coastal's amended and restated article of incorporation (the "Articles") [SAC ¶ 181]; and (2) the Net Proceeds of Coastal could not be transferred or, otherwise, dissipated absent the Debtor's Estate's consent as the sole shareholder of Coastal pursuant to the Amended Articles and Cal. Corp. Code § 1001, and any such consent needed bankruptcy court approval[.]" SAC ¶ 182.  Neither of Plaintiff's theories actually support his assertion that the Proceeds are property of the estate – thus necessitating dismissal of the SAC without leave to amend.

To be clear: Plaintiff's opposition to the First Motion posited that the Original Complaint sufficiently alleged Debtor's bankruptcy estate held a right to a dividend payment from Coastal once the Wine Estate Property was sold and Coastal's creditors were paid. See Dkt. no. 18, 9:3-10.  Then Plaintiff stated in the First Amended Complaint that that "Debtor was entitled to distribution from Coastal." First Amended Complaint ¶ 157 (emphasis added).  Now, Plaintiff asserts in the SAC that

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Debtor was "underlined(entitled) to a mandatory distribution of the Net Proceeds" pursuant to the Articles. SAC ¶ 6 (emphasis added). Plaintiff's aforementioned theory that the Proceeds constitute property of the estate under § 541(a)(6) and (a)(7) has already been rejected by this Court and no amount of repackaging in the SAC changes this fact.

Despite the SAC's protestations to the contrary, the Proceeds were not property of the estate – thus barring recovery of the Med-Venture Transfer and the Aurora Transfer. In particular, § 541(a)(6) provides, in relevant part, that property of the estate includes "[p]roceeds, product, offspring, rents or profits of or from property of the estate[.]" (emphasis added). Further, § 541(a)(7) provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." (emphasis added). However, it is roundly accepted that "[s]tate law determines the existence and scope of a debtor's interest in property." *In re Hunt*, 540 B.R. 438, 441 (Bankr. D. Idaho 2015) citing *In re Reed*, 940 F.2d 1317, 1322 (9th Cir. 1991) and *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); See also *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002)("It is well established that 'state law…determines the nature and extent of a debtor's interest in property.'"). Utilizing Plaintiff's judicial admissions and applying same to controlling California law, Debtor did not personally own Coastal's assets, including but not limited to the Proceeds or any portion thereof.

Plaintiff's allegation that the Proceeds constitute property of the estate because Debtor was "entitled" to a distribution from Coastal is without merit and cannot be the predicate of a plausible claim for relief. "Shareholders own neither the property nor the earnings of the corporation. Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors. Nelson had no ownership interest in the profits of Lonan and cannot have been deprived of them." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (Cal. Ct. App. 2d Dist. 1999) referencing *Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941)(citations omitted). As stated by the California Supreme Court in *Miller v. McColgan* (emphasis added):

> In our approach to the problem presented here let us first consider the nature of this property – corporate stock – and the status of corporations and shareholders. It is fundamental, of course, that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each, and

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Case: 21-05029   POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS of
23

**he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend**. This well-settled proposition was amplified in *Rhode Island Hospital Trust Co. v. Doughton*, 270 U.S. 69, 81 [46 Sup. Ct. 256, 70 L. Ed. 475], wherein appears the following cogent language: "The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends arising from the use of all its property. In the dissolution of the corporation he may take his proportionate share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. <u>But he does not own the corporate property</u>." *Id.*

As clearly stated in the SAC, Coastal wholly owned the Wine Estate Property, the Proceeds were the result of the Wine Estate Property's sale, the Proceeds were paid to Coastal, and Coastal made the Med-Venture Transfer and Aurora Transfer to Defendants. It is undisputed that the Proceeds were never distributed to Debtor or the estate, Coastal was not liquidated prior to the subject transfers, and no portion of the Proceeds used to make the subject transfers were segregated and set aside for dividend payment to Debtor or the estate. Plaintiff attaching a copy of the Articles to the SAC does not change these facts or alter the legal authorities and reasoning supporting the Court's prior dismissals of this claim for relief. Clearly, additional steps needed to be taken before the Proceeds could become property of Debtor's bankruptcy estate. To this point, and not surprisingly, the SAC concedes that if Plaintiff was successful on his Section 549 claim, "[t]he Net Proceeds [would] need to be returned to Coastal at which time the <u>Liquidating Trustee will seek consent from the Court to distribute those Net Proceeds to the Estate</u> as the sole shareholder…" <u>SAC</u> § 184.

In sum, none of the Proceeds allegedly used to make the Med-Venture Transfer or the Aurora Transfer can be classified as property of the estate because: (1) such are not § 541(a)(6) "proceeds, product, offspring, rents or profits" due to Debtor under state law; and (2) neither Debtor nor the estate "acquired" the Proceeds pursuant to applicable state law. Therefore, Plaintiff's first claim for relief must be dismissed without leave to amend because the Proceeds allegedly used to make the Med-Venture Transfer and the Aurora Transfer were not property of the estate and cannot be avoided pursuant to § 549.

///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2. <u>Debtor Was Not "Entitled" to a Distribution When the Subject Transfers Were Made</u>

Assuming, for the sake of argument only, that Debtor being "entitled" to a distribution under the Articles somehow alters the irrefutable conclusion of law stated in *Miller v. McColgan* (which it does not) – Debtor was not "entitled" to a distribution when the Med-Venture Transfer or the Aurora Transfer were made. The operative starting point of the analysis is the SAC itself, which unequivocally states that "pursuant to the Amended Articles, <u>after payment of Coastal's creditors</u>, the Estate as 100% shareholder of Coastal was immediately entitled to a mandatory distribution of the Net Proceeds." <u>SAC</u> ¶ 6 (emphasis added). Importantly, the SAC alleges that Coastal: (1) made the Med-Venture Transfer in April of 2015 <u>from escrow</u> associated with Coastal's sale of the Wine Estate Property [<u>SAC</u> ¶ 150]; and (2) made the Aurora Transfer vis-à-vis check dated December 31, 2015. However, the SAC also alleges:

> On March 14, 2016, Debtor used $1,512,753 of the Net Proceeds to make a tax payment to the Internal Revenue Service. Between May 2017 and July 2020, the United States Treasury issued tax refunds to Coastal in the amount of $730,050.53.

<u>SAC</u> ¶ 6. Clearly then, the Med-Venture Transfer and the Aurora Transfer occurred well before the March 2016 tax payment to the IRS. Further, if a tax refund of $730,050.53 was received, Plaintiff's own allegations support that the IRS was a creditor of Coastal and owed at least $782,702.47 after sale of the Winery Estate Property that gave rise to the Proceeds. In addition, **Exhibit 3** to the SAC, titled "Coastal Cypress Corporation Balance Sheet for the Period Ending June 30, 2016" clearly states that Coastal had "Current Liabilities: Accounts Payable" totaling $154,859. Due to the undisputed fact that Coastal had creditors remaining <u>after</u> the Med-Venture Transfer and the Aurora Transfer were made, Debtor was not allegedly "entitled" to a distribution under the Articles – if ever – until some point-in-time subsequent to said transfers.

The timing of the Med-Venture Transfer and Aurora Transfer is a dispositive data point because Plaintiff's theory regarding "property of the estate" is predicated upon Debtor's alleged entitlement to distribution under the Articles. Therefore, the Proceeds were not property of the estate at the time the Med-Venture Transfer or the Aurora Transfer were made, and as such, neither transfer can be avoided pursuant to Section 549.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Alternatively, Debtor would not have been entitled to a distribution until satisfaction or resolution of the debts owed to Med-Venture and Aurora. In particular, the SAC alleges (emphasis added):

> 131. On January 15, 2011, Debtor, as Chairman and Chief Executive Officer of Coastal and Chateau Julien, purportedly executed an agreement with Med-Venture for Med-Venture to provide consulting and advisory services to Coastal and Chateau Julien for a period of two years regarding a potential sale of their respective businesses and/or assets (the "Med-Venture Agreement"). A true and correct copy of the Med-Venture Agreement is attached hereto as **Exhibit 19**, and incorporated herein by this reference. Nobles executed the Med-Venture Agreement on behalf of Med-Venture.
>
> …
>
> 133. **The Med-Venture Agreement provides that Coastal and Chateau Julien pay Med-Venture a consulting fee in the amount of $1,120,000 at the time of receipt of any funds from any sale** occurring at any time during the five-year period extending from the date of the agreement, whether or not the eventual sale was a result of Med-Venture's services.
>
> …
>
> 144. After negotiations had already begun for the sale of the Wine Estate Property, on August 8, 2014, Debtor, as Chairman and Chief Executive Officer of Coastal and Chateau Julien, executed an agreement with Aurora or Aurora LLC for Aurora or Aurora LLC to provide consulting and advisory services to Coastal and Chateau Julien for a period of two years regarding a potential sale of their respective businesses and/or assets (the "Aurora Agreement"). A true and correct copy of the Aurora Agreement as produced by others is attached hereto as **Exhibit 22**, and incorporated herein by this reference. Nobles executed the Aurora Agreement on behalf of Aurora and/or Aurora LLC.
>
> …
>
> 146. **The Aurora Agreement provides that Coastal and Chateau Julien pay Aurora and/or Aurora LLC a consulting fee in the amount of 5% of any and all funds or value received by Coastal** or Chateau Julien from any sale occurring during the 24-month period extending from the date of termination or expiration of the agreement, whether or not the eventual sale was a result of Aurora's and/or Aurora LLC's services.

Based upon the plain allegations in the SAC, coupled with Exhibits 19 and 22, it cannot be reasonably disputed that Med-Venture and Aurora were creditors of Coastal prior to the Med-Venture Transfer and the Aurora Transfer. Unless and until the debts owed to Med-Venture and Aurora were satisfied or resolved, Debtor would not have had an entitlement to the Proceeds under the Articles. Thus, if the Proceeds ever became property of Debtor's bankruptcy estate, it could not have occurred before addressing the debts owed to Med-Venture or Aurora. Plaintiff cannot use

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Section 549 to avoid transfers that occurred before the Proceeds allegedly became property of the estate. Therefore, the first claim for relief must be dismissed, without leave to amend, for failure to state a claim.

    3.    Pursuant to Section 549(c), Plaintiff Cannot Avoid the Transfers

    It cannot be forgotten that the Proceeds were the result of a post-petition sale of real property defined above as the "Wine Estate Property." Despite numerous references to shareholder approval and/or court approval being needed for a "sale, lease, conveyance, exchange transfer, or disposition of all or substantially all of Coastal's[3] assets, the SAC makes no attempt to unwind the sale of the Wine Estate Property. Presumably, Plaintiff has intentionally failed to plead a claim against the buyer of the Wine Estate Property because avoidance is not permissible pursuant to Bankruptcy Code Section 549(c). In relevant part, Section 549(c) provides:

> The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser.

    As stated in the SAC, the "Med-Venture Agreement provides that Coastal and Chateau Julien pay Med-Venture a consulting fee in the amount of $1,120,000 at the time of receipt of any funds from any sale [of the Wine Estate Property]" and the "Aurora Agreement provides that Coastal and Chateau Julien pay Aurora and/or Aurora LLC a consulting fee in the amount of 5% of any and all funds or value received by Coastal" in connection with sale of the Wine Estate Property. SAC ¶¶ 133, 146.

    If avoidance of the sale of the Wine Estate Property is not permissible pursuant to Section 549(c), avoidance of costs of sale of the Wine Estate Property should be equally impermissible. See e.g. *Official Committee of Unsecured Creditors v. Western United Life Assur. Co. (In re Tri-Valley Distrib., Inc.)*, 452 B.R. 837, 851 (Bankr. D. Utah 2011)("Even assuming, however, that the value

---

[3] SAC ¶ 7.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

given by the Defendant should be reduced by the amount of the Metro Loan (as would occur if the two loans were treated as one), the additional value provided by the WULA Loan was admittedly negotiated for and bargained for and would thus constitute sufficient value to support a contract claim[.]"); See also *Phillips v. Whitaker (In re Phinney)*, 405 B.R. 170, 178 (E.D. Vir. 2009)("[Purchaser] paid between $195,418.06 ($19,119.56 + $157,298.50 + $19,000) and $201,418.06 ($19,119.56 + $157,298.50 + $ 25,000). These figures include the $19,119.56 [purchaser] paid to cancel the foreclosure sale, the value of the repurchase option, and the surviving lien held by Washington Mutual, which is relevant to determine the value paid by the purchaser."). For this additional reason, and so as to avoid a windfall to the estate flowing from embracing the sale of the Wine Estate Property while concurrently disavowing certain costs of sale, the first claim for relief should be dismissed with prejudice.

**B.** **The First and Second Claims for Relief Fail to State a Claim Predicated Upon California Corporations Code § 1001**

Plaintiff's first and second claims for relief seek avoidance and rescission of the Med-Venture Transfer and Aurora Transfer pursuant to Cal. Corp. Code § 1001(a) (hereinafter, "Section 1001"), which provides in relevant part (emphasis added):

> A corporation may sell, lease, convey, exchange, transfer, or otherwise dispose of **all or substantially all of its assets when the principal terms are approved by the board**, and, unless the transaction is in the usual and regular course of its business, approved by the outstanding shares (Section 152), either before or after approval by the board and before or after the transaction. A transaction constituting a reorganization (Section 181) is subject to the provisions of Chapter 12 (commencing with Section 1200) and not this section (other than subdivision (d)). A transaction constituting a conversion (Section 161.9) is subject to the provisions of Chapter 11.5 (commencing with Section 1150) and not this section.

Additionally, and as noted in the memorandum of decision issued by the Court in support of the Second Order [Dkt. No. 97; 11:22-24 (emphasis added)]:

> California Corporations Code § 1001(a) provides that a corporation may transfer or dispose of **all or substantially all of its assets** when the following conditions are met: first, the principal terms are approved by the board, and, second, unless the transaction is in the regular course of its business, approved by the outstanding shares…As this argument was advanced in the Omnibus Opposition and orally at the hearing, the **FAC does not contain factual allegations supporting this theory** or address how it applies with a sole shareholder.

15

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Notwithstanding the fact that Section 1001 is only applicable to the sale, lease, conveyance, exchange, transfer, or dispossession of "all or substantially all" of a corporation's assets, the SAC fails present a single allegation satisfying this gating issue. Rather than alleging that the Med-Venture Transfer or the Aurora Transfer constituted (individually or collectively) "all or substantially all" of Coastal's assets, the SAC merely states: "[T]he sale of the Wine Estate Property was a…sale of all or substantially all of Coastal's assets." SAC ¶ 6. As Plaintiff is not attempting to avoid or rescind the sale of the Wine Estate Property, reference to said sale does not satisfy Plaintiff's obligation to present well pled allegations supporting a claim to avoid or rescind the Med-Venture Transfer or Aurora Transfer under Section 1001. Other than allegations that sale of the Wine Estate Property was a sale of all or substantially all of Coastal's assets, the SAC provides the following vague allegation:

> 7. Moreover, in light of the liquidation of Coastal's only asset and the payment of its creditors, the Estate, as the sole shareholder of Coastal (a California corporation), not only had a direct interest in the Net Proceeds but was the only entity with any interest in the Net Proceeds and was the only entity that could consent to the sale, lease, conveyance, exchange transfer, or disposition of all or substantially all of Coastal's remaining asset [Cal. Corp. Code § 1001], which liquidated asset consisted of the Net Proceeds.

Plaintiff's aforementioned allegation regarding a sale or transfer of "all or substantially all" of Coastal's assets falls woefully short of the applicable pleading standards. As such, the first and second claims for relief must be dismissed accordingly.

Taking the analysis one step further: The SAC's failure to allege that the Med-Venture Transfer and the Aurora Transfer constitute "all or substantially all" of Coastal's assets is not surprising. In particular, the SAC is clear that after sale of the Wine Estate Property, and after payment of the Med-Venture Transfer through escrow, Coastal received the net amount of $5,880,000.00 in April of 2015. SAC ¶ 85. From that net amount, Coastal allegedly made the Aurora Transfer in the amount of $600,000 on December 30, 2015. SAC ¶ 151. Based upon these judicial admissions, neither the Med-Venture Transfer nor the Aurora Transfer constitute a transfer of "all or substantially all" of Coastal's assets by any stretch of the concept.

In an apparent attempt to confuse the issue, the SAC alleges that "[a]ccordingly, the transfers, although made by the Debtor, were not made with shareholder consent, as required under

California law." <u>SAC</u> ¶ 190 (emphasis added). Rather than present specific allegations as to how the Med-Venture Transfer and/or the Aurora Transfer satisfied the threshold issue of being "all or substantially all" of Coastal's assets, Plaintiff attempts to aggregate all transfers complained of in the SAC through the use of the undefined term "transfers." Importantly, the "transfers" to other defendants alleged in the SAC total millions of dollars and span many years following the Med-Venture Transfer and Aurora Transfer. For example, the last-in-time "transfer" complained of in the SAC allegedly occurred on August 13, 2020 (purportedly a transfer made to Debtor). It is axiomatic that if Coastal allegedly transferred millions of dollars to other defendants for years <u>following</u> the Med-Venture Transfer and Aurora transfer, neither the Med-Venture Transfer nor the Aurora Transfer could constitute "all or substantially all" of Coastal's assets.

Finally, the SAC presents the bald assertion that "in order to transfer these assets, the Debtor's Estate, as the shareholder of Coastal, needed to consent to the transfers insofar as these were not transfers in the usual and regular course of Coastal's business, which had no business at the time of the transfers." <u>SAC</u> ¶ 188. Plaintiff's allegations not only fail to specifically state that the Med-Venture Transfer or the Aurora Transfer were purportedly not consented to by Coastal's shareholder(s), but also ignores the fact that the Med-Venture Agreement and the Aurora Agreement (attached to the SAC as Exhibits 19 and 22 respectively) were signed, pre-petition, by "Robert Brower" as "respective Chairman and Chief Executive Officer" of Coastal. As the Med-Venture Agreement and the Aurora Agreement detailed the amount certain to be paid to Med-Venture and Aurora at the time of execution, payment of the Med-Venture Transfer and the Aurora Transfer was clearly approved by Coastal.

By virtue of the aforementioned fatal pleading infirmities, Plaintiff has not established a plausible claim for avoidance of the Med-Venture Transfer or the Aurora Transfer under Section 1001 and the first and second claims for relief should be dismissed without leave to amend.

**C.** **The Second Claim for Relief Fails to State a Claim for Rescission under Section 1001**

In addition to the arguments and points raised in Section III.B. of this Motion, the second claim for relief must be dismissed for three (3) reasons. First, the second claim for relief is barred by laches because stockholders of corporation desiring equitable relief against transfer of its assets

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

must act promptly. <u>See</u> *King v. Los Angeles County Fair Assn.*, 70 Cal. App. 2d 592, 161 P.2d 468, 1945. In particular, the court in *King* stated:

> The obligation on the part of these plaintiffs to act promptly if they desired equitable relief against the transfer of the assets is analogous to the duty of one who desires to rescind a contract because of misrepresentation and fraud to give notice thereof promptly. There are many cases in which delays for a shorter period than a year have been held fatal to the right to rescind. (See *Maginess v. Western Securities Corp.* (1918), 38 Cal.App. 56 [175 P. 277] -- six months; Bailey v. Fox (1889), 78 Cal. 389 [20 P. 868] -- 4 months; *Gamble v. Tripp* (1893), 99 Cal. 223 [33 P. 851] -- 4 1/2 months; *Marten v. Paul O. Burns Wine Co.* (1893), 99 Cal. 355 [33 P. 1107] -- 3 months; *J. I. Case T. M. Co. v. Copren Bros.* (1919), 45 Cal.App. 159 [187 P. 772] -- 4 months; *Stowe v. Kaetzel* (1940), 38 Cal.App.2d 356 [101 P.2d 719] -- 11 months; *Sanders v. Magill* (1937), 9 Cal.2d 145 [70 P.2d 159] -- 4 months; *Campbell v. Title Guarantee etc. Co.* (1932), 121 Cal.App. 374 [9 P.2d 264] -- 9 months. Under the circumstances of this case it clearly appears that the plaintiffs waited an unreasonable length of time before seeking equitable relief.

As alleged in the SAC, the Med-Venture Transfer occurred in April of 2015 and the Aurora Transfer occurred in December of 2015. The Original Complaint was brought approximately seven (7) years after the Med-Venture Transfer and the Aurora Transfer and approximately one (1) year after Plaintiff replaced Debtor as shareholder of Coastal. Further, the SAC – which was the first time Plaintiff asserted a claim for rescission – was not filed until March of 2022. Utilizing any of the relevant dates upon this continuum, Plaintiff's claim for rescission was not "promptly" made and must be dismissed accordingly.

Second, and despite counsel for Defendants' diligent efforts, no authorities appear to exist supporting a trustee's ability to rely upon Section 1001 to recover property transferred post-petition. The dearth of authorities is likely due to "[t]he fact that Congress specifically included a section dealing with postpetition transactions suggests that it solely intended for that section to govern transfers occurring after the filing of a bankruptcy petition. Section 549's breadth undergirds that conclusion. It generally applies to allow a trustee to set aside any postpetition transfer of estate property that is not authorized by the Bankruptcy Code or a bankruptcy court. Congress did not narrowly draft § 549 in such a way that it would be reasonable to think that it only applies to some postpetition transactions, leaving room for other sections to fill the gap. <u>Rather, the fact that Congress used such sweeping language demonstrates that Congress envisioned § 549 as the sole</u>

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

tool for avoiding postpetition transfers. *Casey v. Rotenberg (In re Kenny G. Enters., LLC)*, 512 B.R. 628, 636-637 (C.D. Cal. 2014)(emphasis added).

Third and finally, Plaintiff is precluded from obtaining the recovery he seeks in the second claim for relief by virtue of in para delicto. In no uncertain terms, the SAC states: "Because the Debtor did not seek or obtain the Court's approval, he could not exercise the Estate's shareholder consent. Accordingly, the transfers, although made by the Debtor, were not made with shareholder consent, as required under California law. <u>Thus, they were made by the Debtor individually</u> and not on behalf of the Estate." <u>SAC</u> ¶ 190 (emphasis added). However, "he who executes a conveyance of property for the purpose of hindering, delaying or defrauding his creditors cannot by an action in equity obtain a reconveyance from his grantee, nor can anyone claiming under him, except an innocent purchaser." *Tognazzi v. Wilhelm*, 6 Cal.2d 123, 125, 56 P.2d 1227, 1228 (1936). <u>See also</u> *Jones v. Re-Mine Oil Co*., 47 Cal.App.2d 832, 842, 119 P.2d 219 (1941) (one who has transferred his property to defraud his creditors cannot thereafter recover from his grantee that which he has conveyed); *Xydias v. Adamson (In re Xydias' Estate)*, 92 Cal.App.2d 857, 860-61, 208 P.2d 378, 379 (1949) ("No rule of law is more strictly adhered to than the rule that one who has conveyed his property in order to defraud his creditors, under circumstances such as are present here, cannot thereafter recover from his grantee that which he has conveyed.").

In sum, and in addition to the arguments raised in Section III.B. above, the second claim for relief must be dismissed without leave to amend due to laches, due to Section 549 being the sole procedural mechanism that a trustee may use to recover a post-petition transfer and due to in para delicto.

**D.** **The Third Claim for Relief Fails to State a Claim for Recovery and Preservation of Transfers for the Benefit of the Estate Pursuant to Bankruptcy Code §§ 550 and 551**

Plaintiff's third claim for relief seeks to recover and preserve the Med-Venture Transfer and the Aurora Transfer pursuant to §§ 550 and 551. Bankruptcy Code § 550(a) provides in relevant part: "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property[.]"

19

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    Furthermore, Bankruptcy Code § 551 provides: "Any transfer avoided under section 522, 544, 545,
2    547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved
3    for the benefit of the estate but only with respect to property of the estate."

4         Importantly, Plaintiff's ability to recover and preserve the Med-Venture Transfer or Aurora
5    Transfer is exclusively conditioned upon Plaintiff's avoidance of said transfers pursuant to § 549.
6    By virtue of the pleading infirmities mandating dismissal of Plaintiff's first claim for relief, the
7    conditions precedent to §§ 550 and 551 cannot be met and the third claim for relief must be
8    dismissed without leave to amend.

9    **E.    The Fourth and Fifth Claims for Relief Fail to State a Claim**

10        To the extent the fourth and fifth claims for relief are dependent upon Plaintiff's allegation
11   that the Proceeds are property of the estate pursuant to § 541(a)(1), (a)(6) and/or (a)(7), and for the
12   reasons stated in connection with Defendants' request to dismiss the first claim for relief, the fourth
13   and fifth claims for relief should be dismissed without leave to amend.

14   **F.    The Ninth Claim for Relief Fails to State a Claim for Conversion**

15        Plaintiff's ninth claim for relief seeks recovery of the Med-Venture Transfer and Aurora
16   Transfer based upon conversion.  In California, "[c]onversion is the wrongful exercise of dominion
17   over the property of another.  The elements of a conversion claim are: **(1) the plaintiff's ownership
18   or right to possession of the property**; (2) the defendant's conversion by a wrongful act or
19   disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal.4th 1225, 1240
20   (2015)(emphasis added).  Consistent with Plaintiff's first claim for relief, the ninth claim for relief
21   necessarily fails because the Proceeds used to make the Med-Venture Transfer and Aurora Transfer
22   were not Debtor's property and the estate had no right to possession of same.  Therefore, Plaintiff's
23   ninth claim for relief must be dismissed without leave to amend because Plaintiff cannot establish
24   that Debtor or the estate owned or has a right to possession of the Proceeds used to fund the Med-
25   Venture Transfer or the Aurora Transfer.

26
27
28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

IV. **CONCLUSION**

Based on the aforementioned, Defendants respectfully request that the Motion be granted in its entirety and Plaintiff's first, second, third, fourth, fifth and ninth claims for relief against Defendants be dismissed without leave to amend.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

Dated: April 26, 2022               By: _/s/ *Ryan D. O'Dea*_

                                        Leonard M. Shulman
                                        Ryan D. O'Dea
                                        Attorneys for Defendants Aurora Capital Advisors,
                                        Richard Babcock and Anthony Nobles

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

21

In re:          **Robert Brower Sr - Debtor**
BK Case No.: **15-bk-50801-MEH**

**Michael G. Kasolas, etc., et al vs. Patricia Brower, etc., et al**
**ADV NO. 21-ap-05029-MEH**

# <u>CERTIFICATE OF SERVICE</u>

I, Lori Gauthier, declare that I am a citizen and resident of the United States of America and over 18 years of age and not a party to the within entitled litigation. My business address is Shulman Bastian Friedman & Bui LLP, 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618. On this date I served the following documents on the person named below by placing a true copy thereof in a sealed envelope with first class postage thereon, fully prepaid, in the United States mail at Irvine, California addressed as addressed below or by e-mail or by electronic filing, as set forth below:

**AURORA CAPITAL ADVISORS, RICHARD BABCOCK AND ANTHONY NOBLES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on April 26, 2022, at Irvine, California.

/s/ Lori Gauthier
_____

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## *ELECTRONIC SERVICE LIST:*

- Jessica L. Bagdanov    jbagdanov@bg.law, ecf@bg.law
- Jason B. Komorsky    jkomorsky@bg.law, ecf@bg.law
- Ryan O'Dea    rodea@shbllp.com
- Rogelio Serrano-Gutierrez    rserrano@kdvlaw.com
- Wendy W. Smith    Wendy@bindermalter.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.com

## *MAIL SERVICE LIST:*

Aurora Capital Advisors,
18101 Von Karman, Suite 230
Irvine, CA 92612

Patricia Brower
2 Christopher Court
Flanders, NJ 07836

Robert Brower, Jr.
25 Sunderland Lane
Katonah, NY 10536

Coastal Wine Services, LLC,
Attn: Willford Brooks Lindley, agent
340 El Camino Real South
Salinas, CA 93901

Deerleaf Holdings, Inc.,
c/o United States Corporation Agents, In
221 N. Broad St., Suite 3A
Middletown, DE 19709

Great American Wineries, Inc.
Attn:Robert Brower, Jr., Agent
28088 Barn Court
Carmel, CA 93923

Jaurigue Law Group,
Attn: Michael Jaurigue, Managing Shareho
300 W. Glenoaks Blvd., #300
Glendale, CA 91202

Wilford Butch Lindley
340 El Camino Real South
Salinas, CA 93901

Pohanka of Salisbury, Inc.,
Attn: Neal Johnson, agent for service
1772 Ritchie Station Court
Capital Heights, MD 20743