Heinz Binder (SBN 87908)
Wendy Watrous Smith (SBN 133887)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
T: (408) 295-1700
F: (408) 295-1531
Email: heinz@bindermalter.com
Email: wendy@bindermalter.com

Attorneys for Defendant JRG Attorneys at Law, LLP
(named in Complaint as Johnson, Rovella, Retterer,
Rosenthal & Gilles, LLP)

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>ROBERT BROWER SR.,<br><br>          Debtor. | Case No.   15-BK-50801-MEH<br><br>Chapter 11<br><br>Adv. No.:  21-ap-05029-MEH |
| MICHAEL G. KASOLAS, solely in his capacity as the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust,<br><br>          Plaintiff,<br><br>v.<br><br>PATRICIA BROWER, solely as the trustee of the BROWER TRUST (2015), dated June 30, 2015, et al. | Date:     June 6, 2022<br>Time:    11:00 a.m.<br>Place:   Courtroom 11<br>Judge:  M. Elaine Hammond<br><br>(Appearance also available via Zoom.) |

**JRG ATTORNEYS AT LAW, LLP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ...............................................................................................................4

    A. Applicable standard for a motion to dismiss ................................................................4

    B. Plaintiff cannot state a claim to recover payments made by Coastal to JRG Attorneys as post-petition transfers of estate assets under Section 549 ....................5
        1. Coastal Funds were not property of the Bankruptcy Estate ...............................5
        2. The First Claim for Relief is largely time barred ................................................8

    C. The Third, Fourth, Fifth, Eighth and Ninth Claims for Relief also fail as Plaintiff cannot establish that the Coastal Funds were property of the Estate ..........9

    D. The Second Claim for Relief does not state a claim for rescission under California Corporation Code Section 1001 or otherwise .........................................11
        1. The California Corporations Code does not give shareholders the right to recover payments made from proceeds of an unauthorized transaction, only the right to rescind the unauthorized transaction that generated the proceeds ...............................................................................................................11
        2. SAC's Second Claim for Relief does not state a claim for rescission ..............11

    E. The Seventh Claim for Relief fails to state a claim for breach of fiduciary duty as it is barred by the litigation privilege ...........................................................12

    F. The Seventh Claim for Relief fails to state a claim for breach of fiduciary duty as it fails to allege the required elements of such a claim................................14

III. CONCLUSION ........................................................................................................16

# TABLE OF AUTHORITIES

Cases

*Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097 (9th Cir. 2002) .............. 5

*AMCAL Multi-Hous., Inc. v. Pac. Clay Prod.*, 457 F. Supp. 2d 1016 (C.D. Cal. 2006) .................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ............................................................................ 4

*Bailey v. Fox* 78 Cal. 389 (1889),................................................................................................ 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................ 4

*Campbell v. Title Guarantee etc. Co.*, 121 Cal.App. 374 (1932)................................................ 12

*Casey v. U.S. Bank*, 127 Cal.App.4th 1138 (2005) .................................................................... 15

*Chocolate Magic Las Vegas, LLC v. Ford*, 337 F. Supp.3d 950 (D. Nev. 2018) ........................ 1

*Falcon v. Long Beach Genetics, Inc.*, 224 Cal.App.4th 1263 (2014) ................................ 13, 14

*Gallego v. Wilson*, 882 F. Supp. 1169 (D. Mass. 1995) ............................................................ 4

*Gamble v. Tripp* 99 Cal. 223 (1893) ......................................................................................... 11

*Havas v. Thornton*, 609 F.2d 372 (9th Cir. 1979)..................................................................... 5

*Henry v. Lehman Commer. Paper, Inc. v. In re First Alliance Mtg Co.*
   471 F.3d, 977 F.N. 4 (9th Cir. 2006)................................................................................. 15

*In re Count Liberty LLC*, 370 B.R. 259 (Bankr. C.D. Cal 2007) ................................................ 14

*J. I. Case T. M. Co. v. Copren Bros.*, 45 Cal.App. 159 (1919) ................................................... 11

*King v. Los Angeles County Fair Assn.*, 70 Cal.App.2d 592 .................................................... 11

*Lee v. Hanley*, 61 Cal.4th 1225 (2015) .................................................................................... 10

*Lucas v. the City of Visalia*, 726 F. Supp. 2d 1149 (E.D. Cal. 2010).......................................... 1

*Maginess v. Western Securities Corp.*, 38 Cal.App. 56 (1918)................................................ 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir.2008) ............................ 5

*Marten v. Paul O. Burns Wine Co.*, 99 Cal. 355 (1893) ........................................................... 11

*Miller v. McColgan*, 17 Cal.2d 432 (1941) ............................................................................... 6

*Nelson v. Anderson*, 72 Cal.App.4th 111 (1999)...................................................................... 5

*O'Keefe v. Kompa* 84 Cal.App.4th 130 (2000) ................................................................. 12, 13

*Ramalingam v. Thompson*, 151 Cal.App.4th 491 (2007) ........................................................ 13

Case: 21-05029    Doc# 125-1    Filed: 05/09/22    Entered: 05/09/22 16:30:44    Page 3 of 20

*Sanders v. Magill*, 9 Cal.2d 145 (1937) .................................................................................. 12

*Silberg v. Anderson,* 50 Cal.3d 205 (1990) .............................................................................. 12

*St. James Church of Christ Holiness v. Superior Court of Los Angeles County*
    135 Cal.App.2d 352 (1955) ................................................................................................ 10

*Stowe v. Kaetzel*, 38 Cal.App.2d 356 (1940) ............................................................................ 12

*Strom v. United States*, 641 F.3d 1051 (9th Cir. 2011) ............................................................ 4

*Wang v. Heck*, 203 Cal.App.4th 677 (2012) ........................................................................... 13

<u>Statutes</u>

11 US Code § 108 ....................................................................................................................... 8

11 US Code § 303 ....................................................................................................................... 5

11 US Code §§ 327-330 ...................................................................................................... 10, 13

11 US Code § 541(a) 6, (a)(7) .................................................................................................... 2

11 US Code § 542 .................................................................................................................. 5, 10

11 US Code § 544 ....................................................................................................................... 9

11 US Code § 545 ....................................................................................................................... 9

11 US Code § 547 ....................................................................................................................... 9

11 US Code § 548 ....................................................................................................................... 9

11 US Code § 549 .................................................................................................................... 5, 9

11 US Code § 550 ....................................................................................................................... 9

11 US Code § 551 ....................................................................................................................... 9

11 US Code § 553 ....................................................................................................................... 9

11 US Code § 724 ....................................................................................................................... 9

Cal. Civ. Code § 47 ..................................................................................................................... 3

Cal. Civ. Proc. § 338(c)(1) .................................................................................................... 4, 10

Cal Corp. Code § 1001 ................................................................................................... 3, 6, 7, 11

Cal. Corp. Code § 1900-1907 .................................................................................................... 7

## I. INTRODUCTION

Defendant JRG Attorneys at Law, LLP, named in the complaint as Johnson, Rovella, Retterer, Rosenthal & Gilles, LLP, ("JRG Attorneys") has moved the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint filed against it by Michael B. Kasolas, as Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust ("Plaintiff"). (Doc# 103).[1] This Second Amended Complaint (the "SAC") asserts the following claims against JRG Attorneys: avoidance of post-petition transfers; rescission pursuant to California Corporation Code Section 1001; recovery of avoided transfers for benefit of the estate; turnover; accounting; breach of fiduciary duty; disgorgement; and conversion. This is Plaintiff's third attempt to state a claim to recover payments made by the California corporation Coastal Cypress ("Coastal") to JRG Attorneys for legal services. As with the previous two versions of the complaint, the SAC's central premise is that the funds held by Coastal (the "Coastal Funds") after the sale of certain property called the "Wine Estate Property" were at all times property of its shareholder, the bankruptcy estate of Robert Brower, Sr. (the "Bankruptcy Estate"), and thus could be subject to a range of claims to recover them. All of the claims against JRG Attorneys, other than the Seventh Claim for Relief for alleged "breach of fiduciary duty," depend on the claim that the Coastal Funds were property of the Bankruptcy Estate (the "Ownership Claims").

In Plaintiff's effort to establish the Bankruptcy Estate's ownership of the Coastal Funds, the original complaint ("Original Complaint") simply alleged that because Coastal had sold its major asset and paid creditors, the Bankruptcy Estate, as the sole shareholder of Coastal directly owned the Coastal Funds. The Court, in ruling on the three motions filed to dismiss the Original Complaint, held that the complaint did not allege facts or legal theories sufficient to claim that the Coastal Funds had been converted into property of the Bankruptcy Estate. (Transcript of the Court's Rulings on

---

[1] JRG Attorneys filed a 12(b) motion in response to the Original Complaint filed in this action (Doc# 20) and filed an answer in response to the First Amended Complaint (Doc# 83). As a matter of law, the Second Amended Complaint replaces the First Amended Complaint in its entirety and JRG Attorneys may respond to it either by filing an answer or with a motion under F.R.Civ.P. 12(b). *See Lucas v. the City of Visalia*, 726 F. Supp. 2d 1149, 1154 (E.D. Cal. 2010) *See also, Chocolate Magic Las Vegas, LLC v. Ford*, 337 F. Supp. 3d 950, 954 (D. Nev. 2018)

Motions to Dismiss, November 18, 2021, ("November Decision"), Request for Judicial Notice, B., Doc# 123.)

In its First Amended Compliant (Doc# 58), Plaintiff proposed three theories for ownership of the Coastal Funds, asserting that: (1) the Coastal Funds were "proceeds" of estate property under Bankruptcy Code Section 541(a)(6) and (a)(7)[2]; (2) that the Bankruptcy Estate held a right to the Coastal Funds because the debtor, Mr. Brower, Sr. (the "Debtor") and Coastal were alter egos; and (3) that the Bankruptcy Estate held a direct interest in the Coastal Funds as a sole shareholder. The court rejected each one of these claims in sustaining two more motions to dismiss. (Memorandum Decision, March 24, 2022, Doc# 97 ("March Decision")[3].) In Plaintiff's opposition to the motions to dismiss the First Amended Complaint, it raised a further theory of ownership based on the allegation that Mr. Brower, Sr. exceeded his corporate authority in dispersing the Coastal Funds without shareholder – and the Bankruptcy Court's – permission, and that this converted the funds into estate property. (March Decision, p. 11). The Court allowed Plaintiff an opportunity to amend the complaint again for the purpose of setting forth facts to support his theory. (March Decision, p. 12.)

The SAC repeats two of the rejected arguments to claim ownership of the Coastal Funds, and adds a third, equally flawed, theory. Contrary to the Court's March Decision, Plaintiff asserts the claim that the Coastal Funds were "assets of the Debtor's bankruptcy estate pursuant to Sections 541(a)(1), (a)(6) and (a)(7) . . ." because only the shareholder could consent to the use of Coastal's "lone asset" (presumably that means the Coastal Funds). (SAC, ¶ 5.) It also continues to argue that the Debtor's right to receive a shareholder distribution of the Coastal Funds, by itself, converted the funds into estate property. *Id.* The Court has already rejected both arguments. (March Decision, pp. 6, 8.)

Plaintiff's newest argument posits that the Bankruptcy Estate's entitlement to a distribution of the Coastal Funds is based on what the SAC identifies as the Second Restated Articles of Coastal,

---

[2] All statutory references not specifically identified refer to the United States Bankruptcy Code.

[3] A copy of the March Decision is provided with the Request for Judicial Notice for the Court's convenience.

and that the entitlement creates an ownership interest. But the additional document does not convert the ownership of the Coastal Funds any more than the prior arguments of entitlement did. The document included in the SAC provides that holders of preferred shares in the company have the right to distribution on the occurrence of certain "liquidation events" – such as Coastal's sale of the Wine Estate Property in 2015. But the SAC does not allege that the Bankruptcy Estate holds preferred shares in the company. Even if the Bankruptcy Estate was entitled to a distribution, as a preferred shareholder or otherwise, the Court observed in its March Decision: "that's not what happened." (March Decision, p. 8, l. 17.) The right to claim the Coastal Funds did not by itself transfer ownership.

The SAC's newest argument for ownership asserts a right to "rescind" the various transfers to defendants of Coastal Funds based on California Corporation Code Section 1001. As explained below, that section in relevant part only requires a company to seek shareholder approval of the principal terms of a transaction that disposes of all or substantially all of the company's assets. (Cal. Corp. Code §1001.) It does not operate to transfer ownership for corporate property nor require shareholder approval for all actions after such a transaction takes place. Nor does the SAC state a claim for recission against JRG Attorneys as Plaintiff has not complied with the basic element of a rescission claim—to make it promptly. As Plaintiff is unable to plead any set of facts to establish that the Coastal Funds were property of the Bankruptcy Estate, each of the Ownership Claims must be dismissed without leave to amend.

The SAC also asserts a claim of "breach of fiduciary duty" against JRG Attorneys based on its representation of Robert Brower, Sr. during the pendency of the bankruptcy case. As has been stated previously, this claim fails as it does not identify any fiduciary duty that is the basis for an independent cause of action against JRG Attorneys. Further, all of the actions (or lack of action) alleged as the basis for the claim were directly related to JRG Attorney's legal representation of clients in legal proceedings. They are protected absolutely by the California Litigation Privilege set forth in Cal. Civ. Code Section 47. The claim, therefore, must be dismissed with prejudice.

Finally, Plaintiff seeks to recover over 40 individual payments made by Coastal to JRG Attorneys from February 2016. (SAC, Ex 24.) The Original Complaint was filed on July 22, 2021—

more than five years after the initial challenged transfer, and most of the claim is time barred. The First Claim under Section 549 (and the related claims for recovery, and accounting) are limited to two years. 11 U.S.C. 546(d). The Ninth Claim for conversion is limited to three years (Cal. Civ. Proc. § 338(c)(1); and the Second Claim for 'rescission' is barred by laches to 6 months to a year.

The issues of whether the claims are time barred was raised in response to the Original Complaint, but not decided. (November Decision, p. 9, ll. 23-25.) As discussed below, the confirmed plan of reorganization did not expressly toll any statute of limitations and did not notify any party of their rights as a possible counterparty to a lawsuit; nor did it give any counterparty an opportunity to opt out of the tolling of a statute of limitations. (*See* discussion at p. 8.)

## II. ARGUMENT

### A. Applicable standard for a motion to dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

For the purposes of a motion to dismiss, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The obligation to provide the grounds for the claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (*Id*.) and the allegations must "raise a right to relief above the speculative level." *Id*.; *See also, Gallego v. Wilson*, 882 F. Supp. 1169, 1171 (D. Mass. 1995) ("a complaint will be deemed insufficient if the plaintiff relies upon bald assertions, unsupportable conclusions, and opprobrious epithets." (Internal citations and quotation marks omitted).)

Further, "[i]f a legal impediment such as an affirmative defense or some other bar to recovery is apparent from the face of the complaint, then a motion to dismiss for failure to state a claim is mandated." *AMCAL Multi-Hous., Inc. v. Pac. Clay Prod*., 457 F. Supp. 2d 1016, 1021

(C.D. Cal. 2006). Finally, dismissal should be granted without leave to amend where it is clear that the acts complained of cannot constitute a claim for relief and further amendments would serve no purpose. *See e.g., Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008); *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir. 1979).

### B. Plaintiff cannot state a claim to recover payments made by Coastal to JRG Attorneys as post-petition transfers of estate assets under Section 549.

#### 1. Coastal Funds were not property of the Bankruptcy Estate

Without establishing that the Coastal Funds were property of the Bankruptcy Estate at the time of transfer, the SAC cannot state a claim to avoid their payment under Section 549. That section provides: "except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under sections 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. §549(a). Plaintiff cannot establish that the Coastal Funds were property of the estate.

"It is well established that "state law…determines the nature and extent of a debtor's interest in property." *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002). In California, "shareholders own neither the property nor the earnings of the corporation. Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors." *Nelson v. Anderson*, 72 Cal.App.4th 111, 126 (Cal. Ct. App. 2d Dist. 1999) *internal citations omitted*. As stated by the California Supreme Court in *Miller v. McColgan*:

> In our approach to the problem presented here let us first consider the nature of this property – corporate stock – and the status of corporations and shareholders. <u>It is fundamental, of course, that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has</u> an expectancy in each, and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend.

*Miller v. McColgan*, 17 Cal.2d 432, 436 (1941), (questioned on other grounds).

The SAC alleges that Coastal owned and sold the Wine Estate Property, that the Coastal Funds were the result of the Wine Estate Property's sale, and that Coastal Cypress paid JRG Attorneys legal fees. (SAC, ¶¶ 81, 165, Ex. 24.) The SAC does not allege that Coastal Cypress issued a dividend or that the company resolved to dissolve or wind up its affairs – three events that could result in payment to shareholders.

The Plaintiff, having conceded Coastal's separate corporate existence, and that the Coastal Funds were never dispersed to the Bankruptcy Estate reasserts its claim of ownership based on an entitlement to distribution. The elements of the claim appear to be that: (1) the Bankruptcy Estate was the 100% shareholder of Coastal; (2) that Coastal "liquidated [its] sole asset" [presumably the sale of Wine Estate Property]; and (3) that the "amended articles" mandated the distribution of the sale proceeds to the Bankruptcy Estate (SAC, ¶181). The requirements that the Coastal Funds be distributed, however, "did not make it so". (March Decision page 8.) In dismissing the First Amended Complaint, the Court rejected the Plaintiff's argument that the Bankruptcy Estate's entitlement to a distribution converted the Coastal Funds into Estate Property. (March Decision, p. 8.)

The First Claim in the SAC also attempts to claim the Bankruptcy Estate owned the Coastal Funds because "under California law, the Estate had full control over the disposition of Coastal's assets insofar as Coastal was a nonoperating entity." Citing Cal. Corp. § 1001 (SAC, ¶181). The sentence is confusing. California Corporation Code Section 1001 provides, among other things, that a corporation must obtain shareholder's approval for the terms of the sale or disposition of all or substantially all of the operations assets out of the ordinary course of business. It does not, however, remove corporate authority from officers or directors upon the occurrence of such transaction, whether or not the transaction is properly authorized by shareholders. Nor does the section require that every transaction that occurs after a single sale of substantially all corporate assets, must be done with shareholder approval. Yet that is precisely what is alleged here, as the Plaintiff is seeking to reverse over 40 payments to JRG Attorneys made over four years. (SAC, Ex. 24.)

Equally confusing is the SAC's repeated assertion Coastal "had no ongoing business".

First, the docket shows that Coastal continued to own property and thus to "conduct business" after the sale of the Wine Estate Property. In the November Decision on the Original Complaint, the Court observed that after selling the Wine Estate Property, Coastal had acquired real property located in Selbyville, Delaware. (November Decision, pp. 7-8.) The court noted that in February 2021 the Trustee of the Liquidating Trust had sought approval to employ real estate brokers to sell the property. *Id.* Clearly, as of February 2021, Coastal was still in the "business" of owning property and presumably incurring debts such as real property taxes. Thus, to the extent Plaintiff's argument relies on its claim that Coastal was a "non-operating entity," the record and the Court's prior ruling defeat the argument.

Finally, nothing in California Corporation Code Section 1001, or in any other law, removes the authority of boards of directors of corporations upon the disposition of all are substantially all of the corporation's assets, whether such disposition is done with or without shareholder approval. Indeed, Section 1001(c) states that even if shareholders approve a disposition of all or substantially all of the corporation's assets, "the board may abandon the proposed transaction without further action by the shareholders . . .". Cal. Corp. Code §1001(d). Further, even where a corporation formally resolves to wind up its affairs, which is not alleged to have happened here, the shareholders need only vote on the original decision, and not on subsequent board actions. Corporations Code §§1900-1907. Thus, Plaintiff's argument that Coastal's original sale of the Wine Estate Property was done without appropriate shareholder approval does not support its conclusion that the sale divested Coastal's board of directors of further authority and placed that authority entirely into the hands of the Bankruptcy Estate.

Even if this argument had merit, however, it still does not *convert* the Coastal Funds from Coastal's property to Bankruptcy Estate property. Indeed, the SAC concedes this when it asserts that the Plaintiff has a right to have the various defendants return the payments to Coastal, not to the Bankruptcy Estate. (SAC, ¶¶ 183-184.) Thus, even in its own pleadings Plaintiff acknowledges that the Coastal Funds were not property of the estate when they were paid to JRG Attorneys.

The Trustee has now had three opportunities to re-characterize the Coastal Funds as property of the Bankruptcy Estate for the purpose of making a claim, with each explanation taking

the funds further away from the Plaintiff's claim of estate ownership--from straight ownership, as alleged in the Original Complaint, to ownership by the Debtor as sole shareholder as alleged in the First Amended Complaint, to the current claim that the corporation acted without shareholder approval in selling the Wine Estate Property thereby giving full control of the Coastal Funds to the Bankruptcy Estate. Each argument fails. As there is no basis upon which the Plaintiff may assert that the Coastal Funds were property of the estate when they were paid to JRG Attorneys, each of the Ownership Claims must be dismissed without leave to amend.

### 2. The First Claim for Relief is largely time barred

Even if a claim could be stated under Section 549, the claim against JRG Attorneys is largely time barred. Section 549(d) provides: "An action or proceeding under this section may not be commenced after the earlier of – (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." This adversary action was not filed until July 22, 2021 limiting any recovery to transfers after July 22, 2019. But the complaint seeks to recover Coastal's payments to JRG Attorneys from 2016. Plaintiff has claimed that because the plan of reorganization did not have Plaintiff appointed as the Trustee of the Liquidating Trust until the "Effective Date" of the plan, the various statutes of limitations governing the recovery actions were tolled until Union Bank, the plan proponent, decided to declare an effective date. (Bankruptcy Doc# 233, Section X.) Notwithstanding that assertion (SAC, ¶20), the plan does not expressly toll any statute of limitations from running.

More importantly, however, such a provision would unenforceable. There is no dispute that the right to enforce a statute of limitations is a substantive right held by any defendant. A bankruptcy filing does not suspend all statutes of limitations indefinitely but, for those periods that have not run as of the date of the petition, will extend it only two years under Section 108(a). Time limits for actions brought under the Bankruptcy Code are stated in the statute, and there is no general right for a debtor to extend a statute of limitation unilaterally. Nor can such suspension be created in a Chapter 11 Plan, particularly where the parties whose rights are impacted received no notice and had no opportunity to object to the limitation of their rights.

Asserting that a Chapter 11 plan can suspend the right of a non-creditor to claim the running

of a statute of limitation faces the same problems of jurisdiction, notice and due process as asserting that a plan can force a non-creditor to release its claim against a third-party. Both types of plan terms force a party who has no right to vote on, or object to, the plan to surrender substantial legal rights and neither is allowed. This is particularly so when the party whose rights are being impacted is not given notice and an opportunity to opt out. Two recent cases have provided detailed explanations of why Chapter 11 plans cannot be used to limit the rights of parties who are not creditors in the case. *In re Purdue Pharma, L.P.*, 2021 WL 5979108 (S.D. N.Y. 2021); *Patterson v. Mahwah Bergen Retail Grp. Inc.* (2022 U.S. Dist. LEXIS 7431) (E.D. Va 2022)]; *see e.g., Levin v. Maya Contr. (In re Maya Constr. Co)* 78 F.3d 1395 (9th Cir 1996) [stating rule that when a known creditor is not given formal notice, they will not be bound by a Chapter 11 Plan, citing *New York v. New York, New Haven & Hartford R.R. Co,* 344 U.S. 293, 297 (1953)].

JRG Attorneys was not a creditor of the Bankruptcy Estate, did not represent it, was not served with a proposed plan, and had no opportunity to object to or vote on the plan. Nor did it receive any notice that the plan was to substantively affect its rights by suspending statutes of limitations from running. (*See,* Doc# 217, COS of Second Amended Plan, Disclosure Statement, Ballot and related documents.)

### C. The Third, Fourth, Fifth, Eighth, and Ninth Claims for Relief also fail as Plaintiff cannot establish that the Coastal Funds were Property of the Estate.

Plaintiff's Third Claim for Relief seeks to recover and preserve the Coastal Cypress Payments to JRG Attorneys pursuant to Sections 550 and 551. Bankruptcy Code §550(a) provides in relevant part: "except as otherwise provided in this section, to the extent that a transfer is avoided under sections 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property[.]" As Plaintiff cannot avoid a transfer under any of the related sections because Plaintiff cannot establish that the Coastal Funds were property of the estate, it cannot meet the conditions precedent to Sections 550 and 551. The Third Claim for Relief cannot be amended to state a claim and must be dismissed without leave to amend.

The Fourth Claim for Relief for Turnover of Property under Bankruptcy Code §542 fails for

the same reason. A plaintiff's ability to demand turnover pursuant to Section 542 presupposes the subject property is property of the estate, which Plaintiff cannot prove here. Thus, the SAC's Fourth Claim for Relief necessarily fails.

The Fifth Claim for an "accounting" is also premised on the Coastal Funds being property of the estate and also must fail. Further, "[a] suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law. An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain." *St. James Church of Christ Holiness v. Superior Court of Los Angeles County*, 135 Cal.App.2d 352, 359 (1955). The SAC seeks an accounting of the Coastal Funds that were paid to JRG Attorneys but then describes exactly the amount it is seeking. Thus, there is no claim for an accounting stated, and the Fifth Claim for Relief must be dismissed without leave to amend.

The Eighth Claim for Relief is also premised on the ownership of the Coastal Funds by the Bankruptcy Estate and must fail with the rest. It claims that, by receiving payments from Coastal, JRG Attorneys was paid with estate property and thus violated Section 330. The claim also fails because Section 330 does not provide a remedy for recovery by a trustee (or a successor such as the Plaintiff). (November Decision, p. 11, ll. 15-16.)

Finally, the Ninth Claim for conversion also fails. In California, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015). Consistent with the other claims, the Ninth Claim for Relief necessarily fails because the Coastal Funds were never the Bankruptcy Estate's property and it had no right to possess them. The action would also be partially time barred. CCP §338(c)(1) provides that an action for conversion must be brought within three years – yet the SAC seeks to recover payments as far back as 2016. As explained above, any tolling of statute of limitation implied in the plan of reorganization is unenforceable against JRG Attorneys. Therefore, the Complaint's Ninth Claim for Relief must be dismissed without leave to amend.

MEMO OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT PAGE 10
Case: 21-05029   Doc# 125-1   Filed: 05/09/22   Entered: 05/09/22 16:30:44   Page 14 of 20

**D. The Second Claim for Relief does not state a claim for rescission under California Corporation Code Section 1001 or otherwise.**

1. **The California Corporations Code does not give shareholders the right to recover payments made from proceeds of an unauthorized transaction, only the right to rescind the unauthorized transaction that generated the proceeds.**

The Second Claim of the SAC purports to assert a claim for "recission" under Cal. Corp. Code Section 1001. As noted above, that section requires a corporation to obtain a shareholders approval of the principal terms of the sale or disposition of "all or substantially all of the company's assets." Here, the sale of the Wine Estate Property generated the Coastal Funds. But Plaintiff does not name the buyer of the Wine Estate Property or seek to rescind that transaction (nor could it seven years after the sale had been completed). Rather, Plaintiff seeks to recover from JRG Attorneys, not a single disposition of "substantially all" of Coastal's assets, but over 40 individual transfers spread over four years, totaling approximately $280,000,000. The total equals only approximately 4% of the $7 million of Coastal Funds the Plaintiff is trying to recover—hardly "substantially all" of Coastal's assets.

2. **SAC's Second Claim for Relief does not state a claim for rescission.**

Even if Plaintiff's theory could support a claim of rescission under Corporation Code 1001, the SAC does not meet the basic element of equitable rescission that requires the action be brought promptly. See *King v. Los Angeles County Fair Assn.*, 70 Cal.App.2d 592, 596-7 (1945).

The court in *King* stated:

> The obligation on the part of these plaintiffs to act promptly if they desired equitable relief against the transfer of the assets is analogous to the duty of one who desires to rescind a contract because of misrepresentation and fraud to give notice thereof promptly. There are many cases in which delays for a shorter period than a year have been held fatal to the right to rescind. (See *Maginess v. Western Securities Corp.* (1918), 38 Cal.App. 56 [175 P. 277] -- six months; *Bailey v. Fox* (1889), 78 Cal. 389 [20 P. 868] -- 4 months; *Gamble v. Tripp* (1893), 99 Cal. 223 [33 P. 851] -- 4 1/2 months; *Marten v. Paul O. Burns Wine Co.* (1893) 99 Cal. 355 [33 P. 1107] -- 3 months; *J. I. Case T. M. Co. v. Copren Bros.* (1919), 45 Cal.App. 159 [187 P. 772] -- 4 months; *Stowe v. Kaetzel* (1940), 38 Cal.App.2d 356 [101 P.2d 719] -- 11 months; *Sanders v. Magill* (1937), 9 Cal.2d 145 [70 P.2d 159] -- 4 months;

> *Campbell v. Title Guarantee etc. Co.* (1932), 121 Cal.App. 374 [9
> P.2d 264] -- 9 months. Under the circumstances of this case it
> clearly appears that the plaintiffs waited an unreasonable length of
> time before seeking equitable relief.

*Id.* Here, Plaintiff is seeking to "rescind" payments made years before. It cannot possibly assert that the claim is being made promptly. As Plaintiff has not pled a basic element for a rescission claim, it must be dismissed.

### E. The Seventh Claim for Relief fails to state a claim for breach of fiduciary duty as it is barred by the litigation privilege

The litigation privilege is explained in depth in the California Supreme Court case *Silberg v. Anderson,* 50 Cal.3d 205, 212-16 (1990):

> Although originally enacted with reference to defamation…the
> privilege is now held applicable to any communication, whether or
> not it amounts to a publication…and [to] all torts except malicious
> prosecution…[It] applies to any publication required or permitted
> by law in the course of a judicial proceeding to achieve the objects
> of the litigation, even though the publication is made outside the
> courtroom and no function of the court or its officers is involved.

*Supra.*, p. 212 *(internal citations omitted.)*

The court sets out the important public purposes of the privilege in protecting effective litigation and explains:

> To effectuate its vital purposes, the litigation privilege is held to be
> absolute in its nature…and to immunize defendants from tort
> liability based on abuse of process, intentional infliction of
> emotional distress, intentional inducement of breach of contract,
> intentional interference with prospective economic advantage,
> invasion of privacy and fraud.

*Supra,* p. 215 *(internal citations omitted)*. The privilege applies "to conduct or publications occurring outside the courtroom, [and] to conduct or publications which are legally deficient for one reason or another…" *O'Keefe v. Kompa* 84 Cal.App.4th 130, 134 (2000) (internal citations omitted.)

Here, the Seventh Claim for Relief relates only to JRG Attorneys' actions (or inactions) taken *in connection with its legal representation* of its clients in litigation, which are clearly

1 | covered by the litigation privilege. The SAC lists six actions by JRG Attorneys that allegedly form
2 | the basis of the claim. The first three relate to complying with the Bankruptcy Code's Sections 327
3 | through 330 regarding hiring and paying bankruptcy professionals – specifically: filing an
4 | application to be employed as debtor's special counsel; obtaining approval for receiving payment;
5 | and failing to disclose the terms of engagement to represent Coastal and the other defendants in the
6 | Enhancement Action. The fourth relates to JRG Attorney's alleged conflict of interest in
7 | representing multiple defendants. The fifth is an allegation that JRG Attorneys "failed to properly
8 | advise the Debtor…". And the last is a twisted sentence that asserts that by being paid for legal
9 | services, JRG Attorneys was aiding and abetting Brower's breach of *his* duties. (SAC, ¶217.)

All of these actions fall squarely in the scope of activities protected by the litigation privilege. The litigation privilege has developed to apply to substantially more than just writing and speaking, and the Plaintiff cannot evade the privilege by casting its allegations in a passive voice. In *O'Keefe v. Kompa*, 84 Cal.App.4th 130, 133 (2000), the court noted that "communication" that is covered by the litigation privilege "also applies to conduct or publications occurring outside the courtroom…and even to malicious or fraudulent conduct or publications." *Id.* (internal citations and quotations omitted, emphasis added.) "The litigation privilege is broadly applied and doubts are resolved in favor of the privilege." *Wang v. Heck*, 203 Cal.App.4th 677, 684 (2012) (internal citation omitted.) It applies to non-communicative actions when "the gravamen of a complaint is communicative conduct," and applies inaction as well as actions. *Ramalingam v. Thompson*, 151 Cal.App.4th 491, 504-05, (2007) [applying litigation privilege to a claim of an accountant's failure to investigate issues for trial]; *Falcon v. Long Beach Genetics, Inc.*, 224 Cal.App.4th 1263, 1272-73, 169 Cal. Rptr.3d 497, 505-06 (2014) [holding that the litigation privilege applies to noncommunicative actions that are "necessarily related" to the communicative conduct.]

Plaintiff tries to avoid the litigation privilege by asserting that JRG Attorneys' alleged breach was not by representing clients in litigation, but by being paid for it by Coastal. But such a distinction would eviscerate the rule, as it would allow any party to sue an attorney for otherwise-protected actions in the context of litigation simply by alleging the wrongdoing was in being paid, not for the litigation itself. *Id.*

Finally, Plaintiff cannot strip JRG Attorneys of the protection of the litigation privilege by now claiming that it represented the debtor-in-possession, not Robert Brower, Sr. individually, and therefore had an independent fiduciary duty to the estate. Plaintiff is clearly attempting to place JRG Attorneys in the heightened role of responsibility held by debtor-in-possession's counsel as set forth in *In re Count Liberty LLC*, 370 B.R. 259 (Bankr. C.D. Cal 2007). But, neither that case nor the cases cited there addressed the litigation privilege or created an independent right for a Bankruptcy Estate to collect damages from an attorney for the fact of its representation of a debtor in his individual capacity rather than as a debtor-in-possession. They certainly did not create such a right to collect fees that an attorney was paid for representing other parties.

As the claim is based entirely on JRG Attorneys' actions in representing its clients, it is barred by the litigation privilege and must be dismissed with prejudice.

### F. The Seventh Claim for Relief fails to state a claim for breach of fiduciary duty as it fails to allege the required elements of such a claim.

The Seventh Claim for Relief makes a bald assertion that JRG Attorneys represented a Chapter 11 debtor-in-possession and thus, had an independent fiduciary duty to the Bankruptcy Estate. (SAC, ¶217.) The debtor-in-possession here at all relevant times had separate counsel-first Campeau, Goodsell Smith and William Healy, and subsequently Jaurigue Law Group. (See Doc# 2, p. 197.) JRG Attorneys was never hired by the Bankruptcy Estate (*See* Bankruptcy Docket), and never sought to be paid by it. The only allegation of payment, in fact, is payment by Coastal from Coastal Funds. The SAC, therefore, does not state any independent fiduciary duty of JRG Attorneys to the Bankruptcy Estate that could give rise to a claim for Plaintiff to recover fees from JRG Attorneys.

Of the alleged breaches of fiduciary duty, this court has previously rejected those relating to an attorney's obligation under the Bankruptcy Code regarding employment and payment. (November Decision, p.11, ll. 15-16.) The court there held that these claims are solely based on obligations created by the Bankruptcy Code and that there are no provisions in these sections for the payment of damages. (November Decision, p. 11, ll. 13-17.) The Court also rejected the allegation that Plaintiff could seek affirmative recovery for JRG Attorneys' alleged conflict of interest in its

representation of Robert Brower. Sr. (November Decision, p. 11, ll. 18-23.)

The SAC also asserts that JRG Attorneys failed "to properly advise Debtor of his responsibilities under the Bankruptcy Code…". (SAC, ¶217.) But the Debtor had his own bankruptcy counsel for that task. As is evident from the pleadings on the docket, JRG Attorneys was not debtor-in-possession counsel.

Finally, the last claim, though largely undecipherable, appears to press into a single sentence an entire cause of action for aiding and abetting Robert Brower, Sr. in his breach of fiduciary duty to the Bankruptcy Estate. It is entirely unclear, among other things, what breach of Mr. Brower, Sr.'s duty to the estate was the particular objectionable conduct that JRG Attorneys was assisting.

In order to state a claim for aiding and abetting breach of fiduciary duty, the plaintiff must allege either a) that the defendant knew that the other's conduct constituted a breach of fiduciary duty and "gave substantial assistance or encouragement" to such breach, or b) that the breach is such that the defendants' action, when separately considered, is a breach of the defendant's independent duty to the plaintiff. *Casey v. U.S. Bank*, 127 Cal.App.4th 1138, 1145. If there is no independent duty to the plaintiff that is breached by the defendant's actions, the plaintiff must establish that the defendant had actual knowledge of the specific primary wrong and acted with the intent to facilitate it. *Id.* An allegation that a defendant had "vague suspicion of wrongdoing" or knew of "wrongful or illegal conduct" does not constitute sufficient pleading that the defendant had "actual knowledge" necessary to state a claim. *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mtg Co.)* 471 F.3d 977, 922, F.N. 4 (9th Cir. 2006).

Here, the SAC does not allege that JRG Attorneys knew that Robert Brower, Sr. was breaching his fiduciary duty to the Bankruptcy Estate by having JRG Attorneys represent Coastal Cypress, the other defendants, as well as Robert Brower, Sr. At best, the SAC alleges "on information and belief" that JRG Attorneys knowingly and intentionally "received" payment from Coastal that did not benefit the Bankruptcy Estate or Coastal. This does not meet the requirement of pleading that the defendant actually knew of the specific breach of fiduciary duty being claimed and provided substantial assistance or encouragement for such breach. Furthermore, if anyone was injured it was Coastal, who paid for allegedly valueless service. But Coastal is not the plaintiff

here.

As the Seventh Claim for Relief is barred by the litigation privilege, it must be dismissed without leave to amend.

## III. CONCLUSION

The SAC turns almost entirely on the flawed assertion that the Coastal Funds belonged to the Bankruptcy Estate, and thus were subject to the various claims for avoidance. Yet neither the facts pled in the SAC nor the history of the case show anything other than that the funds belonged to Coastal. This alone defeats all of the various Ownership Claims (numbers 1, 2, 3, 4, 5, 8 and 9). There is no way for the Liquidating Trust to cure the flaw by further pleading. The remainder of the objections stated here regarding time bars and pleading inadequacies for those claims simply multiply the reasons why they must be dismissed with prejudice.

Claims Seven and Eight asserted specifically against JRG Attorneys must also be dismissed. The Seventh Claim for "breach of fiduciary duty" is brought in clear violation of the absolute litigation privilege, as well as not stating a basis for the Liquidating Trust to bring the claim or alleging its basic elements. The Eighth Claim for "disgorgement" is brought with no legal authority at all.

JRG Attorneys respectfully requests that the Motion be granted in its entirety and the SAC be dismissed without leave to amend.

Dated: May 9, 2022                              BINDER & MALTER, LLP


By: /s/ *Wendy Watrous Smith*
    Wendy Watrous Smith
    Attorneys for JRG Attorneys at Law