Heinz Binder (SBN 87908)
Wendy Watrous Smith (SBN 133887)
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA  95050
Phone:   408-295-1700
Fax:     408-295-1531
Email:   Heinz@bindermalter.com
         Wendy@bindermalter.com

Attorneys for Defendant JRG Attorneys at Law, LLP
(named in Second Amended Complaint as Johnson, Rovella,
Retterer, Rosenthal & Gilles, LLP)

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>　　　　　　Debtor. | Bk. Case No. 15-50801 MEH<br><br>Chapter 11 |
| MICHAEL G. KASOLAS, solely in his capacity as the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust,<br><br>　　　Plaintiff,<br><br>v.<br><br>PATRICIA BROWER, solely as the trustee of the BROWER TRUST (2015) dated June 30, 2015, et al.<br><br>　　　Defendants. | Adv. Pro. No. 21-ap-05029-MEH<br><br>Date:　　June 6, 2022<br>Time:　　11:00 a.m.<br>Place:　　Courtroom 11<br>Judge:　　M. Elaine Hammond<br><br>(Appearance also available via Zoom.) |

**REPLY TO TRUSTEE'S OPPOSITION TO MOTION TO DISMISS**

　　Defendant JRG Attorneys replies to the plaintiff's Omnibus Opposition to defendants' motions to dismiss plaintiff's second amended complaint (the "Opposition") filed by the Liquidating Trust.

The Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust (the "Plaintiff") has failed in the most recent, and one hopes the last, effort to salvage the complaint brought to reclaim long-made payments by the Coastal Cypress Corporation ("Coastal") to JRG for legal services.[1] The Second Amended Complaint ("SAC") against JRG should be dismissed without leave to amend.

### A. Neither Coastal's Amended Articles of Incorporation, nor the California Corporations Code, operate to transform the Coastal Funds into property of the Bankruptcy Estate.

The Plaintiff does not dispute that six of the eight claims for relief asserted against JRG in the SAC depend on the Plaintiff's assertion that the money that Coastal paid to JRG did not belong to the corporation, but was property of the Bankruptcy Estate when each payment was made. The Plaintiff, however, continues to struggle to explain how, when, or by what mechanism the Coastal Funds were allegedly transformed from being property of the corporation to being property of the Bankruptcy Estate.[2]

As a result of the prior two rounds of motions to dismiss, the Plaintiff has now conceded that Coastal continued to exist as a separate company owning separate assets, and that the property called the "Wine Estate Property" was owned by Coastal and not by its shareholder. The Plaintiff also must concede that, once the Wine Estate Property was sold, the corporation continued to exist and had continued obligations both to pay creditors and taxing authorities, and in connection with the subsequently-purchased real property. Thus, the Plaintiff must identify some event that would remove the Coastal Funds from the corporation and convert them into Bankruptcy Estate property. Neither of the arguments now included in the SAC and repeated in the Opposition achieve this goal.

---

[1] Capitalized letters not otherwise defined have the meaning set forth in the Memorandum of Points and Authorities filed in support of the motion to dismiss the Second Amended Complaint. Docket #125-1

[2] These claims are: the first to avoid post-petition transfers; the third to recover avoided transfers; the fourth for turnover of estate property; the fifth for an accounting; the eighth for disgorgement of fees paid with estate funds; and the ninth for conversion of estate assets. They are referred to here as the "Ownership Claims".

First, the Plaintiff argues that because Coastal's sale of the Wine Estate Property was a sale of all, or substantially all, of the corporation's property and required a shareholder approval under California Corporations Code 1001 the sale itself converted the proceeds to shareholder property. (Opposition, p. 18.) But the Plaintiff provides no authority for the conversion of ownership. It is not disputed that Coastal's sale of the Wine Estate Property was the type of sale requiring shareholder approval under the Corporations Code. Nor does it dispute that the shareholder was the debtor-in-possession and his approval of the sale required approval by the Bankruptcy Court. But the fact that the approval was never obtained did not convert the ownership of the Coastal Funds to property of the estate.

The Opposition does not address the structure and operation of Section 1001 of the Corporations Code and the fact that the Corporations Code does not automatically terminate the corporation or its control by a board of directors when a corporation has sold its assets. (*See,* discussion in MPA of the Motion to Dismiss, Doc# 125, p. 7). At most, Corporations Code Section 1001 gives shareholders a right to rescind an unapproved sale of "all or substantially all" of the corporation's assets and bring the property back into the corporation.

The Plaintiff instead turns to Coastal's Amended Articles of Incorporation, and the alleged right of the holders of preferred shares. The SAC does not actually identify the Bankruptcy Estate as a holder of preferred shares, and Plaintiff does not answer JRG's challenge on this issue in the Opposition, so the application is questionable. In any case, the Amended Articles attached to the SAC provide that, if a "liquidation event" occurred, "the holders of Series A preferred shares shall be entitled to receive, prior and in preference to any distribution to holders of common stock" an amount of two dollars per share. It further states that if the funds are insufficient to pay the preferred shares, then the assets and funds "legally available for distribution" shall be distributed ratably to the preferred shareholders. (SAC, Exhibit 1, Article III, Sec. B.2.)

The Amended Articles of Incorporation do not automatically convert ownership of corporate assets to shareholders upon the "liquidation event." Nor could they, as the corporation has to pay its creditors, such as taxing authorities, before distributing assets to shareholders. *See also*, California Corporations Code §§1900-1907 regarding winding up a corporation.

Furthermore, since the SAC does not state whether preferred shares were ever issued (or issued and returned as a result of litigation), it does not show that the priority distribution provision was ever triggered. Indeed, the preference was only $2 per share. Depending on how many shares were issued, there could certainly be a "liquidation event" that resulted in enough proceeds to pay the preferred share's preference and leave funds remaining in the company to continue operations or begin new ones. The Plaintiff's silence regarding whether any preferred shares were issued suggests that such a claim cannot be made, and thus the argument based on the rights of "preferred" shares must fail.

The Opposition concludes that "the Debtor's bankruptcy estate's purported expectancy became an ownership interest under California law and the Amended Articles when Coastal liquidated its only assets." (Opposition, p. 15.) But the law does not support the Plaintiff's claim of converted ownership. The only case the Plaintiff cites is, again, *In re Pisculli,* 2009 WL 700059 (Bankr E.D.N.Y. 2009), for the argument that the Debtor as shareholder became the owner of the assets. (Opposition, p. 15.) But this court expressly rejected that argument and the case authority when it granted the motion to dismiss the First Amended Complaint. (Court's Memorandum of Decision, Doc# 97, pp. 8-10; *see also*, Defendant Oldfield Creek, LLP's Reply ISO Motion to Dismiss Plaintiff's Second Amended Complaint" ("Oldfield Reply"), Doc# 144, discussion regarding rejected shareholder-as-owner argument, pp. 3-5.) As the Plaintiff has not identified any law or mechanism that would have converted the Coastal Funds to assets of the Bankruptcy Estate before they were paid, he cannot establish ownership for the purpose of the Ownership Claims.

As the Coastal Funds were not property of the Bankruptcy Estate, each of the Ownership Claims must fail. The details of that failure are set forth in the Motion. The Oldfield Reply also sets out the impact of the Coastal Funds not being property of the Bankruptcy Estate on each of the Ownership Claims, so the arguments need not be restated here. (Oldfield Reply, pp. 5-7.)

  **B.**  **The Plaintiff's efforts to apply the Corporations Code 1001(c) for the purpose of revoking Coastal's multiple payments over several years to multiple parties conflate Coastal with the Debtor-in-Possession.**

The Plaintiff argues that because Coastal's sale of the Wine Estate Property required approval of the shareholders of the corporation, the corporation had to seek permission from the

shareholder for every single subsequent transaction. (Opposition, p. 20.) But nothing requires a corporation to obtain a shareholder's approval for every transaction after a major sale of the corporation's assets. The Plaintiff identifies no support for its position. Rather, as noted in the Motion, Corporations Code Section 1001 does not divest the board of directors of a corporation from its authority. The Plaintiff seems to suggest that because the post-sale payments by Coastal were not in Coastal's ordinary course of business, they required the shareholder's and the Bankruptcy Court's approval. But Coastal was not in bankruptcy, so whether Coastal's actions were "in the ordinary course" of its business was irrelevant.

The Plaintiff cites the case of *In re Williams* 104 B.R. 296 (Bankr. C.D. Cal. 1989) for the position that a trustee can avoid the transfer of payment of proceeds of a post-petition sale of a bankrupt entity's assets. (Opposition, pp. 20-21.) But the *Williams* case is inapplicable here because the property sold and the proceeds paid were owned by Coastal, a non-debtor, not by the Bankruptcy Estate. The fact that the payments were made outside of the ordinary course of *Coastal's* business did not subject them to the approval by the bankruptcy court.

Finally, the Opposition provides no explanataion how the Plaintiff can combine what appear to be hundreds of transactions into a single event in an effort to characterize all of them together as a "transaction" that needs to be approved by a shareholder under Corporation Code 1001. As noted by other defendants as well, each party received different amounts over different times for different purposes. They cannot be consolidated for the purpose of forcing all of the claims into a single transaction.

C. **The Plaintiff's claim that the confirmed Plan of re-organization suspended all statutes of limitation until the Trustee was appointed is not supported by the law, the plan, or the Court's prior order.**

The Plaintiff relies on the confirmed plan of reorganization in the underlying bankruptcy case to suspend all statutes of limitations against any potential defendant until the trustee was appointed, and claims that JRG is now prohibited from asserting a time-bar as a defense. This argument hangs entirely on the court's ruling on the previously-dismissed original complaint, and quotes a portion of the Court's prior order. (Opposition, p. 24.) The court's comments were clearly preliminary and applied only the motions before it at the time. The court prefaced its

Case: 21-05029    Doc# 145    Filed: 05/27/22    Entered: 05/27/22 16:47:27    Page 5 of 10

statement noting its finding was "as to the motions to dismiss," and that because "multiple claims are likely to be re-pled," it was "premature" to make a final determination on the matter. (*See,* Request for Judicial Notice, transcript of Rulings on Motions to Dismiss, p. 9.) Of course, the complaint before court then did not include the Plaintiff's newest claims against JRG.

The critical issue that is before the court now, which was not decided in the original motion to dismiss, is whether any plan for reorganization can suspend a statute of limitations protecting a third-party when there is no express provision in the plan tolling the statute, the proposed tolling is contrary to specific terms of the Bankruptcy Code, and no notice was given to the affected party. The Plaintiff does not challenge that the plan of reorganization in this case does not have any express tolling term, or that the claims it is bringing would otherwise be limited by statute. Nor does the Plaintiff dispute that a defendant's right to claim the protection of a statute of limitations is a substantive one. The Opposition makes no effort to explain how the plan actually implements the alleged tolling, or suggests that any notice was ever given to those who whose rights would be limited.

If, in fact, the confirmed plan were to toll the statute of limitations protecting future defendants, it would operate as an injunction prohibiting those defendants from claiming the protection of time-bar statutes. Such an injunction is clearly not included in any part of the Bankruptcy Code but contradicts them. *See, e.g.,* 11 U.S.C. §549 (limiting action to recover transfer of estate property to two years after the date of the transfer in question).

According to Bankruptcy Rule 3016(c)(3):

> [I]f a plan that provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic or underline text) all acts to be enjoined and identify the entities that would be subject to the injunction.

*Id.* It is evident that the plan and disclosure statement in this case do not meet these requirements. (Bankruptcy Case, Doc #215, Creditor MUFG Union Bank, N.A. Second Amended Combined Plan of Reorganization and Disclosure Statement, Dated August 17, 2017, showing no description of the injunction or list of parties who would be affected by it.)

As there was no notice at all of the effect of the plan to toll statutes of limitation, nor even

specific language in the plan doing so, Plaintiff cannot now assert that JRG is enjoined from claiming that these actions are time-barred. *See e.g. Deocampo v. Potts*, 836 F.3d 1134, 1144-45 (9th Cir. 2016) [court refused to infer an injunction from language of plan where there had been no specific finding of fact or notice regarding the injunction.] *See also: In re Ground Round*, 2007 Bankr. LEXIS 503*11 (Bankr. D. Mass (2007) [finding that "cobbling an injunction together from the Confirmation Order, the Plan and the Settlement, is insufficient to reach the level of notice and clarity necessary under Fed. R. Bankr. P. 2002(c)(3) and 3016."]; *In re Mallinckrodt PLC,* 2022 Bankr. LEXIS 273 *37-37 (Bankr. Del. 2022) [setting forth in detail the requirements to provide due process to third-parties impacted by expanded injunctions in a plan.][3]

    Finally, the Opposition does not dispute that no effort was made to provide any notice to JRG of the extended injunction alleged to be included in the plan of organization. Rather, it refers to several cases where defendants of avoidance actions sought to be considered as contingent creditors, and thus claimed to be entitled to notice of the plan. That is not the issue here. Those cases did not involve an expanded injunction against potential future defendants. Put another way, a person who is aware of the existence of the bankruptcy is, arguably, put on notice of the potential impact of bankruptcy process *within the scope* of the Bankruptcy Code. But that person has no reason to expect that a plan will include terms that are contrary to the Bankruptcy Code itself unless he or she receives proper notice and an opportunity to object or opt out of the plan.

    If any portion of the SAC survives to state a claim against JRG, which is unlikely, it must be limited by the applicable statute of limitation. Specifically, the case was filed on July 22, 2021. Any action brought to avoid transfer of estate property would be limited to transfers made after July 22, 2019. 11 U.S.C. §549. Any action for damages based on a state law claim allegedly owned by the Bankruptcy Estate directly would be barred by the relevant State statute.[4]

---

[3] Although the cases addressing whether a plan of reorganization can impose greater injunctions against third-parties than are provided for in the Bankruptcy Code usually deal with an enjoined party asserting a claim, there is no different analysis where, as here, the enjoined party is asserting a defense.

[4] A "breach of fiduciary duty" action, for example is barred by a four-year statute (Cal. Civ. Pro. §343), though here it is entirely barred by the litigation privilege. *See*, discussion in

**D. Unable to defeat JRG's litigation-privilege defense to the Plaintiff's purported "breach of fiduciary duty" claim, the Plaintiff now threatens a legal malpractice claim. No such claim is stated in the complaint, nor can one be.**

The predicate of the SAC's separate claim against JRG is that it represented Mr. Brower, Sr., not individually, but in his role as debtor-in-possession, and that by representing Coastal and the other defendants as well, retained an unwaivable conflict of interest. Notwithstanding the bare assertion, nothing in the SAC supports the claim. Rather, as the Plaintiff emphasizes, Mr. Brower Sr., Coastal, and other defendants all litigated against Union Bank as a creditor and it its role as representing the interests of the Bankruptcy Estate. As presented in the SAC, it is evident that Mr. Brower Sr.'s personal interests in the context of that litigation were different from those of the Bankruptcy Estate. According to the Plaintiff, apparently Mr. Brower Sr. was not allowed to have interests divergent from those of the estate. Or if he did, he could not have separate counsel because any counsel would automatically have the Bankruptcy Estate as a client and would be disqualified because of an unwaivable conflict. With this reading, no individual who is also a debtor-in-possession could ever hire an attorney to take a position contrary to the bankruptcy estate—for example to defend an exemption or a pre-petition transaction brought by a creditor's committee—even when the debtor-in-possession had its own attorney.

Here, Mr. Brower, Sr. had debtor-in-possession counsel. This is also not denied by the Plaintiff. All of the cases cited by the Plaintiff imposing the additional obligations of counsel to a bankruptcy estate and the court involve counsel for a debtor-in-possession, not an attorney acting for the benefit of an individual and his individual interests. None of the cases create a claim of legal malpractice for even a debtor-in-possession's breach of a heightened duty to the bankruptcy estate and to the court.

In any case, the SAC does not state a claim for legal malpractice against JRG. This is an entirely new theory and cannot be raised in an opposition to the motion to dismiss the third iteration of a complaint. It appears it is now raised solely to avoid the absolute bar of the litigation

---

(cont.)
Motion and below. A legal malpractice claim (newly threatened in the Opposition), must be brought in one year from discovery. Cal. Civ. Pro. §340.6.

Case: 21-05029    Doc# 145    Filed: 05/27/22    Entered: 05/27/22 16:47:27    Page 8 of 10

privilege. No such a claim can be stated. First, the alleged "violation of fiduciary duty" to file an application to be employed, to make disclosures, and obtain permission to be paid are all obligations to the court, if they applied at all, and do not amount to fiduciary duties to the Debtor nor give rise to malpractice claims. Second, Mr. Brower, Sr. had debtor-in-possession counsel responsible for advising him of his duties. The Plaintiff sites no authority suggesting that JRG had that duty as well. The cases cited by the Plaintiff all involve attorneys representing the debtor-in-possession, not in their individual capacity. Finally, the claim that the litigation privilege does not apply because a malpractice claim can only be brought by the attorney's former client. Here, JRG never represented the Bankruptcy Estate or the debtor-in-possession, so the Plaintiff cannot claim this as a waiver of the privilege. *See, MMM Holdings, Inc. v. Reich,* 21 Cal.App.5th 167, 186 (2018).

The Plaintiff may argue that Mr. Brower, Sr. had an individual malpractice claim based on the alleged "conflict" of JRG representing Mr. Brower, Sr., Coastal and the other defendants, and that the claim is now the property of the estate. But the alleged conflict was between the clients JRG actually represented–Mr. Brower, Sr. individually and not as debtor-in-possession, Coastal, and the other defendants—on the one hand, and the Bankruptcy Estate, which was not JRG's client, on the other. Furthermore, the Plaintiff does not assert that the Bankruptcy Estate suffered any damages as a result of the alleged conflict. To the extent JRG was paid, it was by Coastal with the Coastal Funds. As that was not property of the Bankruptcy Estate, it suffered no damage. Since the Plaintiff cannot state a claim for legal malpractice, which is the only way to avoid the protection of the litigation privilege stated in the Motion, the claim of "breach of fiduciary duty" must be dismissed with prejudice.

I. **CONCLUSION**

The Plaintiff has now had three opportunities to try to state a claim against JRG and has failed each time. The core of the action is the claim that the Coastal Funds were property of the Bankruptcy Estate when the challenged payments were made. That theory has now been exhausted and cannot be recovered by any amended pleading. All of the Ownership Claims, therefore, must be dismissed with prejudice.

The Plaintiff equally cannot revive its claim against JRG for "breach of fiduciary duty." As set forth in the Motion, the action is entirely barred by the litigation privilege. The Opposition does not challenge that substantively, instead arguing that its claim for breach for fiduciary duty arising from JRG's litigation representation is really one for "legal malpractice," which is excluded from the privilege. But JRG did not represent the Bankruptcy Estate or the debtor-in-possession, so no malpractice claim can be brought and the litigation privilege stands. *Id.* The Seventh Claim for relief must be dismissed with prejudice as well.

Dated: May 27, 2022                                          BINDER & MALTER, LLP


By: /s/ *Wendy Watrous Smith*
Wendy Watrous Smith
Attorneys for JRG Attorneys at Law