| | |
|---|---|
| 1 | Leonard M. Shulman – Bar No. 126349 |
| | James C. Bastian, Jr. – Bar No. 175415 |
| 2 | Ryan D. O'Dea – Bar No. 273478 |
| | **SHULMAN BASTIAN FRIEDMAN & BUI LLP** |
| 3 | 100 Spectrum Center Drive, Suite 600 |
| | Irvine, CA 92618 |
| 4 | Telephone: (949) 340-3400 |
| | Facsimile: (949) 340-3000 |
| 5 | Email: lshulman@shulmanbastian.com; |
| | jbastian@shulmanbastian.com |
| 6 | rodea@shulmanbastian.com |
| 7 | Attorneys for Defendants Aurora Capital Advisors, |
| 8 | Richard Babcock and Anthony Nobles |

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| In re | Case No.: 15-bk-50801-MEH |
| **ROBERT BROWER SR.,** | Chapter 11 |
| Debtor. | Adv. No.: 21-ap-05029-MEH |
| MICHAEL G. KASOLAS, solely in his capacity as the Liquidating Trustee for the Robert Brower Sr. Liquidating Trust, | **AURORA CAPITAL ADVISORS, RICHARD BABCOCK AND ANTHONY NOBLES' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** |
| Plaintiff, | |
| v. | [Motion and Notice of Motion Concurrently Filed] |
| PATRICIA BROWER, solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; **GREAT AMERICAN WINERIES, INC.,** a California corporation; **DEERLEAF HOLDINGS, INC.,** a Delaware corporation; **ROBERT BROWER, JR.,** an individual; **MED-VENTURE INVESTMENTS, LLC,** a California limited liability company; **AURORA CAPITAL ADVISORS,** a California general partnership; **RICHARD BABCOCK,** an individual and general partner of Aurora Capital Advisors; **ANTHONY NOBLES,** an individual and general partner of Aurora Capital Advisors; **COASTAL WINE SERVICES, LLC,** a California limited liability company; **WILFORD BUTCH, LINDLEY,** an individual; **POHANKA OF SALISBURY, INC.,** a Maryland corporation; **JAURIGUE LAW GROUP,** a California professional corporation *dba* JLG Lawyers; **JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILLES, LLP,** a limited liability partnership; and **OLDFIELD CREELY, LLP,** a limited liability partnership, | **Hearing Date:** |
| | Date: June 6, 2022 |
| | Time: 11:00 a.m. |
| | Place: Courtroom 11 |
| | United States Courthouse |
| | 280 South First Street |
| | San Jose, California 95113 |
| | [Appearance also available via Zoom] |
| Defendants. | |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive,
Suite 600
Irvine, CA 92618

Case: 21-05029   Doc# 147   Filed: 05/27/22   Entered: 05/27/22 22:06:01   Page 1 of
17

REPLY IN SUPPORT OF MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

**Page**

I.    SUMMARY OF ARGUMENT ...................................................................5

II.   ARGUMENT ..........................................................................................6

    A.    Defendants are Not Asserting Defenses of Med-Venture or Aurora LLC................6

    B.    The First Claim for Relief Fails to State a Claim for Avoidance of a Post-Petition Transfer Pursuant to § 549 of the Bankruptcy Code .................................7

    C.    The First and Second Claim for Relief Fails to State a Claim Pursuant to Section 1001 ..............................................................................13

    D.    The Third, Fourth, Fifth and Ninth Claims for Relief Fail to State a Claim............15

III.  CONCLUSION .....................................................................................15

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Casey v. Rotenberg (In re Kenny G. Enters., LLC)*,
   512 B.R. 628 (C.D. Cal. 2014)...............................................................................8, 14

*Fowler v. Shadel*,
   400 F.3d 1016 (7th Cir. 2005)........................................................................................7

*In re Normandin*,
   106 B.R. 14 (Bankr. D. Mass. 1989)..............................................................................7

*In re Russell*,
   121 B.R. 16 (Bankr. W.D. Ark. 1990)...........................................................................7

*Jones v. Re-Mine Oil Co.*,
   47 Cal.App.2d 832, 842, 119 P.2d 219 (1941)............................................................14

*Long Constr. Co. v. Empire Drive-In Theatres, Inc.*,
   208 Cal. App. 2d 726 (1962)..........................................................................................9

*Swartz v. Billingsley (In re Billingsley)*,
   338 B.R. 372 (C.D. Ill. 2006).........................................................................................7

*Tognazzi v. Wilhelm*,
   6 Cal.2d 123, 125, 56 P.2d 1227, 1228 (1936)...........................................................14

*Trahan v. Trahan*,
   99 Cal. App. 4th 62 (2002)...........................................................................................11

*Xydias v. Adamson (In re Xydias' Estate)*,
   92 Cal.App.2d 857, 860-61, 208 P.2d 378, 379 (1949) ..............................................14

## <u>STATUTES</u>

Bankruptcy Code § 363 ..............................................................................................7, 8

Bankruptcy Code § 541(a)(6) ...................................................................................5, 12

Bankruptcy Code § 541(a)(7) .........................................................................................5

Bankruptcy Code § 549 .........................................................................................passim

Bankruptcy Code § 549(c) ..............................................................................................8

Cal. Corp. Code § 1001 ................................................................................5, 9, 13, 14

Cal. Corp. Code § 1001(a) ............................................................................................10

Cal. Corp. Code § 2004 ................................................................................................11

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Case: 21-05029   Doc# 17   Filed: 11/12/21   Entered: 11/12/21 16:20:31   Page 3 of
17

REPLY IN SUPPORT OF MOTION TO DISMISS

## RULES

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................................. 6, 7

## TREATISES

Ginsberg and Martin on Bankruptcy, § 501[B] ...................................................................... 7

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

REPLY IN SUPPORT OF MOTION TO DISMISS

1   TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY

2   JUDGE, PLAINTIFF, ALL DEFENDANTS AND ALL THEIR ATTORNEYS OF RECORD:

3          Defendants Aurora Capital Advisors ("Aurora"), Richard Babcock ("Babcock") and

4   Anthony Nobles ("Nobles") (collectively, "Defendants") hereby submit this reply ("Reply") in

5   support of Defendants' motion to dismiss ("Motion") the second amended complaint for: (1)

6   avoidance of post-petition transfers; (2) recission pursuant to Cal. Corp. Code § 1001; (3) recovery

7   of avoided transfers for benefit of the estate; (4) turnover; (5) accounting; (6) breach of fiduciary

8   duty; (7) breach of fiduciary duty; (8) disgorgement; and (9) conversion (the "SAC") filed by

9   Michael G. Kasolas ("Plaintiff") liquidating trustee for the bankruptcy estate of Robert Brower, Sr.

10  ("Debtor") and in response to Plaintiff's opposition (the "Opposition") to the Motion.[1]  In support

11  of the Motion and this Reply, Defendants respectfully represent as follows:

12                      I.        **SUMMARY OF ARGUMENT**

13         Plaintiff's futile attempt to pound a square pegs into a round holes has gone on far too long.

14  The first claim for relief asserted in the First Amended Complaint was dismissed for failure to

15  present plausible allegations that the Proceeds constitute property of the estate.  Notwithstanding

16  dismissal, this Court provided Plaintiff with an opportunity to amend asserted claims for relief

17  "solely on the issue of whether the Debtor exceeded his shareholder authority."   While it is true the

18  SAC contains new (but equally deficient) allegations regarding this alternative theory, it still

19  contains allegations that the Proceeds are property of the estate vis-à-vis Bankruptcy Code §§

20  541(a)(6) and (a)(7) because Debtor was "entitled" to same.   As this theory of recovery was

21  specifically rejected (twice) by the Court, all claims for relief relying upon such are not plausible

22  and fail to state a claim.  Furthermore, the SAC buttresses Plaintiff's first and second claims for

23  relief with allegations that undefined "transfers" violated Cal. Corp. Code § 1001.  However, the

24  SAC does not contain sufficient allegations that: (1) the Med-Venture Transfer or the Aurora

25

26

27  _____

    [1] All capitalized terms not otherwise defined in this Reply shall have the meaning ascribed to same

28  in the Motion.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Transfer constitute "all or substantially all" of Coastal's assets; or (2) the Med-Venture Transfer or the Aurora Transfer were specifically not approved by Coastal and its shareholder(s).

Plaintiff has been provided three chances to allege plausible claims for relief against Defendants, but has yet again failed to do so. The Opposition does nothing to tip the scales in favor of Plaintiff or somehow support his woefully deficient claims against Defendants. As has been the case since the Original Complaint was filed, amendment is futile and Defendants should not be forced to further incur legal expenses defending against meritless claims. Therefore, and for the reasons detailed below, the Motion should be granted because the SAC has no basis in fact or law and must be dismissed without leave to amend.

## II.  ARGUMENT

### A.  Defendants are Not Asserting Defenses of Med-Venture or Aurora LLC

The Opposition posits, without analysis or support from applicable authorities, that the Motion somehow asserts defenses beyond those belonging to Defendants. Plaintiff's attempt to frame a procedural "gotcha" is wholly without merit based upon the claims for relief asserted in the SAC. The SAC unambiguously asserts the First Claim for Relief, the Second Claim for Relief, the Third Claim for Relief, the Fourth Claim for Relief, the Fifth Claim for Relief and the Ninth Claim for Relief (collectively, the "Claims") against all "Defendants" – which the SAC defines as all defendants named in the caption. In line with Plaintiff's pleading of the Claims asserted against all "Defendants," Plaintiff "seeks to hold Nobles and Babcock, the general partners of Aurora, and owners of Aurora LLC, jointly and severally liable for the Aurora Transfer. Plaintiff also seeks to hold Nobles and Babcock liable for the Med-Venture Transfer as the transfer was made for their benefit." SAC ¶ 157. Plaintiff fails to cite to any authority standing for the proposition that a defendant, specifically named in a claim for relief, is limited in its ability to bring a motion to dismiss under Rule 12(b)(6) as to those very claims. To add insult to injury, Plaintiff concludes his argument by asserting: "Allowing the owners to raise arguments that belong to the contracting but suspended corporations without requiring those corporations to be in good standing would render toothless the prohibition against suspended corporations participating in litigation and would create the very end around that the case law seeks to prohibit." Opposition 11:9-12. Curiously absent from the

1  Opposition is an articulation of the precise "defenses" that Plaintiff believes cannot be raised by

2  Defendants, let alone why it is allegedly so.  In sum, Defendants assert that Plaintiff cannot establish

3  that the Proceeds constitute property of the estate, thus barring recovery under any theory asserted

4  in the SAC – a foundational and gating issue that can challenged under Rule 12(b)(6) by any named

5  defendant, including but not limited to Defendants.

6  **B.**   **The First Claim for Relief Fails to State a Claim for Avoidance of a Post-Petition**

7  **Transfer Pursuant to § 549 of the Bankruptcy Code**

8       1.   The Opposition's Reference to Sale of the Wine Estate Property Not Being Approved

9            by the Bankruptcy Court is a Red Herring

10       As was made clear in the First Motion, in the Second Motion and the instant Motion, the

11  assets of a non-debtor corporation are legally separate and distinct from that of an individual debtor

12  holding shares in said corporation.  Piling onto the litany of authorities in support of this indisputable

13  legal conclusion: "[I]t is well-settled that assets owned by a corporation are not included in the

14  bankruptcy estate of an individual shareholder." *Swartz v. Billingsley (In re Billingsley)*, 338 B.R.

15  372, 375-376 (C.D. Ill. 2006); *Fowler v. Shadel*, 400 F.3d 1016, 1018 (7th Cir. 2005) (Assets of

16  debtor's wholly-owned corporation are not property of the debtor and cannot become part of the

17  bankruptcy estate of the debtor shareholder); *In re Russell*, 121 B.R. 16, 17-18 (Bankr. W.D. Ark.

18  1990) (Assets of corporation are not property of debtor shareholder's bankruptcy estate solely by

19  virtue of shareholder's 82% stock ownership of corporation); *In re Normandin*, 106 B.R. 14, 16

20  (Bankr. D. Mass. 1989).

21       Plainly then, a debtor's shares in a corporation become part of the bankruptcy estate; the

22  assets of the corporation do not. See Ginsberg and Martin on Bankruptcy, § 501[B].  Flowing from

23  this reality, "Section 363 only authorizes a trustee to use, sell, or lease 'property of the estate'. 11

24  U.S.C. § 363. Thus, the Trustee may sell the Debtor's shares in [a non-debtor corporation], but he

25  may not sell the corporate assets of [a non-debtor corporation]." *In re Billingsley*, 338 B.R. at 376.

26  Consistent with the Opposition's hollow theme, Plaintiff asserts – without citation to any authorities

27  – that Debtor was obligated to seek Court approval to "use" his shares to provide shareholder consent

28  to Coastal's sale of the Wine Estate Property.  Rather than presenting authorities in support of his

7

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

argument, Plaintiff relies upon the doctrine of "law of the case" to assert that this Court has already found that Debtor's unauthorized "use" of his shares in Coastal is prohibited. See Opposition 2:7-12.[2] Plaintiff's argument is nothing more than a mischaracterization of this Court's prior ruling, specifically because this Court's ruling was predicated upon the conversion of estate property [*i.e.* Debtor's shares in Coastal] as opposed to Debtor voting [or failing to vote] as a shareholder in support of the Wine Estate Property's Sale.

Importantly, and even if Court approval was somehow needed in connection with sale of the Wine Estate Property, or in connection with "use" of Debtor's shares in Coastal, the statutory text of Section 363 is silent as to the remedy available to a trustee if court approval was not obtained. Based thereon, the Opposition's repeated reference to Section 363 is a procedural dead-end. However, locating a trustee's prospective remedy is simple: A trustee's remedy begins and ends with Section 549. "The fact that Congress specifically included a section dealing with postpetition transactions suggests that it solely intended for that section to govern transfers occurring after the filing of a bankruptcy petition. Section 549's breadth undergirds that conclusion. It generally applies to allow a trustee to set aside <u>any postpetition transfer of estate property that is not authorized by the Bankruptcy Code or a bankruptcy court</u>. Congress did not narrowly draft § 549 in such a way that it would be reasonable to think that it only applies to some postpetition transactions, leaving room for other sections to fill the gap. Rather, the fact that Congress used such sweeping language demonstrates that <u>Congress envisioned § 549 as the sole tool for avoiding postpetition transfers</u>. *Casey v. Rotenberg (In re Kenny G. Enters., LLC)*, 512 B.R. 628, 636-637 (C.D. Cal. 2014)(emphasis added). As noted in the Motion, Plaintiff does not seek to avoid Coastal's sale of the Wine Estate Property – whether as a result of Section 549(c)'s prohibition against avoidance or otherwise. Without seeking to avoid the sale of the Wine Estate Property, Plaintiff's arguments take

---

[2] The Opposition states: "Indeed, law of the case establishes that any use or disposition of Coastal's shares after the bankruptcy was filed required this Court's authorization. See Second Amended Complaint ("SAC"), Exh. 6, MUFG Union Bank N.A. v. Robert Brower, Sr., et al., Adv. No. 17-5044 [Dkt No. 123] Memorandum Decision on Motions for Summary Judgment, at pages 120-121 (finding conversion of shares of Coastal to Delaware corporation without court approval was an avoidable transfer under Section 549)."

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1 the Court on a road to nowhere – as failure to obtain Court approval of the sale does not magically

2 make the Proceeds property of the estate.

3      In sum, the Opposition fails to present any authority standing for the proposition that Court

4 approval was needed for Coastal to sell the Wine Estate Property or to "use" Coastal's shares to

5 effectuate said sale. Furthermore, the Opposition fails to present a meritorious argument or legal

6 support for the notion that sale of the Wine Estate Property, without court approval, taints the

7 Proceeds in a way permitting avoidance pursuant to Section 549. Therefore, Plaintiff's arguments

8 regarding Debtor's failure to obtain Court approval prior to sale of the Wine Estate Property are of

9 no consequence, do not support denial of the Motion and should be disregarded in their entirety.

10      2.    <u>Purported Failure to Obtain Shareholder Approval In Connection with Sale of the</u>

11             <u>Wine Estate Property is a Red Herring</u>

12      Not surprisingly, Plaintiff acknowledges the fact that Section 1001 is only applicable to the

13 sale, lease, conveyance, exchange, transfer, or dispossession of "all or substantially all" of a

14 corporation's assets. However, what is surprising is Plaintiff's position that sale of the Wine Estate

15 Property is the predicate event allegedly making Section 1001 applicable to the avoidance of the

16 Med-Venture Transfer and the Aurora Transfer.[3] For example, the SAC Asserts: "[T]he sale of the

17 Wine Estate Property was a…sale of all or substantially all of Coastal's assets." <u>SAC</u> ¶ 6. Springing

18 from Coastal's purported failure to obtain shareholder consent for the sale, Plaintiff extrapolates –

19 again, without authorities of any kind – that post-sale transfers of the Proceeds can somehow be

20 avoided or set aside under Section 1001. However, California law is clear that Section 1001 merely

21 provides a given shareholder with the right to rescind an offending unauthorized transaction, making

22 the unauthorized transaction voidable (not void). <u>See e.g.</u> *Long Constr. Co. v. Empire Drive-In*

23 *Theatres, Inc*., 208 Cal. App. 2d 726, 736 (1962)("Being voidable only, such a transfer is fully

24 operative until set aside."). If sale of the Wine Estate Property is fully operative under California

25 _____

26 [3] For example, Plaintiff asserts: "Interpretation of the statute to focus on the Proceeds from the Liquidation Event, as the only target of Section 1001, and not the sale of the Wine Estate Property itself in the first instance is nonsensical." <u>Opposition</u> 3:23-24. If Plaintiff were to review authorities

27 related to Section 1001(a), it would be abundantly clear that it is his application of Section 1001 in the SAC that is nonsensical.

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

9

law unless set aside by a shareholder, such an unquestioned sale cannot be the predicate of an attempt to set aside the Med-Venture Transfer and Aurora Transfer. Since the Wine Estate Property's sale is not being set aside, the Med-Venture Transfer and Aurora Transfer could only be rescinded under Section 1001(a) if same constituted a transfer of "all or substantially all" of Coastal's assets. Neither the SAC nor the Opposition make such an untenable assertion, and as such, Section 1001(a) is wholly inapplicable to the Claims.

As Plaintiff is not attempting to avoid or rescind the sale of the Wine Estate Property, reference to said sale does not satisfy Plaintiff's obligation to present well pled allegations supporting a claim to avoid or rescind the Med-Venture Transfer or Aurora Transfer under Section 1001. Therefore, the SAC must be dismissed in its entirety without leave to amend.

     3.    <u>Being "Entitled" to a Distribution Does not Make the Proceeds Property of the Estate</u>

Plaintiff's allegation that the Proceeds constitute property of the estate because Debtor was "entitled" to a distribution from Coastal is without merit and cannot be the predicate of a plausible claim for relief. Plaintiff puts particular emphasis upon the description of a "Liquidation Event" under the Articles, and asserts that because sale of the Wine Estate Property constituted a "Liquidation Event" Debtor was "entitled" to a distribution pursuant to California law. In support of Plaintiff's argument, Plaintiff references the California Supreme Court's opinion in *Miller v. McColgan,* which states in relevant part (emphasis added):

> In our approach to the problem presented here let us first consider the nature of this property – corporate stock – and the status of corporations and shareholders. It is fundamental, of course, that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each, and <u>he becomes the owner of a portion of each only when the **corporation is liquidated** by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend.</u> This well-settled proposition was amplified in *Rhode Island Hospital Trust Co. v. Doughton*, 270 U.S. 69, 81 [46 Sup. Ct. 256, 70 L. Ed. 475], wherein appears the following cogent language: "The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends arising from the use of all its property. In the dissolution of the corporation he may take his proportionate share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. <u>But he does not own the corporate property.</u>" *Id.*

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Hanging on the California Supreme Court's use of the term "liquidated", and attempting to draw a parallel between that term and the Articles' use of the phrase "Liquidation Event", Plaintiff posits that "[t]he former is what happened here." Opposition 14:27. With all due respect to Plaintiff and his creative argument, Plaintiff is flat wrong. In particular, California law is clear that "[t]he 'liquidation' of a business is the winding up or settling with creditors and debtors, and the term does not have the restricted meaning urged by petitioner, namely, the sale of the assets for cash." *Trahan v. Trahan*, 99 Cal. App. 4th 62, 76-77 (2002). As such, the California Supreme Court's use of the term "liquidation" is not analogous with "what happened here" [*i.e.* sale of the Wine Estate Property]. Consistent with the proper application of the term "liquidation," and as supported by Plaintiff's own allegations in the SAC, any entitlement to the Proceeds could not occur until "after payment of Coastal's creditors." SAC ¶ 6. Plaintiff further alleges in the SAC that "[t]o be clear, the Amended Articles treated a shareholder's right to distribution in the event of a sale of substantially all or all of Coastal's assets in the same manner as a formal 'liquidation, dissolution or winding up of the corporation…which reaffirms that the distribution was mandatory insofar as such formal liquidation proceedings would require mandatory distributions under California law." SAC ¶ 88 (emphasis added). Plaintiff's own allegations and judicial admissions are dispositive, in that a corporation under California law may only distribute all the remaining corporate assets among its shareholders after it has paid or made provisions for all known debts and liabilities. See Cal. Corp. Code § 2004.

As clearly stated in the SAC, Coastal wholly owned the Wine Estate Property, the Proceeds were the result of the Wine Estate Property's sale, the Proceeds were paid to Coastal, and Coastal made the Med-Venture Transfer and Aurora Transfer to Defendants. It is undisputed that the Proceeds were never distributed to Debtor or the estate, Coastal was not liquidated prior to the subject transfers and no portion of the Proceeds used to make the subject transfers were segregated and set aside for dividend payment to Debtor or the estate. Plaintiff attaching a copy of the Articles to the SAC does not change these facts or alter the legal authorities and reasoning supporting the Court's prior dismissals of this claim for relief. Clearly, additional steps needed to be taken before the Proceeds could become property of Debtor's bankruptcy estate. To this point, and not

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

surprisingly, the SAC concedes that if Plaintiff was successful on his Section 549 claim, "[t]he Net Proceeds [would] need to be returned to Coastal at which time the <u>Liquidating Trustee will seek consent from the Court to distribute those Net Proceeds to the Estate</u> as the sole shareholder…" <u>SAC</u> § 184.

In sum, none of the Proceeds allegedly used to make the Med-Venture Transfer or the Aurora Transfer can be classified as property of the estate because: (1) such are not § 541(a)(6) "proceeds, product, offspring, rents or profits" due to Debtor under state law; and (2) neither Debtor nor the estate "acquired" the Proceeds pursuant to applicable state law. Therefore, Plaintiff's first claim for relief must be dismissed without leave to amend because the Proceeds allegedly used to make the Med-Venture Transfer and the Aurora Transfer were not property of the estate and cannot be avoided pursuant to § 549.

       4.   <u>Debtor Was Not "Entitled" to a Distribution When the Subject Transfers Were Made</u>

Curiously, the Opposition attempts to soften the edge of the SAC's allegations that Debtor was not entitled to a distribution of the Proceeds until all creditors are paid in full by stating: "As pled, the known legitimate debts were paid for in escrow on the sale of the Wine Estate Property." <u>Opposition</u> 16:4-5. To be fair, that is not what is alleged in the SAC, a point implicitly acknowledged by Plaintiff's failure to provide a supporting quote from the SAC or cite to a specific supporting allegation therein. In any event, it would not matter even if Plaintiff actually pled such an allegation – as Section 549 does not provide Plaintiff with the authority to stand in the shoes of Coastal and avoid transfers that occurred before the Proceeds became property of the estate (as such would clearly be a derivative action). Unless and until the debts owed to the IRS, Med-Venture and Aurora were satisfied or resolved, Debtor would not have had an entitlement to the Proceeds under the Articles or California law. Thus, if the Proceeds ever became property of Debtor's bankruptcy estate, it could not have occurred before addressing the debts owed to Defendants.

As such, the timing of the Med-Venture Transfer and Aurora Transfer is a dispositive data point because Plaintiff's theory regarding "property of the estate" is predicated upon Debtor's alleged entitlement to distribution under the Articles. Therefore, the Proceeds were not property of the

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

estate at the time the Med-Venture Transfer or the Aurora Transfer were made, and as such, neither transfer can be avoided pursuant to Section 549.

**C.** **The First and Second Claim for Relief Fails to State a Claim Pursuant to Section 1001**

Notwithstanding the fact that Section 1001 is only applicable to the sale, lease, conveyance, exchange, transfer, or dispossession of "all or substantially all" of a corporation's assets, the SAC fails present a single allegation satisfying this gating issue. Rather than alleging that the Med-Venture Transfer or the Aurora Transfer constituted (individually or collectively) "all or substantially all" of Coastal's assets, the SAC merely states: "[T]he sale of the Wine Estate Property was a…sale of all or substantially all of Coastal's assets." SAC ¶ 6. The Opposition asserts the "the Protections of Section 1001 and Section 363 applied to the Sale of the Wine Estate Property, and thus, the resulting cash proceeds from the sale." Opposition 18:10-11. As noted above, if the violative act under Section 1001 is not set aside, the transaction remains fully operative. Further, and as noted above, Section 549 is the sole basis to set aside a post-petition transfer. Due to the fact that Plaintiff is not attempting to avoid or rescind the sale of the Wine Estate Property, the "unauthorized" sale does not somehow taint the Proceeds and the Opposition provides no authorities to the contrary. As such, the first and second claims for relief must be dismissed accordingly.

Additionally, the Opposition stands behind the SAC's bald assertion that "in order to transfer these assets, the Debtor's Estate, as the shareholder of Coastal, needed to consent to the transfers insofar as these were not transfers in the usual and regular course of Coastal's business, which had no business at the time of the transfers." SAC ¶ 188. However, Plaintiff fails to cite to a single case applying Section 1001 to a transfer of less than "all or substantially all" of a corporation's assets. Further, Plaintiff does not even respond to the fact that the Med-Venture Transfer or the Aurora Transfer were purportedly consented to by Coastal's shareholder(s), and also ignores the fact that the Med-Venture Agreement and the Aurora Agreement (attached to the SAC as Exhibits 19 and 22 respectively) were signed, pre-petition, by "Robert Brower" as "respective Chairman and Chief Executive Officer" of Coastal. As the Med-Venture Agreement and the Aurora Agreement detailed the amount certain to be paid to Med-Venture and Aurora at the time of execution, payment of the Med-Venture Transfer and the Aurora Transfer was clearly approved by Coastal.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Further, the Opposition fails respond to (let alone present any authorities rebutting) the fact that no authorities exist supporting a trustee's ability to rely upon Section 1001 to recover property transferred post-petition. The dearth of authorities is likely due to "[t]he fact that Congress specifically included a section dealing with postpetition transactions suggests that it solely intended for that section to govern transfers occurring after the filing of a bankruptcy petition. Section 549's breadth undergirds that conclusion. It generally applies to allow a trustee to set aside any postpetition transfer of estate property that is not authorized by the Bankruptcy Code or a bankruptcy court. Congress did not narrowly draft § 549 in such a way that it would be reasonable to think that it only applies to some postpetition transactions, leaving room for other sections to fill the gap. Rather, the fact that Congress used such sweeping language demonstrates that Congress envisioned § 549 as the sole tool for avoiding postpetition transfers. *Casey v. Rotenberg (In re Kenny G. Enters., LLC)*, 512 B.R. 628, 636-637 (C.D. Cal. 2014)(emphasis added).

Finally, Plaintiff fails to respond to the argument that para delicto bars his recovery under Section 1001. In no uncertain terms, the SAC states: "Because the Debtor did not seek or obtain the Court's approval, he could not exercise the Estate's shareholder consent. Accordingly, the transfers, although made by the Debtor, were not made with shareholder consent, as required under California law. Thus, they were made by the Debtor individually and not on behalf of the Estate." SAC ¶ 190 (emphasis added). However, "he who executes a conveyance of property for the purpose of hindering, delaying or defrauding his creditors cannot by an action in equity obtain a reconveyance from his grantee, nor can anyone claiming under him, except an innocent purchaser." *Tognazzi v. Wilhelm*, 6 Cal.2d 123, 125, 56 P.2d 1227, 1228 (1936). See also *Jones v. Re-Mine Oil Co.*, 47 Cal.App.2d 832, 842, 119 P.2d 219 (1941) (one who has transferred his property to defraud his creditors cannot thereafter recover from his grantee that which he has conveyed); *Xydias v. Adamson (In re Xydias' Estate)*, 92 Cal.App.2d 857, 860-61, 208 P.2d 378, 379 (1949) ("No rule of law is more strictly adhered to than the rule that one who has conveyed his property in order to defraud his creditors, under circumstances such as are present here, cannot thereafter recover from his grantee that which he has conveyed.").

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

In sum, and in addition to the arguments raised in Section III.B. above, the first and second claims for relief must be dismissed without leave to amend due to laches, due to Section 549 being the sole procedural mechanism that a trustee may use to recover a post-petition transfer and due to in para delicto.

**D.**   **The Third, Fourth, Fifth and Ninth Claims for Relief Fail to State a Claim**

The Opposition fails to substantively address the viability of his Third, Fourth, Fifth and Ninth claims for relief – and as such, these claims should be dismissed without leave to amend for the reasons stated above and in the Motion.

## III.   CONCLUSION

Based on the aforementioned, Defendants respectfully request that the Motion be granted in its entirety and Plaintiff's first, second, third, fourth, fifth and ninth claims for relief against Defendants be dismissed without leave to amend.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

Dated: May 27, 2022          By:  /s/ *James C. Bastian, Jr.*
                                          Leonard M. Shulman
                                          James C. Bastian, Jr.
                                          Ryan D. O'Dea
                                          Attorneys for Defendants Aurora Capital Advisors,
                                          Richard Babcock and Anthony Nobles

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

On **May 27, 2022**, I served a true and correct copy of the following documents:

**AURORA CAPITAL ADVISORS, RICHARD BABCOCK AND ANTHONY NOBLES' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

in the manner and on the interested parties in this action, as follows:

X    **BY ELECTRONIC TRANSMISSION:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 27, 2022**, I checked the CM/ECF docket for this bankruptcy case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses listed in the Service List below.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **May 27, 2022**, at Irvine, California.

*/s/ Erlanna Lohayza*

Erlanna Lohayza

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## NEF SERVICE LIST

- Jessica L. Bagdanov    jbagdanov@bg.law, ecf@bg.law
- Jason B. Komorsky    jkomorsky@bg.law, ecf@bg.law
- Ryan O'Dea    rodea@shbllp.com
- Aron M. Oliner   roliner@duanemorris.com, dmicros@duanemorris.com
- Rogelio Serrano-Gutierrez    rserrano@kdvlaw.com
- Wendy W. Smith    Wendy@bindermalter.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.com

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618