

The following constitutes the order of the Court.
Signed: August 1, 2022

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In<br>ROBERT S. BROWER, SR.,<br><br>Debtor. | Case No. 15-50801 MEH<br>Chapter 11 |
| MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT BROWER, SR. LIQUIDATING TRUST,<br><br>Plaintiff.<br>v.<br>PATRICIA BROWER, SOLELY AS TRUSTEE OF THE BROWER TRUST (2015), DATED JUNE 30, 2015, et. al.,<br><br>Defendants. | Adv. No. 21-05029<br><br><u>Video Hearing</u><br>Date: June 6, 2022<br>Time: 11:00 a.m. |

## <u>MEMORANDUM DECISION</u>

Before the court is the Second Amended Complaint ("SAC") (Dkt. # 103) of Michael G. Kasolas, in his capacity as the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust ("Trustee"). As with the Complaint and First Amended Complaint ("FAC"), Trustee seeks to recover funds transferred by Debtor from his wholly-owned corporation, Coastal Corporation ("Coastal"), to the various Defendants.

The following Defendants filed motions to dismiss:

- Oldfield Creely, LLP ("Oldfield") (Dkt. # 110)
- Aurora Capital Advisors, Richard Babcock, and Anthony Nobles (collectively referred to as "Aurora") (Dkt. # 113)
- JRG Attorneys At Law, LLP ("JRG") (Dkt. # 124).

Trustee filed an Omnibus Opposition (Dkt. # 139), and Defendants filed replies (Dkt. # 144, 145, 147). The motions were heard on June 6, 2022. Appearances were as stated on the record.

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(E). The following constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

## I. Background

### A. Sale of Real Property and Transfer of Funds

Debtor Robert Brower, Sr., now deceased, filed a chapter 11 bankruptcy case on March 11, 2015. Debtor scheduled "Shares in Coastal Cypress Corporation" as his personal property and did not exempt them from assets of his estate (B/K No. 15-50801, Dkt. # 1, Sch. B). Debtor is Coastal's sole shareholder; Coastal is not a co-debtor.

Coastal owned real property (the "Wine Estate") which was used as a wine estate by Chateau Julian, another corporation owned by the Debtor. Coastal sold the Wine Estate in the Spring of 2015. The net proceeds totaled over $7,000,000 ("Net Proceeds"). In July 2015, Debtor reported to the court that Coastal had closed a sale of the property, but the closing was not final, and Coastal had not made a distribution to shareholders, including Debtor. *See* B/K No. 15-50801, Dkt. #50. Debtor, directing Coastal, then transferred the Net Proceeds in various amounts to multiple entities, many of whom are named defendants.

B. Prior Proceedings

Trustee commenced this adversary proceeding on July 22, 2021 (Dkt. # 1). The identified Defendants filed motions to dismiss the initial complaint. After a hearing, the court granted the motions to dismiss with leave to amend (Dkt. # 42).

Trustee filed the FAC in December 2021 (Dkt. # 58). Motions to dismiss were filed and the matter came on for hearing in February 2022. The court entered a "Memorandum Decision" (Dkt. # 97) and accompanying orders granting the motions with leave to amend specifically as to the first claim under 11 U.S.C. § 549[1] "solely on the issue of whether the Debtor exceeded shareholder authority" (Dkt. # 98, 99).[2]

C. Relief sought in the SAC

The SAC alleges nine claims for relief: (1) Avoidance of postpetition transfers pursuant to § 549, (2) Recission pursuant to Cal. Corp. § 1001, (3) Recovery of avoided transfers pursuant to §§ 550 and 551, (4) Turnover of estate assets pursuant to § 542, (5) Accounting, (6) Breach of Fiduciary Duty against the Trust, (7) Breach of Fiduciary Duty against JRG, (8) Disgorgement, and (9) Conversion.

II. **Standard**

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) (applicable in bankruptcy by FRBP 7012), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This standard requires the plaintiff allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. In deciding whether the plaintiff has

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.
[2] Amended Orders were entered to clarify (Dkt. # 101, 102).

3

stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). This standard further requires allegations of fraud to be pleaded with particularity. FRBP 7009; *Vess v. Ciba – Geigy Corp.*, 317 F. 3d 1097, 1103-05 (9th Cir. 2003). In other words, a complaint must plead the "who, what, when, where, and how" of the alleged fraud. *Id.* at 1106. Moreover, to survive, a complaint must allege sufficient facts "to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F. 3d 1035, 1041 (9th Cir. 2010).

III. <u>Analysis</u>

    A.    <u>First Claim of Relief: Avoidance of Postpetition Transfers</u>

In each version of the Complaint, the first claim seeks to avoid postpetition transfers of property of the estate pursuant to § 549. This section provides that a postpetition transfer may be recovered as an unauthorized transfer of property if three requirements are satisfied:

(1) The transfer involved property of the estate;

(2) The transfer occurred after commencement of the case; and

(3) The transfer was not authorized by any provision of the Code or by the Court.

§ 549(a)(1) and (a)(2)(B).

The stumbling block for Trustee is the first factor – whether the transfer involved property of the estate. Following the sale of the Wine Estate, Debtor maintained the Net Proceeds in Coastal's account and controlled the flow of the Net Proceeds. At no point did Brower transfer funds from Coastal to his bankruptcy estate.

        1.  <u>Section 541(a)(6) and (a)(7)</u>

Trustee initially asserted that as Debtor owned all Coastal's stock, the Net Proceeds were also part of Debtor's estate either as proceeds, product, offspring, rents or profits from the estate's interest in Coastal (§ 541(a)(6)) or an interest in property that the estate acquired postpetition (§ 541(a)(7)). Proceeds received by a corporation from corporate assets are not

4

proceeds of shareholder interests. As such, neither § 541(a)(6) or (7) apply to incorporate Coastal's Net Proceeds into property of Debtor's estate.

California law is then applied to determine a shareholder's interest in corporate property. It provides that shareholders do not own corporate property, rather, "[t]he shareholder simply has an expectancy in [corporate property and corporate earnings], and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend." *Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941).

In sum, Debtor's interest in Coastal was as shareholder of the corporation. The property of Coastal is not property of the estate. Section 541(a)(6) and (a)(7) are not to the contrary. Arguments based on § 541(a)(6) and (a)(7), alter ego liability, and Debtor's direct interest as sole shareholder of Coastal were addressed more fully in the first Memorandum Decision (Dkt. # 97). The legal conclusions stated in the first Memorandum Decision (Dkt. # 97, p. 4, line 16 – p. 11, line 4), are adopted as if fully set forth herein.

Trustee's first claim was previously dismissed with leave to amended solely as to how Cal. Corp. § 1001 may affect the claim. This argument was raised in a footnote of the FAC and argued at the hearing (Dkt. # 97, p. 11, lines 6-24). In the SAC, Trustee addresses Cal. Corp. § 1001 and asserts a new argument.

2. Coastal's Amended Articles of Incorporation

Trustee now asserts Debtor knowingly violated Coastal's Amended Articles of Incorporation (SAC Exh. 1) by failing to provide distributions required by the Amended Articles to Debtor as shareholder following Coastal's sale of the Wine Estate.

Trustee asserts that Coastal's sale of the Wine Estate was a "Liquidation Event," as defined in the Amended Articles, which transformed Debtor's expectancy interest as a shareholder of Coastal into a property right. Trustee relies upon the following sections:

- Article III, Sec. (B)(2)(c)(i): "For purposes of this Section 2, a "Liquidation Event" **shall** be deemed to be occasioned by, or to include, . . . (D) a sale, lease, exclusive

5

- license or other disposition of all or substantially all of the assets, technology or intellectual property of the corporation, including, without limitation, any such transaction with a direct or indirect subsidiary of the corporation." (emphasis added)
- Article III, Sec. (B)(2)(a): "In the event of any Liquidation Event (as defined below), the holders of Series A Preferred Stock **shall** be entitled to receive…an amount per share equal to the Series A Liquidation Preference for each outstanding share of Series A Preferred Stock." (emphasis added)
- Article III, Sec. (B)(2)(b): "Upon the completion of the distribution required by Section 2(a), the remaining assets of the corporation available for distribution to shareholders **shall** be distributed among the holders of the Common Stock pro rata…" (emphasis added)

Focusing on the word "shall," Trustee asserts the estate's interest transformed from an expectancy interest to a property right because the Amended Articles required a distribution to shareholders. This argument is not compelling.

In order to liquidate, Debtor was required to first pay all creditors, then distribute remaining funds to shareholders. *See Penasquitos, Inc. v. Super. Ct.*, 53 Cal. 3d 1180, 1191 (1991) (citing Cal. Corp. § 2004 and stating that "a corporation cannot distribute its assets, nor may it dissolve, until its officers have paid or made provision for all known debts and obligations") Thus, the liquidation was not automatic as Trustee asserts. At the very least, Coastal had obligations to pay corporate debts. It is undisputed that after the sale of the Wine Estate, Coastal owed taxes to the IRS.[3] In addition, Coastal purchased property and provided funds to third parties. In short, Debtor's estate only held an expectancy interest in the future

---

[3] "On March 14, 2016, Debtor used $1,512,753 of the Net Proceeds to make a tax payment to the Internal Revenue Service. Between May 2017 and July 2020, the United States Treasury issued tax refunds to Coastal in the amount of $730,050.53. On information and belief, Debtor intentionally overpaid Coastal's taxes in an attempt to hide the Net Proceeds from Debtor's creditors." Dkt. # 103, Paragraph 99.

6

Case: 21-05029    Doc# 158    Filed: 08/01/22    Entered: 08/01/22 15:05:17    Page 6 of 12

value of Coastal, which was subject to Debtor's diminishment until Coastal was actually liquidated.

While the Amended Articles may create grounds for shareholders to sue a corporation for failure to make a disbursement when it did not, there is no legal support for the theory that it created a property right, which then transformed non-estate property into property of the estate. Notably, Trustee admits it is not bringing a breach of contract claim.

Trustee then returns to *In re Pisculli*, 2009 WL 700059, at *3 and fn. 3 (Bankr. E.D.N.Y. Mar. 4, 2009) for the proposition that Debtor's expectancy interest in assets became an ownership interest under California law and the Amended Articles when Coastal liquidated its only asset. *Pisculli* and its related appellate cases were addressed in the Memorandum Decision and do not rely on case law from the Ninth Circuit or California. The discussion of *Pisculli* and related cases is adopted from the first Memorandum Decision as if fully set forth herein. (Dkt. # 97, p. 8, line 11 – p. 11, line 4).

In three attempts, Trustee has been unable to adequately plead that the Net Proceeds are property of the estate. As such, the first, third, fourth, fifth, and ninth claims for relief are dismissed with prejudice.

B. <u>Second Claim: Recission Pursuant to Cal. Corp. § 1001(a)</u>

Cal. Corp. § 1001 states: "A corporation may sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its assets when the principal terms are approved by the board, and, unless the transaction is in the usual and regular course of its business, approved by the outstanding shares." Section 363(b) permits a debtor to use property of the estate outside the ordinary course of business only after notice and a hearing.

Trustee's argument is convoluted. Trustee asserts the sale of the Wine Estate was improper because shareholder approval was never obtained as required by Cal. Corp. § 1001. But, because the shares were property of Debtor's estate, Trustee asserts that in order to "use" the shares and direct Coastal to sell the Wine Estate, Debtor needed court authorization pursuant to § 363(b). Trustee contends the sale of the Wine Estate, Coastal's primary asset,

7

was outside the ordinary court of business, and thus Debtor's use of the shares to direct the sale, was improper, rendering compliance with Cal. Corp. § 1001 improper as well. Trustee does not cite any authority for how § 363(b) should apply to this situation. Nor does Trustee explain how shares are used in the process of selling a corporate asset.

Trustee also asserts it does not need to undo the sale of the Wine Estate to rescind the transfers of Net Proceeds. *See* (SAC ¶ 191) ("In light of the transfer of Net Proceeds of Coastal without shareholder approval, the shareholder (the Estate) is entitled to rescind these transfers pursuant to Section 1001 of the California Corporations Code.") Trustee cites to *In re Williams*, 104 B.R. 296 (Bankr. C.D. Cal. 1989), for this proposition. However, *Williams* does not apply. The issue in *Williams* was "Whether the Chapter 7 Trustee may avoid and recover an unauthorized postpetition transfer of **property of the estate**." *Id*. at 298 (emphasis added). In *Williams*, the original real property transferred was property of the estate, thus the proceeds of it were property of the estate as well. *Id*. Here, the issue is that Trustee has not been able to establish that the Wine Estate or the Net Proceeds from its sale are property of the estate. The SAC does not establish grounds for a different decision on this issue.

Assuming *arguendo* that Coastal's sale of the Wine Estate violated Cal. Corp. § 1001, Trustee has not established how this results in the Wine Estate or the Net Proceeds becoming an asset of Debtor's estate. California courts have long held that the effect of a violation of Cal. Corp. § 1001 is that the sale is *voidable*, not void. *See Solorza v. Park Water Co*., 86 Cal. App. 2d 653, 659 (1948) ("We therefore hold that while such transactions . . . are violative of the provisions of the statute, they are voidable and may be rescinded and set aside at the election of a shareholder or creditor, for whose benefit alone the statute was enacted.") (addressing prior version of the statute, Cal. Corp. § 3901). Thus, as recognized by Trustee, even if it was possible to undo the Wine Estate sale, the Wine Estate would still need to be brought into Debtor's estate in order for Trustee to administer assets.

Assuming facts alleged in the light most favorable to the Trustee, Trustee's argument based on Bankruptcy Code § 363(b) and Cal. Corp. § 1001(a) fails to state a claim for relief. Only Debtor's shareholder interest in Coastal is an asset of his estate. A violation of Cal.

8

Corp. § 1001 during Coastal's sale of the Wine Estate may be voidable, but the SAC asserts no such claim for relief. Even if Trustee sought to undo Coastal's sale of the Wine Estate, neither Cal. Corp. § 1001 nor Bankruptcy Code § 363(b) provide a means to make the Wine Estate or Net Proceeds an asset of Debtor's estate.[4]

Therefore, the second claim for relief is dismissed with prejudice.

C. Seventh Claim for Relief: Breach of Fiduciary Duty Against JRG

Trustee alleges that JRG owed a fiduciary duty to the bankruptcy estate and breached that duty by failing to file an application to be employed as Debtor's special litigation counsel, receiving payments without court approval, failing to disclose its terms of representation to the court, representing certain parties despite a conflict of interest, failing to properly advise Debtor of his responsibilities under the Code, knowingly and intentionally helping, participating in, and providing substantial assistance to Debtor in breaching his fiduciary duties to the Estate.

Under California law, "[t]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." *O'Neal v. Stanislaus Cnty. Employees' Ret. Assn.*, 8 Cal. App. 5th 1184, 1215 (2017).

Trustee adequately alleges there was a fiduciary relationship: JRG represented the debtor-in-possession and therefore had a duty to the bankruptcy estate. JRG contends it represented the Debtor, not the bankruptcy estate. However, at this stage, all factual allegations are interpreted in the light most favorable to the plaintiff.

Trustee further alleges there was a breach: JRG did not seek court approval for its work, received funds without authorization, and had a conflict of interest which should have disqualified it. Again, this is sufficiently pled in the SAC.

---

[4] Defendants assert that because Trustee seeks to undo the transfers and not the sale, each transfer should be reviewed separately, and each individual transfer cannot constitute "all or substantially all" of Coastal's assets. This argument need not be addressed based on the foregoing analysis.

9

But Trustee fails to adequately plead damages. Under California law, "[w]here 'damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained.' " *Abatti v. Imperial Irrigation Dist.*, 52 Cal. App. 5th 236, 295–96, 266 Cal. Rptr. 3d 26, 76 (2020), as modified on denial of reh'g (Aug. 5, 2020). "Neither potential harms, nor counsel's hypothetical arguments, suffice to establish compensable damages." *Id*.

Trustee alleges:

> As a direct and proximate result of Johnson Rovella's breach of its fiduciary duties, the Estate and its creditors individually and en masse, have been harmed in an amount to be proved a trial, but presently estimated to be at least $280,288.48.

(SAC ¶ 218). This conclusory statement does not adequately plead how the estate was injured, and directly contradicts other allegations. The SAC alleges the Net Proceeds were distributed to JRG in the exact amount of damages pled. *See* (SAC ¶ 162) However, as addressed above, the Net Proceeds are not property of the estate, and Trustee has not made any other factual allegations regarding estate funds which went to JRG. Therefore, Trustee fails to allege how the estate suffered an injury.

As such, the seventh claim for relief is dismissed with prejudice.

D. <u>Eighth Claim for Relief: Disgorgement (§ 330) Against JRG, Oldfield</u>

Finally, Trustee alleges JRG and Oldfield must disgorge fees they received improperly pursuant to 11 U.S.C. § 330. Trustee asserts JRG provided legal services to Debtor, Coastal, Lindley, P. Brower and the Trust in connection with the Enhancement Action, even though such representation was a conflict of interest between the estate and parties adverse to the Estate (SAC ¶ 35). Trustee also asserts Oldfield never filed an employment application, nor sought approval of fees for being special counsel to Debtor in a state court action (SAC ¶ 36).

Section 330 provides, in relevant part:

Case: 21-05029    Doc# 158    Filed: 08/01/22    Entered: 08/01/22 15:05:17    Page 10 of 12

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
>
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>>
>> (B) reimbursement for actual, necessary expenses.

*See* 11 U.S.C. § 330(a)(1). Generally, § 330 is the method for a professional to apply for and receive payment from the estate. *In re Redding*, 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000). Moreover, Federal Rule of Bankruptcy Procedure 2016(a) states: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, ***from the estate*** shall file an application setting forth a detailed statement…" (emphasis added). However, as the Bankruptcy Appellate Panel for the Eighth Circuit reasoned:

> We agree that there is a substantive difference between §§ 329 and 330, and hold that § 329 is about disclosure and reasonableness of attorney fees, and governs the fee arrangements between a debtor and the attorney representing the debtor. In contrast, § 330 addresses the estate's liability or obligation to compensate, from estate assets, attorneys or other persons or entities for services provided that benefit the estate.

*Redding*, 247 B.R. at 478. While not binding precedent on this court, I find it persuasive. In this case, neither JRG nor Oldfield were paid by estate assets, rather, they were paid by Coastal from non-estate funds.

Thus, § 330 does not apply. The eighth claim is dismissed with prejudice.

IV. **Conclusion**

Defendants' motions to dismiss are granted, and the first, second, third, fourth, fifth, seventh, eighth, and ninth claims for relief are dismissed with prejudice. The court will issue orders concurrent with this decision.

**END OF MEMORANDUM DECISION**

11

COURT SERVICE LIST

**Via ECF:**

All ECF Recipients