1  STEVEN T. GUBNER – Bar No. 156593
   JASON B. KOMORSKY – Bar No. 155677
2  JESSICA L. BAGDANOV – Bar No. 281020
   JESSICA S. WELLINGTON – Bar No. 324477
3  BG LAW LLP
   21650 Oxnard Street, Suite 500
4  Woodland Hills, CA 91367
   Telephone:  (818) 827-9000
5  Facsimile:  (818) 827-9099
   Email:      sgubner@bg.law
6              jkomorsky@bg.law
               jbagdanov@bg.law
7              jwellington@bg.law

8  Attorneys for Michael G. Kasolas, Liquidating Trustee
   For the Robert Brower, Sr. Liquidating Trust

9

**UNITED STATES BANKRUPTCY COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

**SAN JOSE DIVISION**

12

| | |
|---|---|
| In re | Bk. Case No. 15-50801 MEH |
| ROBERT BROWER, SR., | Chapter 11 |
| Debtor. | Adv. Case No. 21-05029 MEH |
| | |
| MICHAEL G. KASOLAS, solely in his capacity as the Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust, | **PLAINTIFF'S OPPOSITION TO DEFENDANT JOHNSON ROVELLA'S MOTION FOR ATTORNEYS' FEES** |
| Plaintiff, | |
| v. | Date:   January 23, 2023 |
| | Time:   11:00 a.m. |
| | Place:  Courtroom 11 |
| PATRICIA BROWER, solely as trustee of the BROWER TRUST (2015), dated June 30, 2015; et al., | United States Bankruptcy Court 280 South First Street San Jose, California 95113 |
| Defendants. | |

2792013

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   THE SECOND AMENDED COMPLAINT ALLEGATIONS AGAINST JOHNSON
      ROVELLA.............................................................................................................4

III.  THE ATTORNEYS' FEES PROVISION DOES NOT APPLY TO A STATUTORY
      CLAIM BROUGHT BY THE LIQUIDATING TRUSTEE SUING ON BEHALF OF
      THE DEBTOR'S ESTATE .....................................................................................4

      A.    There is No Authority for the Application of an Attorneys' Fees Clause to a
            Stranger to the Agreement .........................................................................4

      B.    The Attorneys' Fees Provision Does Not Apply to Statutory Claims ....................6

      C.    Even if the Trustee Could be Considered a Party to the Contract, the
            Attorneys' Fees Provision Would Still Not be Implicated by these Claims............8

            i.    The Attorneys' Fees Provision is Extremely Narrow and Would Only
                  Apply to Actions "On the Contract"............................................................8

            ii.   Section 1021 Does Not Apply to the Narrow Attorneys' Fees
                  Provision but, Even if it Did, it Does Not Apply to Statutory Claims.......13

IV.   TO THE EXTENT THE COURT GRANTS THE MOTION, THE ATTORNEYS'
      FEES SOUGHT ARE NOT REASONABLE ................................................................15

V.    CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

Page

**Cases**

*Bayto v. Doyle*,
 2010 WL 473340 (Cal. App. June 18, 2010) ............................................................... 9

*Bos v. Bd. of Trustees*,
 818, F.3d 486 (9th Cir. 2016) ...................................................................... 10, 13

*Cardinale v. Fitz-Stephens*,
 2002 WL 1065269 (Cal. App. May 28, 2002) ............................................................ 5

*Circle Star Center Associates, L.P. v. Liberate Technologies*,
 147 Cal. App. 4th 1203 (2007) ...................................................................... 6

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*,
 211 Cal. App. 4th 230 (2012) ...................................................................... 11

*Goldbaum v. The Regents of the University of California*,
 191 Cal. App. 4th 703 (2011) ...................................................................... 5

*In re Chen*,
 345 B.R. 197 (N.D. Cal. 2006) ...................................................................... 8, 13

*In re Count Liberty, LLC*,
 370 B.R. 259 (Bankr. C.D. Cal. 2007) ...................................................................... 14, 15

*In re Deuel*,
 482 B.R. 323 (Bankr. S.D. Cal. 2012) ...................................................................... 5

*In re Fulwiler*,
 624 F.2d 908 (9th Cir. 1980) ...................................................................... 11

*In re Hassen Imports Partnership*,
 256 B.R. 916 (9th Cir. B.A.P. 2000) ...................................................................... 6

*In re Hawkeye Entertainment, LLC*,
 625 B.R. 745 (Bankr. C.D. Cal. 2021) ...................................................................... 10, 11, 13

*In re JLM, Inc.*,
 210 B.R. 19 (B.A.P. 2d Cir. 1997) ...................................................................... 15

*In re Johnson*,
 756 F.2d 738 (9th Cir. 1985) ...................................................................... 11

In re Whitney Place Partners,
 147 B.R. 619 (Bankr. N.D. Ga. 1992) ...................................................................... 15

*Loube v. Loube*,
 64 Cal. App. 4th 421 (1998 ...................................................................... 8, 14

*Margolin v. Regional Planning Com.*,
 134 Cal. App. 3d 999 (1982) ...................................................................... 16

2792013

**Cases**

*Marina Gelnco, L.P. v. Malibu Escrow Corp.*,
 2010 WL 685098 (Cal. App. Mar. 1, 2010) .................................................................. 8

*Marsu, B.V. v. Walt Disney Co.*,
 185 F.3d 932 (9th Cir. 1999) ...................................................................................... 9

*Melnyk v. Robledo*,
 64 Cal. App. 3d 618 (1976) ........................................................................................ 16

*Paul v. Schoellkopf*,
 128 Cal. App. 4th 147 (2005) ...................................................................................... 8

*Penrod v. AmeriCredit Financial Services, Inc.*,
 802 F.3d 1084 (9th Cir. 2015) .................................................................................. 10

*PLCM Grp. v. Drexler (Drexler)*,
 22 Cal. 4th 1084 (2000),
 *as modified* (June 2, 2000) ........................................................................................ 15

*Real Property Services Corp. v. City of Pasadena*,
 25 Cal. App. 4th 375 (1994) ........................................................................................ 5

*Redwood Theaters, Inc. v. Davison*,
 289 B.R. 716 (B.A.P. 9th Cir. 2003) ................................................................. 10, 13

*Santisas v. Goodin*,
 17 Cal. 4th 599 (1998) ........................................................................................ 9, 10, 13

*Tillman v. Petrus*,
 2008 WL 821568 (Cal. App. Mar. 28, 2008) ............................................................ 9

*Xuereb v. Marcus & Millichap, Inc.*,
 3 Cal. App. 4th 1338 (1992) ........................................................................................ 9

**Statutes**

11 U.S.C.,
 Section 327(a) ........................................................................................... 2, 6, 7, 8

11 U.S.C.,
 Section 363 .............................................................................................................. 12

11 U.S.C.,
 Section 549 ........................................................................................................ *passim*

California Civil Code,
 Section 1717 ..................................................................................................... *passim*

California Code of Civil Procedure,
 Section 1021 ..................................................................................................... *passim*

2792013

# TABLE OF AUTHORITIES

Page

**Rules**

California Rule of Professional Conduct,
Rule 1.7.................................................................................................................... 14

California Rule of Professional Conduct,
Rule 3-301(b)........................................................................................................... 14

1  Michael G. Kasolas, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust, and

2  Plaintiff herein ("Liquidating Trustee" or "Plaintiff"), hereby opposes (the "Opposition") *Defendant*

3  *JRG Attorneys at Law, LLP's ("Johnson Rovella") Motion for the Prevailing Party to Recover*

4  *Attorneys' Fees Pursuant to FRCP 54(d)* (the "Motion").

5  **I.    INTRODUCTION**

6  In its operative answer, Johnson Rovella told this Court that "[t]here is no basis for recovery

7  of attorneys' fees stated in the Complaint." Doc. No. 83, at ¶ 18. As detailed below, Johnson

8  Rovella was correct. Johnson Rovella's newly-minted argument is predicated on a tortured reading

9  of the law, the contract between Johnson Rovella and Coastal Cypress Corporation ("Coastal")

10  (which contract was never presented to this Court or relied upon by any party), and the operative

11  complaint. The Motion requires this Court to find that the Liquidating Trustee, a stranger to the

12  contract, can not only be bound by an attorneys' fee provision but that such provision can apply to a

13  purely statutory claim—a proposition that runs contrary to settled precedent.

14  The foundation of Johnson Rovella's argument is that (i) Johnson Rovella was paid monies

15  by Coastal pursuant to a contract between Coastal and Johnson Rovella's predecessor (the "Attorney

16  Agreement") entered into after the Debtor filed his bankruptcy petition and which Attorney

17  Agreement contains an attorneys' fees clause limited to "fee disputes," (ii) the Liquidating Trustee

18  sought a finding that Coastal and/or its assets were property of the estate as a result of Coastal's

19  liquidation and, thus, any transfer from Coastal to Johnson Rovella violated 11 U.S.C. § 549, and

20  (iii) if the Liquidating Trustee had been successful Coastal would become an asset of the estate, the

21  Liquidating Trustee would then become a party to the Attorney Agreement and, therefore, would be

22  bound by the attorneys' fee provision. Johnson Rovella concludes that it is entitled to enforce the

23  attorneys' fees clause retroactively against the Liquidating Trustee, a stranger to the contract,

24  because according to Johnson Rovella the Liquidating Trustee's action constitutes a "fee dispute"

25  [Motion, at 2:12-16].

26  This illogical argument fails for a host of obvious reasons:

27  First, the Court never gets to the question of whether the action would fall within the scope of

28  a fee dispute because there is no set of facts in which the Liquidating Trustee would be a party to the

1

1  Attorney Agreement and there is no question but that bankruptcy statutory claims are not subject to

2  the recovery of attorneys' fees.  The Attorney Agreement was entered into between Coastal and

3  Johnson Rovella after the Debtor filed for bankruptcy.  To the extent that the Court found that

4  Coastal was an asset of the Debtor, this would not by operation of law make the Debtor (and, in turn,

5  the Liquidating Trustee) a party to the Attorney Agreement.  Rather, under settled bankruptcy law

6  the post-petition agreement would not be binding on the Debtor because it was obtained without

7  court approval.  In turn, Johnson Rovella would not be entitled to fees because their employment

8  was not approved pursuant to 11 U.S.C. § 327(a).

9          Further, to this point, the Liquidating Trustee's claims are rooted in substantive bankruptcy

10  law, 11 U.S.C. §549, which does not provide for attorneys' fees for the prevailing party.  The

11  bankruptcy statute controls.  Indeed, the only non-bankruptcy claim was for breach of fiduciary duty,

12  but that claim was based upon the existence of a conflict of interest and assumed a separateness of

13  interest between the parties.

14          In point of fact, Johnson Rovella does not even argue that the Liquidating Trustee is bringing

15  these claims as a party or third-party beneficiary but only that if he succeeds the result would be that

16  he becomes a party to the Attorney Agreement after the fact.  Although the conclusion is incorrect,

17  Johnson Rovella still fails to demonstrate that the Liquidating Trustee is bringing the claims as a

18  party to the Attorney Agreement or is bringing any claims rooted in the Attorney Agreement.

19          Second, and even assuming a theory whereby the Liquidating Trustee could be deemed a

20  party to the Attorney Agreement if he succeeded on his statutory claim, Johnson Rovella simply

21  creates from whole cloth the argument that the attorneys' fees provision is broad and that it would

22  cover retroactively such claims.  Neither the language in the Attorney Agreement nor case authority

23  support Johnson Rovella.  Contrary to counsel's bald assertion, the attorneys' fees provision is

24  extraordinarily narrow applying solely to "fee disputes" and, thus, is necessarily tethered to rights

25  "on the contact."  By its own language, it would not apply to breach of fiduciary duty or malpractice

26  claims that clearly do not sound in fee disputes but in breaches of loyalty, confidentiality, and/or

27  competency.  As discussed below, this narrow provision would not animate Section 1021 of the

28  California Code of Civil Procedure (which is otherwise inapplicable to statutory claims in any event)

2

2843408

1  and only Section 1717 of the California Civil Code would apply if at all. In turn, Section 1717 does
2  not apply for a host of reasons, including that the Trustee's claim is not brought "on a contract" and
3  there is no breach of contract claim asserted.

4          Here, the Liquidating Trustee has brought no claims as a party or third-party beneficiary of
5  the Attorney Agreement. Rather, the Liquidating Trustee has brought a statutory claim, a creature of
6  bankruptcy law, and its standing to do so exists regardless of the existence of the Attorney
7  Agreement. Rather, the statutory claim belongs to the Debtor's estate and is prosecuted for the
8  benefit of creditors. The claim simply is not within the scope of claims for which a contractual
9  attorneys' fees clause applies assuming the post-petition contract could be enforced. Thus, at a
10 minimum for Johnson Rovella to succeed this Court must re-write both the Liquidating Trustee's
11 operative complaint and Johnson Rovella's operative answer in order to insert the Attorney
12 Agreement —which has never been placed before this Court—and to recast the Liquidating
13 Trustee's claims against Johnson Rovella as flowing through the Attorney Agreement (either in
14 contract or, if interpreted expansively, tort). Of course, the claims brought, for statutory post-
15 petition transfers, simply do not animate the Attorney Agreement, let alone the attorneys' fee
16 provision therein. Not surprisingly, neither the Liquidating Trustee in his operative complaint, nor
17 Johnson Rovella in its operative answer, cited to the Attorney Agreement or the rights of the parties
18 thereto.

19         While Johnson Rovella correctly notes that Section 1021 has been interpreted to apply to tort
20 claims where the fee provision is expansive, Section 1021 has never been applied to statutory
21 bankruptcy claims that are not founded upon a state tort right. A review of Johnson Rovella's case
22 law below shows that none support Johnson Rovella's attempt to connect the dots between the
23 Attorney Agreement never presented to this Court and the claims brought by the Liquidating
24 Trustee. No connection exists. The simple fact that Johnson Rovella had a contract with Coastal
25 does not mean that the attorneys' fees clause therein is applicable to the claims presented by the
26 Liquidating Trustee who was not asserting any rights under the Attorney Agreement—even if
27 Coastal had been determined to be an asset of the Debtor's estate. The existence of the Attorney
28

3

2843408

Agreement is simply irrelevant to the statutory claim, which explains why neither party cited to it in their operative pleadings.

## II. THE SECOND AMENDED COMPLAINT ALLEGATIONS AGAINST JOHNSON ROVELLA

In total, the Liquidating Trustee brought nine claims for relief. Of those, the following were brought against Johnson Rovella:

1.    First claim for relief: Avoidance of Post-Petition Transfers, 11 U.S.C. § 549;

2.    Second claim for relief: Rescission and Recover of Transfer, Cal. Corp. Code § 1001;

3.    Third claim for relief: Recovery of Avoided Transfers for the Benefit of the Estate, 11 U.S.C. §§ 550, 551;

4.    Fourth claim for relief: Turnover of Estate Property, 11 U.S.C. § 542;

5.    Fifth claim for relief: Accounting of Property of the Estate, 11 U.S.C. § 542;

6.    Seventh claim for relief: Breach of Fiduciary Duty;

7.    Eighth claim for relief: Disgorgement, 11 U.S.C. § 330; and

8.    Ninth claim for relief: Conversion.

These eight claims for relief have one thing in common: none are based upon any rights claimed by the Liquidating Trustee under the Attorney Agreement and none involve a fee dispute. Nowhere in the Second Amended Complaint does the Liquidating Trustee aver that his claims are based upon his being a party to the Attorney Agreement, a successor to a party to the Attorney Agreement, or a third-party beneficiary to the Attorney Agreement. Setting aside whether Coastal paid Johnson Rovella based upon the Attorney Agreement, the crux of the Liquidating Trustee's position is that the net liquidation proceeds in Coastal's possession did not belong to it but were assets of the Debtor's estate as a result of Coastal's liquidation.

## III. THE ATTORNEYS' FEES PROVISION DOES NOT APPLY TO A STATUTORY CLAIM BROUGHT BY THE LIQUIDATING TRUSTEE SUING ON BEHALF OF THE DEBTOR'S ESTATE

### A. There is No Authority for the Application of an Attorneys' Fees Clause to a Stranger to the Agreement

"As a general rule, attorney fees are awarded only when the action involves a claim covered by a contractual attorney fee provision *and the lawsuit is between signatories to the contract*." *Real*

4

1  *Property Services Corp. v. City of Pasadena*, 25 Cal. App. 4th 375, 379-389 (1994).  The few

2  exceptions identified in California case authority are inapplicable here.  For example, California

3  courts have applied an exception where the nonsignatory is suing as a third-party beneficiary and

4  who would have been entitled to fees had they prevailed.  *Id.*, at 380.[1]

5      The problem here is that the Liquidating Trustee is not a signatory to this post-petition

6  contract and did not seek to enforce the contract or any of its provisions.  *See Cardinale v. Fitz-*

7  *Stephens*, 2002 WL 1065269, at *5 (Cal. App. May 28, 2002) (where losing nonsignatory party has

8  not attempted to enforce the contract, the exception identified in *Real Property* does not "come into

9  play").  The Liquidating Trustee, likewise, did not sue as a third-party beneficiary of the Attorney

10  Agreement.  It did not sue on the Attorney Agreement at all.

11      The question posed by the *Real Property* court and its progeny is whether had the losing

12  party prevailed could it seek attorneys' fees under the contract either as a signatory or third-party

13  beneficiary.  Here, the answer is an obvious no.  Not only was the Liquidating Trustee not even

14  aware of or claimed any right under the Attorney Agreement, its claim was one created under the

15  bankruptcy code, which governed its rights.  As a stranger, the Liquidating Trustee could neither

16  enforce the attorneys' fees provision nor be bound by it.[2]

17

18

19  [1] Johnson Rovella misunderstands and misstates the holding in *Real Property* claiming that it stands
for the proposition that a non-signatory losing plaintiff is liable for attorneys' fees.  In other words,

20  Johnson Rovella believes that *Real Property* can be read to bind total strangers to an attorneys' fee
provision.  Motion, at 4:6-7.  Johnson Rovella fails to note that *Real Property* identified a narrow

21  exception to the signatory requirement where, as presented in *Real Property*, the non-signatory is a
third-party beneficiary of the agreement and would have been entitled to fees in that capacity.  No

22  court has ever held that an attorneys' fee provision could apply to a stranger to the contract.

23  [2] Johnson Rovella notes that in the Liquidating Trustee's prayer for relief in the operative complaint
the Liquidating Trustee sought "[r]easonable attorneys' fees and costs permitted under applicable

24  law," as if this establishes Johnson Rovella's right to such fees.  Motion, at 5:9-12.  Courts have
uniformly rejected that argument.  *See Goldbaum v. The Regents of the University of California*, 191

25  Cal. App. 4th 703, 716 (2011) ("many pleadings include a prayer for attorneys' fees out of an
abundance of caution, and a mere prayer for fees is an insufficient ground for an award of fees to the

26  opposing party under a reciprocal fee statute"); *see also In re Deuel*, 482 B.R. 323, 329 (Bankr. S.D.
Cal. 2012) (citing California authority for proposition that attorneys' fees request in prayer does not

27  create estoppel argument).  Of note, the Liquidating Trustee did not allege that it was entitled to
attorneys' fees under the Attorney Agreement, but rather as "permitted under applicable law."  Here,
the Liquidating Trustee would have been entitled to attorneys' fees to the extent he proved a

28  violation of the automatic stay (subject to this Court's discretion to order such fees).  But, such right
would not be "on a contract" and would not be reciprocal.

5

2843408

**B. The Attorneys' Fees Provision Does Not Apply to Statutory Claims**

Further to the point that the Liquidating Trustee was not relying on any third-party rights under the Attorney Agreement, it is well settled that a party cannot recover attorneys' fees in litigating purely bankruptcy law issues unless fees are authorized under a specific provision of the Bankruptcy Code. *In re Hassen Imports Partnership*, 256 B.R. 916 (9th Cir. B.A.P. 2000); *see also Circle Star Center Associates, L.P. v. Liberate Technologies*, 147 Cal. App. 4th 1203 (2007). As *Circle Star* instructs:

> When a case remains within the jurisdiction of the bankruptcy court, the rule is well settled: a party may not recover attorney fees incurred in litigating purely bankruptcy law issues unless fees are authorized under a specific provision of the Bankruptcy Code. [footnote] (*In re Hassen Imports Partnership* (9th Cir.BAP2000) 256 B.R. 916 (*Hassen* ).) This is even true where the bankruptcy litigation concerns a contract that contains a provision entitling the prevailing party to fees. (*Ibid*.)

*Circle Star*, 147 Cal. App. 4th at 1208-1209 (footnote omitted). The *Hassen* court, likewise, rejected the argument that attorneys' fees in a contract could be recovered when federal bankruptcy law governs:

> To the extent that federal bankruptcy law governs the disposition of the substantive matters in this case, it also governs the right of a party to recover attorneys' fees. Under the Bankruptcy Code, there is no general right to recover attorneys' fees; nonetheless, the Bankruptcy Code does include provisions for attorneys' fees under certain limited circumstances. In contrast, when parties are litigating matters in which state or other non-bankruptcy law controls, state law [footnote] governs the parties' right to recover attorneys' fees.
>
> Debtor seeks an award of attorneys' fees in uniquely bankruptcy matters, relying not upon bankruptcy authority, but instead attempting to import state law's reciprocity provisions into this exclusive federal setting. Such an award of fees would be contrary to controlling authority in this circuit and to sound bankruptcy policy.

*In re Hassen*, 256 B.R. at 920.

Here, the sole issue presented was whether Coastal and/or its assets were an asset of the Debtor's estate and, thus, whether the transfer by Coastal of its assets after the Debtor filed for bankruptcy constituted a post-petition transfer pursuant to 11 U.S.C. § 549 and/or whether Johnson Rovella needed to have been approved by the Court pursuant to 11 U.S.C. § 327(a) with respect to a post-petition agreement (assuming the Court found that Coastal was an asset of the estate). Neither

6

2843408

the contract nor any fee dispute were placed at issue by the Liquidating Trustee and there is no statutorily recognized basis for recovering fees on a claim premised on Section 549 or Section 327(a).

Johnson Rovella admits that the Liquidating Trustee did not sue it either as a party or a third-party beneficiary of the Attorney Agreement. Rather, it makes the unsound argument that had the Liquidating Trustee prevailed on its theory that Coastal was an asset of the estate (as opposed to Coastal's net liquidation assets being an asset of the estate), then the Debtor would become a party to the Attorney Agreement. The argument, bereft of authority, is wrong.

Had the Liquidating Trustee prevailed either Coastal would have been deemed an asset of the estate such that no post-petition agreements could have been entered without this Court's approval or the net liquidation proceeds would have been deemed an asset of the estate such that no transfers of Coastal's assets could have been made without the Liquidating Trustee's consent and this Court's approval. Under either scenario, the Liquidating Trustee does not become a party to the agreement—the very foundation of Johnson Rovella's argument. Rather, this would make the Attorney Agreement void as a post-petition agreement that was not consented to by the Liquidation Trustee or approved by this Court.

Indeed, following Johnson Rovella's logic, as a post-petition agreement between the Debtor and a law firm (given that Coastal would be deemed an asset of the estate), the Attorney Agreement would have been subject to approval pursuant to 11 U.S.C. § 327. No approval, no fees. Again, this is not an issue arising on the contract, but one of substantive bankruptcy law. Accordingly, the lynchpin of Johnson Rovella's argument, that the Liquidating Trustee becomes a party to the Attorney Agreement if he succeeds on his theory that Coastal is an asset of the estate, is an argument bereft of legal authority and common sense.

Stated another way, the Liquidating Trustee's argument was a two-step process. First, was Coastal or Coastal's assets an asset of the estate. If not the inquiry ends. Notably, the existence of the Attorney Agreement is irrelevant to this inquiry. Assuming the Court answered this question in the affirmative, the Court would then be presented with the Section 549 and Section 327 arguments as to the dissipation of Coastal's (not the Debtor's) assets. Again, the existence of the Attorney

7

2843408

Agreement is relevant, if at all, solely to the issue of the failure to seek or obtain court approval pursuant to Section 327. Here, the Court found in the first instance that neither Coastal nor its assets were an asset of the estate. Thus, the Attorney Agreement was never at issue.

Even had the Court ruled affirmatively that Coastal and its assets were an asset of the estate, assuming Johnson Rovella had a recognized defense to Section 549 or Section 327 claims, neither of those statutes provide for the recovery of Johnson Rovella's attorneys' fees. Thus, there simply is no way to shoehorn the Attorney Agreement's attorneys' fees clause into the Liquidating Trustee's statutory claims.

**C. Even if the Trustee Could be Considered a Party to the Contract, the Attorneys' Fees Provision Would Still Not be Implicated by these Claims**

        i.    The Attorneys' Fees Provision is Extremely Narrow and Would Only Apply to Actions "On the Contract"

Given that there is no set of facts whereby the Liquidating Trustee can be deemed a party or a third-party beneficiary under the Attorney Agreement and the fact that neither Section 1717 or Section 1021 covers purely statutory claims, the analysis of whether these fees would have been recoverable under either section is academic. Nevertheless, and assuming the Liquidating Trustee were a party to the Attorney Agreement or was otherwise asserting rights thereunder, the determination of which section applies rests largely on the scope of the fees provision. Here, and without case authority, Johnson Rovella argues that "fee disputes" is extremely broad. Motion, at 4:4. Johnson Rovella is wrong.

California courts routinely hold that an attorneys' fee provision that applies solely to the collection of fees thereunder is a narrow attorneys' fee provision. *See In re Chen*, 345 B.R. 197, 201 (N.D. Cal. 2006) (language providing for attorneys' fees "to collect payments due and unpaid" under the agreement was narrow provision that did not extend to tort claims"); *Loube v. Loube*, 64 Cal. App. 4th 421, 429-430 (1998) (narrow attorney's fees provision for enforcement of agreement would apply to claim for being charged excessive attorneys' fees and would be subject to Section 1717); *Marina Gelnco, L.P. v. Malibu Escrow Corp.*, 2010 WL 685098, at *10 (Cal. App. Mar. 1, 2010) (found fee provision to be narrow as it was limited to the collection of fees due under the contract) citing *Paul v. Schoellkopf*, 128 Cal. App. 4th 147, 153 (2005); *Bayto v. Doyle*, 2010 WL 473340, at

8

2843408

*16 (Cal. App. June 18, 2010) (fee provision related to monies owed under the agreement is narrow and does not apply to all "disputes arising out of or relating to the agreement"); *Tillman v. Petrus*, 2008 WL 821568, at *10 (Cal. App. Mar. 28, 2008) (attorneys' fee provision in attorney engagement agreement applying only to enforcement of attorney's right to fee is narrow, not broad).

The attorneys' fee provision is narrow because it applies exclusively to monies owed under the contract. It is no different than a provision that provides for the payment of for attorneys' fees in enforcing the agreement or in collecting on the agreement. The fees, if any, are provided for in the agreement. A dispute over those fees necessarily is tied to the contract. It is, thus, clearly an action on a contract. Cal. Civ. Code § 1717.

The limitation to "fee disputes" is in contrast to provisions found by California courts to be broad, such as provisions that applied to claims "arising out of the execution of [this] agreement." *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998). Indeed, Johnson Rovella's sole support for its argument is a citation to *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999). However, that agreement, like the one analyzed in *Santisas*, contained extremely broad language that bore no resemblance to the "fee dispute" language in the Attorney Agreement. *Id.*, at 939 (attorneys' fees provision applied to "*[a]ny dispute, difference, claim or counterclaim between the parties arising out of or in connection with this agreement*") (emphasis in original).[3] Unlike this broad language, the language in the Attorney Agreement is limited to enforcing rights under the contract—*i.e.*, the right to be paid under the contract.

However, that is only the beginning of the analysis. In order to succeed, Johnson Rovella would have to demonstrate that the contract dictated the outcome of the issues. Here, the Attorney Agreement was wholly irrelevant to the issues presented for adjudication and, in fact, was not even presented to the Court. In *Redwood Theaters, Inc. v. Davison*, 289 B.R. 716, 724 (B.A.P. 9th Cir.

[3] Likewise, *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338 (1992), involved a broad attorneys' fee provision that applied to "any 'lawsuit or other legal proceeding' to which 'this agreement gives rise.'" *Id.*, at 1342. It was not limited to fee disputes—*i.e.* claims seeking to enforce the terms of the contract. *Id.*, at 1343. Notably, the *Xuereb* court recognized that it should interpret words "in their usual sense" and "arises from" is commonly used "in a far more general, transactional sense." *Id.*, at 1344. The ordinary and usual sense of the term "fee disputes" is disputes relating solely to the amount of monies owed under the contract. It is not co-extensive with broad "arising from" language.

9

Case: 21-05029   Doc# 206   Filed: 01/09/23   Entered: 01/09/23 12:41:27   Page 14 of 23

2843408

2003) ("*In re Davison*") , the bankruptcy appellate panel tethered the application of Section 1717 to an action concerning the enforceability of a contract.  The *In re Davison* court rejected the prevailing party's claim to attorneys' fees because the only claim asserted was one based on nondischargeability based on fraud and there was no claim for breach of contract.  *Id.* citing *Santisas*, 17 Cal. 4th at 615.  The analysis does not focus on the relief sought but "to what extent contract enforceability determines the outcome of the issue under the Bankruptcy Code."  *In re Hawkeye Entertainment, LLC*, 625 B.R. 745, 756 (Bankr. C.D. Cal. 2021).

The *Hawkeye Entertainment* court canvassed the law identifying the guiding analysis—the extent contract enforceability determines the outcome—that separates case law finding in the context of bankruptcy cases whether an attorneys' fees clause is triggered.  On the one hand, the court examined the holding in *Penrod v. AmeriCredit Financial Services, Inc.*, 802 F.3d 1084 (9th Cir. 2015) recognizing that in *Penrod* the Ninth Circuit found that it was an "action on the contract because the creditor had sought to enforce a claimed contractual right when it objected to confirmation of the chapter 13 plan."  *Hawkeye Entertainment*, 625 B.R. at 756 *citing Penrod*, 802 F.3d at 1088 (finding that "[t]he only possible source of [AmeriCredit's] asserted right was the contract"); *see also In re Relativity Fashion, LLC*, 565 B.R. 50 (Bankr. S.D.N.Y. 2017) (finding action was on a contract because the sole basis for opposing the debtor's motion was pursuant to the creditor's contractual claims).

Conversely, the *Hawkeye Entertainment* court analyzed *Bos v. Bd. of Trustees*, 818, F.3d 486, 488 (9th Cir. 2016), wherein the Ninth Circuit found that an action brought pursuant to 11 U.S.C. § 523(a)(4) was not an action on the contract:

> In *Bos v. Bd. of Trustees*, 818 F. 3d 486, 488 (9th Cir. 2016), a debtor who prevailed in a nondischargeability action brought under 11 U.S.C. § 523(a)(4) for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," sought to recover attorney's fees under a contract against the moving creditor. Id. The Ninth Circuit distinguished its ruling in Penrod where the bankruptcy court was required to determine the enforceability of the agreement and found that the § 523 action against Bos "in no way required the bankruptcy court to determine whether or to what extent the Trust Agreements or the Note were enforceable against Bos, or whether Bos had violated their terms." Id. at 490-91. ***Rather, the litigation only addressed whether the standard under § 523(a)(4) forbade the debtor from discharging the debts everyone agreed he owed. Id.***

1 *Hawkeye Entertainment*, 625 B.R. at 756 (emphasis added); *see also Redwood Theatres*, 289 B.R. at

2 724 (claim for non-dischargeability not an action on the contract); *In re Fulwiler*, 624 F.2d 908 (9th

3 Cir. 1980) (non-dischargeability action in bankruptcy was not "on a contract" under Oregon fee

4 shifting provision identical to Section 1717); *In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985)

5 (where adversary action neither litigated the validity of the contract nor required the bankruptcy

6 court to consider "the state law governing contractual relationships," it was not an action "on a

7 contract" within meaning of Section 1717).

8       The *Hawkeye Entertainment* court's key takeaway from its examination of this case law was

9 that "substance should prevail over form. Even if the proceeding is under the rubric of a bankruptcy

10 procedure, the critical question may be to consider how to enforce a contract rather than

11 considerations unique to bankruptcy." *Id.*, at 757.

12       Here, the claims brought by the Trustee against Johnson Rovella were not only unique to

13 bankruptcy but the contract was never placed at issue. The Trustee's claims were predicated solely

14 on the position that the assets of Coastal were assets of the estate and, thus, pursuant to 11 U.S.C. §

15 549, those assets could not be dissipated absent the Liquidating Trustee's and this Court's consent.

16 The sole issue before this Court was whether Coastal's assets were assets of the bankruptcy estate.

17 The existence of the Attorney Agreement between Coastal and Johnson Rovella was irrelevant to

18 this threshold determination. Unlike *Hawkeye Entertainment* where the contract was "at the core of

19 this dispute" [*id.*, at 758], the Attorney Agreement played no part in the Court's analysis.

20               An action (or cause of action) is 'on a contract' for purposes of section 1717
if (1) the action (or cause of action) "involves" an agreement, in the sense

21               that the action (or cause of action) arises out of, is based upon, or relates to
an agreement by seeking to define or interpret its terms or to determine or

22               enforce a party's rights or duties under the agreement, and (2) the agreement
contains an attorney fees clause.

23

24 *Id.*, quoting *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*, 211 Cal. App. 4th 230, 241-42

25 (2012).

26       Notably, while the *Hawkeye Entertainment* court determined that attorneys' fees were

27 recoverable with respect to that part of the action that focused almost exclusively on the terms of the

28 agreement that contained an attorneys' fees clause, the same court had no problem in finding that

2843408

claims based solely on bankruptcy law, such as those pursuant to 11 U.S.C. § 363 would not implicate the attorneys' fees clause. As the *Hawkeye Entertainment* court held:

> A final point is how the Court should characterize the Motions brought so far in the case. Debtor brought two motions under 11 U.S.C. § 363 to use the Property to host religious services and to allow filming to take place for virtual events as well as a motion to authorize post-petition financing under 11 U.S.C. § 364. Additionally, the Debtor brought a motion pursuant to § 365(d)(3) and § 105 authorizing the Debtor to hold rent payments in trust and excuse or deem the Debtor in compliance with § 365(d)(3). The Landlord unsuccessfully objected to these Motions.

> There is no question that there was some overlap between the issues in the § 363 motions and the Assumption Motion; however, there are some important differences. Most notably, the relief sought in the § 363 motions were based solely on bankruptcy law – the Debtor would not have been able to seek or need to seek the relief sought in those motions but for the Bankruptcy Code. The Debtor argues that the § 363 motions would be similar to seeking declaratory relief in a state or federal district court. As the Landlord argued in its objections to these motions, pursuant to Federal Rule of Bankruptcy Procedure 7001, a party seeking declaratory relief must do so through an adversary proceeding, which was never brought here. In the Court's rulings for both § 363 motions, the Court overruled the Landlord's objection on this point because it found that the Debtor did not need to commence an adversary proceeding where the relief sought was solely a determination of ordinary use under § 363(b). The Court went on to apply law as it relates to § 363. While the terms of the lease certainly were consulted, there was no evidentiary hearing and issues of the Debtor's need to use the space for alternative activities during the pandemic were also in play. The Court did not grant declaratory relief here for the Debtor in either of these motions. Any reference to the Lease Agreement was only incidental in order to determine whether relief was appropriate under § 363. The Court was not adjudicating the rights of the parties pursuant to the Lease Agreement at that time.

> Similarly, the motion pursuant to § 365(d)(3) and § 105, authorizing the Debtor to hold rent payments in trust and excuse or deem the Debtor in compliance with § 365(d)(3), involved the Lease Agreement; however, any involvement of the terms of the Lease Agreement was minimal. In this motion the Debtor sought to extend time for performance under the timeframe enumerated in the Bankruptcy Code. The Court did not adjudicate the rights of the parties under the Lease Agreement; rather, the Court applied bankruptcy law.

> Finally, without the Bankruptcy Code, the Debtor would not have needed to seek relief under 11 U.S.C. § 364 for the Court to approve post-petition financing. It had nothing to do with the Lease Agreement.

> The Motions relate more to the global concerns of administering the bankruptcy estate rather than the individualized contractual disputes that were addressed in Assumption Motion. The Court finds that these Motions are not "on a contract" nor do they relate enough to the Lease Agreement to warrant attorney's fees and costs. Accordingly, all fees and costs associated with bringing these Motions are denied.

12

*Hawkeye Entertainment*, 625 B.R. at 758-59.

Here, none of the claims implicated or related to the Attorney Agreement. It was not cited or relied upon or even pled in the operative complaint, and it was not a source of any defense to the post-petition transfer claims. It simply was irrelevant to the Court's determination as set forth in the Court's decision, which decision does not mention the Attorney Agreement let alone base its holding thereon. Doc. No. 158. Further, there was no contract claim. Thus, Section 1717 does not apply. *Bos*, 818 F.3d at 489 citing *Santisas*, 17 Cal. 4th at 615.

        ii.    Section 1021 Does Not Apply to the Narrow Attorneys' Fees Provision but, Even if it Did, it Does Not Apply to Statutory Claims

Johnson Rovella's reliance on Section 1021 of the California Code of Civil Procedure, while expanding the right to attorneys' fees by agreement to both tort and contract actions, is misplaced. As explained above, and contrary to Johnson Rovella's bald assertion, the fees provision is exceptionally narrow relating solely to fee disputes. The provision does not contain the "arising out of" language that courts have interpreted to embrace to include not only contract claims but also tort claims. No matter how elastic the Court viewed this otherwise narrow provision it simply could not be deemed to embrace purely bankruptcy law issues even if it conceivably applied to tort actions.

The leading bankruptcy authority on the recovery of fees under Section 1021 is *In re Davison*. As that Court instructed, whether Section 1021 would apply to a tort claim depends on the language in the agreement. Thus, if the contract provided fees "to enforce" rights under the agreement, the action brought must be used to "enforce" their rights under the agreement. In *In re Davison*, the complaint brought a fraud claim pursuant to Section 523(a)(2)(A). "In finding no fraud by Debtor, the bankruptcy court was not enforcing or interpreting the terms of the Agreement. Accordingly, under CCP § 1021, Debtor was not entitled to attorneys' fees under the Agreement even though he was the prevailing party." 289 B.R. at 725; *see also In re Chen*, 345 B.R. at 201 (finding that fee provision relating to the collection of fees under the agreement did not extend to tort claims and Section 1021 was, therefore, inapplicable).

Here, the narrow attorneys' fees provision provides for such fees in a collection action, i.e, a fee dispute. But, the post-petition transfer claim was not a fee dispute. It was not even a tort action

13

as between client and attorney such as for malpractice or breach of fiduciary duty (assuming Section 1021 were applicable),[4] but a statutorily prescribed action. Indeed, the Court was not asked to determine whether Johnson Rovella's fees were reasonable, it was not presented with Johnson Rovella's invoices, and it did not examine the work performed by Johnson Rovella on behalf of Coastal. Rather, the only issue presented by the Trustee was whether the net liquidation assets in Coastal's possession were its to dissipate or whether those monies belonged to the estate. That claim did not rise or fall on a fee dispute with Johnson Rovella and, in fact, would have vitality whether Johnson Rovella earned fees pursuant to a contract or was otherwise gifted the monies.

Rather, the issue was squarely a bankruptcy-created right relating to post-petition transfers. Under the Liquidating Trustee's theory, if Coastal's net liquidation assets belonged to the Debtor, as the sole shareholder of Coastal, then all transfers after the Debtor filed for bankruptcy protection and Coastal was liquidated would violate Section 549.

The lone tort claim brought by the Liquidating Trustee against Johnson Rovella, for breach of fiduciary duty, does not serve to advance Johnson Rovella's argument. The breach of fiduciary duty claim is not being brought in Coastal's shoes but in the shoes of the estate and assumes that Coastal is a separate entity. As provided for by the California Rules of Professional Conduct, an attorney may not represent in the same litigation parties with adverse interests without informed written consent. Cal. Rule Prof. Cond. 1.7; *see also* Cal. Rule Prof. Cond. 3-301(b) (in effect until October 1, 2018). A claim will lie against counsel that violates his or her fiduciary duty of loyalty.

Here, it is alleged that Johnson Rovella owed a separate fiduciary duty to Debtor's bankruptcy estate as Johnson Rovella was representing the debtor in possession in the Enhancement Action. *In re Count Liberty, LLC*, 370 B.R. 259, 280-81 (Bankr. C.D. Cal. 2007) (collecting cases). "While counsel's duty to the estate may not rise to the level of a policeman for the debtor's post-petition conduct, an attorney for the debtor in possession has fiduciary obligations to the estate stemming from his fiduciary duties to the debtor in possession and his responsibilities as an officer of the court." *Id.* at 281–83. "Counsel is charged with the duty to advise the debtor in possession of

---

[4] Claims for malpractice and breach of fiduciary duty, for example, are tort claims that are not "on the contract." *Loube*, 64 Cal. App. 4th at 429-430.

14

2843408

its responsibilities under the Code, and to assist the debtor in possession, and its principals, in discharging those responsibilities." *Id.* "A debtor in possession's attorney bears a heightened duty of care 'to ensure [the] integrity of the bankruptcy process where, by definition, a debtor in possession is not disinterested, [and] counsel for a debtor in possession must be disinterested, free of any adverse entanglements which could cloud its judgment respecting what is best for the estate.'" *Id.* (quoting *In re JLM, Inc.*, 210 B.R. 19, 26 (B.A.P. 2d Cir. 1997)); *see also In re Whitney Place Partners,* 147 B.R. 619, 620–21 (Bankr. N.D. Ga. 1992) (stating that "the debtor's attorney must take conceptual control of the case and provide guidance for management of the debtor, not only to discern what measures are necessary to achieve a successful reorganization, but to assure that, in so doing, compliance with the Bankruptcy Code and Rules is sought rather than avoided"). As *Count Liberty* instructs: "When counsel fails to act diligently to ensure that the debtor in possession's management protect the estate from dissipation, the court may order a reduction, denial or forfeiture of compensation in the case." *Count Liberty, LLC*, 370 B.R. at 287 (collecting cases).

As alleged in the SAC ¶¶ 215-18, Johnson Rovella breached this duty by failing to: (i) file an application to be employed by the estate; (ii) receiving payment of its fees without Court approval; (iii) failing to disclose the terms of its representation; (iv) representing the defendants in the Enhancement Action even though such representation was a conflict of interest; and (v) failing to properly advise the Debtor of his duties under the Bankruptcy Code as a debtor in possession.

Thus, this tort is not premised upon a "fee dispute" under the Attorney Agreement between Johnson Rovella and Coastal, but rights the estate claimed Johnson Rovella owed the Debtor's estate—separate and distinct from any rights Johnson Rovella might have owed Coastal.

## IV. TO THE EXTENT THE COURT GRANTS THE MOTION, THE ATTORNEYS' FEES SOUGHT ARE NOT REASONABLE

To the extent that the Court grants the Motion, the attorneys' fees sought by Johnson Rovella are not reasonable. "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler (Drexler)*, 22 Cal. 4th 1084, 1096 (2000), *as modified* (June 2, 2000). "California courts have consistently held that a computation of time spent on a case and the reasonable value of that

time is fundamental to a determination of an appropriate attorneys' fee award." *Id.* (quoting *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1004–05 (1982)). "The reasonable hourly rate is that prevailing in the community for similar work." *Id.* "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id.* As the *Drexler* court stated:

> It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court.... [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.

*Id.* at 1096 (quoting *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623–24 (1976)).

Here, the amount of time spent by Johnson Rovella's counsel was not reasonable. Allegedly, Johnson Rovella's counsel spent 261.55 hours preparing a mere handful of pleadings in this case. Specifically, counsel for Johnson Rovella prepared two motions to dismiss, an answer, three "me too" joinders, and a limited opposition to the Liquidating Trustee's motion for certification under Federal Rule of Civil Procedure 54(b). Specifically with regard to the joinders, the Court should not allow any time for preparing the joinders as Johnson Rovella has already filed an answer to the first amended complaint and, thus, the joinders were improper.

Additionally, the attorneys' fees sought by Johnson and Rovella include numerous entries that contain blocked billing, unnecessary services, including but not limited to, numerous conference calls with counsel for other defendants to "coordinate" strategy and preparing for and attending a hearing on a motion to dismiss when Johnson and Rovella had already filed an answer to the first amended complaint, and entries for administrative services, such as checking the docket or "review[ing] status of court ruling" for .5 hours.

To the extent that the Court grants the Motion, the Court should reduce the amount of any award to Johnson Rovella.

16

2843408

1    **V. CONCLUSION**

2        For the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion.

3    DATED:  January 9, 2022                    BG LAW LLP

4                                               By:_____
                                                   Jason B. Komorsky
5                                                  Jessica L. Bagdanov
                                                   Jessica S. Wellington
6                                               Attorneys for Michael G. Kasolas, Liquidating Trustee
                                                For the Robert Brower, Sr. Liquidating Trust
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

2843408

## CERTIFICATE OF SERVICE

I, JESSICA STUDLEY, certify that service of following document:

**PLAINTIFF'S OPPOSITION TO DEFENDANT JOHNSON ROVELLA'S MOTION FOR ATTORNEYS' FEES**

was made on January 9, 2023 by:

☐     Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☒     Notice of Electronic Filing (NEF): The foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L. Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **James C. Bastian**    jbastian@shbllp.com
- **Jason B. Komorsky**    jkomorsky@bg.law, ecf@bg.law
- **Ryan O'Dea**    rodea@shbllp.com
- **Aron M. Oliner**    roliner@duanemorris.com, dmicros@duanemorris.com
- **Rogelio Serrano-Gutierrez**    rserrano@kdvlaw.com
- **Wendy W. Smith**    wendy@bindermalter.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐     Overnight Delivery: By enclosing in a UPS envelope for next day delivery.

☐     Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addresses to the following officer of the defendant at:

☐     Email: The defendant's counsel was served by email as follows:

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times, during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date: January 9, 2023

          /s/ Jessica Studley
JESSICA STUDLEY

BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367